## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------

CHRISTOPHER TEMPLIN, VIOLA HENDRICKS,
FELDMAN'S MEDICAL CENTER PHARMACY,
INC., and FCS PHARMACY LLC,

                    *Plaintiffs,*

                                        Civil Action No. 09-4092 (JHS)

        *-against-*

INDEPENDENCE BLUE CROSS, QCC
INSURANCE COMPANY, and CAREFIRST, INC.

                    *Defendants.*

-------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF IBC DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

### INTRODUCTION

Plaintiffs assert claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and the Pennsylvania Quality Health Care Accountability and Protection Act, 40 P.S. § 991.2101 *et seq.* ("Act 68"), alleging Defendants failed to pay insurance claims submitted by two of the four Plaintiffs. Plaintiffs' Complaint must be dismissed with respect to Independence Blue Cross ("IBC") and QCC Insurance Company ("QCC") (collectively, the "IBC Defendants") for seven principal reasons.

First, Plaintiffs lack standing. The Individual Plaintiffs do not allege any injury-in-fact. The Pharmacy Plaintiffs lack standing because they do not have a valid assignment of benefits.

Second, Plaintiffs have failed to exhaust applicable ERISA plan remedies, precluding all of Plaintiffs' claims.

Third, Plaintiffs' breach of fiduciary duty claim (Count I) fails as a matter of law.

<u>Fourth</u>, Count II fails because no private right of action exists under 29 U.S.C. § 1133.

<u>Fifth</u>, Count III fails because no private right of action exists under Act 68.

<u>Sixth</u>, Count III is preempted by ERISA.

<u>Seventh</u>, and finally, IBC is not a proper defendant to this lawsuit.

## <u>OVERVIEW OF PLAINTIFFS' COMPLAINT</u>

Plaintiffs Christopher Templin ("Templin") and Viola Hendricks ("Hendricks") (collectively, the "Individual Plaintiffs") allegedly are hemophiliacs or provide support for hemophiliac dependents and/or family members. Plaintiffs Feldman's Medical Center Pharmacy, Inc. ("FMCP") and FCS Pharmacy LLC ("FCS") (collectively, the "Pharmacy Plaintiffs") are pharmacies which allegedly provided blood-clotting factor treatment ("factor") directly to patients who are participants or beneficiaries of health plans "insured, underwritten and/or administered by Defendants," Complaint at ¶ 12, including Templin, Hendricks and/or their dependents and/or family members. Pharmacy Plaintiffs allegedly received an assignment of benefits from these patients and seek reimbursement directly from Defendants on that basis. *Id.*

Pharmacy Plaintiffs allege that they have provided covered services to Defendants' insureds as non-participating providers. *Id.* at ¶ 14. They further allege that they have submitted insurance claims to Defendants pursuant to and in accordance with certain insurance plans, and that $2,204,996.55 in claims remain outstanding. *Id.* at ¶ 15.

Plaintiffs assert three claims for relief. Count I asserts a breach of fiduciary duty claim under ERISA. Count II alleges that Defendants violated ERISA, 29 U.S.C. § 1133, by failing "to comply with proper claims procedure due to their improper denial of FCS and FMCP claims and their failure to set forth in writing the specific reasons for such denials." Complaint at ¶ 43. Count III alleges that Defendants violated Act 68, which requires, *inter alia*, a insurer or

managed care plan to pay "clean claims" submitted by a health care provider within forty-five days of receipt of such claim. *See* 40 P.S. § 991.2166.

## ARGUMENT

### I.   Plaintiffs Lack Standing to Maintain this Lawsuit

#### A.   Individual Plaintiffs Lack Standing Because They Do Not Allege an Injury-in-Fact

The Individual Plaintiffs lack standing because they have failed to allege any harm caused by Defendants. Plaintiffs allege that only FCS and FMCP have suffered damages. *See* Complaint at ¶¶ 45, 48.

"A plaintiff establishes standing by showing harm. As a general matter, the core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no right to obtain a judicial resolution of his challenge." *Core Constr. & Remediation Inc. v. Village of Spring Valley,* No. 06-CV-1346, 2007 U.S. Dist. LEXIS 73069, at *25 (E.D. Pa. Sept. 27, 2007). In order to establish standing: "first, the plaintiff must allege that he has suffered or imminently will suffer an injury, second, the plaintiff must allege that the injury is fairly traceable to the defendants' conduct, and third, the plaintiff must allege that a favorable federal court decision is likely to redress the injury." *Lauletta v. Transworld Express, Inc.*, No. 96-4098, 1998 U.S. Dist. LEXIS 17392, at *7 (E.D. Pa. Oct. 30, 1998).

Because the Individual Plaintiffs fail to allege any injury-in-fact as a result of the allegedly wrongful denial of benefits, the Individual Plaintiffs have failed to establish standing and their claims must be dismissed. *See Trs. of Painters' Welfare Fund v. M.C. Painting Corp.*, No. 83-3843, 1985 U.S. Dist. LEXIS 14830, at *6-8 (E.D. Pa. Oct. 17, 1985); *see also Arber v. Equitable Beneficial Life Ins. Co.*, No. 93-6458, 1994 U.S. Dist. LEXIS 17738, at *4-5 (E.D. Pa.

Dec. 13, 1994) (dismissing individual plaintiffs' ERISA claims where they failed to allege how

they, as opposed to their employer, suffered any harm); *Lauletta*, 1998 U.S. Dist. LEXIS 17392,

at *7 (dismissing plaintiff's claims for lack of standing were he failed to allege "actual injury").

