UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER TEMPLIN, VIOLA HENDRICKS, FELDMAN'S MEDICAL CENTER PHARMACY, INC., and FCS PHARMACY LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> INDEPENDENCE BLUE CROSS, QCC INSURANCE COMPANY, and CAREFIRST, INC., <br><br> Defendants. | Civil Action No. 09-4092 (JHS) |

**FIRST AMENDED COMPLAINT**

Plaintiffs, by their undersigned attorneys, by and for their First Amended Complaint against defendants, allege:

**PARTIES**

1. Plaintiff Christopher Templin ("Templin") is an employee of Factor Health Services II, LLC ("Factor II"). Factor II is an affiliate of both plaintiff Feldman's Medical Center Pharmacy, Inc. ("FMCP") and plaintiff FCS Pharmacy LLC ("FCS"). Templin is a resident of the State of Pennsylvania, residing at 1248 Buddies Place, Birdsboro, Pennsylvania 19508.

2. Plaintiff Viola Hendricks ("Hendricks") is an employee of Factor II. She is a resident of the State of Pennsylvania, residing at 83 Center Street,

Bridgeport, Pennsylvania 19405.  Templin and Hendricks are referred to collectively herein as the "Individual Plaintiffs".

       3.     Plaintiff FMCP is a Maryland corporation, with its principal place of business located at 11055 Little Patuxent Parkway, Columbia, Maryland 21044.  FMCP, a retail pharmacy serving the Baltimore – Washington, D.C. metropolitan area, is increasingly focused on providing specialty pharmacy products and services for the specialty disease states of hemophilia, von Willebrand disease, hepatitis, and HIV.

       4.     Plaintiff FCS is a Florida limited liability company, with its principal place of business located at 7770 Congress Avenue, Suite 1113, Boca Raton, Florida 33487.  FCS is a nationally accredited specialty pharmacy that focuses on the specialty disease states of hemophilia, von Willebrand disease, hepatitis, and HIV.  Plaintiffs Templin and Hendricks are referred to collectively herein as the "Individual Plaintiffs."  The Individual Plaintiffs along with FMCP, and FCS are referred to collectively herein as "Plaintiffs".

       5.     On information and belief, defendant Independence Blue Cross ("Independence") is a Pennsylvania non-profit corporation and health insurer in southeastern Pennsylvania with its principal place of business located at 1901 Market Street, Philadelphia, Pennsylvania 19103.  On information and belief, Independence operates under a license from the Blue Cross Blue Shield Association (the "BCBS Association").

6. On information and belief, defendant QCC Insurance Company ("QCC") is a Pennsylvania corporation with its principal place of business located at 1333 Chestnut Street, Philadelphia, Pennsylvania 19107. On information and belief, QCC is a wholly-owned subsidiary of AmeriHealth, Inc. which in turn is a wholly-owned subsidiary of Independence. According to information obtained from the Independence website (www.ibx.com), insurance benefits offered through Independence are underwritten or administered by QCC, and both QCC and Independence operate under licenses from the BCBS Association.

7. On information and belief, defendant CareFirst, Inc. ("CareFirst") is a Maryland corporation and health insurer with its principal place of business located at 10455 Mill Run Circle, Owings Mills, Maryland 21117. On information and belief, CareFirst operates under a license from the BCBS Association. Defendants Independence, QCC, and CareFirst are referred to collectively herein as "Defendants".

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action because it involves a federal question under the Employee Retirement and Security Income Act of 1974 ("ERISA"), 29 U.S.C. § 1132 (e) and (f), and pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2), in that the subject benefit plans are administered in this judicial district, the breaches of duty herein alleged occurred in this district, and/or each defendant

resides or is found in this district, and pursuant to 28 U.S.C. § 1391, because the cause of action arose in this district.

## STATEMENT OF FACTS

10. This action arises from Defendants' wrongful failure to pay claims submitted by or on behalf of Plaintiffs for covered pharmacy services performed pursuant to written insurance contracts. Plaintiffs Templin and Hendricks are hemophiliacs or provide support for their hemophiliac dependents and/or family members. Hemophilia is a life-threatening disease that requires those afflicted to use very expensive blood-clotting factor treatment ("factor"). FCS and FMCP are nationally accredited specialty pharmacies, located in Boca Raton, Florida and Columbia, Maryland, respectively, which provide factor to patients. FCS has provided specialty pharmacy and health management care coordination services to patients since 2003. FMCP has provided pharmacy and health management care coordination services to patients since 1986.

