**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF PENNSYLVANIA**


| | |
|---|---|
| CHRISTOPHER TEMPLIN, VIOLA HENDRICKS, ) | |
| FELDMAN'S MEDICAL CENTER ) | |
| PHARMACY, INC., and FCS ) | |
| PHARMACY LLC, ) | |
| ) | Civil Action No. |
| ) | 09-4092 (JHS) |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| INDEPENDENCE BLUE CROSS, ) | |
| QCC INSURANCE COMPANY, and ) | |
| CAREFIRST, INC. ) | |
| ) | |
| Defendants. ) | |


**MEMORANDUM IN OPPOSITION TO DEFENDANT CAREFIRST,
INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii, iii

Preliminary Statement ..................................................................................... 1

STATEMENT OF FACTS .................................................................................. 1

ARGUMENT ...................................................................................................... 6

    I.   The Motion to Dismiss Standard ............................................................ 6

    II.  FCS and FMCP Have Standing .............................................................. 7

    III.  CareFirst Is A Proper Party Because It Was A Plan Administrator ............. 10

    IV.   Plaintiffs' Claim for Violation of ERISA Has Been Adequately Pled ........ 12

      A.   Plaintiffs Have Established Futility ..................................................... 13

      B.  Plaintiffs Have Adequately Pled Futility as to CareFirst ........................ 17

CONCLUSION ................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) ..................................................................................6

Bell Atlantic Corp. v. Twombly,
550 U.S. 554 (2007) ......................................................................................6

Berger v. Edgewater Steel Co.,
911 F.2d 911 (3 rd Cir. 1990)........................................................................13

Boyer v. Snap-On Tools Corp.,
913 F.2d 108 (3d Cir. 1990) ..........................................................................7

Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. &
Res. Found.,
334 F.3d 365 (3d Cir. 2003) ........................................................................11

Capozzi v. Northampton County,
2009 WL 2854859 (E. D. Pa. Sept. 3, 2009) ..................................................6

Chiropractic Nutritional Assocs., Inc. v. Empire Blue Cross and Blue Shield,
669 A.2d 975 (Pa. Super. 1995)...................................................................10

Curcio v. John Hancock Mut. Life Ins. Co.,
33 F.3d 226 (3d Cir. 1994) ..........................................................................11

Daniel v. Eaton Corp.,
839 F.2d 263 (6th Cir. 1988) ........................................................................11

DellaValle v. Prudential Ins. Co. of Am.,
2006 WL 83449 (E.D. Pa. January 10, 2006),...............................................16

Fisher v. Building Serv. 32B-J Health Fund,
1997 WL 531315 (S.D.N.Y. Aug. 27, 1997) ...................................................8

Fitzgerald v. Bank of America Corp.,
2009 WL 3806759 (E.D. Pa. Nov. 10, 2009) .................................................11

Fowler v. UPMC Shadyside,
578 F.3d 202 (3d Cir. 2009) ........................................................ 6

Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.,
2009 WL 3233427 (D.N.J. Sept. 30, 2009) ..................................... 8

Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.,
2007 WL 4570323 (D.N.J. Dec. 26, 2007) ...................................... 8

Guiles v. Metropolitan Life Ins. Co.,
2002 WL 229696 (E.D. Pa. Feb. 13, 2002) ..................................... 11

Hall v. LHACO, Inc.,
140 F.3d 1190 (8th Cir. 1998) ....................................................... 11

Hamilton v. Allen-Bradley Co.,
244 F.3d 819 (11th Cir. 2001) ....................................................... 11

Harrow v. Prudential Ins. Co. of America,
279 F.3d 244 (3rd Cir. 2002) ........................................................ 13

Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters, & Eng'rs Health & Welfare
   Plan,
25 F.3d 616 (8th Cir. 1994). ......................................................... 9

Mitchell v. Eastman Kodak Co.,
113 F.3d 433 (3d Cir. 1997) ......................................................... 12

North Jersey Center for Surgery, P.A. v. Horizon Blue Cross Blue Shield of New
   Jersey,Inc.,
2008 WL 4371754 (D.N.J. Sept. 18, 2008). .................................... 7

Slade v. Hershey Co.,
2009 WL 4794067 (M.D. Pa. Dec. 8, 2009) .................................... 6

Taft v. Equitable Fin. Co.,
9 F.3d 1469 (9th Cir. 1993) .......................................................... 11

Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.,
2007 WL 2416428 (D.N.J. Aug. 20, 2007)....................................... 8

This Memorandum is submitted by plaintiffs Christopher Templin ("Templin"), Viola Hendricks ("Hendricks"), Feldman's Medical Center Pharmacy, Inc. ("Feldman's"), and FCS Pharmacy LLC ("FCS") (collectively, Plaintiffs") in opposition to defendant CareFirst, Inc.'s ("CareFirst") motion to dismiss the First Amended Complaint.

