**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER TEMPLIN, VIOLA HENDRICKS, | ) | |
| FELDMAN'S MEDICAL CENTER | ) | |
| PHARMACY, INC., and FCS | ) | |
| PHARMACY LLC, | ) | |
| | ) | Civil Action No. |
| | ) | 09-4092 (JHS) |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INDEPENDENCE BLUE CROSS, | ) | |
| QCC INSURANCE COMPANY, and | ) | |
| CAREFIRST, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS
INDEPENDENCE BLUE CROSS AND QCC INSURANCE COMPANY'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................. ii

PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF FACTS_ ................................................................ 1

ARGUMENT ................................................................................. 6

   I.  The Motion to Dismiss Standard ............................................. 6

   II.  Plaintiffs Have Standing ....................................................... 6

      A.  Templin and Hendricks Have Standing .................................. 6

      B.  FCS and Feldman's Have Standing ...................................... 8

   III.  It Would be Futile For Plaintiffs To Exhaust ERISA Plan Remedies ............ 10

   IV.  The IBC Defendants Are Proper Parties Because They Were Plan Administrators .......................................................... 17

CONCLUSION ............................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

American Medical Ass'n v. United Healthcare Corp.,
2007 WL 1771498 (S.D.N.Y. June 18, 2007) ..................................................7

Arber v. Equitable Beneficial Life Ins. Co.,
1994 WL 702920 (E.D. Pa. Dec. 13, 1994) ...................................................8

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) ...................................................................6

Bell Atlantic Corp. v. Twombly,
550 U.S. 554 (2007) .....................................................................6

Bennett v. Prudential Ins. Co.,
192 Fed. Appx. 153 (3d Cir. 2006) .......................................................... 12n

Berger v. Edgewater Steel Co.,
911 F.2d 911 (3d Cir. 1990) ........................................................... 12

Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. &
Res. Found.,
334 F.3d 365 (3d Cir. 2003) .......................................................... 19

Capozzi v. Northampton County,
2009 WL 2854859 (E. D. Pa. Sept. 3, 2009) .................................................6

Chiropractic Nutritional Assocs., Inc. v. Empire Blue Cross and Blue Shield,
669 A.2d 975 (Pa. Super. 1995) ..................................................... 10

Daniel v. Eaton Corp.,
839 F.2d 263 (6th Cir. 1988) ........................................................ 18

DellaValle v. Prudential Ins. Co. of Am.,
2006 WL 83449 (E.D. Pa. Jan. 10, 2006), ................................................ 15

Fisher v. Building Serv. 32B-J Health Fund,
1997 WL 531315 (S.D.N.Y. Aug. 27, 1997) .....................................................9

Fitzgerald v. Bank of America Corp.,
2009 WL 3806759 (E.D. Pa. Nov. 10, 2009) .................................................. 18

Fowler v. UPMC Shadyside,
578 F.3d 202 (3d Cir. 2009) ......................................................................6

Gatti v. Western Pennsylvania Teamsters & Employers Welfare Fund,
2008 WL 794516 (W.D. Pa. March 24, 2008) .............................................. 12n

Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.,
2009 WL 3233427 (D.N.J. Sept. 30, 2009) .....................................................9

Graden v. Conextant Sys. Inc.,
496 F.3d 291 (3d Cir. 2007) ......................................................................19

Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.,
2007 WL 4570323 (D.N.J. Dec. 26, 2007) .....................................................9

Guiles v. Metropolitan Life Ins. Co.,
2002 WL 229696 (E.D. Pa. Feb. 13, 2002) ...................................................18

Hahnemann Univ. Hosp. v. All Shore, Inc.,
514 F.3d 300 (3d Cir. 2008) ......................................................................19

Hall v. LHACO, Inc.,
140 F.3d 1190 (8th Cir. 1998) ...................................................................18

Hamilton v. Allen-Bradley Co.,
244 F.3d 819 (11th Cir. 2001) ...................................................................18

Harrow v. Prudential Ins. Co. of America,
279 F.3d 244 (3d Cir. 2002). .....................................................................11

Lester v. Framatone,
2006 WL 2850012 (W.D. Va. Sept. 29, 2006) ...............................................19

Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters, & Eng'rs Health & Welfare Plan,
25 F.3d 616 (8th Cir. 1994) .......................................................................10

Metropolitan Life Ins. Co. v. Glenn,
128 S. Ct. 2343 (2008) .............................................................................19

Mitchell v. Eastman Kodak Co.,
113 F.3d 433 (3d Cir. 1997) ......................................................................19

Regional Employers Assurance Leagues Voluntary Employees' Beneficiary
Association Trust v. Sidney Charles Markets, Inc.,
2003 WL 220181 (E.D. Pa. Jan. 29, 2003) ................................................ 12n

