IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER TEMPLIN, VIOLA
HENDRICKS, FELDMAN'S MEDICAL
CENTER PHARMACY, INC., and FCS
PHARMACY, LLC,

    Plaintiffs,

vs.

INDEPENDENCE BLUE CROSS, QCC
INSURANCE COMPANY, and
CAREFIRST, INC.

    Defendants.

Case No.: 09-4092 (JHS)

---

**REPLY BRIEF OF DEFENDANT CAREFIRST, INC.
IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

On the Brief:
MARK J. OBERSTAEDT, ESQUIRE
Attorney I.D. No. 67026
ARCHER & GREINER
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968
(856) 795-2121

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 1

    POINT I ......................................................................................................................... 1

        THE PHARMACY PLAINTIFFS LACK DERIVATIVE STANDING
        BECAUSE THE PLAN EXPRESSLY FORBIDS AN ASSIGNMENT
        OF BENEFITS ......................................................................................................... 1

    POINT II ........................................................................................................................ 9

        CAREFIRST IS NOT A PROPER PARTY DEFENDANT ..................................... 9

    POINT III ..................................................................................................................... 13

        THE INDIVIDUAL PLAINTIFFS' CLAIMS AGAINST CAREFIRST
        SHOULD BE DISMISSED FOR FAILURE TO EXHAUST
        ADMINISTRATIVE REMEDIES ........................................................................ 13

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L.E.2d 868 (2009) ............................................. 8

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007) ...................... 1, 8

Burstein v. Retirement Account Plan for Employees of Allegheny Health
    Education & Research Foundation, 334 F.3d 365 (3d Cir. 2003) ....................... 10, 11

City of Hope National Medical Ctr. v. HealthPlus, Inc., 156 F.3d 223 (1st Cir.
    1998) ............................................................................................................................. 4, 7

Davidowitz v. Delta Dental Plan of Cal., Inc., 946 F.2d 1476 (9th Cir. 1991) .................. 4

Fisher v. Building Serv., 32 B-J Health Fund, 1997 WL 531315 (S.D.N.Y. Aug.
    27, 1997) ........................................................................................................................... 2

Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue and Shield of New
    Jersey, Inc., 2009 WL 3233427 (D.N.J. Sept. 30, 2009) ............................................. 2, 3

Gregory Surgical Services, LLC v. Horizon Blue Cross and Blue Shield of New
    Jersey, Inc., 2007 WL. 4570323 (D.N.J. Dec. 26, 2007) .......................................... 2, 3, 5

Guiles v. Metropolitan Life Insurance Co., 2002 WL 229696 (E.D. Pa. Feb 13,
    2002) .............................................................................................................................. 10

Hall v. LHACO, 140 F.3d 1190 (8th Cir. 1998) ............................................................... 12

Harrow v. Prudential Insurance Co. of America, 279 F.3d 244 (3d Cir. 2002) ............... 14

Health Scan, Ltd. v. Travelers Insurance Co., 725 F. Supp. 268 (E.D.Pa. 1989) ............... 3

Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264, 268 (1st Cir. 1994) ............................. 7

Le-Tourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc., 298
    F.3d 348 (5th Cir. 2002) ............................................................................................. 3, 4

Liberty & Prosperity 1776, Inc. v. Corzine, 2009 WL 537049 (D.N.J. March 3,
    2009) ................................................................................................................................ 1

Martin v. Arkansas Blue Cross and Blue Shield, 299 F.3d 966 (8th Cir. 2002) ................ 6

Metropolitan Life Insurance Co. v. Glenn, 128 S. Ct. 2343 (2008) ................................. 11

Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir. 1997)..........................................11

Northeast Department. ILGWU Health & Welfare Fund v. Teamsters Local
    Union No. 229 Welfare Fund, 764 F.2d 147 (3d Cir. 1985) ..........................................2

North Jersey Center for Surgery, P.A. v. Horizon Blue Cross & Blue Shield New
    Jersey, Inc., 2008 WL 4371754 (D.N.J. Sept. 18, 2008).................................................8

Physicians Multispeciality Group v. Health Care Plan of Horton Homes, Inc., 371
    F.3d 1291 (11th Cir. 2004) ..............................................................................................3

St. Francis Reg'l Medical Ctr. v. Blue Cross & Blue Shield of Kan., Inc., 49 F.3d
    1460 (10th Cir. 1995) ......................................................................................................4

