PADUANO & WEINTRAUB LLP
1251 AVENUE OF THE AMERICAS
NINTH FLOOR
NEW YORK, NEW YORK 10020

TELEPHONE: 212-785-9100
TELECOPIER: 212-785-9099

September 13, 2010

**VIA FACSIMILE REGULAR MAIL AND PACER**

The Honorable Joel H. Slomsky
United States District Judge
United States District Courthouse
  Eastern District of Pennsylvania
601 Market Street
Philadelphia, Pennsylvania 19106-1797

    Re: Templin, et al. v. Independence Blue Cross, et al.
      (E.D. Pa. No. 09-4092)

Dear Judge Slomsky:

    We represent Plaintiffs in the above-referenced action.

    I write to advise the Court concerning Defendants' failure to abide by the Opinion and Order of this Court dated July 27, 2010 (the "Order") which set forth a clear and unambiguous time frame within which to conduct an administrative review of, and make a determination on, Plaintiffs' claims.

    Specifically, the Order provides that "Plaintiffs should submit their initial request for review on appeal of all disputed claims within thirty (30) days of [the Order]. Where Defendants have allegedly failed to render any initial decision on a claim, Plaintiffs should consider the claim as denied and appeal the claim" (Order at p. 5). Further pursuant to the Order, the "Defendants are to evaluate each claim on appeal and issue a Level One decision on the appeal within thirty (30) days of receipt of the appeal request in conformance with the procedures described in the Plan". (Id.)

    Plaintiffs have fully complied with the Order. Plaintiffs received the Order on July 28, 2010 and hand-delivered to the IBC Member Appeals Department (with e-mail copies simultaneously sent to Defendants' counsel) their Level One Appeal on July 30, 2010. A copy of Plaintiffs' Level One Appeal is annexed hereto as Exhibit A. (The thumb drive which contained documents specific to each claim

PADUANO & WEINTRAUB LLP

Hon. Joel H. Slomsky
September 13, 2010
2

referenced in the Level One Appeal is omitted for purposes of this letter).  As a result, Defendants were required to issue their Level One Appeal Decision on or before August 30, 2010.  This did not happen.

On September 2, 2010, we received defendant IBC's written determination dated August 30, 2010.  The envelope containing this partial determination was post-marked on August 31, 2010.  Defendants' determination provided a response with respect to eight invoices, despite the fact that Plaintiffs' Level One Appeal included a total of 38 invoices.  These eight invoices relate to $82,255.94 of the $2,323,878.78 that the 38 invoices represent.  A copy of the August 30, 2010 Level One Appeal Decision concerning these eight unpaid invoices is attached hereto as Exhibit B.

It was not until September 8, 2010 that we received a written communication from IBC's counsel advising us that Defendants had purportedly been in direct communication with three plan members (Plaintiff Viola Hendrick, Ms. D.R. and Mr. M.C.) because, according to Defendants, without signed appeals authorizations, the decisions were required to be sent to the members directly.[1]  A copy of the September 8, 2010 letter is annexed hereto as Exhibit C.  (To this day, we do not have what, if anything, was allegedly sent by IBC).  Defendants' position concerning these member appeals flies in the face of the Order, Defendants' prior actions and, most important, the assignment of benefit forms signed by each of these members authorizing plaintiffs Feldman's and/or FCS Pharmacy to directly receive reimbursement on their claims.  Accordingly, Defendants have defaulted under the Order concerning 30 of the 38 appealed claims.

Defendants' flouting of the Order based on some "privacy" concern is in bad faith at this stage because they have always dealt exclusively with the

---

[1]    By letter dated August 10, 2010 we were advised that a fourth member, Mr. J.M., whose invoices are also the subject of this lawsuit, after being examined, ex parte, by an IBC representative, had indicated to IBC that he wanted his appeal withdrawn.  As a result, in the September 8 correspondence, IBC has taken the position that there is no "appeal" on behalf of the four invoices related to Mr. J.M. totaling $165,983.40 in unpaid benefits.  As set forth more fully above, this position is not consistent with the Order, Defendants' prior actions, or the assignments pursuant to which Mr. J.M. assigned his benefits to the pharmacies which are Plaintiffs in this action.

PADUANO & WEINTRAUB LLP

Hon. Joel H. Slomsky
September 13, 2010
3

Plaintiff pharmacies concerning payment of claims and the exchange of information. This is as a result of the Assignment of Benefit Forms signed by each of the four members at issue. Copies of these Assignment of Benefit forms are annexed hereto collectively as <u>Exhibit D</u>. Indeed, after the First Amended Complaint was filed, pursuant to the Court's direction, the parties participated in a number of conversations concerning each of the invoices and freely exchanged information concerning the invoices. For Defendants to now take the position that they are prohibited from paying the claims based upon the alleged protests of Mr. J.M., or based on whatever they sent <u>ex parte</u> to Ms. Hendrick, Ms. D.R. and Mr. M.C., flies in the face of common sense and their prior actions. Finally, the Order simply does not contemplate that authorizations are required to be received for purposes of processing the Level One Appeals.

It is apparent from the Order that the Court carefully crafted an administrative review process in an effort to require the Defendants to finally render a decision on Plaintiffs' claims in a thoughtful and expeditious manner. Instead, Defendants have concocted a new, bad faith obstacle to prevent Plaintiffs from receiving the benefits which were due them for several years. Accordingly, Plaintiffs request the Court's prompt attention.

Plaintiffs are available for a conference at the Court's convenience. Plaintiffs seek to have the Court return this case to active status and set an expedited discovery schedule.

Respectfully,

Anthony Paduano /&V

Anthony Paduano

[Enclosures]

cc:   Katherine Katchen, Esq. (via electronic mail)
      Mark Oberstaedt, Esq. (via electronic mail)
      Timothy Cole, Esq. (via electronic mail)

# EXHIBIT A

PADUANO & WEINTRAUB LLP
1251 AVENUE OF THE AMERICAS
NINTH FLOOR
NEW YORK, NEW YORK 10020

TELEPHONE: 212-785-9100
TELECOPIER: 212-785-9099

July 30, 2010

**VIA HAND DELIVERY and FEDERAL EXPRESS**

Independence Blue Cross                  QCC Insurance Company
Member Appeals Department                Member Appeals Department
1901 Market Street                       1901 Market Street
Philadelphia, Pennsylvania 191013        Philadelphia, Pennsylvania 19103

CareFirst, Inc.
Member Appeals Department
10455 Mill Run Circle
Owings Mills, Maryland 21117

        Re:   Templin, et al. v. Independence Blue Cross, et al.
              (E.D. Pa. No. 09-4092)

Ladies and Gentlemen:

        Pursuant to an opinion and order of the United States District Court for the Eastern District of Pennsylvania dated July 27, 2010 (annexed hereto as Exhibit A (the "Court Order")), we hereby appeal the denial of benefits for the specific patients and invoices set forth below on behalf of our clients Christopher Templin, Viola Hendricks, Feldman's Medical Center Pharmacy, Inc. ("Feldman's) and FCS Pharmacy LLC ("FCS").

