## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------

CHRISTOPHER TEMPLIN, VIOLA HENDRICKS,
FELDMAN'S MEDICAL CENTER PHARMACY,
INC., and FCS PHARMACY LLC,

               *Plaintiffs,*

                                   Civil Action No. 09-4092 (JHS)

      *-against-*

INDEPENDENCE BLUE CROSS, QCC
INSURANCE COMPANY, and CAREFIRST, INC.,

               *Defendants.*

-----------------------------------------------------------

### IBC DEFENDANTS' MOTION TO DISMISS
### PLAINTIFFS' SECOND AMENDED COMPLAINT

For the reasons set forth in the accompanying Memorandum of Law, defendants

Independence Blue Cross and QCC Insurance Company hereby move to dismiss plaintiffs'

Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

                             Respectfully submitted,

                              /s/ David L. Comerford
                              David L. Comerford (I.D. No. 65969)
                              Katherine M. Katchen (I.D. No. 80395)
                              Matthew R. Varzally (I.D. No. 93987)
                              AKIN GUMP STRAUSS HAUER & FELD LLP
                              Two Commerce Square
                              2001 Market Street, Suite 4100
                              Philadelphia, PA 19103-7013
                              Phone: (215) 965-1200
                              Facsimile: (215) 965-1210

                              Counsel for Defendants Independence Blue Cross
                              and QCC Insurance Company

                              Dated:  December 3, 2010

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

------------------------------------------------------------

CHRISTOPHER TEMPLIN, VIOLA HENDRICKS,
FELDMAN'S MEDICAL CENTER PHARMACY,
INC., and FCS PHARMACY LLC,

                              *Plaintiffs,*

                                                    Civil Action No. 09-4092 (JHS)

        *-against-*

INDEPENDENCE BLUE CROSS, QCC
INSURANCE COMPANY, and CAREFIRST, INC.,

                              *Defendants.*

------------------------------------------------------------

## ORDER

    AND NOW, this ____ day of _____, 201_, upon consideration of IBC Defendants'

Motion to Dismiss Plaintiffs' Second Amended Complaint and memorandum of law in support

thereof, and any response by plaintiffs in opposition thereto, it is hereby ORDERED that said

motion is GRANTED.  Plaintiffs' claims are DISMISSED WITH PREJUDICE with respect to

defendants Independence Blue Cross and QCC Insurance Company.

                                            BY THE COURT:


                                            _____
                                            Joel H. Slomsky, U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------------

CHRISTOPHER TEMPLIN, VIOLA HENDRICKS,
FELDMAN'S MEDICAL CENTER PHARMACY,
INC., and FCS PHARMACY LLC,

$\qquad$ *Plaintiffs,*

$\qquad\qquad$ Civil Action No. 09-4092 (JHS)

$\quad$ *-against-*

INDEPENDENCE BLUE CROSS, QCC
INSURANCE COMPANY, and CAREFIRST, INC.,

$\qquad$ *Defendants.*

---------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF IBC DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**INTRODUCTION**

On July 27, 2010, this Court ruled that plaintiffs "failed to exhaust their administrative

remedies as required by ERISA[,]" and found that "it was not reasonable for Plaintiffs to seek

immediate judicial review" when they sued defendants in September 2009. Opinion and Order

(D.E. 39) (the "Order") at 2, 4. As a result, the Court ordered plaintiffs to complete the employee

benefit plan's appeal procedures and placed this case in civil suspense. *Id.* at 5-6. During that

administrative review process, any remaining benefit claims raised by plaintiffs were approved

for payment by defendants Independence Blue Cross and QCC Insurance Company (collectively,

the "IBC Defendants").[1]

---

[1] As plaintiffs know, most of the claims at issue had been approved for payment by the IBC Defendants
long before this lawsuit was filed.  Indeed, plaintiffs also knew before this lawsuit was filed that the IBC Defendants
would approve claims for payment when: (1) the claim was received through the claims system; and (2) plaintiffs
submitted both (a) valid prescriptions and (b) proof of delivery from the billing pharmacy to the member.  Exhibit A
at 91-93, 154-55 (Excerpts from the October 14, 2010 hearing) (redacted); *see also* D.E. 16-4 (February 13, 2009
letter from M. Zipfel to A. Paduano, attached as internal Exhibit D to Plaintiffs' First Amended Complaint) at 2.

1

Nonetheless, plaintiffs now lodge a baseless Second Amended Complaint ("SAC") which does not state any claims against the IBC Defendants and must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Counts I and II, asserting purported claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), fail as to the IBC Defendants and must be dismissed for three principal reasons.

*First*, because the IBC Defendants have approved all benefit claims at issue for payment, they have no further role with respect to the purported ERISA claims of plaintiffs Feldman Medical Center Pharmacy, Inc. ("Feldman's"), FCS Pharmacy LLC ("FCS") (collectively, the "Pharmacy Plaintiffs"), Viola Hendricks and Christopher Templin (collectively, the "Individual Plaintiffs"). Plaintiffs allege that defendant CareFirst, Inc. ("CareFirst"), as the Blue Cross Blue Shield "host plan" with respect to the benefit claims at issue, is responsible for paying approved claims. *See, e.g.,* SAC at ¶ 12 ("If the provider has any issues with payment for outstanding claims, the provider can go through the 'host plan' for payment"). CareFirst admitted in its recent Answer that it "has paid substantial monies to [Feldman's] and that it has agreed to pay additional claims as well." D.E. 52 at ¶ 14. Plaintiffs do not allege any basis for claiming that the IBC Defendants – as opposed to CareFirst – must pay any unpaid or underpaid claims.

