UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER TEMPLIN, VIOLA HENDRICKS,       )
FELDMAN'S MEDICAL CENTER                      )
PHARMACY, INC., and FCS                        )
PHARMACY LLC,                                  )
                                               )      Civil Action No.
                                               )      09-4092 (JHS)
            Plaintiffs,                         )
                                               )
vs.                                            )
                                               )
INDEPENDENCE BLUE CROSS,                       )
QCC INSURANCE COMPANY, and                     )
CAREFIRST, INC.                                )
                                               )
            Defendants.                        )

MEMORANDUM IN OPPOSITION TO IBC DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF FACTS ................................................................................ 2

PROCEDURAL HISTORY ...............................................................................5

ARGUMENT ................................................................................................ 8

   I.   The Motion to Dismiss Standard ........................................................ 8

   II.  Plaintiffs' ERISA Claims Have Not Been Mooted .......................................8

   III.  ERISA Governs Feldman's Reimbursement Claims ...................................10

   IV.  The Individual Plaintiffs Have ERISA Claims ...........................................13

   V.  Plaintiffs' Act 68 Claim Should Not Be Dismissed ...................................15

      A.   There Is A Private Right Of Action Under The Prompt Payment Statute  .15

      B.   Plaintiffs' Act 68 Claims Are Not Pre-empted .....................................18

         1.   The Statute Is Not "Completely" Pre-empted ...................................18

         2.   There Is No Express Pre-emption Under the ERISA Savings Clause .....20

CONCLUSION ........................................................................................ 22

TABLE OF AUTHORITIES

Cases

Aetna Health Inc., v. Davila,
542 U.S. 200, 124 S. Ct. 2488 (2004) ...........................................................19

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) .............................................................................8

Barber v. Unum Life Ins. Co.,
383 F. 3d 134 (3rd Cir. 2004) ................................................................19, 20

Barnert Hosp. v. Horizon Healthcare Services, Inc.,
2007 WL 1101443 (D.N.J. Apr. 11, 2007); .....................................................11

Bell Atlantic Corp. v. Twombly,
550 U.S. 554 (2007) .................................................................................7

Capozzi v. Northampton County,
2009 WL 2854859 (E. D. Pa. Sept. 3, 2009) ....................................................8

Elkin v. Bell Tel. Co.,
491 Pa. 123, 420 A.2d 371 (Pa. 1980) .........................................................17

Fotta v. Trs. Of the United Mine Workers of Am., Health and Ret. Fund of 1974,
165 F.3d 209 (3rd Cir. 1998) ....................................................................19

Fowler v. UPMC Shadyside,
578 F.3d 202 (3d Cir. 2009) .......................................................................8

Greiner v. Erie Ins. Exch.,
2000 WL 3371104 (Pa. Com. Pl. Nov. 13, 2000) ..............................................17

Grider v. Keystone Health Plan Central, Inc.,
2003 WL 22182905 (E.D. Pa. Sept. 18, 2003). ...............................................15

Hardt v. Reliance Standard Life Ins. Co.,
130 S. Ct. 2149 (2010) ............................................................................10

Kentucky Association of Health Plans, Inc. v. Miller,
538 U.S. 329 (2003) ...................................................................20

Lone Star OB/GYN Assocs. v. Aetna Health, Inc.,
579 F.3d 525 (5th Cir. 2009) .......................................................11

New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,
514 U.S. 645 (1995) ...................................................................18

Rice v. Santa Fe Elevator Corp.,
331 U.S. 218 (1947) ...................................................................18

Schoedinger v. United Healthcare of the Midwest, Inc.,
557 F.3d 872 (8th Cir. 2009) .........................................................19

Slade v. Hershey Co.,
2009 WL 4794067 (M.D. Pa. Dec. 8, 2009) ......................................8

Solomon v. U.S. Healthcare Sys. of Pennsylvania, Inc.,
797 A.2d 346 (Pa. Super.  2002) ..................................................15

Somerset Orthopedic Assocs., P.A. v. Aetna Life Ins. Co.,
2007 WL 432986 (D.N.J. Feb. 2, 2007) ..........................................12

Tannenbaum v. Unum Life Ins. Co. of America,
2010 WL 2649875 (E.D. Pa. June 30, 2010)......................................9

Torrent & Ramos, M.D., P.A. v. Neighborhood Health Partnership, Inc.,
Case No. 05-21688-CIV (S.D. Fla. Sept. 2, 2005) ..............................20

