IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER TEMPLIN, et al.,           :
                                       :        CIVIL ACTION
          Plaintiffs,                  :
                                       :        NO. 09-4092
     v.                                :
                                       :
INDEPENDENCE BLUE CROSS, et al.,       :
                                       :
          Defendants.                  :

## OPINION

**Slomsky, J.**                                                **August 19, 2011**

## I.    INTRODUCTION

By Order and Opinion dated May 13, 2011, the Court dismissed the Second Amended

Complaint in this case.  On May 27, 2011, Defendants Independence Blue Cross and QCC

Insurance Company ("IBC Defendants") filed a Motion for Attorney's Fees and Costs pursuant

to Federal Rule of Civil Procedure 54(d) and 29 U.S.C. § 1332(g)(1).  (Doc. No. 77.)  On June

13, 2011, Plaintiffs filed a Cross Motion for Attorney's Fees and a Response in Opposition to the

Motion of IBC Defendants.  (Doc. Nos. 82, 84.)  On June 21, 2011, IBC Defendants filed a

Motion to Strike the Cross Motion for Attorney's Fees, asserting that the Motion was not filed

within fourteen (14) days of the entry of judgment as required by Rule 54(d).  (Doc. No. 87.)

Having been fully briefed and argued by the parties, the Motions are now ripe for decision.[1]  For

---

[1]  In addition to the documents mentioned above, the Court has considered the exhibits
filed by IBC Defendants in support of their Motion for Attorney's Fees (Doc. No. 77, Exhibits 1-
6, Doc. No. 80), Plaintiffs' Affidavit (Doc. No. 83), IBC Defendants' Reply in Support of its
Motion for Fees (Doc. No. 88), IBC Defendants' Response in Opposition to the Cross Motion for
Fees of Plaintiffs (Doc. No. 89), Plaintiffs' Memorandum in Opposition to the Motion to Strike
(Doc. No. 90), Plaintiffs' Memorandum of Law in Further Support of the Cross Motion for
Attorney's Fees (Doc. No. 91), IBC Defendants' Reply Brief in Further Support of the Motion to

reasons that follow, the Court will grant the Motion to Strike (Doc. No. 87), deny Plaintiffs'

Cross Motion for Attorney's Fees as untimely (Doc. No. 82), and deny the Motion for Attorney's

Fees of IBC Defendants (Doc. No. 77).

## II.    FACTUAL BACKGROUND[2]

Plaintiffs Christopher Templin and Viola Hendricks work for Factor Health Services II,

LLC ("Factor II").  Factor II was issued a group health insurance policy (the "Plan") by

Defendant QCC on behalf of Defendant IBC.  (Doc. No. 48 ¶ 15.)  The Plan was underwritten

and/or administered by Defendants who each operate under a license from the Blue Cross Blue

Shield Association (hereinafter "BCBS").  (Id. ¶¶ 5-7, 10.)  Plaintiffs Templin and Hendricks are

participants or beneficiaries covered under the Plan.  (Id. ¶ 20.)  Both Templin and Hendricks or

their dependents are hemophiliacs and are prescribed blood medication by their doctor.  (Id. ¶

10.)  The prescriptions are filled by Plaintiffs Feldman's Medical Center Pharmacy and FCS

Pharmacy (the "Pharmacies" or "Pharmacy Plaintiffs"), which are located in Maryland and

Florida, respectively, and which are both affiliates of Factor II.  (Id. ¶¶ 1, 10-11.)

After the Pharmacies dispense the prescription medication, they receive an assignment of

benefits from Templin and Hendricks which allows the Pharmacies to recover directly from

---

Strike (Doc. No. 92), Declaration of Counsel for IBC Defendants in Support of the Motion for
Fees (Doc. No. 99), Plaintiffs' Petition for Attorney's Fees and Memorandum and Exhibits
submitted in support (Doc. Nos. 95, 96, 97, 98, 100, 101), Plaintiffs' Supplemental
Memorandum in Opposition to the Motion for Fees of IBC Defendants (Doc. No. 102),
Defendant CareFirst, Inc.'s Brief in Opposition to the Cross Motion for Attorney's Fees of
Plaintiffs (Doc. No. 103), IBC Defendants' Responses and Objections to Plaintiffs' Petition for
Attorney's Fees (Doc. No. 104), and the arguments of the parties at the July 19, 2011 hearing.

[2] What follows is a replication of the factual background in the May 13, 2011 Opinion
(Doc. No. 74).

