UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER TEMPLIN, VIOLA HENDRICKS, )<br>FELDMAN'S MEDICAL CENTER PHARMACY, )<br>INC. and FCS PHARMACY LLC, )<br> )<br>Plaintiffs, )<br> )<br>-against- )<br> )<br>INDEPENDENCE BLUE CROSS, QCC )<br>INSURANCE COMPANY and CAREFIRST, INC., )<br> )<br>Defendants. ) | Civil Action No. 09-4092 (JHS) |

**AFFIDAVIT OF ANTHONY PADUANO IN SUPPORT OF
PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS**

STATE OF NEW YORK    )
                                          ) ss.:
COUNTY OF NEW YORK  )

ANTHONY PADUANO, under penalty of perjury, states:

1.       I am admitted to practice law before this Court pro hac vice, and a member of the firm of Paduano & Weintraub LLP ("P&W").  I submit this Affidavit on personal knowledge in support of the petition for attorneys' fees and costs of Plaintiffs Christopher Templin, Viola Hendrick, Feldman's Medical Center Pharmacy, Inc. ("Feldman's") and FCS Pharmacy LLC (collectively, "Plaintiffs") from defendants Independence Blue Cross ("Independence") and QCC Insurance Company ("QCC") (collectively, the "IBC Defendants") and CareFirst, Inc. ("CareFirst") (collectively, "Defendants").  I have reviewed and revised this application.

2.       By this motion, Plaintiffs seek attorneys' fees and costs for the

period November 1, 2010 to present[1], because Plaintiffs have indisputably had "some success on the merits" at every stage of litigation during that period.[2]   Indeed, pursuant to this Court's July 27, 2010 Order (D.E. 39), this Court allowed the filing of a Second Amended Complaint upon the completion of an administrative review of Plaintiffs' claims.   On October 27, 2010, Defendants issued Second Level Appeal determinations in which they approved for payment all of the outstanding claims. Notwithstanding this approval, Plaintiffs were forced to file the Second Amended Complaint because, as of that date, almost $1.5 million in claims remained unpaid and Defendants refused to pay any interest on the claims, notwithstanding clear law contradicting that refusal.   On May 15, 2011, after this Court dismissed this case as moot, Plaintiffs appealed and on June 27, 2012, the Third Circuit affirmed in part and reversed in part.   Specifically, the Third Circuit vacated the dismissal of counts I, II, and IV of the Second Amended Complaint.   In vacating the dismissal of counts I, II, and IV of the Second Amended Complaint, the Third Circuit explained that Defendants' payment of the benefits did not moot the Second Amended Complaint because the District Court failed to consider Plaintiffs' entitlement to interest.   Furthermore, the Third Circuit observed that this was an issue of first impression but it need not decide

---

[1]   The statements for work done from April 1, 2013 through the filing of this petition are not yet finalized.   Plaintiffs request that they be permitted to supplement the fees and costs incurred through the date of this Petition or such other date set by the Court.

[2]   Plaintiffs do not, however, seek fees and costs attributable to the prior attorneys' fee motions that were decided by this Court in August, 2011 or fees or costs associated with the Third Circuit appeal.

the issue if Plaintiffs filed a Third Amended Complaint to include a claim under §502(a)(3). Ultimately, it was the filing of the Second Amended Complaint and the Third Circuit's remand of the Second Amended Complaint that led to the payment of interest for all of the claims at issue in this case. As a result, Defendants ultimately, and reluctantly, paid Plaintiffs 100% of the interest to which they were entitled.

      3.    Because Plaintiffs had "some success" on each of the tasks within the relevant period, they now seek $203,598.50 in attorneys' fees and $27,258.10 in expenses and disbursements for certain work performed by P&W and $7,466.25 in attorneys' fees and $48.40 in expenses and disbursements for certain work performed by MantaCole LLC ("MantaCole") in connection with this action during the period November, 2010 through present, for a total of $238,371.25. A summary of the fees and costs incurred is annexed hereto as Exhibit A.

## TABLE OF CONTENTS

Work Performed by P&W............................................................................................................ 4
Relevant Procedural History ..................................................................................................... 7
    Events Leading to the Filing of the Second Amended Complaint ....................................... 7
    This Court's Orders Regarding Plaintiffs' Second Amended Complaint ............................. 9
    The Third Circuit Remands the Case for a Determination of the Interest Issue..................10
    Proceedings Before This Court Upon Remand..................................................................12
The Work Done by P&W ...........................................................................................................15
    a. November 1, 2010 to December 1, 2010 (Status Report, Draft and File Second Amended
        Complaint and Settlement Discussions) ...................................................................15
    b. December 2, 2010 to January 31, 2011 (Motion Practice).....................................16
    c. February 1, 2011 to May 4, 2011 (Court-ordered Mediation) .................................18
    d. May 31, 2011 to May 27, 2011 (Dismissal of Second Amended Complaint and Notice of
        Appeal) ....................................................................................................................18
    e. August 14, 2012 to October 16, 2012 (Status Conference and Court-Ordered Settlement
        Negotiations) ...........................................................................................................19
    f. November 7, 2012 to January 30, 2013 (Memoranda of Law and Court Hearing Concerning
        Concerning Plaintiffs' Entitlement to Interest) ..........................................................19
    g. February 4, 2013 to April 4, 2013 (Court-Ordered Settlement Negotiations and Status
        Conference with the Court) ......................................................................................20
    h. April 5, 2013 to Present (Preparation of Attorneys' Fee Application) ........................20
Background of P&W Lawyers And Other Professionals .............................................................21
    My Background.................................................................................................................21
    Background Of Other P&W Attorneys And Paralegals .....................................................24

Background of Dr. David F. DeRosa ............................................................................................29
The Attorneys' Fees and Costs Owed ...........................................................................................30

## Work Performed By P&W

4.      We have served as lead counsel to FCS, Feldman's and other related entities in matters of this type since 2004 throughout the country.  For example, we represented Factor Health Management (the parent company of FCS and Feldman's) and various insurers in Florida, Indiana, Idaho and Louisiana between 2004 and 2008 on matters unrelated to the issues sued upon here.  In 2008, we began representing Feldman's in litigation seeking to recover unpaid claims from CareFirst in Maryland.  That matter, Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc., Civil Action No. 1:10-cv-00254-WDQ, is currently on appeal to the Fourth Circuit Court of Appeals (Appeal No. 12-2297) (the "Maryland Action").  As a result of this long-standing relationship with FHM, we are fully familiar with its key management and personnel, as well as its business models.

5.      When we were asked by Plaintiffs to represent them in this matter, we provided them with a schedule of rates discounted from our typical ones. Beginning in June 2010 and through the present, the rates were discounted to the following: partner: $495 per hour; counsel: $395 per hour; associate: $325 per hour; and paralegal $120 per hour.[3]

6.      These rates are consistent with or lower than the rates charged by counsel for the Defendants.  Indeed, in connection with their prior attorneys' fee

---

[3]      P&W's standard billing rates currently in effect are: senior partner, $695.00;

application in this matter, the IBC Defendants submitted invoices with rates higher than, or equivalent to, those charged by P&W as follows: senior partner, $595; partner, $510; and associate, $285 – $460.  I am also aware of a petition filed by the Archer & Greiner, P.C., counsel for defendant CareFirst in this matter, seeking fees in a bankruptcy matter captioned In re Universal Marketing, Inc., Case No. 09-15404 (E.D. Pa.).  The fees range from $450 per hour for experienced counsel, to $200 for newly admitted attorneys.  A copy of the petition filed by Archer & Greiner, P.C. is annexed hereto as Exhibit B.