## B.   Pharmacy Plaintiffs Lack Standing Because They Do Not Have a Valid Assignment of Benefits

"Under § 1132, the civil enforcement provision of ERISA, only participants and

beneficiaries may sue to recover benefits or to enforce rights due under a plan." *Lehigh Valley*

*Hosp. v. UAW Local 259 Social Security Dep't*, No. 98-4116, 1999 U.S. Dist. LEXIS 12219, at

*2-3 (E.D. Pa. Aug. 10, 1999).  In this district, a benefits plan provision prohibiting an

assignment of benefits is enforceable. *Id.*; *see also Temple Univ. Hosp., Inc. v. Group Health*

*Inc.*, No. 05-102, 2006 U.S. Dist. LEXIS 48151 (E.D. Pa. July 17, 2006) (anti-assignment

provision in benefit plan was enforceable and therefore plaintiff hospital lacked standing to bring

claims for ERISA violations when claims were based solely on assignments of benefits).

The Individual Plaintiffs' benefits plan at issue states:

> The right of a Covered Person to receive benefit payments
> under this Plan is personal to the Covered Person and **is not**
> **assignable in whole or in part** to any person, Hospital, or other
> entity nor may benefits of this coverage be transferred, either
> before or after Covered Services are rendered.

Personal Choice Health Benefits Plan (Complaint, Exh. B) at page 3.2-22 (emphasis added).[1]

The Pharmacy Plaintiffs' claims are based *solely* on their supposed right, pursuant to

purported benefit assignments, "to recover directly from the Defendants for services or products

---

[1] With regard to a Rule 12(b)(6) motion, the Court may consider documents attached to the complaint. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Rose v. Bartle*, 871 F.2d 331, 339-40 n.3 (3d Cir. 1989). The Court also may consider documents of undisputed authenticity that are referenced by the complaint, or on which the complaint necessarily relies. *See Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guaranty Corp., supra.*

rendered and, if necessary, to bring suit to obtain past due benefits." *See* Complaint at ¶ 12. Because the Individual Plaintiffs' benefits plan contained a valid anti-assignment clause, the Pharmacy Plaintiffs lack a valid assignment and, as such, lack standing to sue under ERISA. *See Temple Univ. Hosp.*, 2006 U.S. Dist. LEXIS 48151, at *32.

## II.   **Plaintiffs Have Failed to Exhaust Applicable Plan Remedies**

Plaintiffs attempt to frame the Complaint in such a way that they are not subject to any exhaustion requirements. Plaintiffs take what is, at most, a claim for benefit reimbursement and caption the allegations as a breach of fiduciary duty claim in an attempt to exempt themselves from any exhaustion requirement. However, although they try to plead around this deficiency, the Complaint must be dismissed because Plaintiffs have failed to exhaust applicable ERISA plan remedies.

### A.   **Motions to Dismiss May Be Granted Based on the Exhaustion Requirement**

A determination as to whether a plaintiff has exhausted applicable administrative remedies is appropriate at the pleadings stage. *See, e.g., Bennett v. Prudential Ins. Co.*, 192 Fed. Appx. 153, 155-56 (3d Cir. 2006) (affirming Rule 12(b)(6) dismissal on these grounds); *Galinsky v. Bank of Am. Corp.*, Civ. A. No. 09-0060, 2009 U.S. Dist. LEXIS 36043, at *6-7 (D.N.J. Apr. 28, 2009) (granting motion to dismiss); *Gatti v. Western Penn. Teamsters & Employers Welfare Fund*, Civ. A. No. 07-1178, 2008 U.S. Dist. LEXIS 28567, at *8-16 (W.D. Pa. Mar. 24, 2008) (granting motion for judgment on the pleadings); *Reg'l Employers' Assurance Leagues Vol. Employees' Beneficiary Ass'n Trust v. Sidney Charles Markets, Inc.*, Civ. A. No. 01-4693, 2003 U.S. Dist. LEXIS 1380, at *8-9, *16-21 (E.D. Pa. Jan. 29, 2003); Jorden, Pflepsen and Goldberg, HANDBOOK ON ERISA LITIGATION § 5.04[B][3][a] (3d ed. 2009 Supplement).

**B.**   <u>The Exhaustion Requirement</u>

"Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) (affirming summary judgment against plaintiff asserting claims for wrongful denial of benefits) (quotation omitted); *see also Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) (same). The exhaustion requirement is a judicial doctrine designed to reduce frivolous ERISA lawsuits, promote consistency in the treatment of claims, provide a non-adversarial methods of claims settlement, and minimize the social cost of settling claims. *See Harrow, supra,* at 249.

Exhaustion is not required in two specific circumstances: (1) with respect to breach of fiduciary duty claims; and (2) where exhaustion would be "futile". *See Sidney Charles Markets, Inc., supra,* at *16-17. With respect to the first exception, exhaustion of remedies is required for all claims "to enforce the terms of a benefit plan[, as opposed to] claims to assert rights established by the ERISA statute." *D'Amico v. CBS Corp.*, 297 F.3d 287, 291 (3d Cir. 2002) (affirming summary judgment on unexhausted claims). Thus, a valid breach of fiduciary duty claim, *i.e.*, a claim asserting rights established by the ERISA statute, does not require exhaustion. Exhaustion, however, *is* required where, as here, a purported claim for breach of fiduciary duty merely "recasts [a] benefits claim in statutory terms." *Id.; see also Harrow,* 279 F.3d at 252-54. Thus, "when the facts alleged do not present a breach of fiduciary duty claim that is independent of a claim for benefits, the exhaustion doctrine still applies." *Id.* at 253.