11. Upon receipt of prescriptions from licensed physicians and confirmation of the patient's precertification for the prescription (pursuant to page 3.2-18 of the Personal Choice Health Benefits Plan (the "Plan"), as described in further detail below), FCS and FMCP dispense specialized medications, products, and services, including factor, directly to patients, including Individual Plaintiffs, who are participants or beneficiaries of health plans insured, underwritten and/or administered by Defendants. After dispensing medication to patients, FCS and FMCP (as the case may be) receive an assignment of the patient's benefits. The

assignment of benefits allows FCS or FMCP to recover directly from the Defendants for services or products rendered and, if necessary, to bring suit to obtain past due benefits.

        12.    FCS and FMCP then submit a claim for the applicable charges to the insurance carrier for payment. In the event the patient's insurance carrier (the "home plan," in the terminology of the BCBS Association, and in this case Independence) is located in a different geographic area than the provider (in this case, FCS or FMCP), the rules of the BCBS Association provide for the provider to submit the claim to its local BCBS affiliate (the "host plan," in the terminology of the BCBS Association, which is CareFirst in the case of FMCP), which then acts as the administrator of the claim, coordinating payment for the provider. If the provider has any issues with payment for outstanding claims, the provider can go through the "host plan" for payment.

        13.    Among the insurance carriers to which FCS and FMCP have submitted and continue to submit claims on behalf of its customers are Defendants. Both FCS and FMCP have provided Covered Services to Defendants' insureds as non-participating providers and, therefore, are compensated as out-of-network providers for their products and services. (Covered Services are those health care services or supplies to which an insured is entitled pursuant to a health insurance plan.)

        14.    FCS and FMCP submit insurance claims to Defendants pursuant to and in accordance with a number of insurance plans. Despite the rendering by

FCS and FMCP of Covered Services and timely submission of insurance claims for payment for such services, Defendants have failed and refused to timely pay in excess of $2,100,217.51 in legitimate claims submitted to them by FCS and FMCP. A list of the outstanding and unpaid claims as of November 30, 2009 is attached hereto as Exhibit A. This failure and refusal constitutes breach of contract and violation of ERISA.

### Insurance Contracts

**(A) QCC Policy Issued to Factor Health Service II, LLC**

15. On behalf of Independence, QCC issued a group health insurance policy, group number 465171, to Factor II for the benefit of Factor II and its employees (the Plan). The effective date of the Plan is October 1, 2007. It was automatically renewed by the parties on October 1, 2008 for an additional one year term, and then again on October 1, 2009 for another one-year term  A copy of the Plan is attached hereto as Exhibit B.

16. Pursuant to page 3.2-3 of the Plan, insureds are permitted to obtain Covered Services from "out-of-network" or "Non-Participating" providers and receive reimbursement from Defendants. That page provides:

> In addition, your Personal Choice program allows you to obtain Covered Services from Non-Preferred, Non-Participating Providers. If you use a Non-Preferred, Non-Participating Provider you will be reimbursed for Covered Services but will incur significantly higher out-of-pocket expenses including Deductibles, Coinsurance and the balance of the provider's bill.

6

17. Pursuant to page 3.2-22 of the Plan, FCS and FMCP provided covered health products and services to Defendants' insureds (including Individual Plaintiffs) and submitted insurance claims to Defendants in accordance with all applicable procedures. Individual Plaintiffs assigned their right to payment to FCS and FMCP. Defendants, however, have breached the terms and conditions of the Plan by failing to timely pay FCS and FMCP for most of the properly submitted claims.