## Preliminary Statement

CareFirst's motion to dismiss represents nothing more than a continuation of a two-year course of conduct during which it has dodged its clear duty to pay valid claims for life-saving hemophilia medication provided to Templin and Hendricks by Feldman's and FCS.  Rather than either pay these claims within the statutory time period, or deny the claims and thereby permit Plaintiffs to challenge such denials through the appeals process, CareFirst sat on its hands and did nothing, in clear violation of ERISA.  CareFirst's motion, a continuation of its long-running avoidance strategy, should be denied outright, because it is devoid of merit, as is explained in detail below.

## STATEMENT OF FACTS

The relevant facts are set forth in the First Amended Complaint ("FAC").  They are incorporated by reference and summarized below.

Plaintiffs Templin and Hendricks are hemophiliacs or provide support for their hemophiliac dependents and/or family members.  Hemophilia is a life-threatening disease that requires those afflicted to use very expensive blood-clotting factor treatment ("factor"). FCS and FMCP are nationally accredited

specialty pharmacies which provide factor to patients, including Templin and Hendricks.   FCS and FMCP have provided specialty pharmacy and health management care coordination services to patients since 2003 and 1986, respectively.  (FAC ¶ 10.)

On behalf of defendant Independence Blue Cross ("Independence"), defendant QCC Insurance Company ("QCC") issued a group health insurance policy, group number 465171, to Factor Health Services II, LLC ("Factor II") for the benefit of Factor II and its employees (the "Plan").   The Plan was issued by, underwritten and/or administered by Independence, QCC, and/or CareFirst. (Independence and QCC are referred to collectively as the "IBC Defendants," and CareFirst, Independence and QCC are referred to collectively as "Defendants"). Both Templin and Hendricks are employees of Factor II and thus covered by the Plan.  The effective date of the Plan is October 1, 2007, but it was automatically renewed by the parties on October 1, 2008 and then again on October 1, 2009, for additional one-year terms.  (FAC ¶ 15 and Exhibit B.)

Upon receipt of prescriptions from licensed physicians and confirmation of the patients' pre-certification for the prescription (pursuant to page 3.2-18 of the "Plan"), FCS and FMCP dispense specialized medications, products, and services, including factor, directly to patients, including Templin and Hendricks, who are participants or beneficiaries of the Plan.  After dispensing medication to patients, FCS and FMCP receive an assignment of the patients' benefits, which

allows them to recover directly from Defendants for services or products rendered and, if necessary, to bring suit to obtain past due benefits.  (FAC ¶ 11.)

FCS and FMCP then submit a claim for the applicable charges to the insurance carrier for payment.  Pursuant to rules established by the Blue Cross Blue Shield Association (of which all Defendants are licensees), if the patient's carrier (in this case, Independence) is located in a different geographic area than the provider (in this case, FCS or FMCP), the latter submits the claims to the "host plan," which is CareFirst in the case of FMCP.  CareFirst then acts as the administrator of the claim, coordinating payment.   (FAC ¶ 12.)

Pursuant to page 3.2-3 of the Plan, insureds like Templin and Hendricks are permitted to obtain Covered Services from "out-of-network" or "Non-Participating" providers and receive reimbursement from defendants Independence, QCC, and/or CareFirst.   (Covered Services are those health care services or supplies to which an insured is entitled pursuant to a health insurance plan.)  (FAC ¶ 13.)

Pursuant to page 3.2-22 of the Plan, FCS and FMCP provided Covered Services to Defendants' insureds (including Templin and Hendricks) and submitted insurance claims to Defendants in accordance with applicable procedures.  Templin and Hendricks assigned their right to payment to FCS and FMCP.  Defendants, however, have breached the terms and conditions of the Plan by failing to timely pay FCS and FMCP for most of the properly submitted claims.  (FAC ¶ 16 and 17.)