Slade v. Hershey Co.,
2009 WL 4794067 (M.D. Pa. Dec. 8, 2009) ..................................................... 6

Taft v. Equitable Fin. Co.,
9 F.3d 1469 (9th Cir. 1993) ........................................................................ 18

Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.,
2007 WL 2416428 (D.N.J. Aug. 20, 2007)...................................................... 8

This Memorandum is submitted by plaintiffs Christopher Templin ("Templin"), Viola Hendricks ("Hendricks"), Feldman's Medical Center Pharmacy, Inc. ("Feldman's" or "FMCP"), and FCS Pharmacy LLC ("FCS") (collectively, Plaintiffs") in opposition to defendants Independence Blue Cross ("Independence") and QCC Insurance Company's ("QCC") (collectively, the "IBC Defendants") motion to dismiss the First Amended Complaint.

## PRELIMINARY STATEMENT

The IBC Defendants' motion to dismiss represents nothing more than a continuation of a two-year course of conduct during which they dodged their clear duty to pay valid claims for life-saving hemophilia medication provided to Templin and Hendricks by Feldman's and FCS.  Rather than either pay these claims within the statutory time period, or deny the claims and thereby permit Plaintiffs to challenge such denials through the appeals process, the IBC Defendants sat on their hands and did nothing, in clear violation of ERISA.  The IBC Defendants' motion, a continuation of their long-running avoidance strategy, should be denied outright, because it is devoid of merit, as is explained in detail below.

## STATEMENT OF FACTS

The relevant facts are set forth in the First Amended Complaint ("FAC").  They are incorporated by reference and summarized below.

Plaintiffs Templin and Hendricks are hemophiliacs or provide support for their hemophiliac dependents and/or family members.  Hemophilia is a life-threatening disease that requires those afflicted to use very expensive blood-

clotting factor treatment ("factor"). FCS and FMCP are nationally accredited specialty pharmacies which provide factor to patients, including Templin and Hendricks.   FCS and FMCP have provided specialty pharmacy and health management care coordination services to patients since 2003 and 1986, respectively.  (FAC ¶ 10.)

On behalf of defendant Independence, defendant QCC issued a group health insurance policy, group number 465171, to Factor Health Services II, LLC ("Factor II") for the benefit of Factor II and its employees (the "Plan").  The Plan was issued by, underwritten and/or administered by Independence, QCC, and/or CareFirst.  (Independence, QCC and CareFirst are referred to collectively as "Defendants").   Both Templin and Hendricks are employees of Factor II and thus covered by the Plan.  The effective date of the Plan is October 1, 2007, but it was automatically renewed by the parties on October 1, 2008 and then again on October 1, 2009, for additional one-year terms.  (FAC ¶ 15 and Exhibit B.)

Upon receipt of prescriptions from licensed physicians and confirmation of the patients' pre-certification for the prescription (pursuant to page 3.2-18 of the "Plan"), FCS and FMCP dispense specialized medications, products, and services, including factor, directly to patients, including Templin and Hendricks, who are participants or beneficiaries of the Plan.  After dispensing medication to patients, FCS and FMCP receive an assignment of the patients' benefits, which allows them to recover directly from Defendants for services or products rendered and, if necessary, to bring suit to obtain past due benefits.  (FAC ¶ 11.)

FCS and FMCP then submit a claim for the applicable charges to the insurance carrier for payment.  Pursuant to rules established by the Blue Cross Blue Shield Association (of which all Defendants are licensees), if the patient's carrier (in this case, Independence) is located in a different geographic area than the provider (in this case, FCS or FMCP), the latter submits the claims to the "host plan," which is CareFirst in the case of FMCP.  (FAC ¶ 12.)

Pursuant to page 3.2-22 of the Plan, FCS and FMCP provided Covered Services (those health care services or supplies to which an insured is entitled pursuant to the Plan) to Defendants' insureds (including Templin and Hendricks) and submitted insurance claims to Defendants in accordance with applicable procedures.  Templin and Hendricks assigned their right to payment to FCS and FMCP.  Defendants, however, have breached the terms and conditions of the Plan by failing to timely pay FCS and FMCP for most of the properly submitted claims. (FAC ¶ 16 and 17.)

Defendants have failed and refused to timely pay in excess of $2,100,217.51 in legitimate claims submitted to them by FCS and FMCP.  (FAC ¶ 14.)   A list of the outstanding and unpaid claims as of November 30, 2009 is attached to the First Amended Complaint as Exhibit A.  In clear violation of ERISA, every one of the subject claims has been outstanding for more than 60 days.  The oldest invoice was submitted on December 7, 2007 – more than two full years ago.  (FAC ¶ 21.)