Taft v. Equitable Finance Co., 9 F.3d 1469 (9th Cir. 1993).............................................12

Wayne Surgical Ctr., L.L.C. v. Concentra Preferred System, Inc., 2007 WL
    2416428 (D.N.J. Aug. 20, 2007) .....................................................................................2

**FEDERAL STATUTES**

29 U.S.C. §1002 (16).........................................................................................................12

## INTRODUCTION

In its initial brief, CareFirst explained that plaintiffs' Amended Complaint must be dismissed as a matter of law because it has the wrong plaintiffs, the wrong defendants, and was brought in the wrong forum. None of the arguments that plaintiffs advance in their opposition brief saves their Amended Complaint from these three fatal flaws.

## ARGUMENT

Throughout both their opposition brief and their Amended Complaint, plaintiffs repeatedly attempt to group all of the defendants together in wholesale generalizations when, in fact, the limited details alleged in the Amended Complaint clearly relate to just one of the defendants standing alone. This Court does need to accept as true generalized allegations attributed to all "defendants" in the Amended Complaint where the specific allegations clearly relate to just one of the several defendants. See, e.g., Liberty & Prosperity 1776, Inc. v. Corzine, 2009 WL 537049 at * 8 (D.N.J. March 3, 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 n. 3 (2007)).

## POINT I

**THE PHARMACY PLAINTIFFS LACK DERIVATIVE STANDING BECAUSE THE PLAN EXPRESSLY FORBIDS AN ASSIGNMENT OF BENEFITS**

In its initial brief, CareFirst explained that the Pharmacy Plaintiffs did not have derivative standing because (1) derivative standing is not available under ERISA where the plan expressly prohibits such assignments, and (2) because the Pharmacy Plaintiffs did not provide the Court with the actual assignment documents. CF Br. at 5-6. In their opposition brief, the Pharmacy

Plaintiffs make five arguments in support of their contention that the plan's anti-assignment provision is unenforceable.

First, the Pharmacy Plaintiffs argue that "healthcare benefits are generally assignable." Pl. Br. at 8 (citing Wayne Surgical Ctr., L.L.C. v. Concentra Preferred Sys., Inc., 2007 WL 2416428 at *4 (D.N.J. Aug. 20, 2007); Fisher v. Bldg. Serv., 32 B-J Health Fund, 1997 WL 531315 at *4 (S.D.N.Y. Aug. 27, 1997)). This argument attempts to create a false issue. The issue is not whether healthcare benefits are "generally assignable," but whether ERISA will disregard a provision in the participant's plan which expressly prohibits an assignment of benefits. Neither of the two cases cited by the Pharmacy Plaintiffs stand for that proposition because neither case involved an anti-assignment provision in the governing plan documents. Thus, neither case addressed the issue that is now before this Court.

Second, the Pharmacy Plaintiffs argue that "the Third Circuit has not ruled on whether anti-assignment provisions in healthcare plans are enforceable." Pl. Br. at 8 (citing Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue and Shield of New Jersey, Inc., 2009 WL 3233427 at *4 (D.N.J. Sept. 30, 2009); Gregory Surgical Servs., LLC v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 2007 WL 4570323 at *3 (D.N.J. Dec. 26, 2007)). The Pharmacy Plaintiffs further argue that "given the absence of a ruling from the Third Circuit, it cannot be concluded that the anti-assignment provision relied upon by CareFirst is enforceable." Pl. Br. at 8-9.[1]

---

[1] The Third Circuit has actually gone further and explained that claims by any assignee (regardless of whether there is an anti-assignment provision in the plan) are not permissible under ERISA §502(a)(1)(B). In Northeast Department. ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147, 154 n.6 (3d Cir. 1985), the Third Circuit explained that "Congress simply made no provision in §[502](a)(1)(B) for persons other than participants and beneficiaries to sue, including persons purporting to sue on their behalf."