        The Court Order provides that an "adverse benefit determination" has been presumed for all claims on which we allege that Defendants have failed to render any initial decision (Court Order at page 5).   Set forth below are those claims which are subject to the appeals process pursuant to the Order.   Although we believe that Defendants' conduct has been orchestrated and in bad faith, we request that these denials be reviewed in accordance with the Level One Appeals process set forth in the Personal Choice Health Benefits Plan between QCC Insurance Company ("QCC") and Factor Health Service II, LLC (the "Plan").

PADUANO & WEINTRAUB LLP

Independence Blue Cross
Member Appeals Department
July 30, 2010
2

Because you have had all information pertaining to these claims for a very long time, we request that this appeal be expedited.[1]

Claim History

Beginning in December 2007 Feldman's and FCS – two pharmacies that provide factor blood clotting agent to hemophilic patients and to certain patients covered by the Plan -- submitted invoices to Independence Blue Cross ("IBC") for payment. Despite repeated communications with IBC, and despite the fact that the claims have never been "denied", they remained unpaid through September 2009. Accordingly, on September 9, 2009, a lawsuit was filed in the United States District Court for the Eastern District of Pennsylvania alleging violations of ERISA Section 502 based upon the refusal of IBC, QCC and CareFirst, Inc. ("CareFirst") to pay these valid invoices. As of September 9, 2009, the date the original complaint was filed, there were in excess of $2.2 million in outstanding invoices.

As a result of the filing of the lawsuit, certain small claims were paid between September and November 2009. Thereafter, on December 2, 2009 a First Amended Complaint was filed. As of November 30, 2009, outstanding invoices amounted to $2.1 million and the most aged claim had been pending **for over 700 days** – despite the fact that there had still been **no denial of the claim in contravention of the Plan.**

In late December, 2009 IBC, QCC and CareFirst filed Motions to Dismiss the Complaint alleging, among other things, that Plaintiffs had failed to exhaust their administrative remedies. In the Court Order, the Court denied the motions to dismiss and ordered that the parties proceed to administrative review of all claims for which there had been a supposed "adverse determination." Specifically, the Court determined that the claims for which no denial had issued would be treated as subject to the appeals process set forth in the Plan. Accordingly, we file the instant Level One Appeal for the following claims under the authority of the Court Order.

---

[1]    Enclosed herewith is a thumb drive containing the First Amended Complaint and Exhibits thereto filed in the District Court.

PADUANO & WEINTRAUB LLP

Independence Blue Cross
Member Appeals Department
July 30, 2010
3

## Claims on Which No Benefits have Been Paid

| Invoice No. | Patient/Member | Date of Service | Amount Owed |
|---|---|---|---|
| 11885 | Shawn Banks/Viola Hendricks | December 6, 2007 | 2,598.75 |
| 12159 | Banks/Hendricks | January 4, 2008 | 24,151.68 |
| 13562 | Banks/Hendricks | April 26, 2008 | 24,552.00 |
| 13880 | Banks/Hendricks | May 27, 2008 | 23,758.40 |
| 15774 | Banks/Hendricks | October 29, 2008 | 24,546.40 |
| 16170 | Banks/Hendricks | November 26, 2008 | 24,936.80 |
| 18082 | Banks/Hendricks | May 4, 2009 | 24,844.08 |
| 18383 | Banks/Hendricks | June 3, 2009 | 24,175.52 |
| 15688 | Christopher Templin | October 22, 2008 | 32,105.18 |
| 18796 | Banks/Hendricks | July 16, 2009 | 26,771.68 |
| 17750 | Banks/Hendricks | April 4, 2009 | 24,175.52 |
| 17443 | Banks/Hendricks | March 12, 2009 | 24,087.68 |
| 17158 | Banks/Hendricks | February 18, 2009 | 24,546.40 |
| 15242 | Banks/Hendricks | September 15, 2008 | 24,750.40 |
| 14923 | Banks/Hendricks | August 25, 2008 | 23,550.88 |
| 14565 | Banks/Hendricks | July 24, 2008 | 24,092.43 |
| 14186 | Banks/Hendricks | June 21, 2008 | 23,758.40 |
| 12946 | Banks/Hendricks | March 5, 2008 | 23,817.92 |
| 17073 | Quamir Bervine/Doreen Rhodes | February 10, 2009 | 320,750.00 |
| 17074 | Bervine/Rhodes | February 6, 2009 | 192,450.00 |
| 13563 | Bervine/Rhodes | April 26, 2008 | 184,802.65 |
| 14390 | Jeryl Marks | July 11, 2008 | 44,689.00 |
| 13779 | Marks | May 16, 2008 | 39,432.00 |
| 13594 | Marks | April 30, 2008 | 40,920.00 |
| 13294 | Marks | April 3, 2008 | 40,942.40 |
| 19286 | Templin | December 18, 2009 | 8,709.53 |

PADUANO & WEINTRAUB LLP

Independence Blue Cross
Member Appeals Department
July 30, 2010
4

| 19261 | Templin | November 19, 2009 | 21,885.12 |
| 19051 | Templin | August 25, 2009 | 18,511.46 |
| 14611 | Templin | July 29, 2008 | 17,414.18 |

## Claims for Which Only Partial Payment has Been Received

| 16639 | Banks/Hendricks | January 7, 2009 | 22,558.42 |
| 16374 | Banks/Hendricks | December 16, 2008 | 13,495.14 |
| 13155 | Banks/Hendricks | March 26, 2008 | 799.44 |
| 17145 | Bervine/Rhodes | February 12, 2009 | 321,105.78 |
| 17146 | Maurice Champen | February 12, 2009 | 102,992.33 |
| 12528 | Maurice Champen | February 2, 2008 | 191,795.50 |
| 17670 | Templin | March 28, 2009 | 42.86 |
| 16596 | Templin | December 30, 2008 | 494.20 |
| 16162 | Templin | November 25, 2008 | 507.59 |

Based upon the foregoing, the amounts outstanding on the above-referenced claims amounts to $ 2,323,878.78, exclusive of the interest and attorneys' fees allowed by law. The underlying documentation for each of these claims has been submitted as required under the Plan and has also been submitted to counsel for IBC, QCC and CareFirst subsequent to the filing of the Complaint as well as to Michael Zipfel, Esq. prior to the filing of the Complaint.