*Second*, ERISA does not govern Feldman's purported reimbursement claim against defendants because the alleged conduct at issue is governed by a participating provider agreement between Feldman's and CareFirst, something plaintiffs falsely denied in previous pleadings but admitted in related litigation. Because any disputes between Feldman's and CareFirst concerning alleged under-reimbursements is a matter of contract – and not ERISA – the Court lacks subject matter jurisdiction over Feldman's purported ERISA claims.

2

*Third*, the Individual Plaintiffs have not alleged any cognizable harm under ERISA. No individual ever went without medication in this case. Also, the provider agreement between Feldman's and CareFirst prohibits billing members for any amounts beyond plan co-pays, deductibles, co-insurance and the like, and therefore individuals such as plaintiff Hendricks are not subject to provider claims for alleged under-reimbursements. The other harm alleged by the Individual Plaintiffs – that their employment was terminated by the Pharmacy Plaintiffs and the loss of the Pharmacy Plaintiffs' "high level of personalized service" (SAC at ¶ 30) – is not relevant for purposes of ERISA. Therefore, Counts I and II of the SAC must be dismissed.

Count III, asserting a purported claim under the Pennsylvania Quality Health Care Accountability and Protection Act, 40 P.S. § 991.2101 *et seq.* ("Act 68"), also fails as a matter of law because (1) the statute does not allow a private right of action, and (2) to the extent any plaintiff has standing to assert an ERISA claim, which is denied, ERISA would preempt such Act 68 claims.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

After this Court placed the case in civil suspense because plaintiffs had failed to exhaust their administrative remedies and unreasonably sought judicial review, plaintiffs submitted their first-level appeal to the IBC Defendants on July 30, 2010. By letters dated August 30, 2010, the IBC Defendants upheld the initial benefit determinations with respect to all but one member. *See* Exhibit B (redacted).[2] By letter dated September 8, 2010, the IBC Defendants "decided to partially overturn the initial determination" with respect to two benefit determinations relating to plaintiff Hendricks. Exhibit C (redacted). On September 16, 2010, plaintiffs filed their second-level appeal.

---

[2] One member initially demanded that his first-level appeal be withdrawn, but later reinstated the appeal.

3

The parties held a second-level appeal hearing on October 14, 2010. SAC at ¶ 26; *see also* Order at 5-6. At this hearing, Factor Health Management's President Jarrett Bostwick[3] repeatedly and unequivocally contradicted plaintiffs' previous allegations that Feldman's was a non-participating provider, stating that "Feldman's Medical Pharmacy had a provider agreement with CareFirst, Blue Cross Blue Shield. . . ." Exhibit A at 35; *see also id.* at 36, 80, 128 and 133 (same).[4] Plaintiffs now concede, as they must, that Feldman's is a *participating provider* with defendant CareFirst. SAC at ¶ 13.[5] Moreover, plaintiffs' counsel admitted during the appeal hearing that no individual ever went without necessary medical treatment, either before or after the Court's Order. Exhibit A at 52.

On October 29, 2010, the Second-Level Appeals Committee ("SLAC") *approved all of plaintiffs' remaining benefit claims for payment.* Exhibit E (redacted). For members who obtained factor from Feldman's, the SLAC directed that "if it has not occurred already, the claims should be processed and paid by the local Blue Plan, CareFirst Blue Cross Blue Shield, in accordance with the appropriate agreement between Feldman's and CareFirst." *Id.* For plaintiff

---

[3] Factor Health Management is the parent company of both FCS and Feldman's. Exhibit A (hearing transcript) at 33.

[4] At the same time Feldman's was representing to this Court that it was a non-participating provider, it was representing the exact opposite to a Maryland court, *i.e.*, that it had a provider agreement with CareFirst. *Compare* FAC at ¶ 13 (filed December 2, 2009) *with* Exhibit D (complaint filed on June 1, 2009 in *Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc.*, Circuit Court for Baltimore County) (the "Maryland Litigation"). In the Maryland Litigation, Feldman's sued CareFirst based on alleged underpayments of factor-related benefit claims. *Id.* at ¶¶ 6, 9. But unlike here, in the Maryland Litigation, Feldman's repeatedly alleged that the disputed benefits claims were governed by a "Participating Provider Agreement" between Feldman's and CareFirst. *Id.* at ¶¶ 6, 8-9, 13-16, 28-33; internal Exhibit A. The IBC Defendants are not parties to the Maryland Litigation.