UPMC Presby Shadyside v. Motel Hotel Assocs., Inc.,
2006 WL 3484316 (W.D. Pa. Nov. 30, 2006) ...................................12

## Statutes

29 U.S.C. § 1132 ....................................................................10

29 U.S.C. § 1144 ....................................................................20

ERISA § 502 ..........................................................................18

68 Pa. C.S. § 991.2166 ............................................................19

This Memorandum is submitted by plaintiffs Christopher Templin ("Templin"), Viola Hendrick ("Hendrick"), Feldman's Medical Center Pharmacy, Inc. ("Feldman's" or "FMCP"), and FCS Pharmacy LLC ("FCS") (collectively, Plaintiffs") in opposition to the motion of defendants Independence Blue Cross ("IBC") and QCC Insurance Company's ("QCC") (collectively, the "IBC Defendants") to dismiss the Second Amended Complaint.

## PRELIMINARY STATEMENT

The instant motion to dismiss the Second Amended Complaint is an aggressive attempt to justify unreasonable and indefensible factual positions taken before the commencement of this litigation, and during it.  The motion rests not on any solid legal ground cognizable by the Federal Rules.  Rather, it is filed to position the argument eventually to be made here that IBC, only after the commencement of this action and substantial briefing and other proceedings did that which it was already required to do, namely, pay the principal sums in dispute.  However, the payments that IBC implicitly and explicitly concedes it must make have not been received by Plaintiffs.  The instant motion vaguely concedes liability based upon a combination of promises to pay outstanding invoices and a record of some prior payments of certain invoices.  By this concession, the IBC Defendants then posit as the basis for this motion that because they have promised to pay the invoices, there is no longer a controversy for this Court to resolve.  This position is not serious and has no merit.  As set forth more fully below, Plaintiffs continue to seek, and are entitled to obtain, the more than one million dollars in unpaid claims,

in addition to the substantial sums in interest and attorneys' fees to which they by law are entitled. The IBC Defendants have taken no responsibility for the conduct that caused this litigation; their arguments that they now are in the process of paying -- because they have no defense that could be filed consistent with Rule 11, nor did they ever have one -- is not a basis to dismiss anything. This is especially true as to a party that has proved that it will take no action regarding its legal and moral obligations here unless ordered to do so by a federal court. Accordingly, for this reason and for all of the reasons explained below, the arguments raised by the instant motion to dismiss are meritless and the motion should be denied.

## STATEMENT OF FACTS

The relevant facts are set forth in the Second Amended Complaint ("SAC") and are incorporated herein by reference and summarized below.

Plaintiffs Templin and Hendrick are hemophiliacs or provide support for their hemophiliac dependents and/or family members. Hemophilia is a life-threatening disease that requires those afflicted to use very expensive blood-clotting factor treatment ("factor"). FCS and FMCP were nationally accredited specialty pharmacies which provided factor to patients, including Templin and Hendrick's son. FCS and FMCP provided specialty pharmacy and health management care coordination services to patients since 2003 and 1986, respectively. (SAC ¶ 10.) On behalf of defendant Independence, defendant QCC issued a group health insurance policy, group number 465171, to Factor Health Services II, LLC ("Factor II") for the benefit of Factor II and its employees (the

"Plan"). The Plan was issued by, underwritten and/or administered by Independence, QCC, and/or defendant CareFirst, Inc. ("CareFirst"). (IBC, QCC and CareFirst are referred to collectively as "Defendants.") Both Templin and Hendrick were employees of Factor II and thus covered by the Plan. The effective date of the Plan was October 1, 2007, but it was subsequently renewed for additional one-year terms. (SAC ¶ 15 and Exhibit C.)

Upon receipt of prescriptions from licensed physicians and confirmation of the patients' pre-certification for the prescription (pursuant to page 3.2-18 of the Plan), FCS and FMCP dispensed specialized medications, products, and services, including factor, directly to patients, including Templin and Hendrick, who were participants in, or beneficiaries of, the Plan. After dispensing medication to patients, FCS and FMCP received an assignment of the patients' benefits, which allowed them to recover directly from Defendants for services or products rendered and, if necessary, to bring suit to obtain past due benefits. (SAC ¶ 11.) FCS and FMCP then submitted a claim for the applicable charges to the insurance carrier for payment. Pursuant to rules established by the Blue Cross Blue Shield Association (of which the Defendants are licensees), if the patient's carrier (in this case, IBC) is located in a different geographic area than the provider (in this case, FCS or FMCP), the latter submits the claims to the "host plan," which is CareFirst in the case of FMCP. (SAC ¶ 12.)