Defendants by submitting a claim for payment. (Id. at 11-12.)  In this case, Templin and

Hendricks provided Pharmacy Plaintiffs with an assignment of benefits after the prescriptions

were filled.  However, according to Pharmacy Plaintiffs, when they submitted the claim forms to

Defendants seeking payment for the medication provided to Plaintiffs Templin and Hendricks,

Defendants failed to pay these claims in accordance with the terms of the Plan.

As a result, Plaintiffs brought suit against Defendants pursuant to Section 502(a)(1)(B) of

the Employee Retirement Income Savings Act of 1974[3] ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

(Doc. No. 1 ¶¶ 31-41.)  Section 502(a)(1)(B) of ERISA entitles a plan beneficiary to bring a civil

action "to recover benefits due to him under the terms of his plan, to enforce his rights under the

terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

## III.    PROCEDURAL HISTORY

On September 9, 2009, Plaintiffs filed the Complaint in this case.  (Doc. No. 1.)  On

October 14, 2009, IBC Defendants filed their first Motion to Dismiss.  (Doc. No. 3.)  By Joint

Stipulation and Order (Doc. No. 11), the parties agreed and this Court ordered that Plaintiffs

could amend the Complaint.  Plaintiffs filed the Amended Complaint on December 2, 2009.

(Doc. No. 16.)

On December 21, 2009, Defendant Carefirst[4] filed a Motion to Dismiss the Amended

Complaint.  (Doc. No. 18.)  The following day IBC Defendants also filed Motion to Dismiss the

Amended Complaint.  (Doc. No. 20.)  The Court held a hearing on both Motions on March 19,

---

[3]  29 U.S.C. § 1001, *et seq.*

[4]  Defendant Carefirst, Inc. is another Defendant in this case and is a health insurance
company operating under a license from BCBS.

2010. In an Opinion and Order dated July 27, 2011 (Doc. Nos. 39, 40), the Court determined

that Plaintiffs failed to exhaust their administrative remedies as required 29 U.S.C. §

1132(a)(1)(B) and that there was no showing that exhaustion would be futile.[5]  Consequently, the

---

[5]  The Court explained:

> Here, Plaintiffs have alleged facts suggesting a fixed policy denying
> benefits for some claims, in the form of a letter from IBC Defendants'
> counsel to Plaintiffs' counsel stating that Defendants will not pay any claims
> submitted by Plaintiff Feldman Pharmacies that involve a shipment of drugs
> outside the state of Maryland.  Plaintiffs have also alleged facts showing
> Defendants failed to comply with their own internal administrative
> procedures for other claims by failing to render a decision on a number of
> claims.  However, these deficiencies do not apply to all of the disputed
> claims: of the fifty-one disputed claims identified by Plaintiffs in their
> Amended Complaint, only thirty-two were submitted by Plaintiff Feldman
> Pharmacies and over half of the claims received a decision from Defendants
> in the form of a partial payment.
>
> Furthermore, Plaintiffs do not allege any facts showing an attempt on
> the part of Plaintiffs to avail themselves of the remedies under the Plan.
> Although Defendants failed to render a decision on certain claims, they did
> render a decision on a large portion of disputed claims in the form of partial
> payment of the claim.  These partial payments constitute adverse benefit
> determinations that Plaintiffs should have challenged through the Plan's
> appeal process.
>
> Finally, it was not reasonable for Plaintiffs to seek immediate judicial
> review under the circumstances.  Exhibit "A" to Plaintiffs' Amended
> Complaint lists fifty-one disputed claims. These claims presumably request
> compensation for a wide variety of products and services and implicate a
> wide variety of issues requiring interpretation and application of Plan terms.
> For this Court to perform the first level of review of these claims – to
> examine the individual claim forms, identify any individual defects, and
> interpret and apply Plan terms to each claim – would contravene the purpose
> of ERISA and would waste judicial resources. . . .
>
> The exhaustion rule "gives plan administrators the first opportunity
> to apply their expertise to interpret often lengthy and detailed plan
> documents, to reconsider initial decisions and correct mistakes, to collect
> facts, and to explain the rationale underlying the administrative decision."
> Thus, exhaustion "may render subsequent judicial review unnecessary
> because a plan's own remedial procedures will resolve many claims," and,
> where it does not, it "enables plan [administrators] to . . . assemble a factual

Court denied both Motions to Dismiss without prejudice and ordered that the case be placed in suspense while the parties completed an expedited administrative review process of the insurance claims in question.[6]

On November 15, 2010, after completing the expedited administrative review process as directed by the Court, Plaintiffs filed the Second Amended Complaint. (Doc. No. 48.)   In light of the filing of the Second Amended Complaint, the Court issued an Order removing the case from suspense and directing Defendants to file an Answer or otherwise respond. (Doc. No. 49.) On December 2, 2010, Defendant Carefirst filed an Answer (Doc. No. 52). The following day,

---

> record which will assist a court in reviewing [their] actions." For these reasons, the Court will require the parties to complete an expedited administrative review of all claims and until this review is complete, stay all proceedings in this case.