7.      I have reviewed our firm's statements in connection with this action from November, 2010 through March 31, 2013, and I believe the work reflected in the statements to be accurate and reasonable.  P&W's statements contain a list of professionals and para-professionals providing services, their respective billing rates, the hours spent by each professional and para-professional, a general description of the services rendered, and a reasonably detailed breakdown of the disbursements incurred.  P&W's statements also contain the billing rates, hours spent, and a general description of the services rendered by Dr. David DeRosa, a damages expert that P&W retained to assist in preparing damages calculations for the Mediation.  I have known and worked with Dr. DeRosa for more than 10 years.  Dr. DeRosa has billed a total of $12,950.00 in expert witness fees.  A copy of Dr. DeRosa's invoice for the work he performed in this matter is annexed hereto as Exhibit C.

8.      Dr. DeRosa was retained by Plaintiffs to help calculate the interest

partner, $595; counsel, $525; associate, $450; and paralegal, $180.

owed for the 50 claims at issue.  At the conclusion of the court-ordered mediation session on March 17, 2011, Magistrate Judge Wells asked for supplemental submissions calculating interest under additional theories.  Dr. DeRosa performed these additional calculations to respond to that request of the Court and it was Dr. DeRosa's work that formed the basis for the calculation that resolved the interest issue remanded by the Third Circuit as recorded by the Covenant Not to Sue dated March 28, 2013.

9.      I have reviewed the fees incurred in this matter, for which Plaintiffs seek reimbursement, as reflected on our statements from November 1, 2010 through March 31, 2013, which total $203,598.50.   Similarly, I have reviewed the disbursements for our statements from November 1, 2010 through March 31, 2013, which reflect out-of-pocket expenses and disbursements of $27,258.10, for a total of $230,856.60.  A true and correct copy of P&W's statements are annexed hereto as Exhibit D.[4]   I believe the disbursements to be accurate and all necessary and reasonably incurred in connection with this case.

10.      Additionally, Plaintiffs were required by the rules of this Court to retain local counsel to represent them in this action.  Plaintiffs retained MantaCole to serve as their local counsel.  I have known and worked with, and sometimes opposite, Tim Cole for more than 10 years.  MantaCole has billed a total of $7,466.25 in

---

[4]      P&W is only seeking recovery of attorneys' fees and costs for the specific services rendered that are outlined in Exhibit D.  P&W has redacted certain entries for which we are not seeking recovery of fees, added additional time that had been erroneously billed to another matter and revised the bills to reflect these changes.

attorneys' fees and $48.40 in disbursements from November 1, 2010 through and including March 31, 2013, for a total of $7,514.50.  A true and correct copy of MantaCole's statement is annexed to the Declaration of Timothy S. Cole, dated April 19, 2013, submitted therewith as <u>Exhibit A</u>.

<b>Relevant Procedural History</b>

<b><u>Events Leading to the Filing of the Second Amended Complaint</u></b>

11.    After exhausting all efforts to be reimbursed voluntarily, Plaintiffs commenced this lawsuit on September 9, 2009 (D.E. 1 & D.E. SAC ¶ 23).   On December 2, 2009 Plaintiffs filed a First Amended Complaint (D.E. 16).   In late December 2009, all Defendants, including the IBC Defendants, moved to dismiss the First Amended Complaint (D.E. 18 & 20).

12.    By Opinion and Order dated July 27, 2010, (the "July 27, 2010 Order"), the Court directed that the parties proceed to an "administrative review" of all outstanding claims and pursuant to the expedited deadlines and additional procedures provided for in the Order (D.E. 39 at 5 & D.E. 48 ¶ 25).  The Court further allowed Plaintiffs the opportunity to file a Second Amended Complaint ("SAC") within 15 days after the Second Level Appeal determinations were issued (D.E. 39 at 6).

13.    On July 30, 2010, Plaintiffs filed a "Level One Appeal" with respect to all invoices that remained outstanding (D.E. 48 ¶ 26).  By correspondence dated August 30, 2010, the IBC Defendants issued separate Level One Appeal Determinations for each of the Plan members, adhering to their original determinations. <u>Id.</u>  Thereafter, on September 16, 2010, Plaintiffs filed their Second Level Appeal.

7

(D.E. 48 ¶ 26).  Plaintiffs again submitted the same documentation as before, and on October 14, 2010, pursuant to the Order, an in-person hearing (the "Hearing") was held before IBC's Second Level Appeal Committee in Philadelphia and a transcript of the Hearing was made.  Id.  At the Hearing, Defendants Independence and QCC: (1) presented no witnesses; (2) made no presentation; and (3) raised no substantive defense to payment.  Remarkably, defendant CareFirst – which had moved to dismiss – did not even bother to attend the Hearing.  By correspondence dated October 29, 2010, the Second Level Appeal determinations were issued (D.E. 48 ¶ 26).  Realizing that they could no longer avoid paying Plaintiffs' legitimate claims, and only in an effort to avoid attorneys' fees and interest, the IBC Defendants approved the claims.

14.    Despite this three month review process, as of November 12, 2010, there were still approximately $1.5 million in unpaid invoices.  Accordingly, on November 15, 2010, Plaintiffs filed the Second Amended Complaint pursuant to the Court's July 27, 2010 Order seeking payment on the outstanding claims and interest on all of the claims.  (D.E. 48).

15.    Defendants fought Plaintiffs every step of the way in their attempts to get paid interest on the legitimate claims that Defendants ultimately approved years after their submission.   On December 3, 2010, the IBC Defendants filed their combined Motion to Dismiss the Second Amended Complaint (D.E. 54).  In the Motion to Dismiss, they argued that Plaintiffs' claims should be dismissed as moot, because Defendants had decided to pay all of the claims (D.E. 54).  CareFirst did not move and filed its Answer on December 2, 2010 (D.E. 52).

8

**This Court's Orders Regarding Plaintiffs' Second Amended Complaint**

16.     On January 21, 2011, oral argument on the IBC Defendants' Motion to Dismiss the Second Amended Complaint was held (D.E. 60).   At the argument, counsel for Defendants represented that "[e]very one of the benefit claims that was still outstanding, the benefit to that member has been approved" (D.E. 69, Jan. 21, 2011 Tr. at 7:5-7).   Defendants represented that all claims either had been paid or were in the process of being paid and argued, therefore, that Plaintiffs' claims were moot and should be dismissed.  (D.E. 69, Jan. 21, 2011 Tr. at 7:7-19; 15:12-14).   The Court disagreed and indicated that even if all claims were ultimately paid, Plaintiffs would retain the right to make application for their interest, attorneys' fees and costs.  By Order dated February 14, 2011, the Court issued an order denying the Motion to Dismiss in large part and granting that part of the IBC Defendants' motion which sought to dismiss Count III of the Second Amended Complaint which sought damages pursuant to the Pennsylvania "prompt pay" health insurance statute on the ground that there was no private right of action (D.E. 66).   In the Order, the Court referred this matter for mediation of the interest and attorneys' fee issues to Magistrate Judge Wells.   Id.

17.     On March 17, 2011 (incorrectly noted on the Docket as March 16), the parties participated in the Court-ordered mediation (D.E. 72), attended by no business person from any of Defendants, only lawyers.   Plaintiffs brought the President of Feldman's/FCS.  The attorney representatives from Defendants left the mediation prior to its conclusion.  At the conclusion of the mediation, Judge Wells

9

requested that the parties provide revised interest calculations under additional theories.  Plaintiffs made their submission to Judge Wells on March 21, 2011. Hearing nothing from Defendants since the March 17 mediation, by letter dated May 13, 2011, Plaintiffs asked to Judge Wells to deem the mediation closed so that the matter could proceed.

18.    By Order dated that same day, May 13, 2011, this Court held that because Plaintiffs had received the payment Defendants had withheld since 2008 through the expedited administrative review process the Court had mandated in July 2010, Plaintiffs' case was now moot (D.E. 75, May 13, 2011 Order, 2:9-12).  The May 13, 2011 Order, accordingly, granted the IBC Defendants 12(b)(1) motion for lack of subject matter jurisdiction and dismissed Counts I and II against the IBC Defendants.  Applying the same rationale, the Court <u>sua</u> <u>sponte</u>, dismissed all claims (Counts I, II, and IV) against CareFirst, although CareFirst never moved to dismiss the Second Amended Complaint (D.E. 75, May 13, 2011 Order at 11-12 n.2).