With respect to "futility", the second exception to the exhaustion requirement, a party "must make a 'clear and positive showing' that further attempts to seek redress under the plan would be futile." *Sidney Charles Markets, Inc., supra,* at *17 (citing *Harrow, supra*). Neither exception is applicable here.

### C.   Plaintiffs Improperly Attempt to Plead Around ERISA's Exhaustion Requirement

In a transparent attempt to avoid the exhaustion requirement, Plaintiffs caption Count I as a claim for "breach of fiduciary duty" rather than a claim for benefit reimbursement under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Section 1132(a)(1)(B), the most commonly invoked in ERISA suits, authorizes civil actions "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"  *Id.*  Despite its label, the actual allegations in Count I amount to nothing more than a claim for benefit reimbursement under Section 1132(a)(1)(B).

Plaintiffs allege that "[t]his action arises from the Plaintiffs' desire to have their insurance claims paid promptly and correctly by Defendants, health insurance companies, in accordance with the applicable insurance policies issued. . . ."  Complaint at ¶ 10; *see also id.* at ¶ 11 (Plaintiffs seek to "require Defendants to honor their contractual obligations and to pay the legitimate insurance claims that are currently outstanding").  In describing the purported "fiduciary duties" supposedly breached by Defendants, Plaintiffs allege only that Defendants have: (1) not "administer[ed] the insurance contracts for the benefit of the Individual Plaintiffs"; (2) "interfer[ed] with Plaintiffs' rights to receive benefits under the insurance contracts"; and (3) "breached their express and implied duties under the insurance policies by refusing and preventing FCS and FMCP from receiving payments for approved claims."  *Id.* at ¶¶ 31-32, 39. Notably, Count I does not reference any specific *ERISA provisions* allegedly violated by Defendants.

These allegations are insufficient to state a claim for breach of fiduciary duty, which "must be independent of any claim for benefits."  *Sidney Charles Markets, Inc.,* 2003 U.S. Dist.

LEXIS 1380, at *19 (citing *Harrow, supra*).  Plaintiffs' claim is not.  To the contrary, Plaintiffs'
purported claim cites several provisions from *an ERISA-regulated plan* they assert are in dispute,
*see* Complaint at ¶¶ 17-20, and, as such, "rests upon an interpretation and application *of an
ERISA-regulated plan* rather than upon an interpretation and application *of ERISA*." *Harrow*,
279 F.3d at 254 (citing *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999) (reviewing case law
from the First, Fourth, Fifth and Sixth Circuits)) (emphasis added).  In sum, "Plaintiffs cannot
circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary
duty claims." *Harrow*, 279 F.3d at 253.  Because Plaintiffs' allegations amount, at best, to a
claim for reimbursement of benefits, they are not exempt from the plan remedy exhaustion
requirement.

### D.    Plaintiffs' Insufficient Allegations of Futility

The ERISA plan at issue provides an administrative remedies procedure for the resolution
of disputes between the plan and its participants.  *See generally* Complaint, Exh. B, at pages 3.2-
70 through 3.2-75.  Entitled "Resolving Problems", this section provides a detailed, step-by-step
description for each of a "Member Complaint Process" and "Member Appeal Process".  *See id.*
at page 3.2-70.  Initial complaints are resolved via the complaint process, during which written or
telephonic communications generally are accepted.  *Id.*  However, the appeals process is more
formal.  *See generally id.* at pages 3.2-70 through 3.2-75.  Members' appeals are processed either
as "medical necessity" or "administrative" appeals, the latter of which address, *inter alia*,
"claims payment issues."  *Id.* at page 3.2-70.

Plaintiffs do not allege that they have completed the internal or external appeal processes
necessary to exhaust plan remedies, nor do they refer to the applicable plan provisions at all.  In
fact, Plaintiffs lump all of their benefits claims together without regard to specific efforts made,
if any, to resolve the individual claims at issue, and then make conclusory allegations of futility

with regard to them all.  Even assuming the truth of Plaintiffs' allegations, which is required at this stage, Plaintiffs have done nothing beyond providing a summary list of allegedly outstanding claims.  *See* Complaint at ¶ 15 (citing internal Exh. A).  It is impossible to determine whether (or to what extent) the parties have complied with the plan's procedures, or whether applicable ERISA regulations have been observed (*see* 29 C.F.R. § 2560.503-1), with regard to these alleged benefit claims.  The United States Supreme Court's recent decisions in *Twombly* and *Iqbal* require more.  *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (holding that factual allegations in a complaint must be enough to raise the claimed right to relief above the speculative level, and sufficient to create a reasonable expectation that discovery will reveal evidence to support the claim); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (clarifying that *Twombly* pleading standard applies in all civil actions).  "[B]lanket assertion[s] of entitlement to relief" are insufficient, as are labels, conclusions, plainly false allegations, and formulaic recitations of the elements of a cause of action.  *See Twombly, supra,* at 1965 & n.3.

Indeed, in an effort to sidestep their failure to exhaust the appeals processes provided by the plan, Plaintiffs devote an entire section of the Complaint to their "Attempts to Resolve the Dispute with Defendants".  *See* Complaint at 8; *see also id.* at ¶¶ 23-26.  Plaintiffs make the blanket assertion that they have "explored every avenue available to [them] to obtain payment from Defendants on these outstanding claims prior to instituting this suit, and any further attempts at resolving these issues short of litigation would be futile." *Id.* at ¶ 23.  The "attempts" Plaintiffs allege include: (1) "numerous" telephone calls, emails and letters (*id.* at ¶¶ 24-25); and (2) a requested meeting that was denied by Defendants (*id.* at ¶ 25).  Plaintiffs then allege that "[e]ach of FCS and FMCP has gone through all the proper channels at Defendants to resolve the non-payment of FCS's and FMCP's claims" but, tellingly, conclude that to the extent "all

informal and administrative remedies" have not properly been exhausted, "any further attempts would be futile." *Id.* at ¶ 26.