18. Pursuant to page 3.2-18 of the Plan, Individual Plaintiffs were required to receive precertification from Defendants for certain Covered Services:

> Some of the services you receive through this Plan must be Precertified before you receive them, to determine whether they are Medically Appropriate/Medically Necessary. Failure to Precertify Non-Preferred services, when required, may result in a reduction of benefits.
>
> \* \* \*
>
> When you seek treatment from a Non-Preferred Provider or a BlueCard provider of another Blue Cross or Blue Shield plan, you are responsible for initiating the Precertification process. You should instruct your Provider to call the Precertification number listed on the back of your Identification Card, and give your name, facility's name, diagnosis, and procedure or reason for admission. Failure to Precertify required services will result in a reduction of benefits payable to you.

19. In every instance, Individual Plaintiffs received the necessary and required precertification before Covered Services were provided.

20. Both Templin and Hendricks are covered under the Plan.

7

21. In total, by November 30, 2009 there were $2,100,217.51 in insurance claims properly submitted by FCS and FMCP to Defendants that were unpaid and outstanding. In clear violation of ERISA, every one of the subject claims has been outstanding for more than 60 days. The oldest invoice was submitted on December 7, 2007 – almost two full years ago.

**Plaintiffs' Attempts to Resolve the Dispute with Defendants**

22. Although both FCS and FMCP have repeatedly complained to Defendants about the unpaid claims and attempted to resolve these issues, such attempts have been fruitless. Any further attempts at resolution, short of litigation, would be futile. Plaintiffs' exhaustive efforts to resolve their dispute with Defendants have consisted of numerous telephone calls, letters, and e-mails. Specifically, on numerous occasions Plaintiffs spoke with Mr. Michael Ebner, a member of Independence's audit department, and provided him with all relevant information, to no avail. Plaintiffs also placed a series of calls to Ms. Catherine Pavlov, Director of Facility Audits for Independence, but those calls were never returned by her or anyone else. On February 12, 2009, Plaintiffs sent a Demand Letter to IBC for the amounts outstanding. A copy of the Demand Letter is annexed hereto as Exhibit C. On February 13, 2009, IBC sent a response from its Senior Counsel, Michael Zipfel, which indicated, for the first time, that the claims at issue were in "suspense" because IBC was conducting an investigation. The letter further went on to state that IBC was rejecting all claims submitted by Feldman's which involved shipments of factor outside of the State of Maryland.

The letter concluded with IBC requesting information in connection with the claims made by FCS.  AA copy of the February 13, 2009 letter is annexed hereto as <u>Exhibit D</u>.  By letter dated March 30, 2009, Plaintiffs responded to IBC, providing all of the information requested.  In addition, counsel for Plaintiffs responded to IBC's assertion that it was investigating Feldman's and FCS, stating:

> I note that you claim your Corporate & Financial Investigations Department is conducting an "investigation" of FCS, Feldman's and (Factor Health Services II), and that some of our clients' claims were "pended" [sic] while that "investigation" moves forward. You assert that your investigation concerns "potential fraud and/or abuse."  Until receipt of your letter, our clients had been given no notice that IBC had any issue of any type with them, much less issues that involve "fraud."

A copy of the March 30, 2009 letter is annexed hereto as <u>Exhibit E</u>.

23.  Thereafter, on numerous occasions, each of FCS and Feldman's has requested a meeting with Defendants, hoping that they would be able to resolve these issues with an on site meeting.  All of FCS's and Feldman's requests have been flatly rejected by the IBC Defendants.

24.  To the extent Plaintiffs are required to exhaust administrative remedies prior to instituting suit, and such remedies have not been fully exhausted by Plaintiffs, any further pursuit of such remedies would be futile.  As detailed above, Plaintiffs have made numerous unsuccessful attempts to resolve their dispute with Defendants during the past year.  Indeed, after almost a year of attempts to obtain payment of the claims at issue herein, Defendants IBC and QCC

9

have now recently "advised' Plaintiffs that Defendant Carefirst is refusing to pay the claims at issue.  Any such refusal on the part of Carefirst is also wrongful.

25. Defendants' collective attempts at obfuscating the facts and simply stone-walling Plaintiffs' good-faith attempts to resolve these issues are further evidence that any additional attempts to resolve these issues would be futile.  While some claims have been paid, more than $2 million of claims have not been paid.