Defendants have failed and refused to timely pay in excess of $2,100,217.51 in legitimate claims submitted to them by FCS and FMCP. (FAC ¶ 14.) A list of the outstanding and unpaid claims as of November 30, 2009 is attached to the First Amended Complaint as Exhibit A. In clear violation of ERISA, every one of the subject claims has been outstanding for more than 60 days. The oldest invoice was submitted on December 7, 2007 – more than two full years ago. (FAC ¶ 21.)

Although both FCS and FMCP have repeatedly complained to Defendants about the unpaid claims and attempted to resolve these issues, such attempts have been fruitless. Any further attempts at resolution, short of litigation, would be futile. Plaintiffs' exhaustive efforts to resolve their dispute with Defendants have consisted of numerous telephone calls, letters, and e-mails. Specifically, on numerous occasions Plaintiffs spoke with Mr. Michael Ebner, a member of Independence's audit department, and provided him with all relevant information, to no avail. Plaintiffs also placed a series of calls to Ms. Catherine Pavlov, Director of Facility Audits for Independence, but those calls were never returned by her or anyone else. On February 12, 2009, Plaintiffs sent a Demand Letter to Independence for the amounts outstanding. On February 13, 2009, Independence sent a response from its Senior Counsel, Michael Zipfel, which indicated, for the first time, that the claims at issue were in "suspense" because Independence was conducting an investigation. The letter also stated that Independence was rejecting all claims submitted by Feldman's which involved

4

shipments of factor outside of the State of Maryland.  The letter concluded with Independence requesting information in connection with the claims made by FCS. By letter dated March 30, 2009, Plaintiffs responded to Independence, providing all of the information requested.   Thereafter, on numerous occasions, FCS and Feldman's have requested a meeting with Defendants, hoping that they would be able to resolve these issues with an on-site meeting.  All of FCS's and Feldman's requests have been flatly rejected by Defendants.  (FAC ¶ 22-23 and Exhibits C, D, and E.)

Defendants' failure to pay the bulk of the subject claims has seriously jeopardized the financial viability of FCS and FMCP.   FCS and FMCP cannot conduct business as health care providers if they fail to receive payment from Defendants for the health care services and products they provide to their customers, including Templin and Hendricks.  Defendants' failure to pay the subject claims also has seriously jeopardized the ability of Templin and Hendricks to obtain health care services and products from the pharmacies of their choice.  There is a substantial risk that either (a) FCS or FMCP will cease to operate, or (b) FCS and FMCP will be forced to cease providing health care services and products to Templin and Hendricks.   In either event, Templin and Hendricks will be harmed, because they have become dependent on the high level of personalized service provided to them by FCS and FMCP.  This dependence is particularly important for patients suffering from hemophilia, especially in situations where the inability to

obtain additional factor immediately in an emergency situation would significantly increase the risk of death.   (FAC ¶ 26-27.)

Accordingly, Plaintiffs filed suit in this Court on September 9, 2009. After Independence and QCC moved to dismiss, they stipulated to the filing of an amended pleading.  Thereafter, Plaintiffs filed the First Amended Complaint, which all Defendants moved to dismiss.

## ARGUMENT

## I.    The Motion to Dismiss Standard

Plaintiffs first address CareFirst's argument that the Rule 12(b)(6) standard has changed in light of recent Supreme Court decisions.   While the standard has changed, following both Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), federal district courts are still required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Slade v. Hershey Co., 2009 WL 4794067, at *1 (M.D. Pa. Dec. 8, 2009).  *Accord* Fowler v. UPMC Shadyside, 578 F.3d 202, 210-11 (3d Cir. 2009) ("The District Court must accept all of the complaint's well-pleaded facts as true. . . ."); Capozzi v. Northampton County, 2009 WL 2854859, at *2 (E. D. Pa. Sept. 3, 2009) (same).

Applying the foregoing standards, it is clear that CareFirst's motion to dismiss should be denied.

## II.   **FCS and FMCP Have Standing**

The Court should reject the initial argument by CareFirst that FCS and FMCP lack standing to sue.   According to CareFirst, the claims of FCS and Feldman's should be dismissed because (1) these plaintiffs are neither participants in, nor beneficiaries of, the Plan, and (2) the assignment of benefits to them is ineffective.   Plaintiffs have never claimed that FCS and Feldman's are participants or beneficiaries, and so they turn to the argument concerning the assignment.