3

Although both FCS and FMCP have repeatedly complained to Defendants about the unpaid claims and attempted to resolve these issues, such attempts have been fruitless.  Any further attempts at resolution, short of litigation, would be futile.   Plaintiffs' exhaustive efforts to resolve their dispute with Defendants have consisted of numerous telephone calls, letters, and e-mails. Specifically, on numerous occasions Plaintiffs spoke with Mr. Michael Ebner, a member of Independence's audit department, and provided him with all relevant information, to no avail.  Plaintiffs also placed a series of calls to Ms. Catherine Pavlov, Director of Facility Audits for Independence, but those calls were never returned by her or anyone else.  On February 12, 2009, Plaintiffs sent a Demand Letter to Independence for the amounts outstanding.   On February 13, 2009, Independence sent a response from its Senior Counsel, Michael Zipfel, which indicated, for the first time, that the claims at issue were in "suspense" because Independence was conducting an investigation.   The letter also stated that Independence was rejecting all claims submitted by Feldman's which involved shipments of factor outside of the State of Maryland.   The letter concluded with Independence requesting information in connection with the claims made by FCS. By letter dated March 30, 2009, Plaintiffs responded to Independence, providing all of the information requested.   Thereafter, on numerous occasions, FCS and Feldman's have requested a meeting with Defendants, hoping that they would be able to resolve these issues with an on-site meeting.  All of FCS's and Feldman's

requests have been flatly rejected by Defendants.  (FAC ¶ 22-23 and <u>Exhibits C, D,</u>
<u>and E</u>.)

Defendants' failure to pay the bulk of the subject claims has seriously
jeopardized the financial viability of FCS and FMCP.   FCS and FMCP cannot
conduct business as health care providers if they fail to receive payment from
Defendants for the health care services and products they provide to their
customers, including Templin and Hendricks.  Defendants' failure to pay the subject
claims also has seriously jeopardized the ability of Templin and Hendricks to obtain
health care services and products from the pharmacies of their choice.   There is a
substantial risk that either (a) FCS or FMCP will cease to operate, or (b) FCS and
FMCP will be forced to cease providing health care services and products to
Templin and Hendricks.   In either event, Templin and Hendricks will be harmed,
because they have become dependent on the high level of personalized service
provided to them by FCS and FMCP.  This dependence is particularly important for
patients suffering from hemophilia, especially in situations where the inability to
obtain additional factor immediately in an emergency situation would significantly
increase the risk of death.   (FAC ¶ 26-27.)

Accordingly, Plaintiffs filed suit in this Court on September 9, 2009.
After the IBC Defendants moved to dismiss, they stipulated to the filing of an
amended pleading.  Thereafter, Plaintiffs filed the First Amended Complaint, which
all Defendants moved to dismiss.

## ARGUMENT

### I.     The Motion to Dismiss Standard

While the Rule 12(b)(6) standard has changed, following both Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), federal district courts are still required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Slade v. Hershey Co., 2009 WL 4794067, at *1 (M.D. Pa. Dec. 8, 2009). Accord Fowler v. UPMC Shadyside, 578 F.3d 202, 210-11 (3d Cir. 2009) ("The District Court must accept all of the complaint's well-pleaded facts as true. . . ."); Capozzi v. Northampton County, 2009 WL 2854859, at *2 (E. D. Pa. Sept. 3, 2009) (same).

Applying the foregoing standards, it is clear that the IBC Defendants' motion to dismiss should be denied.

### II.     Plaintiffs Have Standing

#### A.     Templin and Hendricks Have Standing

The Court should reject the initial argument by the IBC Defendants that Templin and Hendricks have no standing to sue. According to the IBC Defendants, there is no standing because the "alleged injury is too speculative to establish an injury-in-fact." (Mem., p. 4.) To the contrary, the injury is not speculative at all.

The First Amended Complaint specifically alleges, in Paragraph 27:

6

Defendants' failure to pay the subject claims also has seriously jeopardized the ability of the Individual Plaintiffs to obtain health care services and products from the pharmacies of their choice.  There is a substantial risk that either (a) FCS or FMCP will cease to operate, or (b) FCS and FMCP will be forced to cease providing health care services and products to the Individual Plaintiffs.  In either event, the Individual Plaintiffs will be harmed, because they have become dependent on the high level of personalized service provided to them by FCS and FMCP.  This dependence is particularly important for patients suffering from hemophilia, especially in situations where the inability to obtain additional factor immediately in an emergency situation would significantly increase the risk of death.