2

The Pharmacy Plaintiffs' argument is misleading at best because the cases they cite expressly recognize that other federal courts throughout the country have held that anti-assignment provisions are enforceable and that they would do the same so long as there was no factual reason to rule that the specific provisions at issue were unenforceable. For example, in Gregory Surgical Services, after noting that the Third Circuit had not yet ruled on the specific issue, the court nevertheless cited to other federal courts which had enforced such provisions and further explained that the relevant caselaw held that "the presence of an anti-assignment provision in the Horizon plans at issue could negate [the assignee's] standing to sue Horizon for unpaid benefits, unless [the assignee] submits evidence demonstrating that the anti-assignment provision is unenforceable." Gregory Surgical Services, 2007 WL 4570323 *3. See also Glen Ridge Surgicenter, 2009 WL 3233427 at *4 (citing additional cases which had held that anti-assignment provisions are enforceable). Clearly, these cases support CareFirst's position and not that of the Pharmacy Plaintiffs.

In fact, the Pharmacy Plaintiffs have not cited a single case where a court ruled that anti-assignment provisions are generally unenforceable under ERISA. To the contrary, the Circuit Courts around the country have determined that anti-assignment provisions such as the one at issue here are to be given their full force and effect under ERISA. See, e.g., Physicians Multispeciality Group v. Health Care Plan of Horton Homes, Inc., 371 F.3d 1291, 1295 (11th Cir. 2004) (joining "the majority of federal courts that have concluded that an assignment is ineffectual if the plan contains an unambiguous anti-assignment provision"); Le-Tourneau

---

Thus, the Third Circuit has indicated that assignees do not have standing regardless of whether or not there is an anti-assignment provision. While it may be fairly argued the Court's explanation was dicta, it is has been followed by district courts within the Circuit. See, e.g., Health Scan, Ltd. v. Travelers Ins. Co., 725 F. Supp. 268, 269 (E.D.Pa. 1989).

3

Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc., 298 F.3d 348, 352 (5th Cir. 2002) (noting the absence of any prohibition on the inclusion of an anti-assignment provision in an employee benefit plan and concluding that "the plain wording of the instant anti-assignment clause leads inexorably to the conclusion that any purported assignment of benefits from [the beneficiary] to [the provider] would be void"); City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc., 156 F.3d 223, 229 (1st Cir. 1998) ("Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties"); St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc., 49 F.3d 1460, 1464-65 (10th Cir. 1995) ("We interpret ERISA as leaving the assignability of benefits to the free negotiations and agreement of the contracting parties"); Davidowitz v. Delta Dental Plan of Cal., Inc., 946 F.2d 1476, 1478 (9th Cir. 1991) ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions.")

Despite this overwhelming authority, the Pharmacy Plaintiffs ask this Court to rule that the anti-assignment provision in this case is unenforceable simply because the Third Circuit has not yet taken a position on the exact issue. The fact that the Third Circuit has not yet ruled on the issue does not equate to a "pass" for the Pharmacy Plaintiffs from this Court. Other federal courts throughout the country have ruled consistently and uniformly on this issue: non-assignment clauses are enforceable. This Court has the right to follow that uniform authority and rule similarly, even in the absence of Third Circuit guidance. Accordingly, the Pharmacy Plaintiffs' second argument is without merit.

Third, the Pharmacy Plaintiffs argue that Exhibit "D" to the First Amended Complaint indicates that "some payments" were made directly to the Pharmacy Plaintiffs and, therefore, the

Court should refuse to enforce the anti-assignment provision on either waiver or estoppel grounds. Pl. Br. at 9. This argument fails both under the law and the facts.

As a threshold matter, the Pharmacy Plaintiffs cannot seriously argue that Exhibit "D" to the Amended Complaint contains any "evidence" of waiver or estoppel by CareFirst. Exhibit "D" is a letter between counsel for Independence Blue Cross ("IBC") and counsel for plaintiffs. It refers only to IBC and does not even reference CareFirst. Even if it did, it merely states that "IBC intends to process and pay the following claims that pertain to Mr. Christopher Templin, in accordance with the terms of his group coverage" and it states that, in so doing, IBC expressly reserved all rights and defenses in paying those claims. (Exhibit D to Amended Complaint at 1). Therefore, not only does the letter fail to establish anything at all with respect to CareFirst, but it also fails to establish any waiver on behalf of IBC.