In connection with this appeal we are able to prove to you, among other things, we are able to prove to you that as to each of the claims at issue in the Complaint for which Feldman's Medical Center and FCS Pharmacy LLC seek payment from Defendants (the "Claims"):

    1.    The patients who received the service from the Plaintiff pharmacies, including without limitation (the "Patients") each had valid insurance coverage with Defendants, their affiliates, or another licensee of the Blue Cross Blue Shield Association ("BCBSA");

PADUANO & WEINTRAUB LLP

Independence Blue Cross
Member Appeals Department
July 30, 2010
5

2.      The patients have each paid all necessary premiums, and such premiums were received by Defendants or another licensee of BCBSA;

3.      All services provided by the Plaintiff pharmacies were rendered pursuant to valid prescriptions;

4.      All services provided by the Plaintiff pharmacies were medically necessary and without them the Patients would have died or suffered grave injury;

5.      All services provided by the Plaintiff pharmacies were rendered in accordance with the pertinent prescriptions;

6.      The medicines at issue were dispensed only after the Plaintiff pharmacies received verbal authorization from Defendants to do so;

7.      The medicines dispensed were recognized in written Explanations of Benefits sent contemporaneously by Defendants to the Patients;

8.      Invoices were properly submitted to Defendants by the Plaintiff pharmacies (or the Patients) pursuant to Defendants' published procedures

9.      Defendants have always possessed all information necessary to adjudicate the Claims;

10.     All conditions precedent to payment of the Claims have been satisfied;

11.     Prior to this litigation, Defendants "pended" the Claims and did not reject them, and still have never done so;

PADUANO & WEINTRAUB LLP

Independence Blue Cross
Member Appeals Department
July 30, 2010
6

        12.    Defendants have acted in concert, and in league with other BCBS entities, for the purpose of injuring the Plaintiff pharmacies;

        13.    Defendants have failed to follow the procedures set forth in the Plan regarding these claims;

        14.    As a result of Defendants' conduct, the Plaintiff pharmacies have suffered injury and sustained substantial damages.

        Our clients are prepared to appear and answer questions you may have regarding any aspect of this dispute.  Respectfully, we demand that this appeal be expedited.

Yours sincerely,

Anthony Paduano

Enclosures

cc:    Katherine Katchen, Esq.
        Mark Oberstaedt, Esq.
        Patrick DeGravelles, Esq.
        (all via electronic mail w/enc.)

# EXHIBIT   A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER TEMPLIN, et. al., | : | |
| | : | |
| Plaintiffs, | : | Civil Action |
| | : | Case No. 09-4092 |
| v. | : | |
| | : | |
| INDEPENDENCE BLUE CROSS, et. al., | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

Slomsky, J.                                                                                      **July 27, 2010**

**I.      Introduction**

Before the Court are Motions to Dismiss filed by Defendant Carefirst (Doc. No. 18) and

by Defendants Independence Blue Cross and QCC Insurance Company (Doc. No. 20).  Plaintiffs

filed a Complaint on September 9, 2009, (Doc. No. 1), and filed an Amended Complaint on

December 2, 2009 (Doc. No. 16, hereinafter "Am. Compl."). Plaintiffs allege claims arising

under the Employee Retirement and Security Income Act of 1974 (hereinafter "ERISA") for

wrongful denial of benefits and also seek declaratory relief pursuant to 29 U.S.C. 1132(a)(1)(B).

(Doc. No. 16, at 11-12).

On December 21, 2009, Defendant Carefirst filed a Motion to Dismiss and Brief in

Support of its Motion.  (Doc. No. 18).  On December 22, 2009, Defendants Independence Blue

Cross and QCC Insurance Company (hereinafter "IBC Defendants") filed a seperate Motion to

Dismiss and Memorandum of Law.  (Doc. No. 20).  On January 4, 2010, Plaintiff filed a

Response in Opposition to Defendant Carefirst's Motion to Dismiss (Doc. No. 21), and on

-1-

279 F.3d 244, 249 (3d Cir. 2002). A plaintiff is excused from exhausting administrative

remedies under the plan if the plaintiff makes a "clear and positive showing" that it would be

futile to do so. Id. In determining whether a plaintiff has demonstrated futility, a court considers

the following factors:

> (1) whether plaintiff diligently pursued administrative relief;
> (2) whether plaintiff acted reasonably in seeking immediate judicial
> review under the circumstances; (3) existence of a fixed policy
> denying benefits; (4) failure of the insurance company to comply
> with its own internal administrative procedures; and (5) testimony
> of plan administrators that any administrative appeal was futile.

Harrow, 279 F.3d at 250.

Here, Plaintiffs have alleged facts suggesting a fixed policy denying benefits for some

claims, in the form of a letter from IBC Defendants' counsel to Plaintiffs' counsel stating that

Defendants will not pay any claims submitted by Plaintiff Feldman Pharmacies that involve a

shipment of drugs outside the state of Maryland. (Am. Compl., Ex. "D"). Plaintiffs have also

alleged facts showing Defendants failed to comply with their own internal administrative

procedures for other claims by failing to render a decision on a number of claims. (Am. Compl.,

Ex. "A"). However, these deficiencies do not apply to all of the disputed claims: of the fifty-one

disputed claims identified by Plaintiffs in their Amended Complaint, only thirty-two were

submitted by Plaintiff Feldman Pharmacies and over half of the claims received a decision from

Defendants in the form of a partial payment. (Id.)

Furthermore, Plaintiffs do not allege any facts showing an attempt on the part of Plaintiffs

to avail themselves of the remedies under the Plan. Although Defendants failed to render a

decision on certain claims, they did render a decision on a large portion of disputed claims in the

January 5, 2010 filed a Memorandum in Opposition to IBC Defendants' Motion to Dismiss (Doc. No. 22). Replies were filed on January 14, 2010 by Defendant Carefirst (Doc. No. 23) and IBC Defendants (Doc. No. 24). On March 19, 2010, a hearing was held on the Motions.

The Court will deny Defendants' Motions to Dismiss without prejudice. Plaintiffs, however, have failed to exhaust their administrative remedies as required by ERISA. Accordingly, for the reasons stated below, the Court will stay this case and place it in suspense pending completion of an administrative review of Plaintiffs' claims.

## II.    Exhaustion of Administrative Remedies

Plaintiffs are individuals and pharmacies who are beneficiaries of or alleged assignees of beneficiaries of a group health insurance policy known as the Personal Choice Health Benefits Plan ("the Plan")[1], issued and administered by IBC Defendants.[2] Defendant Carefirst is a Blue Cross and Blue Shield Association affiliate responsible for processing a portion of the benefit claims filed by Plaintiffs.