[5] For purposes of this case, the terms "preferred providers", "participating providers" and "in-network providers" generally refer to "doctors, Hospitals and other health care professionals and institutions that are part of [a Blue Cross Blue Shield] Personal Choice Network." SAC, internal Exhibit C (the Plan), at p. 3.2-18. These providers have contracts with Blue Cross Blue Shield licensees – such as IBC or CareFirst – that govern the levels of reimbursement for particular services or medical products. *Id.* at p. 3.2-20 ("Ancillary service providers . . . are paid on the basis of fee-for-service payments according to the Carrier's Personal Choice fee schedule for the specific Covered Services performed."). Under the Plan, a pharmacy such as Feldman's would be an "ancillary service provider."

Templin, the only member who received factor from FCS (and who only had one claim at issue in the second-level appeal), the SLAC "determined that the claim should be processed and paid in accordance with the terms of the Member's Plan." *Id.*

Plaintiffs filed the SAC on November 15, 2010. D.E. 48. Plaintiffs allege that the Individual Plaintiffs are hemophiliacs or provide support for hemophiliac dependents and/or family members. SAC at ¶ 10. The Pharmacy Plaintiffs allegedly provided factor directly to patients who are participants or beneficiaries of health plans "insured, underwritten and/or administered by Defendants," *id.* at ¶ 11, including Templin, Hendricks and/or their dependent family members.

Plaintiffs' suit purportedly "arises from Defendants' wrongful failure to pay claims submitted by or on behalf of Plaintiffs for covered pharmacy services performed pursuant to written insurance contracts." *Id.* at ¶ 10. Despite the Court's findings to the contrary, plaintiffs again allege that they properly exhausted administrative remedies "prior to commencing this litigation[.]" *Id.* at ¶¶ 22-24. Plaintiffs also again fail to distinguish between the IBC Defendants and CareFirst in their allegations.

## ARGUMENT

### I.   Motion to Dismiss Standards

#### A.   Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a matter if the court lacks subject matter jurisdiction. Plaintiffs allege that the Court has federal question jurisdiction based on ERISA. SAC at ¶ 8; 28 U.S.C. § 1331; 29 U.S.C. § 1332(e)-(f). "Plaintiff has the burden of establishing subject matter jurisdiction." *Reg'l Med. Transport, Inc. v. Highmark, Inc.*, 541 F. Supp. 2d 718, 725 (E.D. Pa. 2008); *see also Conemaugh Star Plan*

*Welfare Benefit Plan & Trust v. Fisher*, 536 F. Supp. 2d 231, 235-36 (D. Conn. 2008) (plaintiffs must establish jurisdiction by a preponderance of the evidence).

The IBC Defendants challenge federal question jurisdiction with respect to Feldman's ERISA claims as a matter of fact. "Because at issue in a factual [Rule] 12(b)(1) motion is the trial court's jurisdiction . . . to hear the case . . . the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Walthour v. Child and Youth Services*, Civ. A. No. 09-3660, 2010 U.S. Dist. LEXIS 70388, at *15 (E.D. Pa. July 14, 2010) (Slomsky, J.) (same) (citing *Mortensen*). Where, as here, the defendants mount a factual attack on the court's jurisdiction, the plaintiffs' allegations are not presumed true and disputed issues of fact do not preclude granting the motion. *Walthour*, 2010 U.S. Dist. LEXIS 70388, at *15-16.[6]

"A district court [also] can grant a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on the legal insufficiency of the claim." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408 (3d Cir. 1991).

### B.   Rule 12(b)(6)

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded, material allegations. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). However, the factual allegations in the complaint must be enough to raise the claimed right to relief above the speculative level, and sufficient to create a reasonable expectation that discovery will reveal evidence to support the claim. *Id.* "[B]lanket assertion[s]

---

[6] An analogous principle is that a court may "look beyond the plaintiff's allegations to the substance of the plaintiff's complaint" if the complaint was "artfully plead" in an attempt to avoid or invoke federal jurisdiction. *See generally Casale v. Aurora Yarns*, Civ. A. No. 10-460, 2010 U.S. Dist. LEXIS 34686, at *11-12 (E.D. Pa. Apr. 7, 2010).

of entitlement to relief" are insufficient, as are labels, conclusions, plainly false allegations, and formulaic recitations of the elements of a cause of action. *Id.* at 1965 & n.3; *see also Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986) (legal conclusions couched as factual allegations are insufficient to state a claim). Rather, "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, if accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly, supra*).[7]

## II.   Plaintiffs' Purported ERISA Claims Against the IBC Defendants Have Been Mooted by the Approval of All Disputed Claims for Payment

Plaintiffs' purported ERISA claims against the IBC Defendants suffer from the fatal flaw that every disputed benefits claim already has been approved for payment by the IBC Defendants. Exhibit E (redacted). Plaintiffs do not contend otherwise, nor could they. It also is undisputed that CareFirst has begun to pay – and intends to further pay – these approved claims. *See, e.g.,* D.E. 52 (CareFirst's Answer) at ¶ 14 (stating that CareFirst "has paid substantial monies to [Feldman's] and that it has agreed to pay additional claims as well"; also that it "advised plaintiffs of its intent 'to pay the disputed claims at the full extent of allowed reimbursement for the dates of service at issue. . . .'"); SAC at ¶ 12 (alleging that when acting as the "host plan", CareFirst is responsible for paying approved claims). As a result, no ERISA benefits claim exists against the IBC Defendants, and Counts I and II must be dismissed. *See Tannenbaum v. Unum Life Ins. Co. of Am.*, Civ. A. No. 03-1410, 2010 U.S. Dist. LEXIS 65471, at *15-24 (E.D. Pa. June 30, 2010) (dismissing ERISA claim for benefits as moot where "it is undisputed that plaintiff has received or is receiving all benefits to which he is entitled. . . .").