Pursuant to page 3.2-22 of the Plan, FCS and FMCP provided Covered Services (those health care services or supplies to which an insured is

entitled pursuant to the Plan) to Defendants' insureds (including Templin and Hendrick) and submitted insurance claims to Defendants in accordance with applicable procedures.  Templin and Hendrick assigned their right to payment to FCS and FMCP (SAC ¶ 11, Exhibit A).  Defendants, however, have breached the terms and conditions of the Plan by failing to timely pay FCS and FMCP for many of the properly submitted claims.  (SAC ¶ 14.)

Following the commencement of this litigation on September 9, 2009, FMCP's corporate parent, Factor Health Management ("FHM"), was forced to sell FMCP and FCS ceased to operate, with its last shipment of medicine occurring in the fall of 2009.  Both of the Individual Plaintiffs have been forced to obtain medication through pharmacies other than FCS or FMCP.  As such, they have ceased to obtain the high level of personalized service provided to them by FCS and FMCP.  This personalized service is particularly important for patients suffering from hemophilia, where the inability to obtain additional factor immediately in an emergency situation significantly increases the risk of death.

Finally, the assertion by the IBC Defendants that the disputes with respect to the unpaid invoices have been resolved is simply untrue.  Indeed, as of November 12, 2010 Defendants had failed and refused to timely pay in excess of $1,500,000.00 in legitimate claims submitted to them by FCS and FMCP.  (SAC ¶ 14, Exhibit B.)  Although some additional claims have been paid since that date, approximately $1,000,000 remains unpaid as of this date.

## PROCEDURAL HISTORY

Despite the fact that Plaintiffs never received a denial of any claim that had been submitted to Defendants, beginning in 2008, Plaintiffs attempted to resolve their disputes with Defendants without resort to litigation by commencing a series of formal and informal communications with IBC (SAC ¶ 22).  Thereafter, on February 12, 2009, Plaintiffs sent a Demand Letter to IBC for the amounts outstanding.  (SAC ¶ 22, Exhibit D).  On February 13, 2009, IBC sent a response which indicated, for the first time, that the claims at issue were in "suspense" because IBC was conducting an "investigation".  The letter further went on to state that IBC was rejecting all claims submitted by Feldman's which involved shipments of factor outside of the State of Maryland.   The letter concluded with IBC requesting information in connection with the claims made by FCS.  (SAC ¶ 22, Exhibit E).  By letter dated March 30, 2009, Plaintiffs responded to IBC, providing all of the information requested.  (SAC ¶22, Exhibit F).

In June of 2009, Plaintiffs met with Independence's in-house counsel, and three members of Independence's investigation team, in an attempt to resolve the outstanding dispute and avoid litigation. Despite assurances from IBC that the dispute could be resolved via an agreed upon process, no movement was made toward payment. (SAC ¶ 23). Accordingly, Plaintiffs commenced this lawsuit in September 2009 (SAC ¶ 23).  Despite these numerous communications and meetings with IBC, IBC never raised the issue of exhaustion or failure to pursue

administrative remedies until October 14, 2009 when it filed its Motion to Dismiss the Complaint.   Thereafter, on December 2, 2009 Plaintiffs filed a First Amended Complaint.   In late December 2009, all Defendants, including the IBC Defendants moved to dismiss the First Amended Complaint.

Pursuant to order of this Court, the parties met in Philadelphia, in April 2010, in an effort to resolve the outstanding claims (SAC ¶ 24).   Plaintiffs provided documents to Defendants at this meeting which were duplicative of the documents that were originally submitted with the claims and provided again to IBC during various discussions in 2008 and 2009.   There was no resolution of Plaintiffs' claims as a result of the meeting. (SAC ¶ 24).

By Opinion and Order dated July 27, 2010, in response to Defendants' Motions to Dismiss the First Amended Complaint that was filed by Plaintiffs in December 2009 (the "Order"), the Court directed that the parties proceed to an "administrative review" of all outstanding claims in accordance with the Plan and pursuant to the expedited deadlines and additional procedures provided for in the Order.   In order to facilitate this process, the Court specifically noted "[w]here Defendants have allegedly failed to render any initial decision on a claim, Plaintiffs should consider the claim as denied and appeal."[1]   The Court further allowed Plaintiffs the opportunity to file a Second Amended Complaint within 15 days after the Second Level Appeal determinations were issued (SAC ¶ 25).