[6] The following is a summary of the Review Process that the Court directed the parties to undertake:

> (1) Plaintiffs should submit their level one appeal within 30 days of the Opinion (by August 26, 2010).

> (2) Defendants are to evaluate and issue a level one decision within 30 days of receipt of the request.

> (3) Plaintiffs, if unsatisfied with the level one decision, may submit a level two appeal within 15 days of receipt of the level one decision.

> (4) Parties are directed to have a hearing on the level two appeal within 30 days of the appeal being filed.

> (5) Defendants are then required to issue a level two appeal decision within 15 days of the hearing.

> (6) Plaintiffs then have 15 days after the issuance of the level two appeal decision to amend their complaint in the instant action.

IBC Defendants filed a Motion to Dismiss the Second Amended Complaint. (Doc. No. 54.) On January 21, 2011, the Court held a hearing on the Motion. On February 14, 2011, the Court granted the Motion to dismiss in part, dismissing Count Three from the Second Amended Complaint with prejudice.[7] The Court reserved ruling on the remainder of the Motion pending the completion of a settlement conference with United States Magistrate Judge Carol Wells.

On March 16, 2011, the parties met with Judge Wells, but were unable to reach a settlement. By Order and Opinion dated May 13, 2011, the Court decided the balance of the Motion, which remained after the February 14, 2011 Order. The Court granted the remainder of Motion to Dismiss the Second Amended Complaint because IBC Defendants approved the payment of the remaining insurance claims and Defendant Carefirst disbursed the actual payments. This process rendered all disputed insurance claims in the case moot.[8]

As noted previously, on May 27, 2011, fourteen days following the entry of judgment,

---

[7]   Plaintiffs brought Count Three of the Second Amended Complaint pursuant to the Pennsylvania Quality Health Care Accountability and Protection Act, 40 Pa. Stat. § 991.2101 ("Act 68"). The Court found that Act 68 did not create a private right of action and for this reason dismissed Count Three. (Doc. No. 66 (citing Solomon v. U.S. Heathcare Systems of Pennsylvania, Inc., 797 A.2d 346, 352-53 (Pa. Super. Ct. 2002)).)

[8]   The Motion to Dismiss the Second Amended Complaint filed by IBC Defendants requested that the Court dismiss Counts One and Two against IBC Defendants. Defendant Carefirst was also named as a defendant in Counts One and Two. The Motion filed by IBC Defendants did not request dismissal of Counts One and Two as to Defendant Carefirst. Similarly, Count Four, which named only Defendant Carefirst as a defendant, was not challenged in IBC Defendants' Motion to Dismiss the Second Amended Complaint. However, the Court granted the Motion with respect to all claims and all Defendants. The Court reasoned that approval and payment of the disputed claims rendered the entire case moot, removing the element of a case or controversy. Therefore, it no longer had jurisdiction over the case. A lack of jurisdiction based on mootness may be raised by a court *sua sponte* at any time. Accordingly, the Court dismissed the Complaint as moot with respect to those claims asserted against Defendant Carefirst, despite the fact that Defendant Carefirst did not file a Motion to Dismiss.

IBC Defendants filed a Motion for Attorney's Fees and Costs. (Doc. No. 77.) On June 13, 2011, Plaintiffs filed a Cross Motion for Attorney's Fees and a Response in Opposition to the Motion of IBC Defendants. (Doc. Nos. 82, 84.) On June 21, 2011, IBC Defendants filed a Motion to Strike the Cross Motion for Attorney's Fees of Plaintiffs. (Doc. No. 87.) On July 19, 2011, the Court held a hearing on the Motions. Following the hearing, the parties submitted additional briefs regarding the Motions.