19.    On May 27, 2011, Plaintiffs filed a Notice of Appeal with regard to that Order (D.E. 76).

**The Third Circuit Vacates the Dismissal of Counts I, II and IV of the**
**May 13, 2011 Order and Remands the Case for a Determination of the Interest Issue**

20.    By Order dated June 27, 2012, the Third Circuit vacated that portion of the May 13, 2011 Order which dismissed Counts I, II and IV of the Second

Amended Complaint prior to a determination on the issue of interest (D.E. 112).[5]

21.    In remanding the matter to this Court, the Third Circuit stated in

relevant part:

> Dismissal of the claims as moot without considering the plaintiffs' entitlement to interest was error. Voluntary payment of withheld benefits after initiation of a lawsuit does not necessarily moot the plaintiffs' claims, since they have requested interest in their complaint. See, e.g., Parella v. Ret. Bd. of the R.I. Employees' Ret. Sys., 173 F.3d 46, 57 (1st Cir. 1999) (holding that claims were not mooted when Rhode Island refunded wrongfully withheld pension benefits because the plan beneficiaries had demanded interest owed under the plan for the period during which payments were not made); Tucson Med. Ctr. v. Sullivan, 947 F.2d 971,978-79 (D.C. Cir. 1991) (holding that the plaintiff's claims for withheld Medicare benefits did not become moot when the Secretary of Health and Human Services settled the principal reimbursement claims because claims for interest had not been resolved); 13C C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3533.3, at 15-16 (3d ed. 2008) ("[M]ootness is avoided by demands for back pay, medical monitoring ... , public benefits, and interest." (footnotes omitted)). As the Court of Appeals for the First Circuit explained, "[T]he possibility of even a partial remedy is sufficient to prevent a case from being moot." Parella, 173 F.3d at 57 (citing Calderon v. Moore, 518 U.S. 149, 150 (1996) (per curiam)). (June 27, 2012 Order, pp. 10-11).

In affirming this Court's denial of the IBC Defendants' application for

attorneys' fees, the Third Circuit further noted that "the IBC defendants delayed

---

[5]    The Appeal of the May 27, 2011 Order was ultimately consolidated with an appeal and cross-appeal concerning this Court's August 19, 2011 order denying both the IBC Defendants' and Plaintiffs' applications for attorneys' fees. Plaintiffs do not seek fees or costs in connection with work performed in connection with the attorneys' fees applications (or the Third Circuit Appeal) and, accordingly, the motion practice related to those applications is not recounted herein.

approval of plaintiffs' claims for years *without explanation*..." (June 27, 2012 Order, p. 17, emphasis added).[6]

22.    By Petition dated July 11, 2012, the IBC Defendants moved for rehearing of the Third Circuit's June 27, 2012 Order seeking modification of the Order deleting the language concerning IBC's unexplained delay in payment.  By Order dated July 24, 2012, the Third Circuit denied the IBC Defendants' Petition.

**Proceedings Before This Court Upon Remand**

23.    On September 4, 2012, this Court conducted a telephonic status conference with the parties.   The Court ordered Plaintiffs to make a written demand to Defendants concerning their remaining claims for interest and attorneys' fees and ordered Defendants to make a written response to the demand.  On October 16, 2012, the parties submitted a joint status letter to the Court indicating that, following discussion and negotiation, a resolution of these issues had not been reached (D.E. 116).

24.    On November 7, 2012, the Court issued an order setting a briefing schedule on the issue of Plaintiffs' legal and factual entitlement to interest on the withheld benefits (D.E. 117).   In accordance with that order, Plaintiffs filed a Memorandum in support of their request for interest attaching, consistent with the Third Circuit's opinion, a proposed Third Amended Complaint seeking interest as an

---

[6]    The Third Circuit also affirmed this Court's denial of Plaintiffs' cross-motion for attorneys' fees and costs as untimely.  The Third Circuit did not address merits of Plaintiffs' application apparently in light of its vacatur and remand of this Court's order

equitable ERISA remedy pursuant to 29 U.S.C. §1132(a)(3).  Defendants filed their memoranda in opposition on December 17, 2012 (D.E. 121,122) and Plaintiffs filed their reply brief on December 24, 2012 (D.E. 123).

25.    By motion dated January 9, 2013, the IBC Defendants sought leave to file a sur-reply brief addressing the issue of interest (D.E. 124).  The Court granted the motion on January 10, 2013 (D.E. 125) and that brief was filed that same day (D.E. 126).

26.    On January 30, 2013, the parties participated in a hearing before the Court.  During the proceedings, the Court made clear that it believed that it had a mandate from the Third Circuit to award interest, that it would, if required, make such an award and that the issues presented were issues of first impression.  The Court stated in relevant part:

> It seems to me under (a)(1)(B), which provides that "A civil action may be brought to recover benefits due to him under the terms of the plan or to enforce his rights under the terms of the plan, to clarify his rights to future benefits", that unless the plan provides payment of interest I just don't think that the statute would apply. But certainly under (a)(3)(B), which provides for a participant beneficiary "to obtain other appropriate equitable relief", I believe interest would be allowable under that section.
>
> And, again, I've read these briefs and the foot -- footnoted a Third Circuit very carefully, and, again, some of these matters would be a matter of first impression if I wrote an opinion about it. But that's where my head's at (D.E. 128, 4:4-16).

* * *

dismissing the Second Amended Complaint. (June 27, 2012 Order, pp. 13-14).

> That's what the Circuit has told me to do. So I don't want to -- attorneys' fees should not be part 5 of any settlement negotiations at all. I'm just following the mandate of the Circuit, Mr. Paduano, so if you can settle this thing on interest put aside attorneys' fees (D.E. 128, 11:3-7).

The Court also indicated that it would accept the filing of the Third Amended Complaint:

> Well, first of all, I would allow the third amended complaint to be filed in this case, so we would be operating under the third amended complaint. I could enter an order now allowing plaintiffs to file the third amended complaint. That would be number one. I would allow that (D.E. 128, 20:8-12).

Notwithstanding the Court's comments, Defendants continued to argue at the hearing that Plaintiffs were not entitled to interest pursuant to any provision of ERISA (D.E. 128, pp. 14-15), and that they would press their legal arguments and defenses in opposition.

27.    At the conclusion of the hearing, the Court ordered the parties to attempt to resolve the interest issues and to report back in two weeks.  Following discussion and negotiation, the parties failed to resolve the dispute and, accordingly, by letter dated February 13, 2013, Plaintiffs so advised the Court.  On February 15, 2013, Plaintiffs formally filed the Third Amended Complaint (D.E. 129).

28.    On February 27, 2013, the Court issued an ordered requiring the parties appear for a telephonic conference on March 7, 2013 to set a schedule for discovery, pre-trial motions and a hearing on Plaintiffs' request for interest (D.E. 130).  The scheduling conference was continued until March 21, 2013 (D.E. 135).

14

29.     At the March 21, 2013 conference, the parties revealed that although Defendants had agreed to pay the full amount of interest owed under the federal post-judgment interest statute ($68,000.00), the parties could not agree on the documentation memorializing their agreement.  Plaintiffs stated that they would agree to provide a Covenant Not to Sue as a result of the interest payment, but would not provide the release sought by Defendants because Plaintiffs intended to make an application for attorneys' fees.  The Court gave the parties until March 28, 2013 to come to reach an agreement.

30.     On March 28, 2013, counsel for the parties signed a Covenant Not to Sue in consideration for the payment of $68,000, annexed hereto as Exhibit E.

31.     As a result of the resolution of the interest issue, on April 1, 2013, Defendants filed a joint motion to dismiss the Third Amended Complaint on the ground of mootness (D.E. 138).  In a status conference on April 4, 2013 (incorrectly reflected on the docket as April 5) (D.E. 139), Plaintiffs stated that they had no objection to the motion to dismiss on the grounds of mootness, but again reiterated their intention to move for attorneys' fees after entry of judgment.  Accordingly, on April 5, 2013 this Court entered an order dismissing the case as moot (D.E. 140).