Plaintiffs admittedly have not exhausted applicable plan remedies, despite bald conclusions of law to the contrary,[2] nor have they made a "clear and positive showing of futility."[3] Where a plan includes a multi-step administrative appeals process, as is the case here, all steps must be completed. *See, e.g., DellaValle v. Prudential Ins. Co. of Am.*, Civ. A. No. 05-0273, 2006 WL 83449, at *6-7 (E.D. Pa. Jan. 10, 2006). Moreover, telephone calls and emails do not constitute more formal written claims submissions where such submissions are required. *See Harrow, supra*, at 251-52 (exhaustion requirement demands more from plaintiffs who "took no steps beyond an initial telephonic inquiry"); *Bourgeois v. Pension Plan for the Employees of Santa Fe Int'l Corp.*, 215 F.3d 475, 480 n.14 (5th Cir. 2000) ("allowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement"). Decisions to abandon an administrative appeal rather than "waiting the limited additional time required to exhaust the appeal process" are not reasonable, and thus are not sanctioned by ERISA. *See Gatti*, 2008 U.S. Dist. LEXIS 28567, at *13-14. As a result, Plaintiffs have not satisfied ERISA's exhaustion requirement, and the Complaint must therefore be dismissed.

---

[2] *See Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986) (legal conclusions couched as factual allegations are insufficient to state a claim); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) ("self-evidently false" allegations need not be accepted).

[3] Indeed, Plaintiffs do not allege that Defendants maintained any fixed policy denying benefits, or that Defendants failed to comply with their own internal review procedures. *See Harrow*, 279 F.3d at 250 (describing factors to consider in "futility" analysis). Plaintiffs' allegations demonstrate that they did not "diligently pursue[] administrative relief", nor have they "acted reasonably in seeking immediate judicial review under the circumstances[,]" which considerations also are relevant under *Harrow. See id.*

### III.    <u>Count I's Breach of Fiduciary Duty Claim Fails as a Matter of Law</u>

As described above in Section II.C., Plaintiffs improperly attempt to cast their benefits reimbursement claim as a breach of fiduciary duty claim to avoid ERISA's exhaustion requirements. On this basis alone, Count I must be dismissed.

However, Count I fails for two additional, albeit related reasons. ERISA breach of fiduciary duty claims must seek to recover: (1) on behalf of the plan, not an individual member (*see* 29 U.S.C. § 1132(a)(2)); or (2) an injunction or "other appropriate equitable relief" to redress ERISA violations. *See* 29 U.S.C. § 1132(a)(3). Plaintiffs' purported breach of fiduciary duty claim in Count I does neither, because they seek only monetary damages for the Pharmacy Plaintiffs who allegedly received benefit assignments from the Individual Plaintiffs.

#### A.    <u>Count I Improperly Seeks Recovery for Plaintiffs, Not the Plan</u>

In Count I, Plaintiffs demand "actual and consequential damages in an amount of no less than $2,204,966.55, plus interest." Complaint at ¶ 41; *see also id.* at ¶¶ 35-36. This demand is made in their own right, not on behalf of the subject ERISA plan (which is not even a party to this lawsuit). However, under ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2) (the latter of which expressly incorporates the former), plaintiffs in a breach of fiduciary duty claim may not seek individual damages, but rather only recoveries for the benefit of the plan itself. *See Varity Corp. v. Howe*, 516 U.S. 489, 508-10 (1996); *Olick v. Kearney*, 451 F. Supp. 2d 665, 673-74 (E.D. Pa. 2006) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985)); *Tannenbaum v. Unum Life Ins. Co. of Am.*, Civ. A. No. 03-1410, 2004 WL 1084658, at *3 (E.D. Pa. Feb. 27, 2004); *Erbe v. Billeter*, Civ. A. No. 06-113, 2007 U.S. Dist. LEXIS 72835, at *53-54 n.31 (W.D. Pa. Sept. 28, 2007).

**B.**   **Count I Seeks Monetary, Not Equitable Relief**

Count I also cannot proceed under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), because the statutory subsection authorizes only injunctive or "other appropriate equitable relief." Courts uniformly have held that suits for monetary damages do not seek the requisite "equitable" relief. *See, e.g., Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 654-55 (3d Cir. 2007); *Thomas v. Kimberly-Clark Corp.*, Civ. A. No. 07-3899, 2008 U.S. Dist. LEXIS 94989, at *6-10, *8 n.3 (E.D. Pa. Nov. 20, 2008) (collecting cases) (dismissing, *inter alia*, breach of fiduciary duty claim); *Ranke v. Sanofi-Synthelabo, Inc.*, Civ. A. No. 04-1618, 2004 U.S. Dist. LEXIS 22427, at *20-21 (E.D. Pa. Nov. 2, 2004) (granting Rule 12(b)(6) motion and dismissing ERISA claims). Thus, Count I fails to assert a Section 502(a)(3) breach of fiduciary duty claim.