26. Defendants' failure to pay the bulk of the subject claims has seriously jeopardized the financial viability of FCS and FMCP.  FCS and FMCP cannot conduct business as health care providers if they fail to receive payment from Defendants for the health care services and products they provide to Individual Plaintiffs.

27. Defendants' failure to pay the subject claims also has seriously jeopardized the ability of the Individual Plaintiffs to obtain health care services and products from the pharmacies of their choice.  There is a substantial risk that either (a) FCS or FMCP will cease to operate, or (b) FCS and FMCP will be forced to cease providing health care services and products to the Individual Plaintiffs.  In either event, the Individual Plaintiffs will be harmed, because they have become dependent on the high level of personalized service provided to them by FCS and FMCP.  This dependence is particularly important for patients suffering from hemophilia, especially in situations where the inability to obtain additional factor

immediately in an emergency situation would significantly increase the risk of death.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(ERISA -- Wrongful Denial of Benefits)**

28. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 27 of this First Amended Complaint.

29. Plaintiffs are participants in the Plan, or assignees of participants.

30. Plaintiffs have been wrongfully denied benefits under the Plan, in the form of unpaid claims in the aggregate amount of at least $2,100,217.51, plus interest.

31. Plaintiffs are entitled to bring a civil action to recover benefits due to them under the terms of the Plan, to enforce their rights under the terms of such Plan, and/or to clarify their rights to future benefits under the terms of such Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B).

32. Plaintiffs have exhausted their remedies to obtain their contractual benefits under the Plan, or further pursuit of such remedies would be futile.

33. As a direct and proximate result of Defendants' wrongful denial of benefits, Plaintiffs have been damaged. Accordingly, Plaintiffs are entitled to recover the benefits improperly denied by Defendants, consequential damages, and interest.

34. 29 U.S.C. § 1132(g)(1) authorizes this Court to award reasonable attorneys' fees and costs of actions to either party in an ERISA action.

35. As a result of Defendants' misconduct, Plaintiffs have retained the services of legal counsel and have necessarily incurred attorneys' fees and costs in prosecuting this action. Further, Plaintiffs anticipate incurring additional attorneys' fees and costs in hereafter pursuing this action, all in a final amount which is currently unknown.  Plaintiff therefore requests an award of reasonable attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**(ERISA – Declaratory Relief)**

36. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 35 of this First Amended Complaint.

37. As set forth above, Plaintiffs have been wrongfully denied benefits under the Plan, in the form of unpaid claims in the aggregate amount of at least $2,100,217.51, plus interest.  In addition, as set forth above, the viability of both FCS and FMCP as on-going businesses has been jeopardized by Defendants' misconduct, and Individual Plaintiffs are threatened with loss of their preferred choice of pharmacies.

38. Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiffs seek a declaration of rights under the Plan, against Defendants, to establish Plaintiffs' rights to past and future benefits, to enforce ERISA, and to collect attorneys' fees.

WHEREFORE Plaintiffs respectfully request that judgment be entered in their favor and against Defendants as follows:

A. On the First Claim for Relief, actual damages in an amount to be determined at trial, but in no event less than $2,100,217.51, plus interest.

B. On the Second Claim for Relief, a declaration that (1) Plaintiffs are entitled to be paid for the unpaid claims that are the subject of this action and which are identified in Exhibit A hereto; (2) Plaintiffs are entitled to their reasonable attorneys' fees and costs incurred in this action; and (3) Plaintiffs are entitled to be paid promptly for future clean claims submitted by them to Defendants, pursuant to the terms of the Plan;

C. Awarding Plaintiffs the costs of this proceeding, including, but not limited to, reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1);

D. Awarding Plaintiffs such other and further relief as the Court deems just and proper.

Dated: Berwyn, Pennsylvania
December 2, 2009

/s/ Timothy S. Cole
Timothy S. Cole
MantaCole, LLC
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(215) 325-1741 (telephone)
(215) 641-0469 (facsimile)
TimCole@mantacole.com

AND

PADUANO & WEINTRAUB LLP
Anthony Paduano
Jordan D. Becker
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
(212) 785-9100 (telephone)
(212) 785-9099 (facsimile)
ap@pwlawyers.com
jdb@pwlawyers.com
Attorneys for Plaintiffs