CareFirst's first argument about the assignment is that "a key element of proof is absent," because the assignments are not attached to the First Amended Complaint.   (Mem., p. 6.)   In support of this argument CareFirst cites North Jersey Center for Surgery, P.A. v. Horizon Blue Cross Blue Shield of New Jersey, Inc., 2008 WL 4371754, at *4 (D.N.J. Sept. 18, 2008).   CareFirst's reliance on this case is misplaced.   North Jersey Center came before the federal district court on a motion to remand.   The Court noted all of the following: (1) the complaint in the case presented no federal question on its face, (2) federal courts are courts of limited jurisdiction, and there is a strong presumption against removal, (3) all doubts must be resolved in favor of remand, and (4) the absence of the assignment "augers in favor of remand." *Id*. at **2-4.   *Accord* Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) ("The removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand.").

None of the foregoing factors is applicable in the instant matter. Specifically, Plaintiffs' First Amended Complaint presents a federal question on its face, this matter was not removed, no party has made a remand motion, there is no strong presumption against federal jurisdiction, and CareFirst cites no rule that doubts must be resolved against federal jurisdiction.   Indeed, where the First Amended Complaint specifically alleges that an assignment was made, and the Court, even after <u>Twombly</u> and <u>Iqbal</u>, is still required to accept all factual allegations as true, the Court should reject CareFirst's reliance on inapposite case law concerning removal and remand.

CareFirst's second argument is that the Plan explicitly prohibits assignments, and anti-assignment provisions are enforceable under ERISA.   Five points must be underscored with regard to this argument.   First, health care benefits are generally assignable.  <u>Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.</u>, 2007 WL 2416428, at *4 (D.N.J. Aug. 20, 2007); <u>Fisher v. Building Serv. 32B-J Health Fund</u>, 1997 WL 531315, at *4 (S.D.N.Y. Aug. 27, 1997) ("Assignment of health care benefits advances the purpose of ERISA and, therefore, is permissible.").   Second, "the Third Circuit has not ruled on whether anti-assignment provisions in health care plans are enforceable."   <u>Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.</u>, 2009 WL 3233427, at *4 (D.N.J. Sept. 30, 2009); <u>Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.</u>, 2007 WL 4570323, at *3 (D.N.J. Dec. 26, 2007).   Given the absence of a ruling from the Third Circuit, it cannot be

8

concluded that the anti-assignment provision relied upon by CareFirst is enforceable.

Third, even if ERISA permits the enforcement of anti-assignment provisions, an insurer may be precluded under theories of equitable estoppel and waiver from enforcing the provision.  Glen Ridge Surgicenter, *supra*, 2009 WL 3233427, at *4.  Given the course of conduct engaged in by Defendants, as alleged in the First Amended Complaint and the exhibits attached thereto, CareFirst should be estopped to rely on the anti-assignment provision they reference, and/or it has waived such reliance.  Specifically, here, where some payments were made to FCS and Feldman's (as is indicated by Exhibit D to the First Amended Complaint), waiver has occurred.  In both Glen Ridge Surgicenter, *supra*, and Gregory Surgical Servs., *supra*, the Court held that plaintiffs, ambulatory surgical centers, had standing to sue under ERISA notwithstanding the existence of an anti-assignment provision, pursuant to the doctrines of estoppel and/or waiver.  This Court should hold similarly.

Fourth, at least one federal Circuit has held that where, as here, the anti-assignment provision merely prohibits the right to receive benefits, and does not expressly prohibit the assignment of causes of action arising after the denial of benefits, the provision does not operate to preclude standing.  *See* Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters, & Eng'rs Health & Welfare Plan, 25 F.3d 616, 619 (8th Cir. 1994).  In that case, the Eighth Circuit specifically noted that denying standing to health care providers as assignees of beneficiaries undermines

ERISA's goal of improving benefit coverage for employees. *Id.* The Superior Court of Pennsylvania agrees with the Eighth Circuit. *See* Chiropractic Nutritional Assocs., Inc. v. Empire Blue Cross and Blue Shield, 669 A.2d 975, 983 (Pa. Super. 1995) ("We are persuaded by the reasoning of the Eighth Circuit in Lutheran Medical Center and therefore conclude that the Group Contract before this court does not prohibit the assignment of a cause of action arising from the denial of benefits.")