The cases relied upon by the IBC Defendants to show that the foregoing allegations are too speculative fail to support their position.  For example, in American Medical Ass'n v. United Healthcare Corp., 2007 WL 1771498 (S.D.N.Y. June 18, 2007), the court found no standing because "[p]laintiffs cannot demonstrate actual injury in that they never suffered--and do not face the threat of suffering—out-of-pocket loss. . . ".  Id. at *19.  In contrast, in the instant matter, as alleged, Defendants' failure to pay the subject claims has seriously jeopardized the ability of Templin and Hendricks to obtain health care services and products from the pharmacies of their choice, which, given the specialized nature of hemophilia, is a serious, tangible harm.  Likewise, in Arber v. Equitable Beneficial Life Ins. Co., 1994 WL 702920 (E.D. Pa. Dec. 13, 1994), also relied on by the IBC Defendants, the court found no standing because Plaintiffs "have not asserted that they suffered any injury."  Id. at *2.  That case is totally inapposite, because Templin and Hendricks have alleged a serious risk of injury.

In short, the allegations of injury by Templin and Hendricks are sufficiently definite to confer standing.

7

B.    **FCS and Feldman's Have Standing**

The Court also should reject the argument by the IBC Defendants that FCS and Feldman's lack standing to sue.  According to the IBC Defendants, the claims of FCS and Feldman's should be dismissed because (1) these plaintiffs are neither participants in, nor beneficiaries of, the Plan, and (2) the assignment of benefits to them is ineffective.  Plaintiffs have never claimed that FCS and Feldman's are participants or beneficiaries, and so they turn to the argument concerning the assignment.

The IBC Defendants' argument is that the Plan explicitly prohibits assignments, and anti-assignment provisions are enforceable under ERISA.  Five points must be underscored with regard to this argument.  First, health care benefits are generally assignable.  Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc., 2007 WL 2416428, at *4 (D.N.J. Aug. 20, 2007); Fisher v. Building Serv. 32B-J Health Fund, 1997 WL 531315, at *4 (S.D.N.Y. Aug. 27, 1997) ("Assignment of health care benefits advances the purpose of ERISA and, therefore, is permissible.").  Second, "the Third Circuit has not ruled on whether anti-assignment provisions in health care plans are enforceable."  Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc., 2009 WL 3233427, at *4 (D.N.J. Sept. 30, 2009); Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc., 2007 WL 4570323, at *3 (D.N.J. Dec. 26, 2007).  Given the absence of a ruling from the Third Circuit, it cannot be

concluded that the anti-assignment provision relied upon by the IBC Defendants is enforceable.

Third, even if ERISA permits the enforcement of anti-assignment provisions, an insurer may be precluded under theories of equitable estoppel and waiver from enforcing the provision.  Glen Ridge Surgicenter, *supra*, 2009 WL 3233427, at *4.  Given the course of conduct engaged in by Defendants, as alleged in the First Amended Complaint and the exhibits attached thereto, the IBC Defendants should be estopped to rely on the anti-assignment provision they reference, and/or it they have waived such reliance.  Specifically, here, where some payments were made to FCS and Feldman's (as is indicated by Exhibit D to the First Amended Complaint), waiver has occurred.  In both Glen Ridge Surgicenter, *supra*, and Gregory Surgical Servs., *supra*, the Court held that plaintiffs, ambulatory surgical centers, had standing to sue under ERISA notwithstanding the existence of an anti-assignment provision, pursuant to the doctrines of estoppel and/or waiver. This Court should hold similarly.  The IBC Defendants argue that Plaintiffs do not specifically allege waiver in the First Amended Complaint, but they fail to explain why such an allegation must be set forth in the pleading itself.

Fourth, at least one federal Circuit has held that where, as here, the anti-assignment provision merely prohibits the right to receive benefits, and does not expressly prohibit the assignment of causes of action arising after the denial of benefits, the provision does not operate to preclude standing.  *See* Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters, & Eng'rs Health & Welfare Plan, 25 F.3d

9

616, 619 (8th Cir. 1994).  In that case, the Eighth Circuit specifically noted that denying standing to health care providers as assignees of beneficiaries undermines ERISA's goal of improving benefit coverage for employees.  *Id.*  The Superior Court of Pennsylvania agrees with the Eighth Circuit.  *See* Chiropractic Nutritional Assocs., Inc. v. Empire Blue Cross and Blue Shield, 669 A.2d 975, 983 (Pa. Super. 1995) ("We are persuaded by the reasoning of the Eighth Circuit in Lutheran Medical Center and therefore conclude that the Group Contract before this court does not prohibit the assignment of a cause of action arising from the denial of benefits.")

Fifth, even if the anti-assignment provision in the instant action operated to prevent FCS and Feldman's from collecting payment, this preclusion would fail to defeat standing.  As underscored by the Pennsylvania Superior Court in Chiropractic Nutritional Assocs., *supra*, "a person does not lack standing to claim benefits under ERISA simply because it may turn out that he or she is not entitled to prevail and ultimately collect the benefits."  669 A.2d at 981.