Even more importantly, the doctrine of equitable estoppel requires that "another person relied in good faith on the party's conduct and was injured as a result." <u>Gregory Surgical Services</u>, 2007 WL 4570323 at *3. Here, there is nothing in the Amended Complaint which indicates that the Pharmacy Plaintiffs "relied in good faith" on CareFirst's alleged conduct.[2] In fact, the Amended Complaint says nothing of substance about CareFirst's actual conduct, let alone alleges that the Pharmacy Plaintiffs relied to their detriment on anything that CareFirst actually did or said. For example, at no point do the Pharmacy Plaintiffs contend that CareFirst said it was going to pay the claims directly to them nor do they contend that they did anything in

---

[2] The <u>Gregory</u> case contained a set of facts that do not exist here, specifically an ongoing relationship between the insurer and the healthcare provider that included "discussions of patient coverage under healthcare policies, direct submissions of claim forms, direct reimbursement of medical costs, and engagement in appeal processes." <u>Gregory Surgical Services</u>, 2007 WL 4570323 at *4. Here, there are no allegations in the Amended Complaint that come remotely close to establishing these types of facts between the Pharmacy Plaintiffs and CareFirst.

reliance on such a statement. Accordingly, the argument that the doctrines of equitable estoppel or waiver apply here is unsustainable.

Fourth, the Pharmacy Plaintiffs contend that "at least one federal Circuit has held that where, as here, the anti-assignment provision merely prohibits the right to receive benefits, and does not expressly prohibit the assignment of causes of action arising after the denial of benefits, the provision does not operate to preclude standing." Pl. Br. at 9 (citing Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan, 25 F.3d 616, 619 (8th Cir. 1994)). The Pharmacy Plaintiffs do not disclose the fact that this case was abrogated on other grounds by the Eighth Circuit in Martin v. Arkansas Blue Cross and Blue Shield, 299 F.3d 966 (8th Cir. 2002), nor do they cite any cases in this Circuit that have subscribed to its tortured distinction between "benefits" and "causes of action."

Moreover, the Eighth Circuit's decision, and particularly its hyper-technical distinction, has been criticized as failing ERISA's "plain meaning" test. For example, in refusing to adopt the distinction, the First Circuit explained that anti-assignment clauses should be interpreted according to their plain meaning rather than straining them to find distinctions that are not fairly read into the words the parties used:

> One court of appeals has adopted this distinction, finding that a non-assignment clause which read that "[n]o employee shall at any time . . . have any right to assign his rights or benefits" did not prohibit the assignment of "causes of action arising after the denial of benefits as distinguished from "rights or benefits." See Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters, and Engineers Health and Welfare Plan, 25 F.3d 616, 619 (8th Cir. 1994). We think this approach would strain the plain meaning of the contract language at issue in this case that "[a]ll entitlements of a member to receive covered rights are personal and may not be assigned." As we have previously stated, "straightforward language in an ERISA-regulated insurance policy should be given its natural meaning."

City of Hope Nat. Med. Center, 156 F.3d at 229 (citing Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264, 268 (1st Cir. 1994)).[3]

Even if this Court were to follow the Eighth Circuit's reasoning and look for distinctions, the plain language of the anti-assignment provision here speaks directly to payment, which is different from the more limited provision in Lutheran Medical Center which focused on benefits. Thus, the anti-assignment language in the plan here speaks directly to the issue before the Court, which is the right to payment for services allegedly rendered.[4]

Fifth, the Pharmacy Plaintiffs argue that a person does not lack standing to claim benefits under ERISA simply because "it may turn out that he or she is not entitled to prevail and ultimately collect the benefits." Pl. Br. at 10 (quoting Chiropractic Nutritional Assocs., 669 A.2d at 981). Of course, what the court was saying in Chiropractic Nutritional Assocs. was that the legal requirement of standing is unrelated to the likelihood of success on the underlying cause of action. That is not a point of dispute and it is not what CareFirst is contending here.

---

[3] An examination of the Eighth Circuit's decision demonstrates that the Court was persuaded by the fact that, if it enforced the non-assignment clause, the claim would simply revert back to the participant and that, after delays, would be before the Court anyway. Thus, the Court's holding was in significant part result-driven in an effort to avoid unnecessary delay and expense. Of course, that same consideration is not at issue here because Messrs. Templin and Hendricks are already named plaintiffs. As such, there is no need to grant derivative standing when the real parties in interest are already before the Court (albeit with claims that are not viable).