IBC Defendants and Defendant Carefirst assert Plaintiffs have failed to exhaust their administrative remedies as required by ERISA under 29 U.S.C. § 1132(a)(1)(B). Before a plaintiff may bring a claim under § 1132(a)(1)(B), except in limited circumstances, he or she must "exhaust the remedies available under the plan." Harrow v. Prudential Ins. Co. Of Am.,

---

[1] The Plan is attached as Exhibit "B" to Plaintiff's Amended Complaint (Doc. No. 16).

[2] IBC Defendants are Blue Cross and Blue Shield Association affiliates. IBC Defendants issued a group health insurance policy (hereinafter "the Plan") for employees of Factor II, an affiliate business entity of the plaintiff pharmacies. Defendant QCC issued the Plan on behalf of Defendant Independence Blue Cross, and underwrites or administers the benefits offered through Independence Blue Cross. Individual Plaintiffs are employees of Factor II or dependents of employees and are beneficiaries of the Plan.

form of partial payment of the claim. (Am. Compl., Ex. "A"). These partial payments constitute adverse benefit determinations that Plaintiffs should have challenged through the Plan's appeal process.

Finally, it was not reasonable for Plaintiffs to seek immediate judicial review under the circumstances. Exhibit "A" to Plaintiffs' Amended Complaint lists fifty-one disputed claims. These claims presumably request compensation for a wide variety of products and services and implicate a wide variety of issues requiring interpretation and application of Plan terms. For this Court to perform the first level of review of these claims – to examine the individual claim forms, identify any individual defects, and interpret and apply Plan terms to each claim – would contravene the purpose of ERISA and would waste judicial resources. See Zipf v. Amer. Tel. and Tel. Co., 799 F.2d 889, 892 (3d Cir. 1986) ("When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits.").

The exhaustion rule "gives plan administrators the first opportunity to apply their expertise to interpret often lengthy and detailed plan documents, to reconsider initial decisions and correct mistakes, to collect facts, and to explain the rationale underlying the administrative decision." Brennan v. Consolidated Rail Corp. Matched Sav. Plan, 2000 WL 217664, at *3 (E.D. Pa. Feb. 11, 2000) (citing Comm. Workers of Am. v. Am. Tel. and Tel. Co., 40 F.3d 426, 432 (D.C. Cir. 1994)). Thus, exhaustion "may render subsequent judicial review unnecessary because a plan's own remedial procedures will resolve many claims," and, where it does not, it "enables plan [administrators] to . . . assemble a factual record which will assist a court in

reviewing [their] actions." <u>Comm. Workers of Am.</u>, 40 F.3d at 432; <u>Lindemann v. Mobile Oil</u>

<u>Corp.</u>, 79 F.3d 647, 650 (7th Cir. 1996). For these reasons, the Court will require the parties to

complete an expedited administrative review of all claims and until this review is complete, stay

all proceedings in this case. <u>Lindemann</u>, 79 F.3d at 651 (holding that the decision whether to

stay a proceeding pending completion of an administrative review is entirely within the district

court's discretion).

**III.   Administrative Review Process**

      This case will be placed in suspense, and the parties are directed to conduct an expedited

administrative review of all claims in accordance with the following direction. The parties are

directed to conduct Level One and Level Two of the Standard Appeal described in the Personal

Choice Health Benefits Plan by and between Defendant QCC Insurance Co. and Factor Health

Service II, LLC, ("the Plan") attached as Exhibit "B" to Plaintiff's Amended Complaint (Doc.

No. 16). Plaintiffs should submit their initial request for review on appeal of all disputed claims

within thirty (30) days of this Opinion and Order. Where Defendants have allegedly failed to

render any initial decision on a claim, Plaintiffs should consider the claim as denied and appeal

the claim. Defendants are to evaluate each claim on appeal and issue a Level One decision on

the appeal within thirty (30) days of receipt of the appeal request in conformance with the

procedures described in the Plan. (Am. Compl., Ex. "B," at 3.2-72).

      If Plaintiffs are not satisfied with any Level One appeal decision, Plaintiffs are directed to

request a Level Two appeal on each disputed claim within fifteen (15) days of receipt of the

Level One decision. As outlined in the Plan's Level Two Standard Appeal, Plaintiffs shall have

the right to present their Level Two appeal to the Second Level Appeal Committee ("SLAC").

(Am. Compl., Ex. "B," at 3.2-72). The Court directs that this presentation occur in the form of an in-person hearing, that Plaintiffs not be limited in the number of attorneys who may represent them before the SLAC, that Defendants' counsel be permitted to participate in the hearing, that Defendants transcribe the proceedings before the SLAC, and that the transcript be made part of the record in this case. The Court further directs that Plaintiff's Level Two appeals be consolidated after all Level Two appeals are filed, and that they be considered by Defendants together at the same hearing, rather than in a piecemeal fashion.

The parties are directed to schedule Plaintiffs' hearing before the SLAC so that the hearing occurs within thirty (30) days after Plaintiff's last Level Two appeal is filed. Defendants shall evaluate each appeal and issue a Level Two decision on the appeal within fifteen (15) days of Plaintiffs' hearing before the SLAC. Plaintiffs will not be required to exhaust the External Standard Appeals process, (See Am. Compl., Ex. "B," at 3.2-73), because a third level of appeal is unnecessary in order to develop an administrative record and will unduly delay the final disposition of Plaintiffs' claims. The case shall return to active status after the issuance of Defendants' Level Two decision(s). Plaintiffs shall have fifteen (15) days after the issuance of Defendants' decision to amend their complaint in the instant action, if they deem it necessary.