---

[7] The Court may consider documents attached to the complaint when considering a Rule 12(b)(6) motion. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Rose v. Bartle*, 871 F.2d 331, 339-40 n.3 (3d Cir. 1989). The Court also may consider documents of undisputed authenticity that are referenced by the complaint, or on which the complaint necessarily relies. *See Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

III.    **Feldman's Provider Contract with CareFirst – Not ERISA – Governs its Purported Reimbursement Claims**

The Court also lacks subject matter jurisdiction over Feldman's purported ERISA claims.

No dispute exists with respect to the right to covered benefits for any individual to whom

Feldman's allegedly provided factor medication.  Indeed, the administrative process, which

plaintiffs failed to exhaust in the first instance as required by ERISA, resolved any remaining

benefit claims.  Feldman's only challenges alleged underpayments by CareFirst, which are

governed by the parties' provider agreement.  ERISA is irrelevant in such a dispute.

A recent case from the Northern District of Illinois illustrates this distinction.  In *Concert*

*Health Plan Ins. Co. v. Houston Northwest Partners, Ltd.*, 265 F.R.D. 319 (N.D. Ill. 2010), the

court held that it lacked federal question jurisdiction over a lawsuit between an insurance

company and hospital regarding the alleged underpayment of claim reimbursements.  The

defendant hospital provider moved to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1).  Despite the plaintiff insurance company's references to ERISA, the hospital argued

that the "dispute over payment [was] essentially a breach of contract case governed by Texas law."

*Id.* at 321.

Following the Fifth Circuit's recent decision in *Lone Star OB/GYN Assocs. v. Aetna*

*Health, Inc.*, 579 F.3d 525 (5th Cir. 2009), the district court agreed and concluded:

> [T]he dispute between the parties is not whether the claim must be covered
> – indeed, Concert has already agreed that it is covered and has made a
> payment to Houston – but rather over the rate of payment.  Here, the rate
> of payment is determined by the contracts between Houston, PHCS, and
> Concert, not by the terms of the ERISA Plan . . . As a result, I find no
> federal question presented here.

*Id.* at 322.  As in *Lone Star*, the key issue in *Concert Health* – and here – is that "the Provider

Agreement creates a legal duty 'independent' of the ERISA plan[,] a duty to pay a specific

contractual rate for services rendered under the ERISA plan."  579 F.3d at 530; *see also Trs. ex*

*rel. Teamsters Benefit Trust v. Doctors Med. Ctr. of Modesto, Inc.*, 286 F. Supp. 2d 1234, 1238 (N.D. Cal. 2003) (granting Rule 12(b)(1) motion in purported ERISA suit to recover alleged benefit overpayments where "the core dispute is essentially over differing interpretations of the Interplan-Plaintiff Fund contract").

Whether CareFirst has underpaid Feldman's reimbursement claims is a matter of contract law between those entities, and does not involve the Factor II ERISA plan or its members. *See Lone Star*, 579 F.3d at 530 (the "determination of the rate that Aetna owes Lone Star under the Provider Agreement does not require any kind of benefit determination under the ERISA plan"), 533 ("[w]e hold that claims for underpayment under the Provider Agreement, which do not implicate coverage determinations under the terms of the relevant plan, are not preempted by ERISA"); *see also* Exhibit F at 1 (Feldman's July 22, 2010 letter to the Court in the Maryland Litigation) (counsel stating that "[t]his case is a simple collection matter"). "A claim that implicates the rate of payment as set out in the Provider Agreement, rather than the right to payment under the terms of the benefit plan," is not governed by ERISA. 579 F.3d at 530-31. Third Circuit case law supports this important distinction. *See Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 402 (3d Cir. 2004) (for purposes of preemption analysis federal jurisdiction did not exist where, *inter alia*, "[c]overage and eligibility" under an ERISA plan "are not in dispute" but rather "the resolution of [the] lawsuit requires interpretation of the Subscriber Agreement, not the Plan").

Several district courts in this circuit have applied the distinction between *coverage* determinations and *rate of payment* determinations, and held that subject matter jurisdiction over providers' purported ERISA claims was lacking. *See Barnert Hosp. v. Horizon Healthcare Services, Inc.*, Civ. A. No. 06-3266, 2007 U.S. Dist. LEXIS 26723, at *3-4 (D.N.J. Apr. 11, 2007)

("coverage and eligibility under an ERISA plan are not at issue here; rather, the parties' dispute centers on the proper amount that the Hospital Plaintiffs should have been reimbursed by Defendants"); *Somerset Orthopedic Assocs., P.A. v. Aetna Life Ins. Co.*, Civ. A. No. 06-867, 2007 U.S. Dist. LEXIS 7662, at *3-4 (D.N.J. Feb. 2, 2007) (same); *UPMC Presby Shadyside v. Motel Hotel Assocs., Inc.*, Civ. A. No. 06-1323, 2006 U.S. Dist. LEXIS 86814, at *7 (W.D. Pa. Nov. 30, 2006) ("MHA does not dispute the fact that it has already paid the substantial sum of $224,000 of the near $1.2 million bill for medical services provided, which demonstrates that this is, in fact, a dispute over 'how much,' not over 'whether' there is coverage or eligibility in this first instance").