---

[1]   Plaintiffs contend that there was never a good faith basis in fact or law to deny any claims.

On July 30, 2010, Plaintiffs filed a "Level One Appeal" with respect to all invoices that remained outstanding.   By correspondence dated August 30, 2010, Defendant IBC issued separate Level One Appeal Determinations for each of the Plan members with outstanding claims (the "Level One Determinations"). Thereafter, on September 16, 2010, Plaintiffs filed their Second Level Appeal.   On October 14, 2010, pursuant to the Order, an in person hearing (the "Hearing") was held before IBC's Second Level Appeal Committee ("SLAC") in Philadelphia and a transcription of the Hearing was made.   At the hearing, Plaintiffs answered questions and submitted evidence to a three-person Panel. IBC asked no questions of Plaintiffs' witnesses nor did it challenge any of Plaintiffs' proofs.   As such, the Hearing was nothing more than a sham and further delay tactic – it was not necessary to pay the claims at issue. By correspondence dated October 29, 2010, the Second Level Appeal determinations were issued.   (SAC ¶ 26).   Since receipt of these Determinations, some additional payments were made and continue to be made.   Upon information and belief, significant amounts remain unpaid as a result of a dispute between defendants IBC and CareFirst.   Pursuant to the Court's July 27, 2010 Order, Plaintiffs filed their Second Amended Complaint on November 15, 2010.

## ARGUMENT

### I.   The Motion to Dismiss Standard

The Rule 12(b)(6) standard has changed in recent years, following both Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), but federal district courts are still required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Slade v. Hershey Co., 2009 WL 4794067, at *1 (M.D. Pa. Dec. 8, 2009). Accord Fowler v. UPMC Shadyside, 578 F.3d 202, 210-11 (3d Cir. 2009) ("The District Court must accept all of the complaint's well-pleaded facts as true. . . ."); Capozzi v. Northampton County, 2009 WL 2854859, at *2 (E.D. Pa. Sept. 3, 2009) (same). Applying the foregoing standards, it is clear that the IBC Defendants' motion to dismiss should be denied.

### II.   Plaintiffs' ERISA Claims Have Not Been Mooted

This Court should reject the initial argument by the IBC Defendants that Plaintiffs' claims have been mooted by the approval of all disputed claims for payment. According to the IBC Defendants, "CareFirst has begun to pay – and intends to further pay – these approved claims." (Mem. of Law, p. 7). The IBC Defendants also quote CareFirst's Answer to the SAC (the "Answer") for the proposition that CareFirst "advised plaintiffs of its intent 'to pay the disputed

8

claims at the full extent of allowed reimbursement for the dates of service at issue.
. . .'"   (Mem. of Law, p. 7).

The foregoing arguments have at least three major defects.   First, even assuming *arguendo* that all disputes between the parties concerning payment have been resolved, the fact remains that, as the IBC Defendants concede, payment remains to be accomplished.   Until such time as payment occurs, Plaintiffs' claims cannot be regarded as moot.   This is especially true given the protracted, years-long struggle to get paid that Plaintiffs have endured. Accordingly, Tannenbaum v. Unum Life Ins. Co. of America, 2010 WL 2649875 (E.D. Pa. June 30, 2010), relied upon by the IBC Defendants, is inapposite.   In that case, the court found that ERISA claims were moot because plaintiff "has received—and, in the case of the LTD Plan, continues to receive—all benefits to which he is entitled under both plans."   *Id.* at 6.   In contrast, in the instant matter, as conceded by the IBC Defendants, payment remains to be accomplished.   The two situations are very different.

Second, it is not true that all disputes have been resolved.   For example, the October 29, 2010 letter from IBC attached as the first few pages of Exhibit E to the instant motion states that "the Committee found that coverage exists under the Member's Personal Choice contract for *most* of the claims at issue. . . ." (Emphasis added.)   Likewise, with regard to a separate letter attached as part of Exhibit E, IBC states that it "was notified by CareFirst that *certain* claims

9

are still being adjusted." (Emphasis added.)  In short, it is not true that all disputes have been resolved.[2]

Third, part and parcel of Plaintiffs' ERISA claims are claims for attorneys' fees, costs, and interest.  *See* 29 U.S.C. § 1132(g)(1).  Until such time as Plaintiffs' efforts to recover fees, costs, and interest are resolved, their ERISA claims cannot be regarded as moot.  In this regard, the United States Supreme Court earlier this year held that a claimant is entitled to recover fees under ERISA's general fee-shifting statute so long as it achieves "some degree of success on the merits."  Hardt v. Reliance Standard Life Ins. Co., 130 S. Ct. 2149, 2158 (2010).  Only as a result of this litigation have Plaintiffs begun to recover the sums they are owed.  Accordingly, pursuant to Hardt, Plaintiffs are entitled to a fee award under ERISA.