## III.   DISCUSSION

### A.   <u>The Motion to Strike</u>

On June 21, 2011, IBC Defendants filed a Motion to Strike Plaintiffs' Cross Motion for Attorney's Fees as untimely. (Doc. No. 87.) IBC Defendants assert that Plaintiffs failed to file the Motion for Fees within fourteen days of the entry of Judgment as required by Federal Rule of Civil Procedure 54(d) and that Plaintiffs have failed to show their late submission was caused by excusable neglect. For this reason, IBC Defendants argue that the Court should grant the Motion to Strike the Cross Motion for Fees.

Federal Rule of Civil Procedure 54(d)(2) provides as follows:

> (A) *Claim to Be by Motion.* A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
>
> (B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:
>> (i) be filed no later than 14 days after the entry of judgment;
>> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>> (iii) state the amount sought or provide a fair estimate of it; and
>> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Judgment was entered in this case on May 13, 2011. (Doc. No. 75.) Plaintiffs filed their Cross Motion for Attorney's Fees on June 13, 2011, thirty-one days after the entry of Judgment. (Doc. No. 82.) Thus, the Cross Motion for Attorney's Fees was untimely filed.[9] However, "[t]he fourteen day filing requirement imposed by Rule 54(d)(2)(B) is not jurisdictional." Sokoloff v. General Nutrition Cos., No. 00-641, 2001 WL 536072, at *3 (D.N.J. May 21, 2001) (citing Mints v. Educational Testing Serv., 99 F.3d 1253, 1260 (3d Cir. 1996)). Therefore, a court may consider an untimely motion filed pursuant to Rule 54 upon a finding of good cause to do so.

Federal Rule of Civil Procedure 6(b) provides:

> (1) *In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
>> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>>
>> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Here, Plaintiffs failed to request an extension of time to file a Motion for Fees prior to the expiration of the fourteen days under Rule 54. Consequently, the Court may only consider their untimely submission upon a showing of "excusable neglect," as required by Rule 6(b)(1)(B). Plaintiffs have not shown that the failure to act within fourteen days was "because of excusable neglect." In fact, Plaintiffs concede this point, writing: "To be frank, Plaintiffs "neglected" nothing." (Doc. No. 90 at 9.)[10]

---

[9] Plaintiffs do not dispute that the Cross Motion is untimely.

[10] Plaintiffs explain that in light of a footnote in the May 13, 2011 Opinion, they did not intend to seek attorney's fees. Their change of mind was precipitated only by the Motion of IBC

8

Since Plaintiffs have not shown that the failure to file the Cross Motion for Fees within fourteen days was due to excusable neglect, the Court will not extend the time to file under Rule 54. Accordingly, the Court will grant the Motion to Strike (Doc. No. 87) and deny the Cross Motion for Attorney's Fees as untimely (Doc. No. 82). In addition, as explained below, even if the Court denied the Motion to Strike and considered Plaintiffs' Cross Motion for Fees on the merits, the Motion would still be denied.[11]

### B.    The Cross Motions for Attorney's Fees

Hardt v. Reliance Standard Life Insurance Co., 130 S. Ct. 2149 (2010), establishes the proper standard for determining whether a party is entitled to attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1). Title 29, United State Code, Section 1132(g)(1) provides as follows:

> In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either

---

Defendants for fees and costs. Although Plaintiffs were evidently shocked that IBC Defendants would request fees, their retaliatory motion was untimely and their reason for filing it does not amount to excusable neglect. (See Doc. No. 90.)

[11] In Plaintiffs' Petition for Attorney's Fees, Plaintiffs request prejudgment interest. (See Doc. Nos. 95, 96.) A post-judgment motion for prejudgment interest is construed as a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). Osterneck v. Ernst & Whinney, 489 U.S. 169, 175-76 (1989); see also ECEM European Chemical Marketing B.V. v. The Purolite Co., No. 05-3078, 2010 WL 4069188, at *6 (E.D. Pa. Oct. 15, 2010). Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Further, Federal Rule of Civil Procedure 6(b), which permits a court to extend time when an act must be done within a specified time, expressly prohibits a court from extending the 28-day filing requirement provided in Rule 59(e).

Here, Judgment was entered on May 13, 2011. (Doc. No. 75.) Therefore, the motion for prejudgment interest was due on or before June 10, 2011. Plaintiffs first requested prejudgment interest on August 5, 2011 when they submitted their Petition for Attorney's Fees. (Doc. Nos. 95, 96.) The request is therefore untimely and must be denied.

party.