**The Work Done by P&W**

32.     Plaintiffs' attorneys' fees fall into several categories:

a.          **November 1, 2010 to December 1, 2010 (Status Report, Draft and File Second Amended Complaint and Settlement Discussions)** –

i. Ms. Vinciguerra and I reviewed the Second

15

Level determinations for all five insureds;

ii. Ms. Vinciguerra prepared revised damage calculations in conjunction with the Second Amended Complaint and worked with the clients as well as Mr. Altabef and Mr. Verigan, paralegals, regarding the damages calculations, including the interest calculations, and drafted and revised the Second Amended Complaint;

iii. Jillian A. Lazar, an associate, conducted legal research and drafted portions of the Second Amended Complaint with Ms. Vinciguerra;

iv. I had a conference with the Court on November 9, 2010 to discuss the submission of a status report regarding the Second Level Appeal, which Ms. Vinciguerra ultimately prepared (and I reviewed) and submitted to the Court on November 12, 2010 pursuant to the July 27, 2010 Order;

v. Ms. Vinciguerra prepared for and attended a conference with opposing counsel held on December 1, 2010 in Philadelphia, Pennsylvania to discuss the outstanding claims (and in conjunction therewith P&W paralegals prepared documents for the meeting);

b.      December 2, 2010 to January 31, 2011
        **(Motion Practice)** –

i. Ms. Vinciguerra reviewed CareFirst's Answer filed on December 3, 2010 (D.E. 52);

ii. Mr. Altabef prepared revised spreadsheets regarding payments received from Defendants and updated interest calculations;

iii. Mr. Becker reviewed the IBC Defendants' Motion to Dismiss, which was filed on

16

December 3, 2010 (D.E. 54);

iv.  In mid-December, Ms. Vinciguerra and I outlined and prepared the Rule 26(a)(1) disclosures; Ms. Vinciguerra also participated in a conference call with opposing counsel on December 8, 2010 regarding the Rule 26(a)(1) disclosures, which were served on December 16, 2010;

v.  Ms. Leon conducted legal research in preparation for the oral argument on January 21, 2011;

vi.  Ms. Vinciguerra and Gideon Mark (of counsel to P&W) conducted legal research and drafted and revised Plaintiffs' opposition to the IBC Defendants' Motion to Dismiss the Second Amended Complaint which was filed on December 27, 2010 (D.E. 57);

vii.  Mr. Altabef prepared documents for the oral argument on January 21, 2011;

viii.  Ms. Vinciguerra and I prepared for and attended the oral argument on January 21, 2011 regarding the IBC Defendants' Motion to Dismiss the Second Amended Complaint (D.E. 60);

ix.  Ms. Vinciguerra had various communications with counsel for CareFirst regarding Plaintiffs' request that CareFirst withdraw its Requests for Admissions and ultimately drafted a letter to the Court on January 25, 2011 regarding Plaintiffs' request;

x.  Ms. Vinciguerra and I prepared for and attended the Court conference on January 28, 2011 regarding the Mediation and Requests for Admissions;

xi.  Ms. Vinciguerra drafted Plaintiffs' motion for

17

protective order (D.E. 61);

c.   **February 1, 2011 to May 4, 2011**
     **(Court-ordered Mediation)** –

     i.  I held several conferences regarding strategy for discovery and to prepare for the Mediation, which I participated in on March 17, 2011;

     ii.  Ms. Vinciguerra worked with the Court to schedule the Mediation;

     iii.  Mr. Altabef, Mr. Verigan and Mr. Mathews also prepared documents for the Mediation;

     iv.  Ms. Vinciguerra drafted the Mediation Submission and worked with Dr. DeRosa (Plaintiffs' expert) and Mr. Altabef, paralegal, to create updated spreadsheets regarding outstanding invoices and interest calculations;

     v.  Ms. Vinciguerra and I drafted an additional Mediation Submission, which was filed on March 21, 2011, and associates, Jason Snyder and Lisia Leon, conducted legal research for the Submission;

     vi.  Mr. Snyder and Ms. Leon conducted legal research on entitlement attorneys' fees pursuant to ERISA and attorneys' fees awards;

     vii.  Ms. Vinciguerra spoke with the individuals and obtained authorizations for the investigative report from the IBC Defendants;

d.   **May 13, 2011 to May 27, 2011**
     **(Dismissal of Second Amended**
     **Complaint and Notice of Appeal)** –

     i.  Ms. Vinciguerra, Mr. Becker and I reviewed the Court's Order dismissing the Second Amended Complaint with prejudice (D.E. 75);

      ii.  Ms. Vinciguerra reviewed additional payments received from Defendants;

     iii.  Mr. Altabef reviewed materials for analysis of the May 13, 2011 Order;

     iv.  Mr. Altabef and Mr. Verigan, paralegals, drafted the Notice of Appeal, which Ms. Vinciguerra reviewed and revised, and Mr. Mathews filed and served on May 27, 2011 (D.E. 76);

**e.**　　**August 14, 2012 to October 16, 2012**
**(Status Conference and Court-Ordered Settlement**
**Negotiations)**

      i.  Ms. Vinciguerra and I prepared for a September 4, 2012 telephonic conference with the Court and participated in the conference;

      ii.  Ms. Vinciguerra and I engaged in written settlement communications with counsel for Defendants pursuant to the Court's directive at the September 4, 2012 conference;

     iii.  Ms. Vinciguerra reviewed the October 16, 2012 status letter to the Court;

**f.**　　**November 7, 2012 to January 30, 2013**
**(Memoranda of Law and Court Hearing**
**Concerning Plaintiffs' Entitlement to Interest)**

      i.    Ms. Vinciguerra and Mr. Becker drafted and revised, and I reviewed, Plaintiffs' Initial and Reply Submissions to the Court on the issue of interest, including the proposed Third Amended Complaint. Mr. Schroeder and Mr. Altabef, both paralegals, proofread and prepared the submissions for filing with the Court;

      ii.    Ms. Vinciguerra and I prepared for and

attended the January 30, 2013 hearing before the Court;

g. **February 4, 2013 to April 4, 2013[7]**
**(Court-Ordered Settlement Negotiations**
**and Status Conference with the Court)**

i. Ms. Vinciguerra reviewed documents received from the IBC Defendants and She and I participated in settlement communications with Defendants;

ii. Ms. Vinciguerra drafted a status letter to the Court and, with the assistance of Ms. Berck, a paralegal, sent the letter to the Court;

iii. Ms. Vinciguerra and I communicated regarding settlement and strategy;

iv. Ms. Sgambati, a paralegal, finalized and filed the Third Amended Complaint;

v. Ms. Vinciguerra drafted, and I reviewed, the Covenant Not to Sue;

vi. Ms. Vinciguerra and I reviewed Defendants' Motion to Dismiss the Third Amended Complaint;

vii. I prepared for, and participated in, the April 4, 2013 status conference with the Court;

h. **April 5, 2013 to Present**
**(Preparation of Attorneys' Fee Application)**

i. Ms. Vinciguerra drafted and revised the attorneys' fee application with the assistance of Mr. Fishman, an associate and Ms. Connolly, a paralegal, and with the review of Mr. Paduano

---

[7] As indicated at ¶1, n.1, <u>supra</u>, Plaintiffs request the ability to supplement this submission for attorneys' fees and costs upon the completion of the April 2013 billing cycle.

## Background Of P&W Lawyers And Other Professionals

## My Background

33.     I have conducted trials and hearings in federal and state courts and before arbitration panels in 35 states.  I am a member of the following bars: Southern, Eastern, Northern, and Western Districts of New York, District of New Jersey, Eastern District of Michigan, Eastern District of Wisconsin, United States Court of Appeals for the Second Circuit, United States Court of Appeals for the Third Circuit, United States Court  of Appeals for the Fourth Circuit, United States Court of Appeals for the Fifth Circuit, and the United States Supreme Court.  I am licensed to practice law in New York and New Jersey.