**IV.**   **No Private Right of Action Exists under 29 U.S.C. § 1133**

In Count II, Plaintiffs purport to state a claim for relief under 29 U.S.C. § 1133, which requires that employee benefit plans "provide adequate notice" of benefit denials, and "afford [a participant] a reasonable opportunity" "for a full and fair review" with respect to such denial. *See* 29 U.S.C. § 1133(1)-(2). The entirety of Plaintiffs' claim consists of a recitation of the statutory language and allegations that Defendants "have failed to comply with proper claims procedure" and further "have failed, refused or neglected to afford Plaintiffs a reasonable opportunity for a full and fair review of their denial of claims." Complaint at ¶¶ 43-44. Plaintiffs' prayer demands "actual and consequential damages in an amount of no less than $2,204,996.55, plus interest" as a result of these alleged statutory violations. *Id.* at ¶ 45.

Count II must be dismissed because "courts have generally concluded that ERISA does not provide a private right of action for damages to compensate a participant for a plan's failure to comply with § 1133." *Hamilton v. Mecca, Inc.*, 930 F. Supp. 1540, 1552 (S.D. Ga. 1996)

(collecting cases); *see also Escobar-Galindez v. Ortho Pharm.*, 328 F. Supp. 2d 213, 229 (D.P.R. 2004) (following *Hamilton* and granting summary judgment on § 1133 claim). These holdings comport with "the general principle that an employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy." *Ashenbaugh v. Crucible, Inc. 1975 Salaried Ret. Plan*, 854 F.2d 1516, 1532 (3d Cir. 1988).

### V.     Count III Should be Dismissed Because Act 68 Does Not Permit a Private Right of Action

Count III purports to allege a claim under Act 68. However, the Pennsylvania Superior Court has held that Act 68 does not provide a private right of action for violations of the Act. *See Solomon v. U.S. Healthcare Sys. of Pennsylvania, Inc.*, 797 A.2d 346 (Pa. Super. 2002). In *Solomon* the court applied the three factor test from *Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623 (Pa. 1999),[4] to determine whether such a right existed. Applying the first factor, the court found the health care providers to be members of the class for whose benefit the statute was enacted. *Solomon*, 797 A.2d at 352-53. As to the second factor, the court found no legislative intent to create a private remedy. Rather, it found an indication that no private right of action existed because Act 68 "provid[ed] an administrative procedure for a health care provider to file a complaint with the Insurance Department." *Id.* at 353. Finally, the *Solomon* Court held that the underlying purpose of the legislative scheme was not served by implying a private right of action. *Id.* "On the contrary, the provisions of the Health Care Act…clearly set forth a system of

---

[4] These factors are:

> First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' –that is, does the statute create a…right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.

*Solomon*, 797 A.2d at 352 (quoting *Witthoeft*, 733 A.2d at 626).

managed health care accountability to be enforced by the Insurance Department, not by a private action in the courts." *Id.*

Because Act 68 does not provide for a private right of action, Count III of Plaintiffs' Complaint must be dismissed.[5]

## VI.    Count III of Plaintiffs' Complaint Is Preempted by ERISA

Even assuming there is a private right of action under Act 68 which, as set forth in Section V., *supra*, there is not, Plaintiffs' purported claim under Act 68 is preempted by ERISA.

There are two theories of preemption under ERISA:  "complete" (sometimes referred to as "conflict") preemption and "express" preemption.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 n.4, 216-18 (2004) (discussing the two); *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 n.4 (3d Cir. 2004) ("Preemption under § 514(a) of ERISA, 29 U.S.C. § 1144(a), must be distinguished from *complete* preemption under § 502(a) of ERISA, 29 U.S.C. § 1132(a)") (emphasis in original); *Barber v. Unum Life Ins. Co. of Am.*, 383 F.3d 134, 136, 138-44 (3d Cir. 2004) (discussing "conflict" preemption under § 502(a) and "express" preemption under § 514(a)).  Count III of Plaintiffs' Complaint is preempted under each theory.[6]

---

[5] IBC Defendants recognize that *Grider v. Keystone Health Plan Central, Inc.*, No. 2001-CV-05641, 2003 U.S. Dist. Lexis 16551 (E.D. Pa. Sept. 18, 2003), declined to follow *Solomon*. *Grider*, however, was wrongly decided because the central reason for the court's opinion was that without a private right of action, there was no way for providers to collect the prompt payment of claims. *Id.* at *89-94. However, as *Solomon* recognized, Act 68 provides for an administrative remedy -- allowing a provider to file a complaint with the Insurance Department. *Solomon*, 767 A.2d at 353. In any event, the Court should follow *Solomon* and not *Grider* because "intermediate appellate court decisions [are afforded] 'significant weight in the absence of an indication that the highest state court would rule otherwise.'" *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 528 n.3 (3d Cir. 1997) (citation omitted).

[6] Although one ground suffices for ERISA preemption, previous courts in this Circuit have found the same state law to be preempted under both ERISA theories. *See, e.g., Barber, supra* (addressing Pennsylvania's "bad faith" insurance statute); *McGuigan v. Reliance Standard Life Ins. Co.*, 256 F. Supp. 2d 345 (E.D. Pa. 2003) (same).

### A.   Complete/Conflict Preemption

Plaintiffs' purported claim under Act 68 is preempted under this theory for two reasons:
(1) Plaintiffs assert nothing more than an ERISA-based benefits claim for reimbursement; and
(2) Plaintiffs' claim is based on 40 P.S. § 991.2166, which imposes a punitive interest rate for
certain "late" payments of "clean" provider claims that exceeds ERISA remedies.[7]

### 1.   Count III Seeks Only ERISA-Based Benefits

In *Davila*, the United States Supreme Court held that where parties "bring suit only to
rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt
to remedy any violation of a legal duty independent of ERISA[,]" such state law claims "fall
'within the scope of' ERISA § 502(a)(1)(B) . . . and are therefore completely preempted. . . ."
542 U.S. at 214 (citation omitted); *see also Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266,
273 (3d Cir. 2001) (a claim "regarding the proper administration of benefits . . . no matter how
couched, is completely preempted. . . ."). Count III is such a claim.