Fifth, even if the anti-assignment provision in the instant action operated to prevent FCS and Feldman's from collecting payment, this preclusion would fail to defeat standing. As underscored by the Pennsylvania Superior Court in Chiropractic Nutritional Assocs., *supra*, "a person does not lack standing to claim benefits under ERISA simply because it may turn out that he or she is not entitled to prevail and ultimately collect the benefits." 669 A.2d at 981.

For all of the reasons set forth above, this Court should hold that FCS and Feldman's have standing to sue.

### III.   CareFirst Is A Proper Party Because It Was A Plan Administrator

The Court also should reject CareFirst's next major argument, which is that CareFirst is not a proper party. According to CareFirst, it should be dismissed because (1) in a case alleging wrongful denial of benefits under ERISA, the plan is the only proper defendant, and (2) even if the universe of proper defendants is expanded to include fiduciaries, the First Amended Complaint fails to allege that CareFirst was a fiduciary. Both arguments are meritless.

In support of the first argument, CareFirst relies almost exclusively on Guiles v. Metropolitan Life Ins. Co., 2002 WL 229696 (E.D. Pa. Feb. 13, 2002). As CareFirst admits, however, district courts in the Third Circuit are split concerning this issue, and there is much district court authority that is contrary to Guiles. *See* Fitzgerald v. Bank of America Corp., 2009 WL 3806759 (E.D. Pa. Nov. 10, 2009). Moreover, a number of federal circuits have concluded that in an action alleging wrongful denial of benefits under ERISA, the plan administrator is a proper defendant. *See*, *e.g.*, Hamilton v. Allen-Bradley Co., 244 F.3d 819, 824 (11th Cir. 2001) (noting that § 1132(a)(1)(B) "confers a right to sue the plan administrator for recovery of benefits"); Hall v. LHACO, Inc., 140 F.3d 1190, 1196 (8th Cir. 1998) (determining that plan administrator is a proper party); Taft v. Equitable Fin. Co., 9 F.3d 1469, 1471 (9th Cir. 1993) (same) and Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir. 1988) (noting that the proper party in an ERISA action is the party that "is shown to control the administration of the plan").

Plaintiffs submit that where there is so much authority from other Circuits supporting their position, the Court should reject CareFirst's argument, even if, as CareFirst contends, Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226 (3d Cir. 1994), failed to address wrongful denial of benefits. Further, even if *Curcio* failed to address denial of benefits, other cases from the Third Circuit have addressed the issue. For example, in Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Res. Found., 334 F.3d 365, 382 & n.23 (3d Cir. 2003), the Third Circuit concluded that plaintiff could seek to enforce a

11

claim for benefits against a plan administrator under § (a)(1)(B).   Likewise, in Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir. 1997), the Third Circuit affirmed the grant of summary judgment against a plan administrator to recover benefits under § (a)(1)(B).   And in Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343 (2008), the Supreme Court affirmed reversal of a summary judgment entered in favor of a plan administrator in a case alleging denial of benefits under § (a)(1)(B).

The Court also should reject CareFirst's alternative argument concerning proper parties.   According to CareFirst, even if fiduciaries are proper defendants in an action alleging wrongful denial of benefits, Plaintiffs failed to allege that CareFirst is a fiduciary.   CareFirst's argument should be rejected because, as shown above, administrators are proper defendants, and Plaintiffs have alleged that CareFirst (and the other defendants) are administrators.   Paragraph 7 of the First Amended Complaint states: "Defendants Independence, QCC, and CareFirst are referred to collectively herein as "Defendants."   Paragraph 11 states that Templin and Hendricks "are participants or beneficiaries of health plans insured, underwritten and/or administered by Defendants."

Overall, CareFirst's argument that it is not a proper defendant should be rejected, because administrators are proper Defendants and Plaintiffs have alleged that CareFirst was an administrator of the Plan.