For all of the reasons set forth above, this Court should hold that FCS and Feldman's have standing to sue.

### III.   It Would be Futile For Plaintiffs To Exhaust ERISA Plan Remedies

In a startling attempt to continue to obfuscate its complete and utter failure to pay benefits or to provide any plausible reason for the substantial delay in even responding to the submitted claims at issue in the First Amended Complaint, the IBC Defendants assert that Plaintiffs have failed to plead specific facts

establishing exhaustion or futility.  Aside from misconstruing the relevant law, the

IBC Defendants completely ignore the detailed correspondence annexed to the First

Amended Complaint which clearly suggests that the claims process has been so

frustrated as to make further pursuit of administrative remedies futile.

        The  law  is  clear  that  Plaintiffs  are  excused  from  exhausting

administrative remedies under ERISA if it would be futile to do so.  <u>Harrow v.</u>

<u>Prudential Ins. Co. of America</u>, 279 F.3d 244, 249 (3d Cir. 2002).  Whether to

excuse  exhaustion  on  futility  grounds  rests  upon  weighing  several  factors,

including: (1) whether plaintiff diligently pursued administrative relief; (2) whether

plaintiff  acted  reasonably  in  seeking  immediate  judicial  review  under  the

circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the

insurance company to comply with its own internal administrative procedures; and

(5) testimony of plan administrators that any administrative appeal was futile.  Of

course,  all  factors  may  not  weigh  equally.[1]  *Id*.  at  250.  *See also* <u>Berger v.</u>

<u>Edgewater Steel Co.</u>, 911 F.2d 911, 916 (3d Cir. 1990).

---

[1]    The IBC Defendants' assertion that a Court may resolve the exhaustion
requirement under ERISA at the pleadings stage is inapplicable in the instant
matter. *See* IBC Defendants' Memorandum of Law at pp. 7-8.  First, as is set forth
herein, Plaintiffs have adequately established futility.  Moreover, the cases cited by
the IBC Defendants are markedly different from the facts presented here. *See, e.g.*
<u>Bennett v. Prudential Ins. Co.</u>, 192 Fed. Appx. 153 (3d Cir. 2006) (failure to appeal
denial of benefits after defendant insurance company denied benefits within 30
days of Plaintiff's written claim submission and provided clear and precise reasons
for the denial as well as information on how to obtain review of the denial);
<u>Regional  Employers  Assurance  Leagues  Voluntary  Employees'  Beneficiary</u>
<u>Association Trust v. Sidney Charles Markets, Inc.</u>, 2003 WL 220181 (E.D. Pa. Jan.
29, 2003) (granting 12(b)(6) motion on issue of futility where facts were clear that
no claim was ever filed by Plaintiff); <u>Gatti v. Western Pennsylvania Teamsters &</u>

11

In Berger, the Third Circuit affirmed the district court's refusal to grant summary judgment to defendants on the basis of plaintiffs' failure to exhaust administrative remedies.  In finding that the plaintiffs were not required to exhaust administrative remedies because resort to such process would have been futile, the Court focused on the defendant's existence of a fixed policy denying benefits and the failure of the defendant to comply with its own administrative procedures. The Court noted:

> The Plan's administrative procedures required the pension Board to notify a claimant in writing of the specific reasons for the denial of a claim.  Although the three employees failed to make written requests for benefits, this does not excuse Edgewater's failure to comply with the Plan's administrative procedures.  It is clear that [plaintiffs] made their desire for 70/80 retirement plain to the responsible company officials.  In addition, it is clear that the company had adopted a policy of denying all application for 70/80 retirement.  We agree with the district court that Edgewater's blanket denial of 70/80 retirement under §2(6)'s mutual interest provision and Edgewater's failure to comply with the Plan's administrative procedures weigh in favor of applying the futility exception to [Plaintiffs}.  Given these circumstances, any resort by these employees to the administrative process would have been futile.  Thus, the district court was correct in excepting these three employees from the exhaustion requirement. (citations omitted).

Id. at 916-917.

Based upon the foregoing rationale enunciated in Berger, the First Amended Complaint here clearly and convincingly establishes that any attempt by Plaintiffs to exhaust administrative remedies would have been futile.  As is set forth in Exhibit D to the First Amended Complaint, IBC's counsel, in a letter dated

---

Employers Welfare Fund, 2008 WL 794516 (W.D. Pa. March 24, 2008) (granting 12(c) motion for judgment on the pleadings).