[4] The Pharmacy Plaintiffs also argue that "the Superior Court of Pennsylvania agrees with the Eighth Circuit." Pl. Br. at 10 (citing Chiropractic Nutritional Assocs., Inc. v. Empire Blue Cross & Blue Shield, 669 A.2d. 975, 983 (Pa. Super. 1995)). The decision in this case was also result driven, but for different reasons. In Chiropractic Nutritional Assocs., the employee handbook informed participants that they could assign their rights under the benefits plan, while the plan documents said otherwise and the plaintiffs relied upon the handbook. In addition to the contradictory statements, the court also found that the plan had routinely paid the provider directly. Faced with these compelling facts, the state court followed the Eighth Circuit's "cause of action" distinction as grounds to refuse to enforce the anti-assignment provision.

As CareFirst explained in its opening brief, even if the anti-assignment provision was unenforceable, the Pharmacy Plaintiffs still have the burden of proving that they have a valid assignment and, in this case, they failed to meet that burden. CF Br. at 6-7. In their opposition brief, the Pharmacy Plaintiffs concede that they did not provide evidence of the actual assignment documents by attaching them to their First Amended Complaint. Instead of explaining why they failed to do so, or otherwise trying to explain what those documents actually say, the Pharmacy Plaintiffs argue that it is enough for them to merely allege in a generic sense that an assignment was given to them and that this Court must accept that allegation as true "even after Twombly and Iqbal." Pl. Br. at 7-8.

This argument ignores the law and, if accepted, would force this Court to guess at what those assignments actually say. Especially after Twombly[5] and Iqbal,[6] conclusory allegations are no longer enough. This issue was addressed head on in North Jersey Center for Surgery, P.A. v. Horizon Blue Cross & Blue Shield New Jersey, Inc., 2008 WL 4371754 at *4 (D.N.J. Sept. 18, 2008). In that case, both the magistrate and district court judges concluded that merely alleging the existence of an assignment was not sufficient to establish an assignment of benefits under ERISA for purposes of determining standing. Rather, these courts held that where the alleged right to assert a claim for denial of benefits rests upon an assignment, the failure to produce the proof of the actual assignment documents and the language therein "leaves the Court with grave doubt that plaintiff would have standing to sue under ERISA."[7] Because it is the Pharmacy

---

[5] Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

[6] Ashcroft v. Iqbal, 129 S.Ct. 1937, 173 L.E.2d 868 (2009).

[7] The Pharmacy Plaintiffs attempt to distinguish this case from the holding in the North Jersey Center for Surgery case solely because that case came before the court on a motion to remand.

Plaintiffs' burden to prove their derivative standing, the Pharmacy Plaintiffs must do more than simply say that the assignments exist in a single paragraph in their Amended Complaint. (See Amended Complaint at ¶11). Because they claim the assignments were made in writing when services were allegedly provided, it is not too much to ask the Pharmacy Plaintiffs to prove it by providing the assignment documents. Indeed, the Pharmacy Plaintiffs have not provided this Court with any authority which holds that they can simply allege generically that an assignment exists and thereby force the Court and the defendants to take their word as to what rights, if any, those documents actually assign.

Because the anti-assignment provision in the plan document is enforceable and, even if it was not, the Pharmacy Plaintiffs have failed to provide the most critical piece of evidence necessary to determine their rights under the alleged assignments, they have not established standing to sue under ERISA.

## POINT II

### CAREFIRST IS NOT A PROPER PARTY DEFENDANT

As CareFirst explained in its initial brief, CareFirst is not a proper party defendant to this action because, despite the split of authority among district courts within the Third Circuit, the opinions that hold closest to the text of the ERISA statute have concluded that the ERISA plan is

---

While that was the procedural posture at issue, it does not change the fact that the Court concluded that it needed to analyze the actual assignment documents to determine what the documents said before it could determine whether the plaintiff had standing to sue under ERISA. In that respect, the procedural context of the case is meaningless. What is important is what evidence the Court needed at the pleading stage to determine whether the plaintiff had standing to sue under ERISA and, in the context of making that decision, the Court concluded that the actual assignment documents were critical. This case is no different and the Pharmacy Plaintiffs should not be held to a lower standard of proof.

the only proper party defendant in an ERISA denial of benefits case under ERISA §502(a)(1)(B). CF Br. at 7-12.