## IV.    CONCLUSION

In sum, Defendants' Motions to Dismiss will be denied without prejudice. Because Plaintiffs failed to exhaust their administrative remedies as required under ERISA, the parties will be directed to conduct an expedited administrative review of all claims in accordance with this Opinion. Until the administrative appeal process is complete, this case will be stayed and placed in the suspense docket. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER TEMPLIN, et. al.,            :
                                          :
            Plaintiffs,                   :      Civil Action
                                          :      Case No. 09-4092
            v.                            :
                                          :
INDEPENDENCE BLUE CROSS, et. al.,         :
                                          :
            Defendants.                   :

## ORDER

AND NOW, this 27th day of July, 2010, upon consideration of the Motion to Dismiss

filed by Defendant Carefirst, Inc. (Doc. No. 19), the Motion to Dismiss filed by Defendants QCC

Insurance Co. and Independence Blue Cross (Doc. No. 20), Plaintiffs' Amended Complaint

(Doc. No. 16), Plaintiffs' Responses in Opposition to Defendants' Motions (Docs. No. 21 and

22), Defendant Carefirst's and Defendants QCC Insurance Co and Independence Blue Cross's

Replies (Docs. No. 23 and 24), the Status Reports filed by Plaintiffs and by Defendants QCC

Insurance Co. and Independence Blue Cross (Docs. No. 30 and 31), and after a hearing on the

Motions held on March 19, 2010, it is hereby ORDERED as follows:

   1. The Motion to Dismiss filed by Defendant Carefirst, Inc. (Doc. No. 19) is DENIED

   WITHOUT PREJUDICE;

   2. The Motion to Dismiss filed by Defendants QCC Insurance Co. and Independence

   Blue Cross (Doc. No. 20) is DENIED WITHOUT PREJUDICE;

-7-

3.  This case is placed in SUSPENSE, and the parties are ORDERED to engage in an administrative review of all disputed claims as outlined in this Court's Opinion.  The parties shall complete the administrative review process, and the case shall be returned to active status, within 120 days of the issuance of this Order.  The parties shall update the Court on their progress every 60 days from the date of this Order.  The update may be in the form of a letter to the Court which will be filed of record

4.  Plaintiffs are granted leave to file a second amended complaint within fifteen (15) days of the completion of the administrative review process, if they deem it necessary to do so.


BY THE COURT:


 /s/ Joel H. Slomsky, J.
JOEL H. SLOMSKY, J.

# EXHIBIT B



**Independence**
**Blue Cross**

www.ibx.com

1901 MARKET STREET
PHILADELPHIA, PA 19103-1480

August 30, 2010

Paduano & Weintraub, LLP
1251 Avenue of the Americas, 9th Floor
New York, New York 10020
Attn: Mr. Anthony Paduano

RE: **Written, Post-Service, First-Level Complaint/Administrative Appeal**

| | |
|---|---|
| INITIATED | July 30, 2010 |
| FILE NO. | 175934 |
| MEMBER NAME | Christopher Templin |
| MEMBER ID NO. | 40463075 |
| DATES OF SERVICE | July 29, 2008 through December 18, 2009 |
| HEALTH PLAN | PPO |
| FILED BY | Christopher Templin |

Dear Mr. Paduano:

In accordance with the July 27, 2010 Opinion and Order of the United States District Court for the
Eastern District of Pennsylvania in *Templin v. Independence Blue Cross, et al.*, the First-Level
Complaint/Administrative Appeal Committee has completed its review of your appeal. The purpose
of this letter is to let you know that the committee has decided to uphold the initial claim
processing. The committee, in other words, confirmed that the member's claims were processed
correctly based on the bills submitted. This letter will present the grounds for this determination and
review your options for moving forward.

**About your appeal.** It is our understanding that your complaint/administrative appeal involved the
non-payment, and partial claim payment, of claims involving factor blood clotting agents. These
services were provided on July 29, October 22, November 25, and December 30, 2008, as well as
March 24, August 25, November 19, and December 18, 2009, by FCS Pharmacy LLC, an out-of-
network provider, on behalf of the above mentioned member.

**About the committee.** The standards for first-level appeals require that the committee reviewing
your case be composed of one or more plan employees who have had no previous involvement
with your case. In this instance, the committee comprised a single employee familiar with managed
care operations and benefits —a Senior Care Managment Coordinator.

## THE COMMITTEE'S DETERMINATION

The committee found that the member's claims were processed correctly based on the member's
PPO benefits.

The committee based this determination on:

- The member's health plan's benefits, terms, limitations, and exclusions pertaining to the
request; and
- Other information you or the provider supplied to us

Independence Blue Cross offers products directly, through its subsidiaries Keystone Health Plan East and QCC Insurance Company, and with Highmark Blue Shield.
Independent Licensees of the Blue Cross and Blue Shield Association.


**Independence**
**Blue Cross**

**The member's benefits and exclusions**
According to the member's health plan, injectable medications are a covered benefit with certain requirements, detailed below.

**In-network providers.** When these services are provided by an in-network provider, the services will be covered at 100 percent of the plan's allowance. Precertification may be required, but it is the in-network provider's responsibility to obtain precertification on the member's behalf.

**BlueCard Providers.** When these services are provided by a BlueCard provider, which is a provider that has a contract with another Blue Cross Plan, the services will be covered at 100 percent of the plan's allowance. Precertification may be required; however, it is the member's responsibility to obtain precertification. Failure to obtain precertification will result in a 20 percent reduction in benefits.

**Out-of-network.** When these services are provided by an out-of-network provider, the services will be covered at 70% percent of the plan's allowance after the required $500 benefit period deductible is satisfied. The member is responsible for a 30% coinsurance, as well as the difference between the plan's allowance and the provider's actual charge. Precertification may be required. The member is responsible to obtain precertification for services provided by out-of-network providers. Failure to obtain precertification will result in a 20 percent reduction in benefits.

**Coordination of Benefits.** This provision applies when the member is covered under more than one health insurance plan. Whenever a member has other insurance that is primary, the balance bill can be submitted to Independence Blue Cross for consideration to be processed in accordance with the member's benefits.

**How the member's claims were processed**
According to our records, the claims in question processed in the following manner:

Service Date: October 22, 2008
Claim #: IA04231010892
Charge: $113,361.60
A payment was made and then reversed because a copy of the Explanation of Medicare Benefits (EOMB) Notice is required.

Service Date: December 18, 2009
There is no record of a claim received for this service date of service.

Service Date: November 19, 2009
Claim #: IA06221001732
Charge: $109,425.60
Plan Payment: $21,885.12
Processed Date: July 8, 2010

 **Independence**
**Blue Cross**

<u>Service Date: August 25, 2009</u>
Claim #: IA03051003834
Charge: $129,386.40
Plan Payment: $25,320.62
Processed Date: March 18, 2010

<u>Service Date: July 29, 2008</u>
Claim #: IA01291010634
Charge: $92,298.40
Plan Payment: $17,414.18
Processed Date: April 1, 2010

<u>Service Date:  March 28, 2009</u>
Claim #:  IA11180908717
Charge:  133,430.00
Plan Payment: $25,249.90
Processed Date:  December 1, 2009

<u>Service Date: December 30, 2008</u>
Claim #:  IA09110910078
Charge: $111,689.20
Plan Payment: $21,052.92
Processed Date: September 23, 2009

<u>Service Date: November 25, 2008</u>
Claim #: IA09110910079
Charge: $114,717.60
Plan Payment: $21,623.77
Processed Date:  September 29, 2009

It is important to note that our records indicate that Medicare is the primary payor on these claims.
As such, Mr. Templin's claims for the above noted service dates were processed according to the
Medicare coinsurance amount as our plan was the secondary payor for these services.