For these reasons, the Court lacks subject matter jurisdiction under ERISA with respect to Feldman's claims in Counts I and II.[8]

## IV.   The Individual Plaintiffs Have No ERISA Claims

Counts I and II must be dismissed under Rules 12(b)(1) and 12(b)(6) for the additional reason that the Individual Plaintiffs have not alleged any cognizable harm under ERISA, and therefore fail to state ERISA claims.

*First*, ERISA's primary enforcement provision (and the provision upon which plaintiffs expressly rely), 29 U.S.C. § 1132(a)(1)(B) (SAC at ¶¶ 34, 41), permits "a participant or beneficiary" to sue "to *recover benefits* due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." (emphasis added). At the second-level appeal hearing, plaintiffs' counsel admitted that

---

[8] The purported assignment Feldman's received from Hendricks (FAC at ¶ 11 & internal Exhibit A) does not transform Feldman's claims into ERISA claims because "[w]here the basis of the suit is entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient cannot confer standing." *Lone Star*, 579 F.3d at 529 n.3 (also holding that "[t]he crucial question [here] is whether [the provider] is in fact seeking benefits under the terms of the plan, or rights that derive from the independent basis of the [provider] contract."); *see also Blue Cross of California v. Anesthesia Care Assoc. Med. Group, Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999) ("The dispute here is not over the *right to payment, which might be said to depend on the patients' assignments to the Providers, but the amount, or level, of payment,* which depends on the terms of the provider agreements") (emphasis added).

neither of the Individual Plaintiffs (nor any other purported assignors or their dependents) had

been denied ERISA benefits.  Exhibit A at 52 (Ms. Jachimowicz: "I'm trying to confirm that

medication was dispensed and all members received medication."  Mr. Paduano: "Sure.").  These

individuals always received their factor medication, and plaintiffs do not allege otherwise.

    *Second*, the provider agreement between Feldman's and CareFirst prohibits Feldman's

from "balance billing" Blue Cross Blue Shield members.  Exhibit D (Maryland Litigation

complaint at internal Exhibit A, ¶ 17 (stating in relevant part that "you agree not to bill, charge,

collect or seek compensation from a Member, or any person responsible for a Member, for an

amount in excess of the Allowed Benefit for Covered Services. . . .")).  Plaintiffs do not allege

that Feldman's violated this provision and billed any members for allegedly underpaid factor

benefit claims, nor do they allege that FCS did so with respect to Templin.  Thus, no member

suffered any financial injury.

    *Third*, plaintiffs' new allegation that "both of the Individual Plaintiffs' employment has

been terminated" because of the "financial strain placed on FCS and [Feldman's]" (SAC at ¶ 30)

is irrelevant for purposes of plaintiffs' alleged claims in this litigation.  So, too, is the Individual

Plaintiffs' alleged loss of the Pharmacy Plaintiffs' "high level of personalized service[.]"  *Id.*

ERISA does not authorize suits to recover for purported losses such as these, and plaintiffs have

cited no authority to the contrary.

    Thus, the Individual Plaintiffs have not alleged any cognizable loss with respect to their

ERISA benefit claims against defendants, and these claims must be dismissed under Federal

Rules 12(b)(1) and 12(b)(6).  *See, e.g., Werner v. Primax Recoveries, Inc.*, 365 Fed. Appx. 664,

668-69 (6th Cir. 2010) (affirming dismissal where, *inter alia*, plaintiff's purported ERISA claim

was mooted by defendant's previous payments); *Kendall v. Employees Ret. Plan of Avon Prods.*,

561 F.3d 112, 118-22 (2d Cir. 2009) (affirming dismissal where, *inter alia*, plaintiff lacked

standing to assert purported ERISA claim because she did not allege any "injury in fact");

*Asbestos Workers Local No. 42 Welfare Fund v. Brewster*, 227 F. Supp. 2d 226, 228 (D. Del.