## III.   ERISA Governs Feldman's Reimbursement Claims

The Court also should reject the misguided argument by the IBC Defendants that the Court lacks subject matter jurisdiction over FMCP's ERISA claims.  According to this argument, ERISA is irrelevant because FMCP has merely challenged underpayments by CareFirst "which are governed by the parties' provider agreement." (Mem. of Law, p. 8.)

The foregoing argument is defective for a number of reasons.  First and foremost, FMCP has not merely challenged "underpayments" by CareFirst.  As

---

[2]   Moreover, the IBC Defendants' citation to a document which is outside of the record is improper and, while it changes nothing, this Court may not consider it unless the Court makes a determination to convert the motion to dismiss to one for summary judgment. Fed. R. Civ. P. 12(d).

described in the SAC, this litigation was commenced because Defendants failed to pay numerous claims that had been outstanding for a very long time. As set forth in Exhibit E to the SAC, the claims submitted by Plaintiffs were placed in "suspense" because IBC was conducting an investigation, and IBC rejected all claims submitted by FMCP which involved shipments of factor outside the State of Maryland. (SAC ¶ 22.) In light of these facts, it is completely disingenuous for the IBC Defendants to suggest that the instant litigation involves nothing more than alleged underpayments by CareFirst that fail to implicate ERISA.

Nor does the fact that first- and second-level appeals have taken place alter the analysis. The IBC Defendants note that CareFirst averred in its Answer that it "has paid substantial monies to [FMCP] and that it has agreed to pay additional claims as well." (Mem. of Law., p.2.) Nothing in this language establishes that all disputed claims have been resolved. Indeed, in a separate part of its Answer, in Par. 13, CareFirst avers: "Admitted in part that *certain* claims that FMCP submitted to CareFirst for payments are for covered services." (Emphasis added.) Again, nothing in this language establishes that all disputed claims have been resolved, or that the dispute between the parties is simply about underpayment. Rather, CareFirst's Answer suggests the converse.

Accordingly, the cases cited by the IBC Defendants in support of their argument are inapposite. Most of the cases deal with remand motions. *See* Lone Star OB/GYN Assocs. v. Aetna Health, Inc., 579 F.3d 525 (5th Cir. 2009); Barnert Hosp. v. Horizon Healthcare Services, Inc., 2007 WL 1101443 (D.N.J. Apr. 11,

2007); <u>Somerset Orthopedic Assocs., P.A. v. Aetna Life Ins. Co.</u>, 2007 WL 432986 (D.N.J. Feb. 2, 2007); and <u>UPMC Presby Shadyside v. Motel Hotel Assocs., Inc.</u>, 2006 WL 3484316 (W.D. Pa. Nov. 30, 2006).  This is significant because the removal statute is strictly construed and all doubts are resolved in favor of remand.  *See*, *e.g.*, <u>UPMC</u>, *supra*, 2009 WL 3484316 at *1.  In the instant matter, which does not involve removal/remand, there is no strict construction against Plaintiffs and doubts are not resolved in favor of the IBC Defendants.

The cases cited by the IBC Defendants are inapposite for the additional reason that whereas they involved the rate of payment, the instant matter does not.  In <u>Barnert</u>, for example, the dispute did not concern either "the administration or eligibility for benefits."  2007 WL at 1101443, at *8.  Similarly, in <u>Covert</u> "the dispute between the parties is not whether the claim must be covered."  265 F.R.D. at 332.   And in <u>Somerset</u>, the Court observed that "'the dispute is not over coverage and eligibility.'" 2007 WL 4322986, at *1.

In sharp contrast, as noted above, this litigation commenced after the claims submitted by Plaintiffs were placed in "suspense" because IBC was conducting an investigation, and IBC rejected all claims submitted by FMCP which involved shipments of factor outside the State of Maryland.  Even now, following the first- and second-level appeals, the October 29, 2010 letter from IBC attached as the first few pages of <u>Exhibit E</u> to the instant motion states that "the Committee found that coverage exists under the Member's Personal Choice contract for *most*

of the claims at issue. . . ." (Emphasis added.)  And CareFirst states in its Answer that "*certain* claims that FMCP submitted to CareFirst for payments are for covered services." (Emphasis added.)  Here, coverage, rather than mere underpayment, is at issue.