When a party applies for attorney's fees and costs under this section, a district court must, as a threshold matter, determine whether the fee applicant has achieved "some degree of success on the merits." Hardt, 130 S. Ct. at 2158. The "success on the merits" standard does not require that the applicant be the "prevailing party." Id. at 2157-58. However, "[a] claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y].' " Id. at 2158. The standard is satisfied "if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.' " Id. Accordingly, a party must demonstrate that it has achieved some degree of success on the merits to be eligible for an award of attorney's fees and costs under § 1132(g)(1). It follows that a party's failure to establish some success on the merits must result in a denial of its fee application.

The decision to award attorney's fees and costs to a party achieving some degree of success on the merits is entirely within the discretion of a district court. Hardt, 130 S. Ct. at 2158, 2158 n.8 ("We do not foreclose the possibility that once a claimant has satisfied [the success on the merits] requirement, and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors adopted by the Court of Appeals . . . in deciding whether to award attorney's fees."). Thus, after concluding that a party has achieved success on the merits, the Court may consider whether an award of attorney's fees is appropriate using the five-factors outlined by the Third Circuit in Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983). See Nat'l Sec. Sys., Inc. v. Iola, No. 00-6293, 2010 WL 3825712, at *6-7 (D.N.J.

10

Sept. 24, 2010). They are:

> (1) the offending parties' culpability or bad faith;
> (2) the ability of the offending parties to satisfy an award of attorneys' fees;
> (3) the deterent [sic] effect of an award of attorneys' fees against the offending parties;
> (4) the benefit conferred on members of the . . . plan as a whole; and
> (5) the relative merits of the parties' position.

719 F.2d at 673. "[T]he Ursic factors are not requirements in the sense that a party must demonstrate all of them in order to warrant an award of attorney's fees, but rather they are elements a court must consider in exercising its discretion." Fields v. Thompson Printing Co., 363 F.3d 259, 275 (3d Cir. 2004). Further, "the Court need not expressly evaluate the Ursic factors, but rather is free to consider any factors that it deems relevant in exercising its discretion." Hewel v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson, No. 09-5343, 2010 WL 2710582, at *2 (D.N.J. July 7, 2010).

In their Cross Motions for Attorney's Fees, IBC Defendants and Plaintiffs each argue that they have achieved "some degree of success on the merits," and that application of the Ursic factors support an award of fees in their favor.[12] (Doc. Nos. 77, 82, 84, 88.)

> 1.     Plaintiffs' Motion For Attorney's Fees

The Court has already determined that the Cross Motion for Fees filed by Plaintiff is untimely and must be denied. However, even if the Court considered the Motion on the merits, the Court would deny the Motion because Plaintiffs have failed to show that they achieved "some degree of success on the merits."

---

[12] Neither party contends that the fourth factor, the benefit conferred on members of the pension plan as a whole, is at issue here. (Doc. Nos. 82, 84 at 28-32; Doc. No. 77 at 7.) The Court agrees.

11

In their Cross Motion for Attorney's Fees, Plaintiffs define "some degree of success on the merits" as "achiev[ing] the relief . . . sought with respect to a particular substantive claim." (Doc. Nos. 82, 84 at 18-19.)  Plaintiffs assert that the administrative review process resulted in the approval and payment of each disputed insurance claim and provided them with the relief they sought in the Second Amended Complaint.  Thus, according to Plaintiffs, they have achieved "some degree of success on the merits."  (Id. at 27.)  The Court disagrees.

In Hardt, plaintiff exhausted her administrative remedies.  130 S. Ct. at 2158.  However, the district court found that "the plan administrator [] failed to comply with the ERISA guidelines" and "that [plaintiff] did not get the kind of review to which she was entitled under applicable law."  Id.  Further, the court found there was "compelling evidence" to support the conclusion that plaintiff was totally disabled and determined that, although it was inclined to rule in plaintiff's favor on her benefits claim, it would decline to do so explaining that it would "'first giv[e Defendant] the chance to address the deficiencies in its' statutorily mandated 'full and fair review' of that claim."  Id.  Accordingly, the court remanded the case, ordering the parties complete a "full and fair" administrative review process.  This process resulted in the approval and payment of the disputed claims.  Plaintiff then applied for attorney's fees and costs pursuant to § 1132(g)(1) and was awarded such fees by the district court.  The Supreme Court affirmed the award of attorney's fees, concluding that plaintiff achieved "some degree of success on the merits."