34.     I have been admitted to appear pro hac vice before, and have conducted trials or hearings in, the following courts:  Southern and Northern Districts of Alabama, Central, Northern and Southern Districts of California, District of Columbia, District of Connecticut, District of Delaware, Middle and Southern Districts of Florida, Northern District of Georgia, Northern District of Illinois, Southern and Northern Districts of Indiana, District of Iowa, Eastern District of Louisiana, District of Maryland, Eastern District of Missouri, District of New Hampshire, District of North Dakota, Southern and Northern Districts of Ohio, Eastern, Middle, and Western Districts of Pennsylvania, District of Puerto Rico, District of South Carolina, Eastern and Western Districts of Virginia, Northern District of West Virginia, and the state courts of California, Connecticut, Delaware, Florida, Massachusetts, Michigan, Mississippi, Pennsylvania, Tennessee, Texas and Washington.

35.     I graduated from Georgetown University with an A.B. cum laude in 1979; received an M.Sc.Econ. from the London School of Economics in 1981; and after attending Georgetown Law Center, graduated from Rutgers Law School in 1984, serving as a Member and Editor of the Rutgers Law Review and on the Moot Court Board.  During my last two years of law school, I was a law clerk for the NAACP Legal Defense and Educational Fund, Inc.  Upon graduating from law school, I became an associate at Cahill Gordon & Reindel, and worked there from March 1984 to December 1984, and then again from January, 1986 until June, 1991.  From January 1, 1985 until December 31, 1985, I served as law clerk to the late Clarkson S. Fisher, then Chief Judge of the United States District Court for the District of New Jersey.

36.     While at Cahill Gordon & Reindel, I was, pro bono, principal lawyer for two capital punishment cases that attracted enormous attention as they worked through the New York, Mississippi and federal court systems.  The cases, Johnson v. Mississippi, 486 U.S. 578 (1988), and Minnick v. Mississippi, 498 U.S. 146 (1990), were won in the Supreme Court of the United States.  I have published two law review articles proposing changes in the capital punishment system; those articles have been analyzed twice by the United States Supreme Court in Ramdass v. Angelone, 530 U.S. 156 (2000) and O'Dell v. Netherland, 521 U.S. 151 (1997), and by the Fifth and Eleventh Circuit Courts of Appeal, the Supreme Courts of New Jersey, Mississippi and Wyoming and in some 80 law review articles, including those of Harvard, Yale and Columbia Law Schools.  I have been appointed by the United States Court of Appeals for the Second Circuit to represent an indigent criminal defendant

22

who had a meritorious constitutional appeal.

37.    I have been lead counsel in arbitrations before FINRA (and its predecessor entities), the American Arbitration Association, and the National Futures Association, and have appeared specifically before the federal courts of Brazil.  I have handled many matters involving compliance and regulatory issues before the United States Securities and Exchange Commission, other self-regulatory organizations and various state regulators.   Our firm's principal clients are J.P.Morgan, Citigroup, Prudential Financial, Deutsche Bank and Wells Fargo.

38.    The many published decisions in which I have been involved are available on Westlaw and Lexis.  Articles about my work have appeared in: Forbes, The New York Times, The Wall Street Journal, The National Law Journal, The American Lawyer, Newsday, The Manhattan Lawyer and other publications.  I have given lectures before FINRA arbitrators regarding the way arbitration panels are to conduct themselves.  I have lectured to conferences convened by the Texas Bar Association, Rutgers Law School and New York University School of Law regarding the ethical obligations of lawyers.

39.    In 1998, I received the "Thurgood Marshall Award" from the Association of the Bar of the City of New York "in recognition of exemplary service to the cause of justice in the United States."

40.    One pro bono capital case team that I led at Cahill Gordon & Reindel was awarded the "David S. Michael Award" for Courageous Efforts in Promoting Integrity in the Criminal Justice System by the New York State Bar

Association in 1990.

41.    In 2006, 2007 and 2010, I was named a "Super Lawyer©" (New York) by "Law & Politics Magazine."

42.    I have an AV Rating© from Martindale-Hubbell©, the highest rating available.

43.    In March, 2006, on the nomination of the U.S. Securities and Exchange Commission in the matter of Cobalt Multi-Family Investors, (S.D.N.Y.), I was appointed Receiver for a series of fraudulent financial services firms located in New York, Texas, Massachusetts and Florida.  The appointment was made by Chief Judge Michael B. Mukasey.

**Background Of Other P&W Attorneys And Paralegals**

44.    Jordan D. Becker has been a practicing lawyer for 25 years.  Mr. Becker is a member of the bars of the United States Court of Appeals for the Second Circuit, the Southern and Eastern Districts of New York, the Southern District of Illinois, the District of Colorado and he has also been admitted pro hac vice in several state and federal courts.  Mr. Becker graduated from Princeton University in 1982 with an A.B. in History; he graduated from Fordham University School of Law in 1986, and served as a Member and Associate Editor of the Fordham Law Review.  Mr. Becker's Note, Removing Temptation: Per Se Reversal for Judicial Indication of Belief in the Defendant's Guilt was published at 53 Fordham L. Rev. (1985).  After graduating from law school, Mr. Becker became an associate at Cahill Gordon & Reindel LLP where he worked from 1986 to 1991.  Mr. Becker worked at other New York law firms until he

joined the predecessor of P&W as an associate in 1994.   Mr. Becker worked at Prudential Securities as a Vice President and Corporate Counsel from 2000 to 2004, and then he joined P&W as a partner.   Mr. Becker's practice has focused on commercial litigation.   Mr. Becker has argued before the United States Court of Appeals for the Second Circuit and conducted hearings and/or trials in federal and state courts including: the Southern and Eastern Districts of New York, the District of Colorado, the Northern and Central Districts of Illinois, the District of New Jersey, the Eastern District of Pennsylvania, the Southern District of Georgia, the Northern District of Iowa and the state courts of New York, New Jersey, Delaware, Connecticut, Pennsylvania, Texas, Florida and Massachusetts.   Mr. Becker has also been lead counsel in arbitrations before FINRA and its predecessor entities.   Mr. Becker left the firm in February 2013.

45.   Lori Vinciguerra has been practicing for 25 years and is admitted in New York as well as the Southern and Eastern Districts of New York.  Ms. Vinciguerra graduated with a B.A. from the State University of New York at Stony Brook, cum laude, in 1982 and Hofstra University School of Law, with Distinction, in 1985; served as a Member and Notes and Comments Editor of the Hofstra Law Review.   Upon graduating from law school, Ms. Vinciguerra was a law assistant for the New York Supreme Court Appellate Division – Second Department from 1986 to 1988, and then an associate at Rosenman & Colin LLP from 1988 to 1996 where she practiced general commercial litigation in federal and state courts and before administrative agencies and arbitration panels with an emphasis on securities and commodities

litigation and regulation.  From 1996 to June 2009, Ms. Vinciguerra served as a Senior Attorney and Senior Vice President at Wells Fargo Advisors, LLC (formerly known as Wachovia Securities and before that Prudential Securities), where she handled all aspects of arbitrations, administrative proceedings and litigations involving both customer and employee disputes, and acted as the firm's commodities counsel.  Ms. Vinciguerra joined P&W in July 2009 as senior counsel and became a partner in January 2011.  Ms. Vinciguerra handles complex financial services, employment, securities and commodities litigation as well as insurance-related litigation in cases throughout the country.