As Plaintiffs allege: "This action is commenced to require Defendants to honor their
contractual obligations and *to pay the legitimate insurance claims that are currently
outstanding.*" Complaint at ¶ 11 (emphasis added); *see also id.* at ¶ 10 ("*This action arises from
the Plaintiffs' desire to have their insurance claims paid promptly and correctly* by Defendants,
health insurance companies, in accordance with the applicable insurance policies issued. . . .")
(emphasis added). Recovery allegedly is permitted because of benefit assignments the Pharmacy
Plaintiffs received from Mr. Templin and Ms. Hendricks. *See id.* at ¶ 12. No provider

---

[7] While "the awarding of prejudgment interest under ERISA is within the district court's discretion," *Fotta v. Trs. of the United Mine Workers of Am., Health and Ret. Fund of 1974*, 165 F.3d 209, 213 (3d Cir. 1998), under Act 68 the ten percent interest penalty "shall be added" to late payments on "clean claims". 40 P.S. § 991.2166(b).

agreements exist because the Pharmacy Plaintiffs are non-participating, out-of-network providers. *See id.* at ¶ 14.

State prompt-pay act claims have been preempted by ERISA under similar circumstances. *See Schoedinger v. United Healthcare of the Midwest, Inc.*, 557 F.3d 872, 875-76 (8th Cir. 2009) (provider's Missouri Prompt Payment Act claim preempted) (following *Davila*), *cert. denied*, 2009 U.S. LEXIS 6959 (Oct. 5, 2009); *Torrent & Ramos, M.D., P.A. v. Neighborhood Health P'Ship, Inc.*, Case No. 05-21668, 2005 U.S. Dist. LEXIS 46502, at *7-16 (S.D. Fla. Sept. 2, 2005) (provider's Florida Prompt Pay Statute claim preempted).

Moreover, federal courts consistently have found state law claims preempted by ERISA where providers assert rights as purported *assignees* of ERISA plan beneficiaries (or otherwise seek to enforce the rights of these beneficiaries), rather than claims in their separate capacity as providers with network provider agreements. *See Parkview Hosp., Inc. v. White's Residential & Family Services, Inc.*, No. 07-cv-0208, 2008 U.S. Dist. LEXIS 1289, at *11-13 (N.D. Ind. Jan. 7, 2008) (finding that "[t]his distinction is dispositive" and holding that ERISA preempted state law claims) (collecting cases); *Torrent & Ramos, supra,* at *11-13 (collecting cases); *Schoedinger, supra*, at 876 (distinguishing contrary district court decision on these grounds); *cf. Lone Star OB/GYN Assoc. v. Aetna Health Inc.*, No. 08-50646, 2009 U.S. App. LEXIS 18572, at *6 n.3 (5th Cir. Aug. 18, 2009) ("[a] healthcare provider suing on the basis of assignment of ERISA rights, benefits or claims from a plan member must proceed under the procedures established by § 502(a), as the provider is seeking to enforce the terms of the plan").

In *Torrent & Ramos*, the district court held that the plaintiff's claim under the Florida Prompt Pay Statute was preempted by ERISA where the plaintiff had no contract with the defendant HMO, but submitted claims to and received payment from the HMO based on patient

assignments. *Id.* at *14. The court observed that "[w]ithout these assignments, [the plaintiff] would have to seek payment from its patients directly *and any issues of untimeliness in those payments would be dealt with the [defendant's] patients directly.*" *Id.* at *14-15 (emphasis added). Because the assignments of its patients' claims "are related to and flow from ERISA plans," the plaintiff's prompt payment claim was preempted by ERISA and must be dismissed. *Id.* at *16.

The same result is required here. Plaintiffs' claim is based solely upon their purported – albeit, in this case, invalid – assignments of benefits from the individual members, not any separate provider agreement. Count III seeks to recover "for services or products rendered", as Plaintiffs have brought "suit to obtain past due benefits." Complaint at ¶ 12. As such, Count III is preempted by ERISA.[8]

### 2.    Act 68's Extra-ERISA Remedy

"ERISA's 'comprehensive legislative scheme' includes 'an integrated system of procedures for enforcement.'" *Davila*, 542 U.S. at 208 (citation omitted). "This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Id.* With respect to complete preemption:

> [A]ny state-law cause of action that duplicates, supplements, or supplants
> the ERISA civil enforcement remedy conflicts with the clear congressional
> intent to make the ERISA remedy exclusive and is therefore preempted.

*Id.* at 209; *see generally English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (a state law may be preempted "to the extent that it actually conflicts with federal law").

---

[8] Because Plaintiffs' claim in Count III is no more than an ERISA benefits claim under § 502(a), 29 U.S.C. § 1132(a), the claim also is subject to the exhaustion of plan remedies requirement described above. Plaintiffs have not satisfied this requirement. *See* discussion *supra* at Section II.

In *Barber*, the Third Circuit Court of Appeals applied *Davila* and found that Pennsylvania's "bad faith" statute for insurance claims, 42 Pa.C.S. § 8371, "is a state remedy that allows an ERISA-plan participant to recover punitive damages for bad faith conduct by insurers, supplementing the scope of relief granted by ERISA." 383 F.3d at 140-41. Thus, § 8371 was conflict preempted. *Id.* The Court should follow the *Barber* decision. Act 68, on which Count III is based, requires a ten-percent interest penalty to be imposed if an insurer fails to pay a provider's "clean claim" within forty-five days of receipt. *See* 40 P.S. § 991.2166(b). ERISA does not provide plaintiffs with such a statutory remedy. *See supra* note 7.