**IV.   Plaintiffs' Claim for Violation of ERISA Has Been Adequately Pled**

CareFirst's motion to dismiss the ERISA claim is predicated, in substantial part, on its assertion that Plaintiffs' attempts to resolve the non-payment issues were made solely with the IBC Defendants and not with CareFirst. Accordingly, it reasons, Plaintiffs could not have exhausted their administrative remedies as to it. CareFirst's argument seeks to have this Court reward it for the very behavior of which Plaintiffs complaint in the First Amended Complaint – the systematic and egregious attempts by all Defendants to avoid the required process so as to make Plaintiffs' attempts to even comply with any administrative requirements impossible.

A. **Plaintiffs Have Established Futility**

The law is clear that Plaintiffs are excused from exhausting administrative remedies under ERISA if it would be futile to do so. Harrow v. Prudential Ins. Co. of America, 279 F.3d 244, 249 (3d Cir. 2002). Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile. Of course, all factors may not weigh equally. *Id.* at 250. *See also* Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990).

In Berger, the Third Circuit affirmed the district court's refusal to grant summary judgment to defendants on the basis of plaintiffs' failure to exhaust administrative remedies.  In finding that the plaintiffs were not required to exhaust administrative remedies because resort to such process would have been futile, the Court focused on the defendant's existence of a fixed policy denying benefits and the failure of the defendant to comply with its own administrative procedures. The Court noted:

> The Plan's administrative procedures required the pension Board to notify a claimant in writing of the specific reasons for the denial of a claim.  Although the three employees failed to make written requests for benefits, this does not excuse Edgewater's failure to comply with the Plan's administrative procedures.  It is clear that [plaintiffs] made their desire for 70/80 retirement plain to the responsible company officials.  In addition, it is clear that the company had adopted a policy of denying all application for 70/80 retirement.  We agree with the district court that Edgewater's blanket denial of 70/80 retirement under §2.(6)'s mutual interest provision and Edgewater's failure to comply with the Plan's administrative procedures weigh in favor of applying the futility exception to [Plaintiffs}.   Given these circumstances, any resort by these employees to the administrative process would have been futile.  Thus, the district court was correct in excepting these three employees from the exhaustion requirement.  (citations omitted).

Id. at 916-917.

Based upon the foregoing rationale enunciated in Berger, the First Amended Complaint here clearly and convincingly establishes that any attempt by Plaintiffs to exhaust administrative remedies would have been futile.  As is set forth in Exhibit D to the First Amended Complaint, IBC's counsel, in a letter dated February 13, 2009, clearly set forth its position concerning a blanket denial of

certain coverage.   Specifically, in the February 13, 2009 letter, Michael P. Zipfel,

Senior Counsel to IBC, wrote:

> ...Please note that IBC will not pay any claims from Feldman's that
> involve a shipment of drugs outside of the State of Maryland.   Our
> investigation revealed that Feldman's does not have a pharmacy
> distribution license issued by the State of Maryland.   Therefore, since
> Feldman's is not licensed to distribute drugs outside of Maryland,
> IBC's contract with factor Health Services II, LLC does not provide
> coverage for those drugs.   The group contract only provides benefits
> for services that are rendered by a provider that is licensed where
> required and performing services within the scope of that licensure.

Moreover, the documentation attached to the First Amended Complaint clearly

establishes such an absolute failure on the part of IBC to follow required

administrative procedure that one can only conclude that such failure was

calculated to delay and harass, further supporting a finding of futility.   As set forth

in Section 3.2-70-73 of Exhibit B to the First Amended Complaint, the Plan

document provides for the filing of an Appeal within 180 days of receiving an

adverse benefit determination.   Thereafter, the Plan provides for two levels of

Appeal, each of which must be decided within 30 days of submission and each of

which requires that the Member be provided with a decision notice which includes

the specific reason for the denial, refer to Plan provision(s) and guidelines on which

the decision is made, tell the Member that relevant information is available, and

describe how he can appeal to the next level. Exhibit B, Section 3.2-72.   As the

First Amended Complaint establishes, IBC ignored each and every one of these Plan

provisions.

Indeed, as alleged in Paragraph 21 of the First Amended Complaint, 100% of the outstanding claims at issue were submitted in excess of 60 days prior to the filing of the First Amended Complaint.  Incredibly, Exhibit A, a spreadsheet evidencing all outstanding claims, establishes that the most delinquent claim was aged **700** days as of the filing of the First Amended Complaint with many other claims in the **500** and **600** day delinquency range.