12

February 13, 2009, clearly set forth its position concerning a blanket denial of certain coverage.  Specifically, in the February 13, 2009 letter, Michael P. Zipfel, Senior Counsel to IBC, wrote:

> …Please note that IBC will not pay any claims from Feldman's that involve a shipment of drugs outside of the State of Maryland.  Our investigation revealed that Feldman's does not have a pharmacy distribution license issued by the State of Maryland.  Therefore, since Feldman's is not licensed to distribute drugs outside of Maryland, IBC's contract with factor Health Services II, LLC does not provide coverage for those drugs.  The group contract only provides benefits for services that are rendered by a provider that is licensed where required and performing services within the scope of that licensure.

Moreover, the documentation attached to the First Amended Complaint establishes such an absolute failure on the part of IBC to follow required administrative procedure that one can only conclude that such failure was calculated to delay and harass, further supporting a finding of futility.  As set forth in Section 3.2-70-73 of Exhibit B to the First Amended Complaint, the Plan document provides for the filing of an Appeal within 180 days of receiving an adverse benefit determination. Thereafter, the Plan provides for two levels of Appeal, each of which must be decided within 30 days of submission and each of which requires that the Member be provided with a decision notice which includes the specific reason for the denial, refer to Plan provision(s) and guidelines on which the decision is made, tell the Member that relevant information is available, and describe how he can appeal to the next level. Exhibit B, Section 3.2-72. As the First Amended Complaint establishes, IBC simply ignored each and every one of these Plan provisions.

Indeed, as alleged in ¶ 21 of the First Amended Complaint, 100% of the outstanding claims at issue were submitted in excess of 60 days prior to the filing of the First Amended Complaint.  Incredibly, Exhibit A to the First Amended Complaint, a spreadsheet evidencing all outstanding claims, establishes that the most delinquent claim was aged **720** days as of the filing of the First Amended Complaint with many other claims in the **400** to **600** day delinquency range.

Notwithstanding the complete failure to pay, IBC had not sent any denial letters.  Rather, it was only after counsel became involved that IBC's counsel took the position that Plaintiffs were under investigation and, accordingly, some of the claims were "in suspense".  *See* FAC, Exhibit D).  In the February 13, 2009 letter, for the first time, IBC requested specific information to assist in its "review".  Notably, as specifically set forth in the letter, the information was requested only for plaintiff FCS, since IBC had already determined to deny all claims submitted by plaintiff Feldman's.

The requested information was provided by Plaintiffs' counsel in a letter dated March 30, 2009.  The March 30, 2009 letter also made clear that despite the fact that claims were outstanding since as early as December 2007, the first time that Plaintiffs ever learned of the alleged "investigation" was February 13, 2009.

Finally, IBC failed to provide any denial letter on a timely basis – let alone the type of letter that satisfies the requirements of the plan and those of ERISA.  Even if the February 13, 2009 letter could be determined to be a denial

14

letter – which it cannot -- it falls far short of the notice requirements set forth both in ERISA and in the Plan documents.  Indeed, in <u>DellaValle v. Prudential Ins. Co. of Am.</u>, 2006 WL 83449 (E.D. Pa. Jan. 10, 2006), cited by the IBC Defendants, the Court held that the insurer had failed to substantially comply with the ERISA's notice of denial requirements.  In <u>DellaValle</u> the insurer's denial letter "described the appeals process in a brief paragraph, stating that any 'appeal may identify the issues and provide other comments or additional evidence you wish [sic] considered'".  <i>Id.</i> at *8. In finding that the denial letter did not satisfy the requirement that the insurer provide a "description of any material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary" (<i>see</i> <u>DellaValle</u> at **7-8, citing 29 C.F.R. 2560.503-1(g)(i)-(iv)), the Court stated "…there is here an element of "hide the ball" if one is to devine (sic) from the denial letter what more Mr. DellaValle could have and should have submitted." <i>Id</i> at *8.[2]

In striking similarity, the February 13, 2009 letter from IBC sets forth a blanket denial concerning the claims of Plaintiff Feldman's.  The letter also states:

---

[2]     Moreover, the IBC Defendants' reliance on <u>DellaValle</u> (IBC Defendants' Memorandum at p. 10) concerning the exhaustion requirement is misplaced.  In <u>DellaValle</u>, the insurer had followed the required procedures outlined in its plan document.  Accordingly, a claim was filed and within 30 days a denial letter was sent.  Mr. DellaValle then filed a first appeal which was also timely denied.  Mr. DellaValle never appealed the denial of the first appeal, per the plan guidelines. The IBC Defendants' reliance on <u>DellaValle</u> is nothing more than a "heads I win, tails you lose" approach.  Indeed, the IBC Defendants would have the Court find that Plaintiffs failed to exhaust their administrative remedies where Defendant IBC, by refusing to follow plan requirements and to make any timely determination with respect to Plaintiffs' claims, effectively barred Plaintiffs' ability to follow any administrative procedures.