CareFirst acknowledged in its initial brief that some courts have held that fiduciaries to an ERISA plan may sometimes be appropriate defendants in an ERISA §502(a)(1)(B) case. CF Br. at 8-9. As expected, in their opposition brief, plaintiffs urge this Court to side with those district courts.[8] But plaintiffs are not arguing here for the Court to impose liability on CareFirst because it is fiduciary; in fact, plaintiffs' opposition brief makes clear that there are no allegations in the Amended Complaint that can be read to conclude that CareFirst is a fiduciary under ERISA. Instead, plaintiffs try to stretch the holding of the "fiduciaries can be defendants" line of cases and have this Court hold that "administrators" who are not fiduciaries are also proper party defendants under ERISA. This argument is without legal merit because the cases plaintiffs rely upon do not support their contention.

For example, while plaintiffs argue that Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365 (3d Cir. 2003) stands for the proposition that the Third Circuit "concluded that plaintiff could seek to enforce a claim for benefits against a plan administrator under §(a)(1)(B)," that is not the case at all. In Burstein, the plaintiffs' pension plan failed and it was subsequently terminated and taken over by the federal Pension Benefit Guaranty Corporation ("PBGC"), which subsequently not only took over

---

[8] Plaintiffs merely acknowledge the split and urge the Court to choose their side without explaining why their side presents the better reasoned conclusion. Without repeating the arguments made in our initial brief, CareFirst respectfully submits that the detailed analysis set forth in Guiles v. Metropolitan Life Ins. Co., 2002 WL 229696 at *1-2 (E.D. Pa. Feb 13, 2002), reaches the correct conclusion and we respectfully urge this Court to reach the same result. (See CF Br. at 7-10).

the administration of the plan but also, in all relevant respects, became the plan itself because it was legally obligated to fund the benefits and serve as the statutory trustee.

At the oral argument, the Third Circuit panel asked plaintiff's counsel "I don't understand how any one of the defendants you have named can be liable other than the Plan. . . ." Plaintiff's counsel responded that the administrators would be defendants only on the breach of fiduciary duty claim, not on the denial of benefits claim, and further explained that plaintiff's benefits claim against the PBGC was only in its capacity "as the successor in interest to the Plan." Id. at 372 n.11. The Third Circuit opinion further made clear that any benefit recovery that might be had in that capacity would be "allocated from Plan assets." Id. at 382 n.23. Thus, the case does not stand for the proposition that all persons that perform administrative functions are proper party defendants in an ERISA §501(a)(1)(B) case and we have not uncovered a single case that has interpreted Burstein in the fashion that plaintiffs now suggest.

Plaintiffs' reliance on Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir. 1997) is equally misplaced. While plaintiffs contend that the case stands for the proposition that the "Third Circuit affirmed the grant of summary judgment against a plan administrator to recover benefits under §(a)(1)(B)," that is not the case at all. In fact, the plan administrator, Metropolitan Life Insurance Company, was not a party to the case. The only defendant was the plan sponsor. While the court's opinion refers repeatedly to the "plan administrator's decision," no relief was sought from the plan administrator.

Finally, plaintiff's contention that the Supreme Court's decision in Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343 (2008) demonstrates that plan administrators are proper defendants in ERISA denial of benefits cases is also fundamentally wrong. In Glenn, Met Life was both the administrator and the insurer that paid the claims out of its own assets. The question before the

Supreme Court was whether it was appropriate to utilize a "sliding scale" scope of review in reviewing Met Life's administrative denial of benefits based upon its conflict of interest as both insurer and claims administrator. The case had absolutely nothing to do with whether a person who performs administrative functions is a proper party defendant under ERISA §501(a)(1)(B) because the Supreme Court did not address that issue.[9]

Therefore, plaintiffs have cited no viable authority for their contention that all persons who perform administrative functions are proper party defendants under ERISA § 502(a)(1)(B).

Even if ERISA allowed claims under §502(a)(1)(B) against "administrators," the Amended Complaint does not sufficiently allege that CareFirst is an administrator. Performing administrative functions and being a statutory administrator are two separate things under ERISA. The statute defines "administrator" in 29 U.S.C. §1002 (16)(A) to be limited to the following persons or entities:

> The term "administrator" means
>
> (i)   the person specifically so designated by the terms of the instrument under which the plan is operated;
>
> (ii)  if the administrator is not so designated, the plan sponsor; or