**Your concerns**
This appeal was initiated asserting that we did not pay some of the member's claims and that we
owed additional amounts for some of the services provided.

**The committee's conclusion**
After reviewing all the facts and weighing your concerns, the committee determined that the
member's claims were processed correctly based on the member's PPO benefits as secondary
payor. Therefore, the claim processing is upheld.



## OPTIONS FOR MOVING FORWARD

If you are dissatisfied with this determination, you have the right to file a second-level complaint/administrative appeal in accordance with the July 27, 2010 Opinion and Order, a copy of which is attached. To file this kind of appeal, call, write, or fax Member Appeals using the contact information provided below.

Finally, if the member's health plan is subject to the requirements of Employee Retirement and Income Security Act (ERISA), then following your appeal, the member may have the right to bring a civil action under Section 502(a) of the Act.

## NEED MORE INFORMATION?

We can provide additional details or information you might need, including the following documentation:

- **Member health plan benefits.** Please refer to the section entitled "Injectable Medications" in the member handbook or certificate of coverage. The member may also direct questions about his benefits to the Member Services Department by using the phone number on the back of his identification card.

- **Information on this determination.** We can provide a free copy of the benefit provision, guideline, protocol, or clinical rationale used to make this decision, as well as copies of all relevant documents, records, or other information that are not confidential, proprietary, or privileged. Such information is provided to the member or his designee at no charge. The member may request such information -- or ask other questions related to his appeal by contacting Appeals using the following information:

Member Appeals
P.O. Box 41820
Philadelphia, PA 19101-1820
Telephone: 1-888-671-5276
Fax: 1-888-671-5274

- **Information on other matters.** If the member has questions about matters unrelated to this appeal, he can contact Member Services using the phone number on the back of his identification card.

\* \* \* \*

We hope this letter proves helpful in your efforts to resolve this matter.

Sincerely,

*Cynthia Turner*

Cynthia Turner
Appeals Specialist

Cc: Christopher Templin

Mr. Christopher Templin
1248 Buddies Place
Birdsboro, PA  19508

# EXHIBIT C

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

━━━━━━━━━ Attorneys at Law

KATHERINE M. KATCHEN
215.965.1239/fax: 215.965.1210
kkatchen@akingump.com

September 8, 2010

**Via Electronic Mail and Regular Mail**

Anthony Paduano, Esquire
Paduano & Weintraub LLP
1251 Avenue of the Americas, 9th Floor
New York, New York  10020

Re:  Templin *et al.* v. Independence Blue Cross *et al.* (E.D. Pa. No. 09-4092)

Dear Mr. Paduano:

On August 30, 2010, Independence Blue Cross completed its Level One review of the appeals submitted by your firm, purportedly on behalf of certain of IBC's current or former members.

We advised on August 5, 2010 that, in accordance with the Level One appeal procedures set forth in the applicable Plan documents, IBC had sent to the members requests for authorization for your firm to proceed on their behalf in these appeals.  We did not receive any such authorizations from Doreen Rhodes, Maurice Champen or Viola Hendrick.  Without such authorizations from the members, IBC was required under applicable HIPAA laws to send the Level One appeals determinations directly to those members, along with a copy of Judge Slomsky's July 27, 2010 Opinion and Order setting forth the members' rights to a Level Two Standard Appeal.  At this point, a correction letter pertaining to Viola Hendrick's appeal is being prepared.

Moreover, as we advised on August 10, Jeryl Marks contacted IBC, advised that he did not authorize any appeals to be filed on his behalf, and demanded that any appeals filed on his behalf be withdrawn.

Finally, we notified Ms. Rhodes, Mr. Champen and Ms. Hendrick that IBC had been notified by CareFirst that claims submitted by Feldman's Medical Center Pharmacy were being reviewed for possible adjustments.  Subsequent to IBC sending its August 30, 2010 appeals

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━━ Attorneys at Law

Anthony Paduano, Esquire
September 8, 2010
Page 2

determinations, IBC has been advised that many of the claims at issue have been adjusted and
paid by CareFirst and, as such, are no longer at issue.

Sincerely,

Katherine M. Katchen

cc:    Mark J. Oberstaedt, Esquire (*via email*)

# EXHIBIT D

 **Factor Health Management, LLC** Choice, Quality, Community Support

 **FCS Pharmacy, LLC** an affiliate of the Factor Foundation of America Improving the Lives of People with Bleeding Disorders

## SERVICE AGREEMENT/ASSIGNMENT OF BENEFITS

Patient Name:  *Shawn Banks*

Patient ID Number:  *201217*          Date:  *10/14/06*

**Consent for Treatment**
I consent to treatment and services provided by Factor Health Management, LLC (FHM), FCS Pharmacy LLC (FCS) and/or associated contract providers consistent with a plan of care authorized by my physician, FHM care team and myself.  All pharmacy services will be authorized by my insurance company.  I understand that enrollment is my choice and that I can disenroll at any time.

**Consent for Record Retention/Acknowledgement of Receipt of Notice of Privacy Practices/ Patient's Rights and Responsibilities.**
I understand that FHM, FCS and its associated contract providers will keep a record of my care.  I acknowledge that I have received a copy of: (i) FHM and FCS' HIPAA Notice of Privacy Practices for Personal Health Information, which describes how FHM, FCS and/or associated contract providers may use and disclose the information contained in my record and explains my rights with respect to such information;  (ii) FHM's Confidentiality Policy; (iii) a written description of Patient's Rights and Responsibilities; and (iv) FHM's Grievance Procedure.

**Assignment of Benefits/Authorization for Payment/ Financial Responsibility**
In consideration of services provided by FHM, FCS and its associated contract providers, I hereby assign and transfer to FHM and FCS all rights, title and interest to reimbursement payable to me for services provided by FHM, FCS and its associated contract providers.  I agree to immediately turn over to FHM, either by endorsing any check that I receive, or by sending the amount of the payment that I receive, for services rendered by FHM, FCS or its associated contract providers.  Under no circumstance shall I retain any such payment.

I request that FHM act on my behalf to submit charges for services rendered by FCS or its associated contract providers and I hereby authorize payment directly to FHM, FCS or its associated contract providers of any benefits otherwise payable for items/services, at a rate not to exceed FHM's regular charges for such items/services.  I hereby authorize FHM, FCS or its associated contract pharmacies to bill for services and receive payment directly from my private health insurance, Medicare and/or Medicaid.