2002) (granting defendants' motion to dismiss for lack of subject matter jurisdiction where

ERISA remedial provision did not authorize recovery sought by plaintiff).[9]

## V.   Plaintiffs' Act 68 Claim Must Be Dismissed

### A.   No Private Right of Action Exists under the "Prompt Payment" Statute

Plaintiffs' purported claim under Act 68 in Count III must be dismissed because no

private right of action exists under Act 68. *See Solomon v. U.S. Healthcare Sys. of Penn., Inc.*,

797 A.2d 346 (Pa. Super. 2002). In *Solomon*, a physician sued an insurer with which he

contracted for its alleged failure to comply with Act 68's prompt-payment requirement. In

analyzing whether to permit the lawsuit, the Superior Court applied the three factor test from

*Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623 (Pa. 1999),[10] and found no legislative intent to

create a private remedy because Act 68 "provid[ed] an administrative procedure for a health care

provider to file a complaint with the Insurance Department." 797 A.2d at 353. The *Solomon*

---

[9] If the Court determines that plaintiffs have stated ERISA claims, plaintiffs have demanded damages not available under the statute. *See* SAC at ¶ 36 (alleging that "[a]s a direct and proximate result of Defendants' wrongful denial of benefits, Plaintiffs have been damaged. Accordingly, Plaintiffs are entitled to recover the benefits improperly denied by Defendants, *consequential damages*, and interest.") (emphasis added). This demand for "consequential damages" is improper – as such "extra contractual" damages are not recoverable under ERISA – and must be stricken from the SAC. *See Ford v. Unum Life Ins. Co. of Am.*, Civ. A. No. 05-105, 2006 U.S. Dist. LEXIS 13643, at *6 (D. Del. Mar. 9, 2006) (observing that "the damages [plaintiff] requests, which include lost wages, pain and suffering, and other consequential damages, are not available under ERISA"); *Scalia v. Lafayette Life Ins. Co.*, Civ. A. No. 92-3714, 1993 U.S. Dist. LEXIS 3100, at *28, *30 (D.N.J. Mar. 9, 1993); *see generally Massachusetts Life Ins. Co. v. Russell*, 473 U.S. 134 (1985); *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993).

[10] These factors are:

> First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' – that is, does the statute create a . . . right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Solomon*, 797 A.2d at 352 (quoting *Witthoeft*, 733 A.2d at 626).

Court also held that the underlying purpose of the legislative scheme was not served by implying a private right of action. *Id.* "On the contrary, the provisions of the Health Care Act . . . clearly set forth a system of managed health care accountability to be enforced by the Insurance Department, not by a private action in the courts." *Id.*; *see also Connection Training Services v. City of Phila.*, Civ. A. No. 06-3753, 2009 U.S. Dist. LEXIS 1534, at *13 (E.D. Pa. Feb. 25, 2009) (noting the *Solomon* Court's holding that a provider "does not have an implied cause of action" under Act 68).

Although one district court declined to follow *Solomon* in *Grider v. Keystone Health Plan Central, Inc.*, Civ. A. No. 01-5641, 2003 U.S. Dist. LEXIS 16551 (E.D. Pa. Sept. 18, 2003), the *Grider* decision was wrongly decided for two reasons. *First*, the *Grider* Court expressed concern that without a private right of action, providers could not enforce the prompt payment requirement. *Id.* at *89-94. However, as *Solomon* recognized, Act 68 provides an administrative remedy by allowing a provider to file a complaint with the Pennsylvania Insurance Department ("PID"). *Solomon*, 767 A.2d at 353; *see also* 31 PA. CODE § 154.18(g)(2) ("Health care providers may file a complaint . . . with the Department . . . if . . . [t]he health care provider[s] believe[] that the licensed insurer or managed care plan is [] not complying with the prompt payment provisions of the act"); 40 P.S. § 991.2182 (authorizing the PID to impose a variety of sanctions for non-compliance). Plaintiffs did not file any such complaint with the PID. *Second*, the *Grider* decision also contradicts the Pennsylvania Supreme Court's decision in *Elkin v. Bell Tel. Co.*, 420 A.2d 371 (Pa. 1980). In *Elkin*, the Supreme Court held that, where a plaintiff seeks damages for actions within an administrative agency's jurisdiction and expertise, courts should refer the matter to that agency and only award damages consistent with (and thus following) any agency determination. *Id.* at 377.

13

Because Act 68 does not provide a private right of action, Count III must be dismissed.

**B.      If Any Plaintiff Has Standing to Assert an ERISA Claim, ERISA Would Preempt that Plaintiff's Purported Act 68 Claim**

In the alternative, even assuming (1) there is a private right of action under Act 68, which there is not, and (2) one or more of the plaintiffs have standing to assert ERISA claims, which they do not, a purported claim under Act 68 still would be preempted by ERISA.

There are two theories of preemption under ERISA: "complete" (sometimes referred to as "conflict") preemption and "express" preemption. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 n.4, 216-18 (2004) (discussing the two); *Pascack Valley Hosp.*, 388 F.3d at 398 n.4 ("Preemption under § 514(a) of ERISA, 29 U.S.C. § 1144(a), must be distinguished from *complete* preemption under § 502(a) of ERISA, 29 U.S.C. § 1132(a)") (emphasis in original); *Barber v. Unum Life Ins. Co. of Am.*, 383 F.3d 134, 136, 138-44 (3d Cir. 2004) (discussing "conflict" preemption under § 502(a) and "express" preemption under § 514(a)). Count III of the SAC is preempted under each theory.[11]

1.      Complete/Conflict Preemption

Any purported claim under Act 68 would be preempted under this theory for two reasons: (1) the claim is nothing more than an ERISA-based benefits claim for reimbursement; and (2) the claim is based on 40 P.S. § 991.2166, which imposes a punitive interest rate for certain "late" payments of "clean" provider claims that exceeds ERISA remedies.