## IV.    The Individual Plaintiffs Have ERISA Claims

The IBC Defendants also erroneously argue that the Individual Plaintiffs' ERISA claims must be dismissed because no cognizable harm has been alleged.  The SAC specifically alleges that neither of the Individual Plaintiffs continues to be employed by FHM, and have been forced to obtain medication through pharmacies other than FCS or FMCP.  As such, the Individual Plaintiffs have ceased to obtain the high level of personalized service previously provided to them by FCS and FMCP.  Such personalized service is particularly important for patients suffering from hemophilia, where the inability to obtain additional factor immediately in an emergency situation significantly increases the risk of death. (SAC ¶ 30.)

The IBC Defendants argue that "ERISA does not authorize suits to recover for purported losses such as these, and plaintiffs have cited no authority to the contrary." (Mem. of Law, p. 11.)  This argument is completely backwards. The allegations by Plaintiffs concerning their damages appear in their SAC, where citations to authority are not required.  If the IBC Defendants wish to challenge allegations in the SAC on the ground that they are legally insufficient, then they

should have done so by citing authority in their motion to dismiss.   They have failed to do so and their argument should be rejected.

Similarly unavailing is the argument that the provider agreement between FMC and CareFirst prohibits "balance billing."[3]   The clear and unambiguous language prohibits the provider from billing a member for any amount in excess of the "Allowed Benefit for Covered Services".   Allowed Benefit for Covered Services is defined as "the lesser of (1) the practitioner's actual charge or (2) the practitioner's BCBSM profile rate under the BCBSM Program in which he/she is enrolled".   Contrary to the IBC Defendants' implication, there is no prohibition against billing a member for a claim that remains fully unpaid based upon the plain language of the provider agreement.   Moreover, as set forth in ¶ 13 of its Answer, CareFirst has denied in part that the Plaintiff Pharmacies are "participating providers".[4]

For the foregoing reasons, the Individual Plaintiffs have adequately alleged that they have sustained cognizable harm.

---

[3]      This document is also not properly part of the record and should be disregarded by the Court.

[4]      The IBC Defendants' reading of the Second Level Appeal transcript in which they claim that Plaintiffs' counsel conceded that all medication needed was dispensed is similarly tortured.   A full review of p. 52 of the transcript, which Plaintiffs previously filed with this Court, establishes that counsel was simply agreeing with the Ms. Jachimowicz's attempt to understand the facts.   Counsel's statement of "Sure" did not acknowledge anything more than that and the IBC Defendants' suggestion otherwise is improper.

14

## V.   Plaintiffs' Act 68 Claim Should Not Be Dismissed

### A.   There Is A Private Right Of Action Under The Prompt Payment Statute

The Court also should reject the argument by the IBC Defendants that the Third Claim for Relief -- for violation of Pennsylvania's "prompt payment" statute ("Act 68") -- should be dismissed because Act 68 does not provide a private right of action.  In support of their argument the IBC Defendants rely solely on Solomon v. U.S. Healthcare Sys. of Pennsylvania, Inc., 797 A.2d 346 (Pa. Super.  2002).   As the IBC Defendants correctly note, Solomon's failure to recognize a private right of action was expressly rejected by  Grider v. Keystone Health Plan Central, Inc., 2003 WL 22182905 (E.D. Pa. Sept. 18, 2003).

Of course, this Court has no obligation to follow Solomon, a decision by a state trial court.  Instead, it should follow Grider, a decision by the United States District Court for the Eastern District of Pennsylvania.  The IBC Defendants argue that Grider was decided incorrectly, but that argument is meritless. According to their argument, Grider is incorrect because the opinion primarily rests on the erroneous view that absent a private right of action, providers could not be assured of prompt payment of claims.  According to the IBC Defendants, the Grider court was misguided, because Act 68 provides for an administrative remedy, by allowing providers to file complaints with the Pennsylvania Insurance Department.

The fundamental flaw in the IBC Defendants' argument is that in Grider, the Court considered and rejected the notion that the administrative remedy

set forth in the statute was an acceptable alternative to a private right of action.