The reasons that compelled the conclusion that plaintiff achieved some success on the merits in Hardt are not present here.  Unlike Hardt, this Court did not determine that Defendants failed to comply with ERISA guidelines or failed to engage in a full and fair administrative

12

review of Plaintiffs' claims. To the contrary, the Court determined that Plaintiffs failed to

exhaust the remedies available to them before filing suit in federal court. In addition, the Court

never made a judicial ruling that Plaintiffs Templin and Hendricks were qualified to receive

benefits under the Plan or that Pharmacy Plaintiffs were entitled to payment; Defendants did so

during the administrative appeal process. The Court made no substantive determination

regarding the adequacy of the process provided by Defendants or the merits of Plaintiffs' claim

that they were entitled to the benefits/payments that they ultimately received.[13]

Here, although Plaintiffs received that which they sought as relief in this case, albeit in an

untimely manner, this relief was provided by Defendants, not the Court, and was not achieved by

any substantive determination by the Court. Most importantly, had Plaintiffs fully engaged in the

administrative review process prior to filing suit in federal court, they would have received that

which they sought in the Complaint, avoiding the necessity of judicial intervention and those

attorney's fees and costs associated with it. To award attorney's fees in this situation would

contravene ERISA policy and the requirement that Plaintiffs exhaust their administrative

remedies before seeking judicial review. See Zipf v. American Telephone & Telegraph Co., 799

---

[13] This reasoning is supported by Reimann v. Prudential Ins. Co. Of Am., No. 10-456, 2010 WL 4116743 (E.D. Wisc. Oct. 19, 2010). In Reimann, the court found although plaintiff's demands had been satisfied, this success was not "on the merits" because it was not a result of a substantive ruling. 2010 WL 4116743 at *2. Reimann is consistent with Hardt and the Supreme Court's earlier decision Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983), a decision cited by the Court in Hardt. Success *on the merits* of a party's claim means that the success is attributable to the substantive legal merits of the claim. Where, as here, a party simply receives the relief requested in an administrative process that should have been pursued in the first place, the party has not achieved success on the merits. If a party achieved success on the merits merely by obtaining the relief requested, then a party could achieve success on the merits on purely procedural grounds. This result would be inconsistent with Hardt, which held that a party does not achieve success on the merits by obtaining a purely procedural victory.

F.2d 889, 892 (3d Cir. 1986)

Since Plaintiffs have failed to make a threshold showing that they achieved some success on the merits, even if the Court accepted the untimely Motion, the Court would be precluded from awarding attorney's fee in their favor. Hardt, 130 S. Ct. at 2158. Additionally, even if the Court accepted the untimely Motion and found that Plaintiffs achieved some degree of success on the merits, the Court would nevertheless deny Plaintiffs' Motion based on consideration of the Ursic factors.

Once again, Ursic sets forth five factors which a court should consider in deciding whether to award attorney's fees to a party who has achieved some success on the merits. As stated above, they are: (1) culpability or bad faith of the offending party; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees; (4) the benefit conferred on members of the plan as a whole;[14] and (5) the relative merits of the parties' positions. Ursic, 719 F.2d at 673.

With respect to the second factor — the ability of IBC Defendants to satisfy an award — it is undisputed that IBC Defendants possess the financial ability to satisfy a fee award. With respect to the first factor involving culpability or bad faith of Defendants, Plaintiffs assert that it was the bad faith of IBC Defendants that caused the withholding of payments. However, Plaintiffs have failed to present the Court with any evidence that the withholding was a product of bad faith. Instead they assert that the delay without reason "is the very definition of bad faith." Plaintiffs fail to cite any case law to support this contention and the Court has found none. In addition, IBC Defendants maintain that they delayed approval of the disputed insurance claims

---

[14] The parties assert that this factor is not implicated here. The Court agrees.

because Plaintiffs did not submit all the required documentation necessary to decide the claim. The absence of bad faith on the part of IBC Defendants weighs against the award of attorney's fees to Plaintiffs.

In weighing the third or deterrent factor, the Court must consider "whether it would serve the objectives of ERISA to award counsel fees in an effort to deter conduct of the kind in which [a party] engaged." In re Unisys Corp. Retiree Medical Benefits Erisa Litigation, No. 03-3924, 2008 WL 2600364, at *4 (E.D. Pa. June 26, 2008). This factor weighs against the award of attorney's fees to Plaintiffs. As the Court stated in its July 27, 2010 Opinion:

> [I]t was not reasonable for Plaintiffs to seek immediate judicial review under the circumstances. . . . The exhaustion rule "gives plan administrators the first opportunity to apply their expertise to interpret often lengthy and detailed plan documents, to reconsider initial decisions and correct mistakes, to collect facts, and to explain the rationale underlying the administrative decision." Thus, exhaustion "may render subsequent judicial review unnecessary because a plan's own remedial procedures will resolve many claims," and, where it does not, it "enables plan [administrators] to . . . assemble a factual record which will assist a court in reviewing [their] actions."