46.    Gideon Mark has been a member of the bar for 27 years and is admitted to practice in California, the District of Columbia, Massachusetts, Illinois and New York.  Mr. Mark graduated from Brandeis University with a B.A. magna cum laude in 1979; he graduated from the University of California, Hastings College of Law in 1983, serving as a Member of the Hastings Law Journal in 1982 and 1983, a Member of the Hastings Constitutional Law Quarterly in 1981 to 1982, and was a National Finalist in the ABA National Appellate Advocacy Competition in 1983.  He graduated from Columbia University with an M.B.A. in 1995; and from Harvard University, Kennedy School of Government with an M.P.A. in 2000.  He obtained an L.L.M. in tax from New York University in 2005, and served as a Member of the New York University Annual Survey of American Law from 2002 to 2005 and Executive Articles Editor from 2004 to 2005.  Mr. Mark has published many articles including: Comment, "Issues in Asbestos Litigation," 34 Hastings Law Journal 871 (1983);

"Continuing Commercial Impression: Applications and Measurement," 10 Marquette Intellectual Property Law Review 433 (2006); "Investigations, Inspections, and Audits in the Post-SOX Environment," 86 Nebraska Law Review 43 (2007); "Accounting Fraud: Pleading Scienter of Auditors Under the PSLRA," 39 Connecticut Law Review 1097 (2007); "Corporate Cooperation During Investigations and Audits," 13 Stanford Journal of Law, Business & Finance 1 (2007); "Justice Sotomayor on the Supreme Court: A Boon for Business?," 4 Virginia Law & Business Review 187 (2009); and "Confidential Witnesses in Securities Litigation," 36 Journal of Corporation Law 551 (2011). Mr. Mark joined P&W as an associate in 2000 and became counsel in 2006. He is an assistant professor of business law at the University of Maryland, Robert H. Smith School of Business (since 2008). Mr. Mark has handled complex financial services, employment, antitrust and securities litigation as well as litigation involving ERISA claims.

47. Jason Snyder, an associate, graduated from Queens College with a B.A. summa cum laude in 1995 and from Harvard Law School in 1998. Mr. Snyder worked at Cahill Gordon & Reindel LLP as an associate from 1998 to 2000. He then joined Brobeck, Phleger & Harrison LLP as an associate in its business and technology group where he worked from 2000 to 2001 before returning to Cahill Gordon & Reindel LLP where he worked from 2003 to 2006. Mr. Snyder then joined Mayer, Brown, Rowe & Maw LLP as an associate from 2006 to 2007, he then became the general counsel and vice president of business development for Taxi Technology Corporation in Englewood, New Jersey in 2007, and then served as a consultant in the

general counsel's office for Merrill Lynch & Co. Inc. in 2008 before joining P&W in late 2008.

48.     Jillian A. Lazar graduated from Ithaca College with a B.S. in 1998 and from Fordham University School of Law in 2005, where she served as a Member of the Intellectual Property Law Journal in 2003 and 2004.  After graduating from law school in 2005, Ms. Lazar joined P&W as an associate.  Ms. Lazar left the firm in October, 2012.

49.     Lisia Leon graduated from the University of California, Berkeley with a B.A. in 1999 and Columbia University School of Law in 2005, serving as a Staff Member of the Columbia Business Law Journal and a Board Member of the Columbia Society for International Law. Ms. Leon was a law clerk to Oliver W. Wanger, United States District Judge for the Eastern District of California from August, 2007 to September, 2008.  Ms. Leon joined P&W as an associate in November, 2009.

50.     Bradley Fishman joined P & W as an associate in August, 2012. Mr. Fishman graduated from George Washington University Law School with honors in May, 2010.

51.     We have employed numerous paralegals to do work on this matter, including:

> a.  Daniel Altabef (Columbia University, B.A., 2008; at P&W July, 2008 to June, 2011);
>
> b.  William Verigan (Columbia University, B.A., 2006; at P&W July, 2006 to July, 2011);

28

    c. Trevor Mathews (Harvard University, A.B., 2010; at P&W from December, 2010 to March, 2012);

    d. Samantha I. Connolly (Columbia University, B.A., 2007; at P&W from July, 2007 to date);

    e. Brooke Sgambati (University of Pennsylvania, B.A., 2011; at P&W from June, 2011 to date);

    f. Theodore Schroeder (Dartmouth College, B.A., 2011; at P&W from June, 2012 to date);

    g. Erica Berck (Columbia University, B.A., 2011; at P&W from July, 2012 to date).

**Background of Dr. David F. DeRosa**

52.    Dr. David F. DeRosa is a financial economist, derivatives trader and educator.  In 1997, he founded DeRosa Research and Trading, Inc., New Canaan, Connecticut ("DeRosa Research"), an economic research and consulting firm that specializes in all aspects of international financial markets.  Dr. DeRosa graduated from the College of the University of Chicago with a B.S. in 1972 and received a Ph.D. from the Graduate School of Business of the University of Chicago in 1978.   Before founding DeRosa Research, Dr. DeRosa worked on Wall Street as a foreign exchange trader, hedge fund trader, and portfolio manager.  Since 2006, Dr. DeRosa has been an adjunct associate professor at the Fu Foundation School of Engineering and Applied Science at Columbia University.  Dr. DeRosa has published the following books: Central Banking and Monetary Policy in Emerging-Markets Nations (March 2009), In Defense of Free Capital Markets (January 2001), Options on Foreign Exchange

(February 2000), Currency Derivatives (1998), and Managing Foreign Exchange Risk (1996).  DeRosa Research has provided expert witness and litigation support services in cases involving a broad range of financial and investment areas for courtroom trials, arbitrations, and mediations.  DeRosa Research also has experience in both civil and criminal matters.

## The Attorneys' Fees and Costs Owed

53.    Plaintiffs respectfully request that the Court allow them to recover $203,598.50 in attorneys' fees and $27,258.10 in expenses and disbursements for the work performed by P&W and $7,466.25 in attorneys' fees and $48.40 in expenses and disbursements for the work performed by MantaCole, for a total of $238,371.25.  I believe that all of the attorneys' fees sought were reasonably expended on the particular task reflected in the annexed statements (See Exhibit D).

_Anthony Paduano_

SWORN TO BEFORE ME THIS
16TH DAY OF APRIL, 2013

Notary Public  WILLARD KNOX
My commission expires 10 - 1 - 15

WILLARD R KNOX
Notary Public, State of New York
02KN6174955
Qualified in New York County
My Commission Expires October 1, 2015

# EXHIBIT A

## Templin, et al. v. Independence Blue Cross, et al.
### Summary Billing Sheet

| Month Ending: | P&W Fees | P&W Disbs | MantaCole Fees | MantaCole Disbs |
|---|---|---|---|---|
| November 2010 | 33,686.00 | 1,585.75 | 1650.00 | 17.40 |
| December 2010 | 43,440.75 | 1,489.89 | 467.50 | |
| January 2011 | 36,726.25 | 536.57 | 1705.00 | 21.00 |
| February 2011 | 7,571.25 | 519.18 | 357.50 | |
| March 2011 | 33,245.00 | 16,272.57 | 27.50 | |
| April 2011 | 1,106.25 | 1,653.49 | | |
| May 2011 | 2,658.00 | 1,022.95 | 165.00 | |
| August 2012 | 123.75 | 4.29 | 412.50 | |
| September 2012 | 2,970.00 | 663.29 | 288.75 | |
| October 2012 | 247.50 | 300.00 | 192.50 | |
| November 2012 | 8,411.25 | 457.79 | 82.50 | |
| December 2012 | 15,952.50 | 851.87 | 495.00 | |
| January 2013 | 9,536.25 | 1,025.97 | 165.00 | |
| February 2013 | 2,977.50 | 377.13 | 1320.00 | 10.00 |
| March 2013 | 4,946.25 | 497.36 | 137.50 | |
| | | | | |
| Total Billed | 203,598.50 | 27,258.10 | 7466.25 | 48.40 |

| | |
|---|---|
| Total Fees: | 211,064.75 |
| Total Disbursements: | 27,306.50 |
| TOTAL: | 238,371.25 |

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>UNIVERSAL MARKETING, INC., *et al.*,[1]<br><br>       Debtors. | Chapter 7<br>(Previous Chapter 11)<br><br>Case No. 09-15404 (ELF)<br>(Substantively Consolidated) |

**FIFTH INTERIM FEE APPLICATION FOR COMPENSATION & REIMBURSEMENT
OF EXPENSES FOR ARCHER & GREINER, PC, COUNSEL TO THE CHAPTER 7
TRUSTEE FOR THE PERIOD AUGUST 1, 2011 THROUGH JUNE 30, 2012**

TO:  THE HONORABLE ERIC L. FRANK, U.S. BANKRUPTCY JUDGE

      This is the Fifth Interim Fee Application for Compensation and Reimbursement of

Expenses (the "Application") of Archer & Greiner, P.C. (the "Applicant"), as counsel to Charles

Goldstein, the Chapter 7 Trustee (the "Trustee") for the period August 1, 2011 through June 30,

2012.  The Application is submitted in accordance with Fed. R. Bankr. P. 2016 as it applies

under § 330 of the Bankruptcy Code and in support thereof represents as follows:

**PART A Preliminary Statement**

    1.     Applicant is counsel for Charles Goldstein, Chapter 7 Trustee.

    2.     All services rendered and expenses incurred for which compensation or

reimbursement is requested were performed or incurred for or on behalf of the Trustee.