Act 68's punitive interest rate remedy is beyond ERISA's scope and conflicts with ERISA's comprehensive enforcement regime. As such, Count III is preempted by ERISA and must be dismissed.[9]

### B.    Express Preemption

The theory of "express" preemption also bars Plaintiffs' purported claim under Act 68. ERISA § 514(a), 29 U.S.C. § 1144(a), provides in relevant part that "[e]xcept as provided in subsection (b) of this section, the provisions of this title . . . *shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .*" (emphasis added). Section 514(a)'s language is "deliberately expansive." *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). "A law 'relates to' an employee benefit plan if it 'has a connection with or reference to such a plan.'" *Gilbertson v. Unum Life Ins. Co. of Am.*, Civ. A.

---

[9] ERISA preempts the entirety of Plaintiffs' claim, not merely the interest-related remedy set forth in Act 68. *See Knochel v. HealthAssurance Penn., Inc.*, Civ. A. No. 06-426, 2006 U.S. Dist. LEXIS 81009, at *14-16 (W.D. Pa. Sept. 25, 2006) (discussing *Barber* and rejecting the plaintiffs' argument that only the punitive damages remedy provided in Pennsylvania's "bad faith" statute was preempted; "[*Barber*] did not hold, as [the] plaintiffs have suggested, that preemption should be limited to the remedies provided for in § 8371 and not applied to the statute as a whole") (collecting cases).

No. 03-5732, 2005 U.S. Dist. LEXIS 12240, at *5 (E.D. Pa. June 21, 2005) (holding that common law and state Consumer Protection Law claims were preempted) (citation omitted).

Subsection (b), referred to as ERISA's "savings clause", provides in relevant part that "nothing in this title shall be construed to exempt or relieve any person from any law of any state which regulates insurance. . . ." 29 U.S.C. § 1144(b)(2)(A).  Under § 514(b) "a state law must be 'specifically directed toward' the insurance industry . . . laws of general application that have some bearing on insurers do not qualify." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 334 (2003) (further observing that clause "saves laws that regulate *insurance*, not insurers") (citation omitted) (emphasis in original).  In *Miller*, the Supreme Court refined the test for determining whether a state law is saved by operation of ERISA § 514(b):  "First, the state law must be specifically directed toward entities engaged in insurance. Second . . . the state law *must substantially affect the risk pooling arrangement between the insurer and the insured.*" *Id.* at 341-42 (holding that Kentucky "Any Willing Provider" statutes saved from ERISA preemption) (internal citations omitted) (emphasis added).

Applying this test, Plaintiffs' Act 68 claims is preempted by ERISA.  In *Barber, supra,* the Third Circuit held, *inter alia*, that Pennsylvania's "bad faith" statute for insurance claims, 42 Pa.C.S. § 8371, was not saved from ERISA preemption via 29 U.S.C. § 1144(b)(2)(A).  Applying the *Miller* test, the Court determined that § 8371 satisfied the first factor, because the state statute was "specifically directed toward entities engaged in insurance[.]" 383 F.3d at 142.  However, the second *Miller* factor was not met because § 8371 does not "substantially affect" the insurer/insured risk-pooling arrangement.  *Id.*  The Court observed that the statute "is remedial in nature – it is a remedy to which the insured may turn when injured by the bad faith of an insurer." *Id.* at 143.  The statute "does not affect the kinds of bargains insurers and insureds may

make. It provides that whatever the bargain struck, if the insurer acts in bad faith, the insured

may recover punitive damages." *Id.* Thus, § 8371 was not saved from ERISA preemption. *Id.;*

*see also McGuigan*, 256 F. Supp. 2d at 348 (holding that "since § 8371 does not satisfy the

second prong of the *Miller* test, § 8371 is preempted by ERISA"); *see generally Olick v.*

*Kearney*, 451 F. Supp. 2d 665, 678-79 (E.D. Pa. 2006) (recognizing that "recent cases in this

District have held that ERISA preempts many [] claims related to insurance plans") (collecting

cases).

As in *Barber*, Plaintiffs' Act 68 claim here is purely remedial in nature, seeking a punitive

ten percent interest rate "[i]f a licensed insurer . . . fails to remit the payment" on a "clean claim

submitted by a health care provider" within forty-five days of receipt. 40 P.S. § 991.2166(a)-(b).

Even assuming that Act 68 provides a private right of action – which it does not – and further

assuming that this statutory section is "specifically directed toward entities engaged in

insurance", the second *Miller* factor regarding risk-pooling is not satisfied. *See Miller, Barber,*

*supra.* Thus, Count III is not saved from § 514(a)'s "deliberately expansive" preemptive power,

*see Pilot Life, supra,* and must be dismissed.

## VII.     **IBC Is Not a Proper Defendant to this Lawsuit**

IBC is not a proper defendant to this lawsuit for several reasons. First, with respect to

Count I (and as discussed above), Plaintiffs' "breach of fiduciary duty" claim asserts nothing

more than a benefits-based claim. "In a claim for wrongful denial of benefits under ERISA, the

proper defendant is the plan itself or a person who controls the administration of benefits under

the plan." *Evans v. Employee Benefit Plan*, Civ. A. No. 07-3552, 2009 U.S. App. LEXIS 3426, at

*3 (3d Cir. Feb. 20, 2009) (citing 29 U.S.C. § 1132(a)(1)(B)); *see also Erbe v. Billeter*, Civ. A.