Notwithstanding the complete failure to pay, IBC had not sent any denial letters.  Rather, it was only after counsel became involved that IBC's counsel took the position that Plaintiffs were under investigation and, accordingly, some of the claims were "pended".  (*See* First Amended Complaint, Exhibit D).   In the February 13, 2009 letter, for the first time, IBC requested specific information to assist in its "review".   Notably, as specifically set forth in the letter, the information was requested only for plaintiff FCS, since IBC had already determined to deny all claims submitted by plaintiff Feldman's.

The requested information was provided by Plaintiffs' counsel in a letter dated March 30, 2009.  The March 30, 2009 letter also made clear that despite the fact that claims were outstanding since as early as December 2007, the first time that Plaintiffs ever learned of the alleged "investigation" was February 13, 2009.

Finally, IBC failed to provide any denial letter on a timely basis – let alone the type of letter that satisfy the requirements of the Plan and those of ERISA.  Even if the February 13, 2009 letter could be determined to be a denial

16

letter -- which it cannot -- it falls far short of the notice requirements set forth both in ERISA and in the Plan documents.  Indeed, in <u>DellaValle v. Prudential Ins. Co. of Am.</u>, 2006 WL 83449 (E.D. Pa. Jan. 10, 2006), cited by IBC, the Court held that the insurer had failed to substantially comply with ERISA's notice of denial requirements.  In <u>DellaValle</u> the insurer's denial letter "described the appeals process in a brief paragraph, stating that any 'appeal may identify the issues and provide other comments or additional evidence you wish [sic] considered'".  *Id.* at *8. In finding that the denial letter did not satisfy the requirement that the insurer provide a "description of any material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary"  *See* <u>DellaValle</u> at **7-8 (citing 29 C.F.R. 2560.503-1(g)(i)-(iv) ("...there is here an element of "hide the ball" if one is to devine(sic) from the denial letter what more Mr. DellaValle could have and should have submitted." *Id.* at *8.

In striking similarity, the February 13, 2009 letter from IBC sets forth a blanket denial concerning the claims of plaintiff Feldman's.  The letter also states: "[i]f you disagree with any of our findings, please forward additional documents for our consideration."   Where, as here there was no denial letter and, at best, a woefully deficient one, in which IBC continued its more than year long tactic of playing "hide the ball," CareFirst's claim that Plaintiffs did not exhaust administrative remedies or did not establish futility rings hollow.

**B.**     **Plaintiffs Have Adequately Pled Futility as to CareFirst**

CareFirst's attempt to distance itself from the IBC Defendants' conduct is simply not sustainable. Indeed, as alleged in the First Amended Complaint at ¶ 12, CareFirst is the host plan for plaintiff FMCP. The First Amended Complaint further alleges at ¶ 24 that the IBC Defendants recently advised Plaintiffs that CareFirst is the entity refusing to pay the claims at issue. These allegations are sufficient to plead a wrongful denial of benefits claim under ERISA against CareFirst. Indeed, it was only after a year of trying to work through IBC that it took the position that CareFirst was refusing to pay the claims. If this Court were to credit CareFirst's argument, CareFirst would be rewarded for "hiding in the background" and completely failing to honor its obligations to comply with the administrative requirements of the Plan by either paying, denying, or requesting additional information with respect to the claims at issue. CareFirst's absolute failure to communicate with Plaintiffs concerning their claims establishes that Plaintiffs were never provided with the opportunity to exhaust their administrative remedies with respect to CareFirst, solely as a result of CareFirst's wrongful behavior as alleged in the First Amended Complaint.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny in its entirety CareFirst's motion to dismiss the First Amended Complaint. Plaintiffs also request oral argument.

Dated:  Lafayette Hill, Pennsylvania
        January 4, 2010

/s/ Timothy S. Cole
Timothy S. Cole
MantaCole, LLC
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(215) 325-1741 (telephone)
(215) 641-0469 (facsimile)
TimCole@mantacole.com

       AND

PADUANO & WEINTRAUB LLP
Anthony Paduano
Jordan D. Becker
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
(212) 785-9100 (telephone)
(212) 785-9099 (facsimile)
ap@pwlawyers.com
jdb@pwlawyers.com
(pro hac vice)

Attorneys for Plaintiffs