"[i]f you disagree with any of our findings, please forward additional documents for our consideration."   Where, as here there was no denial letter and, at best, a woefully deficient one, in which IBC continued its more than year long tactic of playing "hide the ball," the IBC Defendants' claim that Plaintiffs did not exhaust administrative remedies or did not establish futility rings hollow.

Finally, the IBC Defendants assert (Mem., p. 11) that the payment of a few small claims establishes that there is no "fixed policy" denying benefits, and therefore, no futility.   First, contrary to the IBC Defendants' assertion, a fixed policy of denial is not an unconditional requirement to establish futility.   Indeed, as set forth in Harrow, *supra* at 250, the existence of a fixed policy is one factor to be weighed by the court in determining whether to excuse exhaustion on futility grounds.   Moreover, as set forth in Exhibit D to the FAC, the IBC Defendants have denied all claims related to plaintiff Feldman's for services rendered to patients outside of Maryland.   Such denial establishes a "fixed policy".

Nor does the payment of a few small claims establish that administrative review of Plaintiffs' claims would not be futile.[3]   Indeed, a few small claims were paid only after Plaintiffs filed the original complaint in this matter.   In each case cited by the IBC Defendants (IBC Defendants' Memorandum at p. 11, n. 3), claims were paid after they had been denied and after additional information

---

[3]      In support of their argument that the appeals process is not futile because of the payment of claims, the IBC Defendants point to one claim in the amount of $18,392.49 that has been paid.  The attempt to portray this payment as somehow indicative of an appropriate appeals process is astounding in light of the fact that there still remains in excess of $2 million in unpaid claims.  See Exhibit A to FAC.

was submitted by the insured.  As set forth in the discussion above, and as alleged

in the First Amended Complaint, other than the denial of Feldman's claims, there

has been no official denial of claims and, therefore, no avenue for Plaintiffs to

resort to an appeals process.  The IBC Defendants' transparent tactic in paying

some small claims solely for the benefit of arguing that there is no futility is nothing

more than a continuation of its two year long failure to play by ERISA rules and

should not be countenanced by this Court.[4]

## IV.   The IBC Defendants Are Proper Parties Because They Were Plan Administrators

The Court also should reject the IBC Defendants' next major

argument, which is that they are not proper parties.  According to the IBC

Defendants, they should be dismissed because (1) in a case alleging wrongful

denial of benefits under ERISA, the plan is the only proper defendant, and indeed is

a necessary party; and (2) even if the universe of proper defendants is expanded to

include administrators, the Plan specifically disclaims that QCC is the administrator.

Both arguments are meritless.

In support of the first argument, the IBC Defendants rely on Guiles v.

Metropolitan Life Ins. Co., 2002 WL 229696 (E.D. Pa. Feb. 13, 2002), and similar

cases.  However, district courts in the Third Circuit are split concerning this issue,

and there is much district court authority that is contrary to Guiles.  *See* Fitzgerald

---

[4]   The IBC Defendants' alternative suggestion (IBC Defendants' Memorandum at p. 13, n.7) that the Court order a hearing on the validity of Plaintiffs' exhaustion allegation is also without merit.  A hearing is inappropriate where, as here, Defendants have completely failed to comply with the Plan's administrative requirements.

v. Bank of America Corp., 2009 WL 3806759 (E.D. Pa. Nov. 10, 2009).
Moreover, a number of federal circuits have concluded that in an action alleging
wrongful denial of benefits under ERISA, the plan administrator is a proper
defendant. *See*, *e.g.*, Hamilton v. Allen-Bradley Co., 244 F.3d 819, 824 (11th Cir.
2001) (noting that § 1132(a)(1)(B) "confers a right to sue the plan administrator
for recovery of benefits"); Hall v. LHACO, Inc., 140 F.3d 1190, 1196 (8th Cir.
1998) (determining that plan administrator is a proper party); Taft v. Equitable Fin.
Co., 9 F.3d 1469, 1471 (9th Cir. 1993) (same) and Daniel v. Eaton Corp., 839 F.2d
263, 266 (6th Cir. 1988) (noting that the proper party in an ERISA action is the
party that "is shown to control the administration of the plan").

         The Third Circuit has not held differently.  The IBC Defendants cite
Graden v. Conexant Sys. Inc., 496 F.3d 291 (3d Cir. 2007), but that case
specifically held that, with regard to a claim for denial of benefits under § 1132
(a)(1)(B), the proper defendant is the plan or the plan administrator. *Id.* at 301.
Subsequent Third Circuit cases are in accord. *See*, *e.g.*, Hahnemann Univ. Hosp.
v. All Shore, Inc., 514 F.3d 300, 308 (3d Cir. 2008).  Earlier, in Burstein v.
Retirement Account Plan for Employees of Allegheny Health Educ. & Res. Found.,
334 F.3d 365, 382 & n.23 (3d Cir. 2003), the Third Circuit concluded that plaintiff
could seek to enforce a claim for benefits against a plan administrator under §
1132(a)(1)(B). And in Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir.
1997), the Third Circuit affirmed the grant of summary judgment against a plan
administrator to recover benefits under § (a)(1)(B).  Moreover, in Metropolitan Life

Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008), the Supreme Court affirmed reversal of a summary judgment entered in favor of a plan administrator in a case alleging denial of benefits under § 1132(a)(1)(B).