---

[9] The cases from outside the Third Circuit cited by plaintiffs in support of their contention that "a number of federal circuits have concluded that in an action alleging wrongful denial of benefits under ERISA, the plan administrator, is a proper defendant," Pl. Br. at 11, do not stand for the proposition cited by plaintiffs. The decision in Hall v. LHACO, 140 F.3d 1190 (8th Cir. 1998) did not directly address the issue of who is a proper party defendant under ERISA, but did explain that "[b]enefits due under the term of Hall's plan. . . can only be obtained from the Plan itself." Id. at 1196. The only discussion of the plan administrator is dicta explaining why a former plan administrator would not be in a position to provide injunctive relief. In Taft v. Equitable Fin. Co., 9 F.3d 1469 (9th Cir. 1993), the court used the term "plan administrator" as a substitute for "fiduciary" as is evident from its discussion about the exercise of discretionary authority. The court did not perform an analysis of whether a plan administrator who is not a fiduciary is also a proper party defendant. Id. at 1471.

> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

Here, plaintiffs do not plead that CareFirst falls within any of these three categories. Instead, plaintiffs merely allege, at most, that CareFirst performs some administrative functions. Specifically, ¶ 11 of the Amended Complaint alleges that Templin and Hendricks "'are participants or beneficiaries of health plans insured, underwritten and/or administered by Defendants.'" Pl. Br. at 12 (quoting Am. Compl. at ¶ 11). This is a far cry from alleging that CareFirst is a plan administrator under ERISA's definition.

As CareFirst stated in its opening brief, at most, some courts in this Circuit have been willing to consider allowing ERISA §502(a)(1)(B) claims against ERISA fiduciaries, while others have held that ERISA permits such claims only against the plan itself. The courts in this Circuit have not stretched so far as to allow ERISA §502(a)(1)(B) claims against persons who merely perform non-discretionary administrative functions, which is -- at most -- what CareFirst is alleged to have done here. Therefore, no matter what standard the Court applies, the Amended Complaint is not sufficient to withstand a motion to dismiss because there is nothing in the four corners of the pleading that demonstrates that CareFirst is a proper party defendant.

## POINT III

### THE INDIVIDUAL PLAINTIFFS' CLAIMS AGAINST CAREFIRST SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

In CareFirst's initial brief, it explained that plaintiffs' ERISA claims must be dismissed because of their failure to exhaust their mandatory administrative remedies. CF Br. at 12-14. In their opposition brief, plaintiffs do not deny the fact that the plan proscribes a mandatory

administrative process nor do they deny that they did not participate in that administrative process.

Rather, plaintiffs argue that it would be futile for them to follow the administrative process with CareFirst because the informal efforts they allegedly made with respect to IBC failed to reach a result satisfactory to them. Plaintiffs cite no authority for the proposition that they should be absolved from their obligation to follow the administrative process with respect to CareFirst because of their informal efforts with IBC. We are not aware of a single case which holds that a party that claims that it would be futile to go through the administrative process with respect to one defendant can transfer that excuse to a second defendant.

Even if they could rely on their informal discussions with another defendant, plaintiffs make no attempt to explain how they satisfy the five Harrow[10] factors, despite acknowledging that the five-part test governs the futility analysis. Pl. Br. at 13. Specifically, plaintiffs do not contend that they diligently sought out administrative relief. They do not argue that they acted reasonably in seeking immediate judicial review. They do not allege that CareFirst (as opposed to IBC) has a fixed policy of denying benefits. They do not argue that CareFirst failed to comply with its own internal administrative procedures. Finally, they do not contend that there is any testimony of any plan administrators that any administrative appeal would be futile. Having failed to even argue, let alone demonstrate, that they can meet any of the Harrow factors for futility, plaintiffs' argument that their failure to exhaust their administrative remedies should be excused on futility grounds is unsustainable.

---

[10] Harrow v. Prudential Ins. Co. of America, 279 F.3d 244, 249-50 (3d Cir. 2002).

## **CONCLUSION**

For the foregoing reasons, CareFirst respectfully requests that this Court grant its motion to dismiss plaintiffs' Amended Complaint.

>                                ARCHER & GREINER
>                                A Professional Corporation
>                                One Centennial Square
>                                P.O. Box 3000
>                                Haddonfield, NJ 08033-0968
>                                (856) 795-2121
>                                Attorneys for CareFirst, Inc.
>
>                                By: ___/s/ Mark J. Oberstaedt___
>                                    Mark J. Oberstaedt, Esquire

Dated: January 11, 2010.

5198651v1