I understand that I am responsible for and will pay in full the portion of my bill not covered by insurance companies, governmental agencies or third party payors, including, but not limited to, any applicable co-payments, share of cost payments, deductibles, denials and charges for services not covered by my insurance company, a governmental agency or third party payor, such as charges for services that are determined by such entity not to be medically necessary or not covered under the terms of my health plan.  In consideration of services to be provided, I agree to pay FHM and FCS in accordance with the regular rates and terms of each applicable provider.  Should the account be referred to an attorney or collection agency for collection, I agree to pay reasonable attorney's fees and collection expenses.

**Relationship between Physician and Factor Health Management**
FHM will work with my physician and incorporate my physician's treatment plan within the FHM care plan. I understand that my physician is not an employee or agent or associated in any way with FHM or FCS. FHM, FCS and its associated contract pharmacies shall not be liable for any act or omission of my physician or for following my physician's orders.

7700 Congress Ave., Suite 3109
Boca Raton, Florida 33487
1-866-322-3461

**Signature of Agreement/ Witness**

_Sharon Banks_ _____     _10/14/06_ _____
Legal Name of Patient                                    Date

_Vida Hundack_ _____     _10-14-06_ _____
Signature of Patient, Parent or Legal Guardian           Date


_____     _____
Witness                                                  Date

_Brenda Montgomery-King_ _____     _10/14/06_ _____
Signature of FHM/FCS Representative/ Title                Date

7700 Congress Ave., Suite 3109
Boca Raton, Florida 33487
1-866-843-3362

W:\Corporate\Patient Services\Patient Sign Up\Word\FHM Service Agreement and Assignment of Benefits Form.DOC
CH01/ 12450582.2

 

**Factor Health Management, LLC**
*Choice, Quality, Community Support*

**FCS Pharmacy, LLC**
an affiliate of the Factor Foundation of America
Improving the Lives of People with Bleeding Disorders

## SERVICE AGREEMENT/ASSIGNMENT OF BENEFITS

Patient Name: *Maurice Champen*

Patient ID Number: *201236*

Date: *12-07-05*

### Consent for Treatment
I consent to treatment and services provided by Factor Health Management, LLC (FHM), FCS Pharmacy LLC (FCS) and/or associated contract providers consistent with a plan of care authorized by my physician, FHM care team and myself. All pharmacy services will be authorized by my insurance company.  I understand that enrollment is my choice and that I can disenroll at any time.

### Consent for Record Retention
I understand that FHM, FCS and its associated contract providers will keep a record of my care.  I understand that I have the right to review that record with an FHM staff person.

### Confidentiality and Release of Information
I understand that FHM, FCS and its associated contract providers will maintain the strict confidentiality of all my records and will not release any information without my written informed consent.  The only time that FHM would release any portion of my records without my consent would be where legally required to do so.  I also understand that the FHM Comprehensive Hemophilia Health Management Program involves staff and clinicians from different disciplines, and within the Program, staff will share my personal health information in order to provide the best services possible.

### Assignment of Benefits/Authorization for Payment

I request that FHM act on my behalf to submit charges for services rendered by FCS or its associated contract providers and I hereby authorize payment directly to FHM, FCS or its associated contract providers of any benefits otherwise payable for items/services, at a rate not to exceed FHM's regular charges for such items/services.

I hereby authorize FHM, FCS or its associated contract pharmacies to bill for services and receive payment directly from my private health insurance, Medicare and/or Medicaid.

I understand that my private health insurance may require co-payment for items/services.

I understand that the Medicare allowable will be honored; however, pharmacy services may require a co-payment as shown on my Medicare Explanation of Benefits (EOB).

I understand that some Medicaid programs require a patient's share of cost (SOC) to be satisfied prior to paying providers for services rendered.  If I have not met my SOC requirement at the time of services requested, I agree to be responsible to pay my SOC to FHM.

7700 Congress Suite 3112
Boca Raton, FL  33487-1352
866-961-8814

**Financial Responsibility**

I understand that I am liable for all charges incurred by myself or my dependents for items/services provided by FHM, FCS or its associated contract providers and that it is my responsibility to pay any and all denials, deductibles, co-payments or share of costs that are left unpaid by my insurance carrier, Medicare or Medicaid.  FHM, if informed by the insurance carrier, Medicare or Medicaid, of any charges not covered or changes in coverage, will inform me in writing within 30 calendar days from the date FHM becomes aware of the charges or change in coverage.

I understand that from time to time my insurance company may reimburse me directly for the products/services that I received from FCS Pharmacy. I understand that I am responsible to fully reimburse FCS Pharmacy for the full amount of the check. Remittance to FCS Pharmacy may by either endorsement of insurance reimbursement check to FCS Pharmacy or by money order or certified bank check within five (5) business days.

**Relationship between Physician and Factor Health Management**

FHM will work with each Patient's physician and incorporate the physician's treatment plan for that Patient within the FHM care plan for the Patient.  It is understood that the physician is an independent contractor of the Patient and is not an employee or agent or associated in any way with FHM or FCS. FHM, FCS and its associated contract pharmacies shall not be liable for any act or omission of the physician or for following the physician's orders.

I have received a copy of the Patient's Rights and Responsibilities.

I have received a copy of FHM's Grievance Procedure.

I have received a copy of the HIPAA Notice of Privacy Practices for Personal Health Information.

I have received a copy of FHM's Confidentiality Policy and have exercised my rights to restrict the release of my personal health information to individuals or organizations that I do not want to have this information.

**Signature of Agreement/ Witness**

_Maurice Champen_
Legal Name of Patient        Date

_Dawn Rhodes_
Signature of Patient, Parent or Legal Guardian    Date    12-08-05

_Darlene Quinn RN_
Witness        Date    12-08-05

Signature of FHM/FCS Representative/ Title      Date

 **Factor Health Management, LLC** *Choice, Quality, Community Support*

 **FCS Pharmacy, LLC** an affiliate of the Factor Foundation of America Improving the Lives of People with Bleeding Disorders

## SERVICE AGREEMENT/ASSIGNMENT OF BENEFITS

Patient Name: *Quantr Bervine*

Patient ID Number: *201240*                    Date: *10/14/06*

**Consent for Treatment**
I consent to treatment and services provided by Factor Health Management, LLC (FHM), FCS Pharmacy LLC (FCS) and/or associated contract providers consistent with a plan of care authorized by my physician, FHM care team and myself. All pharmacy services will be authorized by my insurance company. I understand that enrollment is my choice and that I can disenroll at any time.