(a)      The Claims in the SAC Relate to ERISA Benefits

In *Davila*, the United States Supreme Court held that where parties "bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt

---

[11] Although one ground suffices for ERISA preemption, previous courts in this Circuit have found the same state law to be preempted under both ERISA theories. *See, e.g., Barber, supra* (addressing Pennsylvania's "bad faith" insurance statute); *McGuigan v. Reliance Standard Life Ins. Co.*, 256 F. Supp. 2d 345 (E.D. Pa. 2003) (same).

14

to remedy any violation of a legal duty independent of ERISA[,]" such state law claims "fall 'within the scope of' ERISA § 502(a)(1)(B) . . . and are therefore completely preempted. . . ." 542 U.S. at 214 (citation omitted); *see also Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273 (3d Cir. 2001) (a claim "regarding the proper administration of benefits . . . no matter how couched, is completely preempted. . . ."). Count III is such a claim. *See* SAC at ¶¶ 10-14, 42-45.

State prompt-pay act claims have been preempted by ERISA under similar circumstances. *See Schoedinger v. United Healthcare of the Midwest, Inc.*, 557 F.3d 872, 875-76 (8th Cir. 2009) (provider's Missouri Prompt Payment Act claim preempted) (following *Davila*), *cert. denied*, 2009 U.S. LEXIS 6959 (Oct. 5, 2009); *Torrent & Ramos, M.D., P.A. v. Neighborhood Health P'Ship, Inc.*, Case No. 05-21668, 2005 U.S. Dist. LEXIS 46502, at *7-16 (S.D. Fla. Sept. 2, 2005) (provider's Florida Prompt Pay Statute claim preempted).[12]

### (b)    Act 68 Contains an Extra-ERISA Remedy

"ERISA's 'comprehensive legislative scheme' includes 'an integrated system of procedures for enforcement.'" *Davila*, 542 U.S. at 208 (citation omitted). "This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Id.* With respect to complete preemption:

> [A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted.

*Id.* at 209; *see generally English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (a state law may be preempted "to the extent that it actually conflicts with federal law").

---

[12] Moreover, federal courts have found state law claims preempted by ERISA where non-network providers such as FCS (SAC at ¶ 13) asserted rights as purported assignees of ERISA plan beneficiaries (or otherwise sought to enforce the rights of these beneficiaries). *See Parkview Hosp., Inc. v. White's Residential & Family Services, Inc.*, No. 07-cv-0208, 2008 U.S. Dist. LEXIS 1289, at *11-13 (N.D. Ind. Jan. 7, 2008) (finding that "[t]his distinction is dispositive" and holding that ERISA preempted state law claims) (collecting cases).

In *Barber*, the Third Circuit Court of Appeals applied *Davila* and found that Pennsylvania's "bad faith" statute for insurance claims, 42 Pa.C.S. § 8371, "is a state remedy that allows an ERISA-plan participant to recover punitive damages for bad faith conduct by insurers, supplementing the scope of relief granted by ERISA." 383 F.3d at 140-41. Thus, § 8371 was conflict preempted. *Id.* The Court should follow the *Barber* decision. Act 68, on which Count III is based, *requires* a ten-percent interest penalty to be imposed if an insurer fails to pay a provider's "clean claim" within forty-five days of receipt. *See* 40 P.S. § 991.2166(b).

ERISA does not provide plaintiffs with such a statutory remedy. Rather, "the awarding of prejudgment interest under ERISA is within the district court's discretion[.]" *Fotta v. Trs. of the United Mine Workers of Am., Health and Ret. Fund of 1974*, 165 F.3d 209, 213 (3d Cir. 1998). Thus, Act 68's punitive interest rate remedy is beyond ERISA's scope, conflicts with ERISA's comprehensive enforcement regime and is preempted.[13]

## 2.   Express Preemption

The theory of "express" preemption also bars any purported claims under Act 68. ERISA § 514(a), 29 U.S.C. § 1144(a), provides in relevant part that "[e]xcept as provided in subsection (b) of this section, the provisions of this title . . . *shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .*" (emphasis added). Section 514(a)'s language is "deliberately expansive." *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). "A law 'relates to' an employee benefit plan if it 'has a connection with or reference to such a plan.'" *Gilbertson v. Unum Life Ins. Co. of Am.*, Civ. A. No. 03-5732, 2005

---

[13] ERISA would preempt the entire Act 68 claim, not merely the statute's interest-related remedy. *See Knochel v. HealthAssurance Penn., Inc.*, Civ. A. No. 06-426, 2006 U.S. Dist. LEXIS 81009, at *14-16 (W.D. Pa. Sept. 25, 2006) (discussing *Barber* and rejecting the plaintiffs' argument that only the punitive damages remedy provided in Pennsylvania's "bad faith" statute was preempted; "[*Barber*] did not hold, as [the] plaintiffs have suggested, that preemption should be limited to the remedies provided for in § 8371 and not applied to the statute as a whole") (collecting cases).