Indeed, the Court carefully examined the administrative remedy and concluded that

it was utterly inadequate.   The Court noted:

> [N]one of the penalties or sanctions empower the Insurance Department to direct actual payment of an improperly withheld 'clean claim.'  . . . Moreover, neither the complaint mechanism nor the grievance mechanism of the Health Care Act provides health care providers an avenue to collect the penalty proscribed in Section 2166 of the Act.   Accordingly, it appears that nothing in the complex scheme for accountability to be enforced by the Insurance Department or through the internal or external complaint and grievance procedures provide for the collection of unpaid 'clean claims' by health care providers. . . . **Application of the Pennsylvania Statutory Construction Act leads us to conclude that a private cause of action should be implied because failure to do so would be absurd and would neither further the object of the statute nor remedy the mischief.**

2003 WL 22182905 at **30-31 (emphasis added).

Not surprisingly, numerous commentators have agreed with Grider's

rejection of the IBC Defendants' argument.  *See, e.g.*, Michael Flynn, *The Check*

*isn't in the Mail: The Inadequacy of State Prompt Pay Statutes*, 10 DePaul J.

Health Care Law 397, 416 (2007) ("The grant of a private right of action in favor

of health care providers to enforce Prompt Pay laws is necessary given the scarce

public resources to prosecute such claims."); Monica E. Nussbaum, *Prompt Pay*

*Statutes Should be Interpreted to Grant Providers A Private Right of Action to Seek*

*Enforcement Against Payors*, 15 Health Matrix-J. Law-Medicine 205, 219 (2005)

("Without a private right of action under the Pennsylvania statute, providers have

no remedy to enforce the statute against alleged violators.   The statute does not

authorize the insurance commissioner to force the payors to make timely

payments, to force payors to pay delinquent payments, or to force payors to pay interest on delinquent payments.    The statute solely authorizes the insurance commissioner to impose a nominal fine to be paid to the Department of Insurance. . . .").

The IBC Defendants also erroneously argue that Grider is inconsistent with Elkin v. Bell Tel. Co., 491 Pa. 123, 420 A.2d 371 (Pa. 1980).  Elkin dealt with the "primary jurisdiction doctrine."    Pursuant to this doctrine, where the subject matter of a dispute is within an agency's jurisdiction and where it is a complex matter requiring special expertise, with which a judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the agency.  491 Pa. at 134.  However, pursuant to the same doctrine, where the matter "is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility." Id. at 134-35.   Consistent with this caveat, courts in many cases have retained jurisdiction. Greiner v. Erie Ins. Exch., 2000 WL 33711041, at *2 (Pa. Com. Pl. Nov. 13, 2000).   The Elkin caveat squarely applies here, and thus the Court should reject the IBC Defendants' argument.  This matter is not one with which a judge or jury would not or could not be familiar.

Finally, as noted by Grider, in Solomon the "Superior Court based its determination on the lack of legislative history in support of a private cause of action and without stating why, held this against plaintiff."  2003 WL 22182905 at *29.  This Court should not countenance this approach.  In short, Grider was

17

correctly decided, it remains good law, and this Court should continue to reject Solomon.    There is a private right of action under Act 68, and accordingly the Court should deny the motion by the IBC Defendants to dismiss this claim.

**B.    Plaintiffs' Act 68 Claims Are Not Pre-empted**

The Court also should reject the argument by the IBC Defendants that the Act 68 claims are pre-empted.  Pre-emption claims must be viewed under the presumption that ERISA was not meant to supersede "the historic police powers of the states" absent evidence that pre-emption was "the clear and manifest purpose of Congress." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).   Although Defendant IBC presents its pre-emption argument as an almost *fait accompli*, the issue of whether Pennsylvania Statute Section 991.2166, which provides for assessment of interest for failure to pay "clean claims" within a prescribed time period is pre-empted by ERISA has not been addressed by the Courts.  For the reasons set forth below, and based upon the policy set forth above, this Court should conclude that the Statute is neither completely pre-empted nor expressly pre-empted pursuant to ERISA.

**1.    The Statute Is Not "Completely" Pre-empted**

A claim falls within the scope of ERISA and is completely pre-empted, if the plaintiff "could have brought his claim under ERISA § 502(a)(1)(B), and the state law cause of action duplicates, supplements or supplants the ERISA civil

enforcement remedies." Aetna Health Inc. v. Davila, 542 U.S. 200 (2004). Neither prong of this test is satisfied.