(Doc. No. 39 at 4-5 (citations omitted).) Here, IBC Defendants' own remedial procedures resolved all the claims at issue in this litigation. Had Plaintiffs fully exhausted their administrative remedies prior to filing suit, judicial review would have been unnecessary. As stated above, to award attorney's fees to Plaintiffs in this case would contravene ERISA policy and the requirement that a plaintiff exhaust its administrative remedies prior to seeking judicial review. For this reason, even if Plaintiffs had made the threshold showing of some succees on the merits, the Court would not award attorney's fees in their favor.

Although Plaintiffs' claim that the fifth Ursic factor weighs in their favor, the Court does

15

not agree. Despite the fact that Plaintiffs obtained the relief sought in this case,[15] this recovery resulted from the administrative review process, a process which Plaintiffs should have pursued prior to filing suit. Moreover, Plaintiffs suggest that they "have no doubt that the Court would have" determined that Plaintiffs were entitled to payment of the disputed claims "had the case been tried on the merits." (Doc. No. 84.) The Court made no substantive determination regarding Plaintiffs' claims, nor did the Court ever suggest how it would rule if the case had been tried on the merits. Consequently, this factor fails to shift the balance of Ursic factors which weigh against an award of attorney's fees to Plaintiffs.

2.     IBC Defendants' Motion For Attorney's Fees

In their Motion for an Award of Attorney's Fees and Costs, IBC Defendants assert that they have prevailed on every issue decided by the Court and list five events which demonstrate they have achieved "some degree of success on the merits" as required by Hardt. (Doc. No. 77 at 5-6.) The five events are as follows: (1) the Court rejected Plaintiffs' contention that they exhausted their administrative remedies or that exhaustion would have been futile and remanded the case for an expedited administrative review process; (2) Plaintiffs withdrew claims in response to IBC Defendants' initial motion to dismiss; (3) the Court granted IBC Defendants' Motion to Dismiss the Second Amended Complaint with respect to the Act 68 claim; (4) Plaintiffs voluntarily dismissed their appeal with respect to the Act 68 issue; and (5) the Court granted IBC Defendants' Motion to Dismiss the Second Amended Complaint, finding that the

---

[15] Plaintiffs mischaracterize the Court's statement that Plaintiffs "won." The Court stated that Plaintiffs "won" during the administrative review process, noting that the process resulted in Plaintiffs "[getting] everything that [they] wanted." (Transcript of the January 21, 2011 Hearing ("Hr'g Tr.") at 10:13-15.) The Court did not state, nor did it imply, that Plaintiffs "won" with respect to their substantive claims before the Court.

16

approval and payment of the disputed insurance claims rendered the case moot. (Id.)

Plaintiffs respond that the success IBC Defendants achieved through these events was not success *on the merits*. (Doc. Nos. 82, 84 at 17.) Plaintiffs assert that under Hardt and its predecessor, Rucklehaus v. Sierra Club, 463 U.S. 680 (1983), and Taaffe v. Life Ins. Co. of North America, No. 09-6710 2011 WL 723586, at *8 (S.D.N.Y. Feb. 23, 2011), "success on the merits" means "that a party achieved the relief it sought with respect to a particular substantive claim." (Doc. Nos. 82, 84 at 18-19.) Plaintiffs state that the "core claim" of IBC Defendants —that is, the relief they sought in this litigation — was a declaration that Plaintiffs were not entitled to payment of the disputed claims. (Id. at 19-20.)   Accordingly, Plaintiffs contend that IBC Defendants did not achieve success on the merits because they approved for payment all disputed claims. (Id.)  Furthermore, Plaintiffs contend that the successes cited by IBC Defendants are procedural or trivial in nature, and are unrelated to the merits of the case. (Id.)

As stated, "[a] claimant does not satisfy th[e Hardt] requirement by achieving . . . a 'purely procedural victor[y]." Hardt, 130 S. Ct. at 2158.  In Hardt, plaintiff achieved "some degree of success on the merits" when the Court remanded the case for further administrative review.  The district court determined that defendants failed to comply with ERISA guidelines and provide plaintiff with the full and fair review to which she was entitled. Id. at 2158-59.  In addition, the district court stated that it was inclined to rule in plaintiff's favor on the merits of her claims. Hardt clearly left open the question whether remand alone constitutes "some degree of success on the merits." Id. at 2159 ("[W]e need not decide today whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1).").