---

[1] The Debtors in this substantively consolidated proceeding are the following entities:  Universal Marketing, Inc.;
Universal Delaware, Inc.; Universal Enterprises, Inc.; Universal Management, Inc.; Universal Distribution Inc.;
Project Growth Technologies, Inc.; Universal Real Estate, Inc.; 177 Old Camden Road, LLC; 1272 South Governors
Ave, LLC; 133 Saulsbury Road, LLC; 1104 South State Street, LLC; 100 S. Main Street, LLC; 505 Bridgeville
Highway, LLC; 323 West Stein Highway, LLC; 111 South West Street, LLC; 102 West Central Avenue, LLC; 302
Maple Avenue, LLC; 176 Flatlands Road, LLC; 5318 Snow Hill Road, LLC; 617 North Salisbury Boulevard, LLC;
28768 Ocean Gateway Highway, LLC; 241 Cypress Street, LLC; 610 Snow Hill Road, LLC; 106 Cedar Street,
LLC; 326 East Dover Street, LLC; 101 Maple Avenue, LLC; and 2194 Reading Road, LP.

3.     The services described in this Application are actual, necessary services and the compensation requested for those services is reasonable.

4.     The expenses described in this Application are actual, necessary expenses.

## PART B General Information

1.     **Period:**  8/1/11 through 6/30/12

Final Application _____

Interim Application __X___

|  | Requested |
|---|---|
| Fees | $   937,739.50 |
| Expenses | $     79,707.52 |
| Total | $1,017,447.02 |

2.     **General Information**

a        Date case filed:  7/23/09 and converted on 8/18/09

b        Date application to approve employment filed:  9/28/09

c        Date employment approved:  10/7/09

d        First date services rendered in the case:  9/23/09

e        Compensation requested is under § 330:  Yes

f        Any fees awarded will be paid by the estate:  Yes

g        The application is for a period less than 120 days after the filing of the case or less than 120 days after the end of the period of the last application:  No

3.     **Prior Applications**

| Date Filed | Period Covered | Requested | | Allowed | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| 12/24/09 | 9/23/09 - 11/30/09 | $73,044.00 | $1,208.16 | $68,642.50 | $1,208.16 |
| 8/20/10 | 12/1/09 – 7/31/10 | $273,600.50 | $44,814.66 | $272,488.00 | $44,814.66 |
| 3/10/11 | 8/1/10 – 11/30/10 | $141,634.50 | $23,396.49 | $140,215.00 | $23,396.49 |
| 6/12/12 | 12/1/11 – 7/31/11 | $301,471.00 | $34,643.50 | $301,426.50 | $31,643.50 |

4. **Attorneys Billing for Current Period**

| NAME OF PROFESSIONAL | YEAR ADMITTED | HOURS | BILLING RATE | TOTAL FEES |
|---|---|---|---|---|
| John V. Fiorella | 1972 | 0.8 | $435.00 | $348.00 |
| Stephen M. Packman | 1989 | 437.2 | $450.00 | $195,621.00 |
| Charles J. Brown | 1995 | 45.8 | $395.00 | $18,000.00 |
| Edward J. Kelleher | 1997 | 2.7 | $350.00 | $945.00 |
| Jerrold S. Kulback | 1999 | 2.3 | $330.00 | $747.00 |
| Rebecca L. Rakoski | 2003 | 485.7 | $295.00 | $143,095.50 |
| Jennifer L. Dering | 2006 | 121.2 | $245.00 | $29,694.00 |
| Douglas G. Leney | 2007 | 833.1 | $250.00 | $205,693.50 |
| Jeffrey N. Medio | 2010 | 1374.9 | $200.00 | $274,980.00 |

5. **Paralegal/Paraprofessional Services for Current Period**

| NAME OF PROFESSIONAL | HOURS | BILLING RATE | TOTAL FEES |
|---|---|---|---|
| Michelle N. Friedman | 216.3 | $100.00 | $21,630.00 |
| Dawn M. Abernathy | 15.9 | $120.00 | $1,848.00 |
| Alicia M. David | 447.0 | $100.00 | $44,700.00 |
| Debbie M. Cavallo | 3.0 | $100.00 | $300.00 |
| Dorothy Mattson | 1.0 | $55.00 | $55.00 |
| Ruth A. Crockett | 1.5 | $55.00 | $82.50 |

6. **Billing Rates**

a   Are any of the billing rates different than the billing rates set forth in your last application? **Yes**

b   If yes, indicate whose billing rates are different and explain why. **Archer & Greiner, PC adjusts billing rates in October of each year. Below are the hourly billing rates for the attorneys at issue in effect as of the last fee application of Applicant. Certain rates were adjusted upward since the last Application.**

| | | |
|---|---|---|
| John V. Fiorella | 1972 | $435.00 |
| Stephen M. Packman | 1989 | $435.00 |
| Charles J. Brown | 1995 | $385.00 |
| Jerrold S. Kulback | 1999 | $310.00 |
| Rebecca L. Rakoski | 2003 | $285.00 |
| Douglas G. Leney | 2007 | $235.00 |
| Jeffrey N. Medio | 2010 | $200.00 |

## PART C Billing Summary

1.    **Description of Services**.

The professional time expended during the subject period has been set forth in separate

categories of service as follows:

| PROJECT CATEGORY | TOTAL HOURS | TOTAL FEES |
|---|---|---|
| Case Administration | 253.2 | $52,710.00 |
| Business Operations | 0.2 | $20.00 |
| Insurance Issues | 80.3 | $35,461.50 |
| Tax Matters/Tax Returns | 0.5 | $165.00 |
| Employee Benefits, Termination, Pensions | 0.5 | $107.00 |
| Avoidance Claims Analysis and Litigation | 1502.2 | $315,137.50 |
| Prepetition Litigation | | |
| Executory Contracts | | |
| Secured Claim Issues, Relief From Stay Issues and Proceedings | 1.1 | $225.00 |
| Adversary Proceedings and Related Litigation | 1938.7 | $468,979.00 |
| Miscellaneous Motions and Related Proceedings | 67.1 | $16,691.00 |
| Personal Injury/Products Liability Analysis in Litigation | | |
| Liquidation of Assets and Asset Sales | 1.8 | $439.50 |
| Claims Review/Objections | 8.6 | $2,073.00 |
| Fee/Employment Applications | 26.2 | $6,229.50 |
| Fee/Employment Objections | | |
| Travel | 3.4 | $680.00 |
| Miscellaneous | 84.2 | $35,476.50 |
| Archer & Greiner Fee Application | 20.4 | $3,345.00 |

2.      Applicant advised the Trustee with respect to all legal matters in connection with

the bankruptcy case and performed the professional services detailed in the attached Exhibit "A."