No. 06-113, 2007 U.S. Dist. LEXIS 72835, at *24 n.13 (W.D. Pa. Sept. 28, 2007) ("Generally,

the proper defendant in a Section 1132(a)(1)(B) claim is the plan or plan administrator").

Plaintiffs do not allege that IBC was the plan administrator with respect to the claims Plaintiffs

assert, nor do they allege facts giving rise to such an inference.

Even if Count I stated a viable cause of action, which it does not, Plaintiffs have failed to

plead that IBC is an ERISA "fiduciary" under these circumstances.  As explained by the Third

Circuit:

> There are three ways to acquire fiduciary status under ERISA: (1) being
> named as the fiduciary in the instrument establishing the employee benefit
> plan, 29 U.S.C. § 1102(a)(2); (2) being named as a fiduciary pursuant to a
> procedure specified in the plan instrument . . .; and (3) being a fiduciary
> under the provisions of 29 U.S.C. § 1002(21)(A), which provides that a
> person is a fiduciary "with respect to a plan to the extent (i) he exercises
> any discretionary authority or discretionary control respecting
> management of such plan or . . . (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan."

*Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d

1171, 1179 (3d Cir. 1996) (quoting 29 U.S.C. § 1002(21)(A)).  Ministerial or administrative

tasks, such as claims processing and calculation, are insufficient to confer "fiduciary" status.  *See*

*Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994).  "Typically,

insurance companies are not considered ERISA fiduciaries."  *Timmons v. Special Ins. Servs.*, 984

F. Supp. 997, 1005 (E.D. Tex. 1997), *aff'd without op.*, 167 F.3d 537 (5th Cir. 1998).

Plaintiffs have not alleged facts supporting an inference that IBC qualifies under any of

the circumstances addressed in *Newbridge*.  In fact, Plaintiffs have alleged nothing about IBC

other than:

- its name, non-profit status, address, and operation under the BCBSA (Complaint at ¶ 5);

- the fact that QCC is a wholly-owned subsidiary of AmeriHealth, Inc., and AmeriHealth is a wholly-owned subsidiary of IBC (*id.* at ¶ 6); and

- "insurance benefits offered through Independence 'are underwritten or administered by QCC. . . .'" (*id.*).

Such allegations are woefully insufficient under *Twombly and Iqbal.  See, e.g., Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, Civ. A. No. 08-6160, 2009 U.S. Dist. LEXIS 90600, at *14-16 (D.N.J. Sept. 30, 2009) (dismissing breach of fiduciary duty claim where the "Complaint alleges no facts supporting a finding that Horizon is a fiduciary, but instead states a legal conclusion that this Court is not bound to accept as true").

Second, Plaintiffs' purported "prompt pay" cause of action in Count III fails with respect to IBC.  IBC is a non-profit hospital plan corporation organized and existing pursuant to Pennsylvania's Hospital Plan Corporation Act, 40 Pa.C.S. § 6101 *et seq.* (the "Hospital Plan Act").  The Hospital Plan Act establishes a distinct regulatory scheme for hospital plan corporations, exempting such corporations from the Commonwealth's insurance laws as follows: "A hospital plan corporation . . . shall not be subject to the laws of this Commonwealth now in force relating to the business of insurance, and no statute hereafter enacted relating to the business of insurance shall apply to such a corporation unless such statute shall specifically refer and apply to a corporation subject to this chapter." *Id.* at § 6103(a).  The "prompt pay" provisions of Act 68 do not "specifically refer and apply to a corporation subject to [the Hospital Plan Act.]"  Therefore, even if a private cause of action existed under Act 68 and the IBC Defendants' other grounds for Count III's dismissal fail (which they do not), no cause of action exists with respect to IBC.[10]

---

[10] For the reasons addressed herein, Count II fails with respect to IBC as well.

## CONCLUSION

For each of the reasons set forth herein, the IBC Defendants respectfully request that this Court grant their motion and enter an order dismissing with prejudice Plaintiffs' Complaint with respect to Independence Blue Cross and QCC Insurance Company.

Respectfully submitted,


_/s/ David L. Comerford_
David L. Comerford (I.D. No. 65969)
Katherine M. Katchen (I.D. No. 80395)
Matthew R. Varzally (I.D. No. 93987)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
Phone: (215) 965-1200
Facsimile: (215) 965-1210

Counsel for Defendants Independence Blue Cross
and QCC Insurance Company

Dated:  October 14, 2009

## CERTIFICATE OF SERVICE

I, Matthew R. Varzally, hereby certify that on October 14, 2009, I caused true and

correct copies of **IBC Defendants' Motion to Dismiss Plaintiffs' Complaint**, and

supporting **Memorandum of Law**, to be made available for viewing and downloading

through the Court's ECF system, as well as served, by First-Class mail and/or electronic

mail, upon the following parties:

Timothy S. Cole
MANTACOLE, LLC
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(215) 325-1741 (telephone)
(215) 641-0469 (facsimile)
TimCole@mantacole.com

Anthony Paduano
Jordan D. Becker
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
(212) 785-9100 (telephone)
(212) 785-9099 (facsimile)
ap@pwlawyers.com
jbd@pwlawyers.com

*Attorneys for Plaintiffs*

*CareFirst, Inc.*
Office of General Counsel
10455 Mill Run Circle
Owings Mills, MD 21117

/s/ Matthew R. Varzally
Matthew R. Varzally