In any event, the one case cited by the IBC Defendants in support of their argument concerning necessary parties provides no support for the instant motion.  In Lester v. Framatone, 2006 WL 2850012 (W.D. Va. Sept. 29, 2006), the court concluded that the proper remedy was to add the plan as a defendant, rather than to dismiss the action.

This Court also should reject the IBC Defendants' alternative argument concerning proper parties.  According to the IBC Defendants, even if administrators are proper defendants in an action alleging wrongful denial of benefits, the Plan specifically disclaims that QCC was an administrator.  However, Plaintiffs have alleged that QCC (and the other defendants) were administrators, and that allegation must be accepted as true for purposes of the instant motion to dismiss. Paragraph 7 of the First Amended Complaint states: "Defendants Independence, QCC, and CareFirst are referred to collectively herein as "Defendants."  Paragraph 11 states that Templin and Hendricks "are participants or beneficiaries of health plans insured, underwritten and/or administered by Defendants."  In addition, Paragraph 6 of the First Amended Complaint states that "insurance benefits offered through Independence are underwritten or administered by QCC."

Overall, the argument that the IBC Defendants are not proper parties should be rejected, because administrators are proper defendants, Plaintiffs have

19

alleged that Defendants (including QCC) administered the Plan, and that allegation must be accepted as true for purposes of this motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court deny in its entirety the IBC Defendants' motion to dismiss the First Amended Complaint. Plaintiffs also request oral argument.

Dated:  Berwyn, Pennsylvania
            January 5, 2010


                                  /s/ Timothy S. Cole
                                  Timothy S. Cole
                                  MantaCole, LLC
                                  1055 Westlakes Drive, Suite 300
                                  Berwyn, PA 19312
                                  (215) 325-1741 (telephone)
                                  (215) 641-0469 (facsimile)
                                  TimCole@mantacole.com

                                          AND

                                  PADUANO & WEINTRAUB LLP
                                  Anthony Paduano
                                  Jordan D. Becker
                                  1251 Avenue of the Americas, Ninth Floor
                                  New York, New York 10020
                                  (212) 785-9100 (telephone)
                                  (212) 785-9099 (facsimile)
                                  ap@pwlawyers.com
                                  jdb@pwlawyers.com
                                  (pro hac vice)

                                  Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER TEMPLIN, VIOLA HENDRICKS, | ) | |
| FELDMAN'S MEDICAL CENTER | ) | |
| PHARMACY, INC., and FCS | ) | |
| PHARMACY LLC, | ) | |
| | ) | Civil Action No. |
| | ) | 09-4092 (JHS) |
|       Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INDEPENDENCE BLUE CROSS, | ) | |
| QCC INSURANCE COMPANY, and | ) | |
| CAREFIRST, INC. | ) | |
| | ) | |
|       Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the foregoing

MEMORANDUM IN OPPOSITION TO DEFENDANTS INDEPENDENCE BLUE CROSS

AND QCC INSURANCE COMPANY'S MOTION TO DISMISS THE FIRST AMENDED

COMPLAINT with the Clerk of Court using CM/ECF.  I also certify that the

foregoing document is being served this date on all counsel through viewing on the

Court's ECF system or by electronic mail at the addresses below:

David L. Comerford, Esquire
Katherine M. Katchen, Esquire
Matthew R. Varzally, Esquire
AKIN GUMP STRAUSS HAUER FELD LLP
Two Commerce Square
2001 Market Street

Suite 4100
Philadelphia, PA  19103-7013
dcomerford@akingump.com
kkatchen@akingump.com
mvarzally@akingump.com

*Counsel for Defendants Independence Blue Cross
    and QCC Insurance Company*

AND

Jeffrey M. Kolansky, Esquire
Mark J. Oberstaedt, Esquire
Archer & Greiner, P.C.
One Liberty Place, Thirty-Second Floor
1650 Market Street
Philadelphia, PA  19103
jkolansky@archerlaw.com
moberstaedt@archerlaw.com

*Counsel for Defendant CareFirst, Inc.*


DATED:    <u>January 5, 2010</u>            <u>/s/ Timothy S. Cole</u>
                                       Timothy S. Cole