**Consent for Record Retention/Acknowledgement of Receipt of Notice of Privacy Practices/ Patient's Rights and Responsibilities.**
I understand that FHM, FCS and its associated contract providers will keep a record of my care. I acknowledge that I have received a copy of: (i) FHM and FCS' HIPAA Notice of Privacy Practices for Personal Health Information, which describes how FHM, FCS and/or associated contract providers may use and disclose the information contained in my record and explains my rights with respect to such information; (ii) FHM's Confidentiality Policy; (iii) a written description of Patient's Rights and Responsibilities; and (iv) FHM's Grievance Procedure.

**Assignment of Benefits/Authorization for Payment/ Financial Responsibility**
In consideration of services provided by FHM, FCS and its associated contract providers, I hereby assign and transfer to FHM and FCS all rights, title and interest to reimbursement payable to me for services provided by FHM, FCS and its associated contract providers. I agree to immediately turn over to FHM, either by endorsing any check that I receive, or by sending the amount of the payment that I receive, for services rendered by FHM, FCS or its associated contract providers. Under no circumstance shall I retain any such payment.

I request that FHM act on my behalf to submit charges for services rendered by FCS or its associated contract providers and I hereby authorize payment directly to FHM, FCS or its associated contract providers of any benefits otherwise payable for items/services, at a rate not to exceed FHM's regular charges for such items/services. I hereby authorize FHM, FCS or its associated contract pharmacies to bill for services and receive payment directly from my private health insurance, Medicare and/or Medicaid.

I understand that I am responsible for and will pay in full the portion of my bill not covered by insurance companies, governmental agencies or third party payors, including, but not limited to, any applicable co-payments, share of cost payments, deductibles, denials and charges for services not covered by my insurance company, a governmental agency or third party payor, such as charges for services that are determined by such entity not to be medically necessary or not covered under the terms of my health plan. In consideration of services to be provided, I agree to pay FHM and FCS in accordance with the regular rates and terms of each applicable provider. Should the account be referred to an attorney or collection agency for collection, I agree to pay reasonable attorney's fees and collection expenses.

**Relationship between Physician and Factor Health Management**
FHM will work with my physician and incorporate my physician's treatment plan within the FHM care plan. I understand that my physician is not an employee or agent or associated in any way with FHM or FCS. FHM, FCS and its associated contract pharmacies shall not be liable for any act or omission of my physician or for following my physician's orders.

7700 Congress Ave., Suite 3109
Boca Raton, Florida 33487
1-866-322-3461

**Signature of Agreement/ Witness**

Quamir Rervine _____    10/14/06 _____
Legal Name of Patient                                    Date

Doreen Rhodes _____    10|14|06 _____
Signature of Patient, Parent or Legal Guardian           Date

_____    _____
Witness                                                  Date

D. de Montgomery King _____    10/14/06 _____
Signature of FHM/FCS Representative/ Title                Date

7700 Congress Ave., Suite 3109
Boca Raton, Florida 33487
1-866-843-3362

W:\Corporate\Patient Services\Patient Sign Up\Word\FHM Service Agreement and Assignment of Benefits Form.DOC
CH01/ 12450582.2

## SERVICE AGREEMENT/ASSIGNMENT OF BENEFITS

Patient Name: *Jeryl Marks*

Patient ID Number: *201277*          Date: *2/11/07*

**Consent for Treatment**
I consent to treatment and services provided by Factor Health Management, LLC (FHM), FCS Pharmacy LLC (FCS) and/or associated contract providers consistent with a plan of care authorized by my physician, FHM care team and myself. All pharmacy services will be authorized by my insurance company. I understand that enrollment is my choice and that I can disenroll at any time.

**Consent for Record Retention/Acknowledgement of Receipt of Notice of Privacy Practices/ Patient's Rights and Responsibilities.**
I understand that FHM, FCS and its associated contract providers will keep a record of my care. I acknowledge that I have received a copy of: (i) FHM and FCS' HIPAA Notice of Privacy Practices for Personal Health Information, which describes how FHM, FCS and/or associated contract providers may use and disclose the information contained in my record and explains my rights with respect to such information; (ii) FHM's Confidentiality Policy; (iii) a written description of Patient's Rights and Responsibilities; and (iv) FHM's Grievance Procedure.

**Assignment of Benefits/Authorization for Payment/ Financial Responsibility**
In consideration of services provided by FHM, FCS and its associated contract providers, I hereby assign and transfer to FHM and FCS all rights, title and interest to reimbursement payable to me for services provided by FHM, FCS and its associated contract providers. I agree to immediately turn over to FHM, either by endorsing any check that I receive, or by sending the amount of the payment that I receive, for services rendered by FHM, FCS or its associated contract providers. Under no circumstance shall I retain any such payment.

I request that FHM act on my behalf to submit charges for services rendered by FCS or its associated contract providers and I hereby authorize payment directly to FHM, FCS or its associated contract providers of any benefits otherwise payable for items/services, at a rate not to exceed FHM's regular charges for such items/services. I hereby authorize FHM, FCS or its associated contract pharmacies to bill for services and receive payment directly from my private health insurance, Medicare and/or Medicaid.

I understand that I am responsible for and will pay in full the portion of my bill not covered by insurance companies, governmental agencies or third party payors, including, but not limited to, any applicable co-payments, share of cost payments, deductibles, denials and charges for services not covered by my insurance company, a governmental agency or third party payor, such as charges for services that are determined by such entity not to be medically necessary or not covered under the terms of my health plan. In consideration of services to be provided, I agree to pay FHM and FCS in accordance with the regular rates and terms of each applicable provider. Should the account be referred to an attorney or collection agency for collection, I agree to pay reasonable attorney's fees and collection expenses.

**Relationship between Physician and Factor Health Management**
FHM will work with my physician and incorporate my physician's treatment plan within the FHM care plan. I understand that my physician is not an employee or agent or associated in any way with FHM or FCS. FHM, FCS and its associated contract pharmacies shall not be liable for any act or omission of my physician or for following my physician's orders.

1



**Factor Health Management, LLC**
*Choice, Quality, Community Support*

7700 Congress Avenue, Suite #3109, Boca Raton, FL 33487
T#: (866) 322-3461 F#: (561) 981-8804

Signature of Agreement/ Witness

Legal Name of Patient _____     Date _____

_____     Date _2/10/07_____
Signature of Patient, Parent or Legal Guardian

Witness _____     Date _____

_____     Date _2/11/07_____
Signature of FHM/FCS Representative/ Title

**Factor Health Management, LLC**
*Choice, Quality, Community Support*

7700 Congress Avenue, Suite #3109, Boca Raton, FL 33487
T#: (866) 322-3461 F#: (561) 981-8804

2