U.S. Dist. LEXIS 12240, at *5 (E.D. Pa. June 21, 2005) (holding that common law and state

Consumer Protection Law claims were preempted) (citation omitted).

Subsection (b), referred to as ERISA's "savings clause", provides in relevant part that

"nothing in this title shall be construed to exempt or relieve any person from any law of any state

which regulates insurance. . . ." 29 U.S.C. § 1144(b)(2)(A).  Under § 514(b) "a state law must be

'specifically directed toward' the insurance industry . . . laws of general application that have

some bearing on insurers do not qualify." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538

U.S. 329, 334 (2003) (further observing that clause "saves laws that regulate *insurance*, not

insurers") (citation omitted) (emphasis in original).  In *Miller*, the Supreme Court refined the test

for determining whether a state law is saved by operation of ERISA § 514(b): "First, the state

law must be specifically directed toward entities engaged in insurance.  Second . . . the state law

*must substantially affect the risk pooling arrangement between the insurer and the insured.*" *Id.*

at 341-42 (holding that Kentucky "Any Willing Provider" statutes saved from ERISA preemption)

(internal citations omitted) (emphasis added).

Applying this test, any Act 68 claim would be preempted by ERISA.  In *Barber, supra,*

the Third Circuit held, *inter alia,* that Pennsylvania's "bad faith" statute for insurance claims, 42

Pa.C.S. § 8371, was not saved from ERISA preemption via 29 U.S.C. § 1144(b)(2)(A).  Applying

the *Miller* test, the Court determined that § 8371 satisfied the first factor, because the state statute

was "specifically directed toward entities engaged in insurance[.]"  383 F.3d at 142.  However,

the second *Miller* factor was not met because § 8371 does not "substantially affect" the

insurer/insured risk-pooling arrangement.  *Id.*  The Court observed that the statute "is remedial in

nature – it is a remedy to which the insured may turn when injured by the bad faith of an insurer."

*Id.* at 143.  The statute "does not affect the kinds of bargains insurers and insureds may make.  It

provides that whatever the bargain struck, if the insurer acts in bad faith, the insured may recover punitive damages." *Id.* Thus, § 8371 was not saved from ERISA preemption. *Id.; see also McGuigan*, 256 F. Supp. 2d at 348 (holding that "since § 8371 does not satisfy the second prong of the *Miller* test, § 8371 is preempted by ERISA"); *see generally Olick v. Kearney*, 451 F. Supp. 2d 665, 678-79 (E.D. Pa. 2006) (recognizing that "recent cases in this District have held that ERISA preempts many [] claims related to insurance plans") (collecting cases).

As in *Barber*, any Act 68 claim here is purely remedial in nature, seeking a punitive ten percent interest rate "[i]f a licensed insurer . . . fails to remit the payment" on a "clean claim submitted by a health care provider" within forty-five days of receipt. 40 P.S. § 991.2166(a)-(b). Even assuming that Act 68 provides a private right of action – which it does not – and further assuming that this statutory section is "specifically directed toward entities engaged in insurance", the second *Miller* factor regarding risk-pooling is not satisfied. *See Miller, Barber, supra.* Thus, Count III is not saved from § 514(a)'s "deliberately expansive" preemptive power and must be dismissed.

18

## CONCLUSION

For each of the reasons set forth herein, the IBC Defendants respectfully request that this Court grant their motion and enter an order dismissing, with prejudice, plaintiffs' Second Amended Complaint with respect to defendants Independence Blue Cross and QCC Insurance Company.

Respectfully submitted,


/s/ David L. Comerford
David L. Comerford (I.D. No. 65969)
Katherine M. Katchen (I.D. No. 80395)
Matthew R. Varzally (I.D. No. 93987)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
Phone: (215) 965-1200
Facsimile: (215) 965-1210

Counsel for Defendants Independence Blue Cross and QCC Insurance Company

Dated:  December 3, 2010

## CERTIFICATE OF SERVICE

I, Matthew R. Varzally, hereby certify that on December 3, 2010, I caused true

and correct copies of **IBC Defendants' Motion to Dismiss Plaintiffs' Second Amended**

**Complaint**, and supporting brief, to be made available for viewing and downloading

through the Court's ECF system, as well as served, by First-Class and/or electronic mail,

upon the following parties:

> Timothy S. Cole
> MANTACOLE, LLC
> 1055 Westlakes Drive, Suite 300
> Berwyn, PA 19312
> TimCole@mantacole.com
>
> Anthony Paduano
> Jordan D. Becker
> Lori Vinciguerra
> PADUANO & WEINTRAUB LLP
> 1251 Avenue of the Americas, 9th Floor
> New York, N.Y. 10020
> ap@pwlawyers.com
> jbd@pwlawyers.com
> lv@pwlawyers.com
>
> *Attorneys for Plaintiffs*
>
> Mark J. Oberstaedt
> ARCHER & GREINER, P.C.
> One Centennial Square
> 33 E. Euclid Ave.
> Haddonfield, N.J. 08033
> moberstaedt@archerlaw.com
>
> *Attorney for Defendant CareFirst, Inc.*

> /s/ Matthew R. Varzally
> Matthew R. Varzally

20