Section 991.2166 of the Pennsylvania Statutes (Act 68) states in relevant part:

> (a) A licensed insurer or a managed care plan shall pay a clean claim submitted by a health care provider within forty-five (45) days of receipt of the clean claim.
>
> (b) If a licensed insurer or a managed care plan fails to remit the payment as provided under subsection (a), interest at ten per centum (10%) per annum shall be added to the amount owed on the clean claim. Interest shall be calculated beginning the day after the required payment date and ending on the date the claim is paid.

This statute neither duplicates, supplements nor supplants the ERISA civil enforcement remedies. Unlike the Pennsylvania bad-faith statute previously held to be pre-empted by ERISA, see Barber v. Unum Life Ins. Co., 383 F.3d 134 (3rd Cir. 2004), Act 68 is not punitive in nature and does not, therefore, provide for a remedy which supplements or supplants ERISA. Indeed, as recognized in Fotta v. Trs. Of the United Mine Workers of Am., Health and Ret. Fund of 1974, 165 F.3d 209, 213 (3d Cir. 1998), and as conceded by the IBC Defendants, the award of pre-judgment interest is within the discretion of the district Court under ERISA. The IBC Defendants' attempt to distinguish this reasoning based upon a discretionary versus required award of interest is simply form over substance.

Nor do the cases cited by the IBC Defendants from other Circuits mandate a different result. For example, in Schoedinger v. United Healthcare of the Midwest, Inc., 557 F.3d 872 (8th Cir. 2009), the Missouri prompt pay statute

required the health carrier to pay, deny or suspend a claim within forty days. The Pennsylvania statute at issue simply requires payment of a valid claim within a certain time frame. It does not require that all action be taken within that time frame such that its provisions clearly supplement the requirements of ERISA. Nor does the case of Torrent & Ramos, M.D., P.A. v. Neighborhood Health Partnership, Inc., Case No. 05-21688-CIV (S.D. Fla. Sept. 2, 2005), also relied upon by Defendant IBC, prove particularly instructive. In Torrent & Ramos, *supra*, the Court failed to apply Davila, and engaged only in an analysis of the capacity in which plaintiff was bringing its claim.

Accordingly, Plaintiffs' Act 68 claim is not completely pre-empted.

### 2.   There Is No Express Pre-emption Under The ERISA Savings Clause

ERISA's savings clause excepts from the express pre-emption clause laws that "regulate insurance." 29 U.S.C. § 1144(b)(2)(A). A statute regulates insurance and satisfies the savings clause if: (1) it is specifically directed toward entities engaged in insurance; and (2) substantially affects the risk pooling arrangement between the insurer and the insured. Kentucky Association of Health Plans, Inc. v. Miller, 538 U.S. 329, 341-2 (2003); Barber v. Unum Life Insurance Co., *supra*, at 141.

In Barber, the Court found that the Pennsylvania bad-faith statute met the first prong of the test for savings because it was "specifically directed towards entities engaged in insurance". *Id*. at 142, quoting Miller, 538 U.S. at 342. In so holding, the Court pointed to the specific language of the statute which referred to

"insurance policies" and "insurers."   Similarly, Act 68 is found within Title 31 "Insurance" of the Pennsylvania Code and speaks directly to payment by "insurers".   Thus, it is specifically directed toward entities engaged in insurance and meets the first element of the Miller test.

Defendant IBC takes issue with the second prong of the Miller test, arguing that like the Pennsylvania bad-faith statute which was found to be ERISA pre-empted in Barber, Act 68 is "purely remedial in nature" (Mem. of Law, p.20), and, therefore, does not affect the "risk-pooling factor."   The IBC Defendants are mistaken.   Act 68 is not purely remedial in nature.   Rather, it provides a time mechanism within which a provider must pay on a clean claim.   If the time limitation is met, subsection (b) of the statute does not come into play.   In providing this time limitation, the statute shifts the risk of interest accruing on valid but stale claims from the insured to the insurer.   For these reasons, Act 68 meets both prongs of the Miller test, and is, accordingly, not ERISA pre-empted.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny in its entirety the IBC Defendants' motion to dismiss the Second Amended Complaint.

Dated:  New York, New York
        December 27, 2010

Anthony Paduano
Jordan D. Becker
Paduano & Weintraub LLP
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
(212) 785-9100 (telephone)
(212) 785-9099 (facsimile)
ap@pwlawyers.com
jdb@pwlawyers.com

AND

MANTACOLE, LLC
Timothy S. Cole
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(215) 325-1741 (telephone)
(215) 641-0469 (facsimile)
TimCole@mantacole.com

Attorneys for Plaintiffs

22