Here, the Court finds that remand (event (1) supra) was purely a procedural victory for IBC Defendants and did not constitute "success on the merits." As a result of remand, IBC Defendants paid all disputed claims. This can hardly be characterized as a victory for Defendants. Further, unlike Hardt, the Court did not determine that it was inclined to rule in favor of either party on the substance of the claims. Likewise, the Court finds that Plaintiffs' withdrawal of claims in response to IBC Defendants' initial Motion to Dismiss (event (2) supra) and the grant of IBC Defendants' Motion to Dismiss the Second Amended Complaint because IBC Defendants paid all outstanding claims rendering the case essentially moot (event (5) supra) were merely procedural in nature and not based on the substantive merit of the claims at issue.

IBC Defendants did have "some success on the merits" in obtaining a judicial ruling that Act 68 does not create a private right of action (event (3) supra), which resulted in dismissal of Count Three from the Second Amended Complaint. (See Doc. No. 66.) On March 15, 2011, Plaintiffs appealed this ruling. (Doc. No. 70.) Thereafter, Plaintiffs voluntarily withdrew the appeal because it was an untimely interlocutory appeal (event (4) supra).[16] (Doc. No. 73.) Although withdrawal of an appeal is procedural in nature and cannot serve as a basis for a finding of success on the merits, the dismissal of Count Three by the Court was a result of a substantive finding that Act 68 does not create a private right of action. This substantive finding establishes that IBC Defendants achieved "some degree of success on the merits." However, for reasons that follow, the Court will exercise its discretion in considering the Ursic factors and decline to award attorney's fees and costs in favor of IBC Defendants.

---

[16] On May 27, 2011, Plaintiffs filed another appeal. (Doc. No. 76.) This appeal, having been filed after the entry of final judgment in this case, is not interlocutory and is currently pending before the Third Circuit.

18

With respect to the first Ursic factor, the culpability or bad faith of Plaintiffs, although the Court has found that Plaintiffs were premature in filing the Complaint and that Plaintiffs should have exhausted their administrative remedies prior to filing suit, there is no evidence that Plaintiffs acted in bad faith in doing so.  Therefore, this factor does not support an award of attorney's fees in favor of IBC Defendants.

The second Ursic factor weighs against an award of attorney's fees for IBC Defendants. Plaintiffs are individuals and pharmacies which have encountered financial difficulty in recent years at least in part due to the delayed payment of the claims at issue in this case.  As a result of the financial strain placed on Pharmacy Plaintiffs, Factor II was forced to sell Pharmacy Plaintiff Feldman's Medical Center and to cease operation of Pharmacy Plaintiff FCS. (Doc. No. 48 ¶ 29.) Additionally, Factor II was forced to terminate the employment of most of its employees including Plaintiffs Templin and Hendricks.  (Id. ¶ 30.) Thus, it appears that Plaintiffs would be unable to satisfy a fee award here.

As discussed above, an award of attorney's fees against Plaintiffs would serve ERISA policy favoring the exhaustion of administrative remedies prior to seeking judicial review. However, the Court finds that this benefit, which would favor the award of fees in favor of IBC Defendants, is counterbalanced by the fact that it would at the same time thwart ERISA policy which seeks to deter insurance companies from withholding payment on claims for an extended period of time.  Consequently, the Court finds that the third Ursic does not weigh in favor of an award of fees to IBC Defendants in this case.

The fifth factor — the relative merits of the parties' positions — also does not support an award of attorney's fees to IBC Defendants.  Although the Court ultimately granted the Motion

19

to Dismiss of IBC Defendants, the case was moot because IBC Defendants voluntarily approved all disputed claims. IBC Defendants did not succeed on the substantive merits, but achieved success through a procedural victory. If anything, the approval of the disputed insurance claims represents IBC Defendants' acquiescence to the merits of the claims of Plaintiffs.

In considering the relevant Ursic factors, the Court finds that an award of attorney's fees in favor of IBC Defendants is unwarranted here. Thus, even though IBC Defendants achieved "some degree of success on the merits" with respect to the Act 68 claim, the Court in its discretion declines to award fees in their favor.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Strike (Doc. No. 87), deny Plaintiffs' Cross Motion for Attorney's Fees as untimely (Doc. No. 82), and deny IBC Defendants' Motion for Attorney's Fees (Doc. No. 77).

An appropriate Order follows.