3.      More specifically, a substantial portion of Applicant's services for the Trustee

during the applicable time period relate to the following:

- Prosecution and settlement of avoidance actions (180+ actions filed by Applicant in July, 2011, with approximately $710,000 in settlements by June 30, 2012, with only three (3) unresolved matters remaining at that time)
- Contested hearing over streamlined procedures order governing avoidance actions
- Approval of assignment of "Sondhi Claims" from Gulf and CITGO
- Continued sales of SPE Properties and related motions for approval, etc.
- Settled A/R claims not previously subject to A/R adversary proceeding
- Assisted Trustee in monitoring and review of matters transpiring in Duncan/Delta litigation in Delaware and settlement discussions with parties (ultimately leading to settlement with Delta in the amount $2.3 million after the current Application Period)
- Approval of Second Modification to Batra Settlement (over WSFS objections) and involvement with activity in Batra's Florida bankruptcy case including proceedings to except Trustee's note receivable from Batras and Singh and claims from discharge
- Resolution of several tax claims against the Estate arising out of SPE consolidation
- Worked extensively on settlement with Sondhi resulting in settlement and recovery to estate of just under $600,000
- Retention of SM Financial as collections counsel and collection of default judgments
- Dealt with Duncan issues relative to joint escrow motion
- Continued to deal with ongoing TD Bank issues
- Filed suit against WSFS, including extensive briefing back and forth with respect to motion to dismiss and amending complaint

4.      Detailed statements of each category of service identified above pursuant to

LRBP 2016-3 are attached hereto as part of Exhibit "A."

5.      Set forth in the attached Exhibit "A" is a list that shows the name of the

professional or paraprofessional, date, activity, and time expended in connection with the

services rendered.

### PART D Expense Summary

      1.     Applicant has expended $79,707.52 for expenses in connection with the representation of the Trustee.

      2.     Applicant's major expenses incurred during the applicable time period are as follows:

- Photocopying in connection with litigation proceedings including substantial discovery and service of process and motion practice;

- Postage relative to the above; and,

- On-line research relative to the above and other issues arising generally in the proceedings.

      3.     Set forth in the attached Exhibit "A" is a list that shows the type of expenses for which reimbursement is sought.

      4.     Copy charges are calculated at $0.20 per page.  Applicant also charges clients $0.95 per page for outgoing facsimile transactions and does not charge for incoming facsimile transactions.  Online legal research (Lexis and Westlaw) is charged at Applicant's discounted cost, which is computed each month based upon the negotiated discount charge to Applicant and the allocations of the savings realized during each month.

**WHEREFORE**, the Applicant respectfully requests the entry of an Order (a) granting the Fourth Interim Application of the Applicant; (b) authorizing interim compensation to Archer & Greiner, PC in the amount of $937,739.50 for services rendered and $79,707.52 for reimbursement of expenses, for a total of $1,017,447.02, for the period August 1, 2011 through June 30, 2012; and (c) for such other and further relief as this Court deems just and equitable.

Respectfully Submitted:

ARCHER & GREINER, P.C.

Dated: February 8, 2013

By:  /s/ Stephen M. Packman
STEPHEN M. PACKMAN
One Centennial Square
Haddonfield, NJ  08033
Telephone (856) 354-3078
Facsimile (856) 673-7078
*Counsel for the Chapter 7 Trustee*

9349273v1

# EXHIBIT C

# DeRosa Research and Trading, Inc.

495 White Oak Shade Road
New Canaan, CT 06840

Tele (203) 801-4340 Fax (203) 801-4342
derosa@derosa-research.com

**PRIVILEGED AND CONFIDENTAL
ATTORNEY WORK PRODUCT**

3/31/2011

Paduano & Weintraub LLP
1251 Avenue of Americas 9th Floor
New York, NY 10020

RE:  Carefirst

INVOICE #    1-FAC

| | Hours | Rate | Amount |
|---|---|---|---|
| David DeRosa | 2 | 600.00 | 1,200.00 |
| Devin Brosseau | 10 | 400.00 | 4,000.00 |
| John Goh · Associate | 8 | 300.00 | 2,400.00 |
| Anu Khambete · Analyst | 26 | 250.00 | 6,500.00 |

Sincerely

Total    $14,100.00

David DeRosa

# DeRosa Research and Trading, Inc.

495 White Oak Shade Road
New Canaan, CT 06840

Tele (203) 801-4340 Fax (203) 801-4342
derosa@derosa-research.com

**PRIVILEGED AND CONFIDENTAL
ATTORNEY WORK PRODUCT**

3/31/2011

Paduano & Weintraub LLP
1251 Avenue of Americas 9th Floor
New York, NY 10020


RE: IBC


INVOICE #    2-FAC

--------------------------------------------------------------------------------

|                          | Hours | Rate   | Amount   |
|--------------------------|-------|--------|----------|
| David DeRosa             | 1     | 600.00 | 600.00   |
| Devin Brosseau           | 7     | 400.00 | 2,800.00 |
| John Goh - Associate     | 31    | 300.00 | 9,300.00 |
| Anu Khambete - Analyst   | 1     | 250.00 | 250.00   |

Sincerely                                        Total     $12,950.00


David DeRosa

# EXHIBIT D

# FILED UNDER SEAL

# EXHIBIT E

## COVENANT NOT TO SUE

This Covenant Not to Sue is hereby made and entered into as of this 27th day of March, 2013 by and between Christopher Templin ("Templin"), Viola Hendrick ("Hendrick"), Feldman's Medical Center Pharmacy, Inc. ("Feldman's"), and FCS Pharmacy, LLC ("FCS") (collectively, "Plaintiffs") on the one hand, and Independence Blue Cross ("Independence"), QCC Insurance Company ("QCC") and CareFirst, Inc. ("CareFirst") (collectively "Defendants"), on the other hand.

Plaintiffs seek interest on the claims identified in Plaintiffs' Third Amended Complaint filed February 15, 2013 in the case captioned <u>Templin, et al. v. Independence Blue Cross, et al.</u> Civil Action No. 09-4092-JHS.

In exchange for payment in the amount of Sixty-Eight Thousand Dollars ($68,000.00), Plaintiffs, each on behalf of themselves, and on behalf of their heirs, legal representatives, trustees, shareholders, principals, attorneys, creditors, insurers, affiliates, parent corporations, subsidiaries, officers, directors, employees, independent contractors, predecessors and successors promise not to sue or proceed in any manner against the Defendants, their trustees, shareholders, principals, attorneys, insurers, affiliates, parent corporations, subsidiaries, officers, directors, employees, independent contractors, predecessors and successors, on the claims in the Third Amended Complaint.

Plaintiffs hereby warrant and represent that they are the sole and lawful owners of all rights, title, and interest in and to all matters released herein, and that

they have not heretofore assigned or transferred, or purported to assign or transfer, any of such released matters, in whole or in part, to any other person or entity.

The aforementioned payment will be made no later than April 22, 2013 and sent via wire to the following account:

Bank: JPMorgan Chase Bank
1 Chase Manhattan Plaza
New York, New York 10005


For the benefit of:
Account name: IOLA-Paduano & Weintraub LLP
Account No.: 217502250265
As attorneys for Christopher Templin, Viola Hendrick, Feldman's Medical Center Pharmacy, Inc., and FCS Pharmacy, LLC


Undersigned counsel for the parties represent and warrant that they have full and complete authority to enter into and sign this agreement on behalf of their respective clients.


/s/ Anthony Paduano
_____

Anthony Paduano
Paduano & Weintraub LLP
Feld
1251 Avenue of the Americas
Suite 920
New York, New York 10020


Counsel for Plaintiffs

March 27, 2013


/s/ MARK OBERSTAEDT
Mark Oberstaedt

/s/ KATHERINE M. KATCHEN
_____

Katherine M. Katchen
        Akin  Gump  Strauss  Hauer  &

Two Commerce Square
2100 Market Street, Suite 4100
Philadelphia, PA 19103

Counsel for Defendants IBC and QCC


March 27, 2013

2

Archer & Greiner
One Centennial Square
Haddonfield, New Jersey 08033

Counsel for Defendant CareFirst, Inc.

March 27, 2013