IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JEFFREY E. PERELMAN, et al.    :    CIVIL ACTION
                               :
        v.                     :
                               :
                               :
RAYMOND G. PERELMAN            :    NO. 09-4792


MEMORANDUM

McLaughlin, J.                              May 2, 2013


        This action between the plaintiff, Jeffrey Perelman,
and the defendant, Raymond Perelman, is one of at least five
lawsuits to address a series of financial transactions that
occurred over twenty-two years ago.  The plaintiff and defendant
are father and son; the transactions at issue involve the son's
acquisition of several companies from his father and the
subsequent formation of a trust to benefit the son's daughter.
Jeffrey now moves for summary judgment on his sole remaining
claim, seeking a declaratory judgment that his father does not
have any viable legal claims based upon these transactions.
Jeffrey has also moved to dismiss Raymond's counterclaims, which
sought to reform the trust and asserted various claims against
Jeffrey and his wife, Marsha.  The Court will grant the latter,
and it will dismiss the declaratory judgment claim as moot.

I.  <u>Factual and Procedural History</u>[1]

As the Court has previously recited the facts of the underlying dispute at length, it now refers only to facts pertinent to the instant motions.  The recitation derives from facts pled in the defendant's counterclaim and the record of various state court proceedings, which are a matter of public record and which the Court may consider on a motion to dismiss.[2] <u>Buck v. Hampton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2006).

A.  <u>1990 Business Transactions</u>

In 1990, Raymond and Jeffrey agreed on a business arrangement that transferred considerable business assets from Raymond's companies to Jeffrey's companies.  The deal was drafted and negotiated by both parties and through their

---

[1] In this factual recitation, the Court accepts all well-pleaded facts in the defendants' counterclaims as true and draws all reasonable inferences in favor of the nonmoving party, while disregarding any legal conclusions.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).  Jeffrey's briefing consolidated his renewed motion to dismiss with his newly-pled motion for summary judgment.  The Court does not need to make any additional findings of fact to arrive at its conclusion with regard to the motion for summary judgment.

[2] The relevant state court proceedings, including filed complaints, preliminary objections, oral argument transcripts, motion briefing, and memorandum and opinions, were also submitted as exhibits accompanying Jeffrey's motion to dismiss. To ensure clarity, the Court will cite to those exhibits herein.

mutually-shared counsel at the law firm Schnader Harrison Segal
& Lewis LLP.  It resulted in a series of twelve written
agreements ("Transaction Agreements") putting forth conditions
for the transfer of those assets ("Business Interests") and the
consideration to be paid for them.  Def. Answer, Counterclaim
¶ 15; 25 (Docket No. 39).

        In addition to the twelve written Transaction
Agreements, the parties orally agreed to effectuate certain
actions that were not covered in the written agreements.  The
Oral Agreement focused primarily on the creation of a trust that
was intended to benefit Jeffrey's daughter, Allison ("the
Trust").  Specifically, Raymond required that Jeffrey create a
Trust benefitting Allison and any other children Jeffrey may
later have, and that the ownership of the transferred assets be
evenly divided between Jeffrey and that Trust.  In addition,
Raymond required that Jeffrey's wife, Marsha, renounce any
interest in the Business Interests transferred from Raymond to
Jeffrey and the Trust.  Jeffrey and Marsha represented to
Raymond that they agreed to these terms.  On January 24, 1990, a
Trust was formed and a renunciation was executed by Marsha.  Id.
¶ 15-19, 22-26.

        At some point recently, Raymond discovered that
certain aspects of the Trust and of Marsha's renunciation

3

agreement did not conform to his requirements.  Specifically, whereas Raymond intended the Trust to benefit Alison primarily, it in actuality gave Allison a remote contingent interest; Jeffrey is the principal beneficiary.  In addition, although Marsha signed a renunciation agreement, the agreement did not wholly renounce her interest in the Business Interests.  She is still able to derive certain dividends and salaries.  The oral representations were central to Raymond's decision to transfer his companies to Jeffrey, and, as a result, his principal goals as to the transaction were frustrated.  Id. ¶ 27-33, 35.

B.  Litigation History

Since Raymond's discovery of the alleged breach, at least five lawsuits related to the same nucleus of facts have been filed in state and federal court.[3]  Four of the five lawsuits

_____

[3] The state cases, in chronological order of their filing, are:

1) Raymond G. Perelman v. Jeffrey E. Perelman, No. 2242, Pa. Ct. of Common Pleas of  Phila. Cnty. (Oct. 2009) ("First Philadelphia County Action");

2) Raymond G. Perelman v. Schnader Harrison Segal & Lewis LLP, et al., No. 977, Pa. Ct. of Common Pleas of Phila. Cnty. (Dec. 2009) ("Second Philadelphia County Action");

3) In re: Jeffrey E. Perelman Trust, No. 2011-X2850, Pa. Ct. of Common Pleas of Montgomery Cnty. (Aug. 2011) ("First Orphans' Court Action");

4) In re: Raymond G. Perelman Constructive Trust, No. 2011-X4010, Pa. Ct. of Common Pleas of Montgomery Cnty. (Nov. 2011) ("Second Orphans' Court Action").

have been resolved against Raymond; only the instant case, which was stayed in June 2010 pending resolution of the state court proceedings, remains.

1.    First Philadelphia County Action:  Complaint and
      Preliminary Objections

The First Philadelphia County Action was initiated by Raymond against Jeffrey on October 19, 2009.  Raymond's complaint alleged claims of breach of contract, fraud, and conversion, and also sought the creation of an express trust, a resulting trust, and a constructive trust upon the Business Interests.  Pl. Mot. exh. 2, at 9-13.

Jeffrey filed preliminary objections to the complaint, seeking dismissal of all claims with prejudice on the grounds that the parol evidence rule barred the introduction of evidence of the Oral Agreement.  The presiding trial judge held oral argument on his preliminary objections.  Id. exh. 5.

On March 25, 2010, in a brief order, the court granted Jeffrey's preliminary objections and dismissed Raymond's claims with prejudice.  Subsequently, on October 4, 2010, it issued an opinion relating to the previously-issued order.  This opinion stated that Raymond's claims, "which are all based on the same alleged prior oral representations," were barred by the parol

evidence rule.  It stated that the twelve written Transaction Agreements did not make any reference to Marsha's renunciation or to the creation of a Trust as conditions precedent of the transfer.  In addition, it noted that the Transaction Agreements each contained an integration clause.  The court held that the written agreements were fully integrated contracts, and, as a result, barred all "claims based upon oral pre-acquisition representations between Raymond and Jeffrey."  Id. exh. 10, at 6-7.  Raymond sought appeal of this decision.

    2.  Federal Action

On the same day that Raymond filed the First Philadelphia County Action, the plaintiffs,[4] led by Jeffrey, filed the instant action in federal court.  This action primarily sought a declaratory judgment that Raymond had no viable claim against them with regard to the formation and management of the Trust.[5] Am. Compl. at ¶ 93-96 (Docket No. 10).

---

[4] The plaintiffs in the Federal Action are Jeffrey Perelman, suing individually and as trustee of the Allison R. Perelman Trust, Frank Katz, suing in his capacity as co-trustee of the trust, and JEP Management, Inc., a management company.  They are also named as counterclaim defendants by Raymond.

[5] Individually, Jeffrey also brought a defamation claim against Raymond and Ronald Perelman, his brother.  The defamation has since been voluntarily dismissed and is of no relevance to the pending motions.

Raymond's answer asserted nine counterclaims against the plaintiffs. Raymond sought the Court's imposition of an express trust placing 50% of the Business Interests in a trust for Alison's benefit (Count I). With respect to the actual Trust created by Jeffrey, Raymond sought reformation of its terms to reflect the Oral Agreement, accounting of its assets, and removal of its Trustees (Counts II through IV). The first four counts were asserted against Jeffrey and Frank Katz as one of the trustees. In addition, Raymond asserted claims for breach of contract, promissory estoppel, fraud, fraudulent inducement, and unjust enrichment against Jeffrey and Marsha Perelman (Counts V through IX). Counterclaim at ¶ 36-97.

In May 2010, Jeffrey submitted his original motion to dismiss, in which he argued that Raymond's counterclaims were barred on res judicata, collateral estoppel, and statute of limitations grounds. This motion was fully briefed by both parties. Docket Nos. 45, 57, 64.

Shortly thereafter, the Court was informed by the parties that the trial judge in the First Philadelphia County Action had dismissed Raymond's claims with prejudice. In a letter to the Court dated June 11, 2010, Raymond requested a stay on the federal proceedings as he appealed the trial judge's order. The Court placed the case in civil suspense pending a decision from

the Superior Court.  Pl. Mot. exh. 9, at 1; Order 6/28/10
(Docket No. 69).

### 3.    Second Philadelphia County Action

Prior to the trial court's decision on preliminary
objections in the First Philadelphia County Action, Raymond
filed a second related case in the Court of Common Pleas of
Philadelphia County ("Second Philadelphia County Action").
There, Raymond alleged that defendant Schnader, the law firm
representing him in the 1990 business transactions, had
committed malpractice and breach of contract for its role in
negotiating the transaction, creating the Trust, and drafting
the renunciation agreement.  Pl. Mot. exh. 4, ¶ 33-59.

In May 2010, the trial court granted the defendants'
motion for judgment on the pleadings.  It held that the statute
of limitations barred Raymond's claims against Schnader for
legal malpractice sounding in tort and contract.  It reasoned
that the claims against the defendants began to run in 1990,
when the documents were executed.  Further, it held that
Raymond's pleadings did not assert sufficient facts to support
an invocation of any of the exceptions to the statute of
limitations.  Id. exh. 11, at 6-10.  Raymond appealed this
opinion to the Superior Court.

8

4.    First and Second Philadelphia County Actions:
      Superior and Supreme Court Decisions

In September 2011, the Pennsylvania Superior Court affirmed the trial court's decisions in both Philadelphia County Actions.  Id. exh. 15-16.  As to the First Action, the Superior Court reiterated that the Oral Agreement was barred by the parol evidence rule.  As to the Second Action, the Superior Court affirmed the holding that the statute of limitations on the plaintiff's claims had expired and that the plaintiff did not exercise reasonable diligence in ascertaining the existence of his causes of action.  Id. exh. 15, at 1; exh. 16, at 8.

Raymond's application for reargument en banc on both decisions was denied.  He then appealed the First Philadelphia County Action to the Supreme Court of Pennsylvania.  In April 2012, the Pennsylvania Supreme Court denied Raymond's petition for certiorari for the First Action.  Id. exh. 17-18; 20.

5.    First and Second Orphans' Court Actions

In July and November 2011, as his appeals in the First and Second Philadelphia County Actions were pending, Raymond filed a third and fourth petition in the Court of Common Pleas of Montgomery County, Orphans' Court Division.  Both of these actions were also based on the same nucleus of facts, namely the

Oral Agreement that put forth additional conditions on the transfer of the Business Interests.

In the First Orphans' Court Action, Raymond sought to reform or revise the Trust, replace its Trustees, and obtain an accounting.  In the Second Orphans' Court Action, Raymond sought the Court's imposition of a constructive trust and the return to Raymond of "the property that lawfully belongs to him."  He also sought accounting of the Trust and sanctions against his former legal counsel.  Id. exh. 14, at 14; exh. 21, at 5.

The trial court dismissed the Second Orphans' Court Action in November 2011.  In a brief order, it reasoned that actions to set aside the Transaction Agreements, and actions for sanctions for malpractice, were not within the jurisdiction of the Orphans' Court.  It also held that Raymond's claims regarding the Trust were duplicative of the claims in the First Orphans' Court Action.  Id. exh. 22.

In July 2012, the trial court dismissed the First Orphans' Court Action with prejudice.  It stated that "the outstanding petition to revoke or revise and reform the within trust . . .  is barred by the final orders issued in connection with litigation undertaken in Philadelphia County."  Id. exh. 27.  Raymond did not appeal either dismissal.

10

6.   <u>Federal Action's Current Disposition</u>

In September 2012, shortly after the trial court dismissed the First Orphans' Court Action, the Court granted Raymond's motion to lift the stay in the instant case. Following a series of orders and stipulations dismissing certain claims and denying leave to amend others,[6] the litigation at this point contains the following causes of actions:  Count I of the plaintiffs' amended complaint, seeking a declaratory judgment as to their potential liability to Raymond in the context of the 1990 business transactions, and Counts I through IX of Raymond's counterclaims, which name the three plaintiffs as counterclaim defendants.

Jeffrey, Marsha, and Katz now renew their motion to dismiss Raymond's counterclaims.  They also move for summary judgment on Count I of the amended complaint.  The Court proceeds in this order.


II.  <u>Motion to Dismiss Raymond's Counterclaims</u>

The counterclaim defendants have filed two motions to dismiss: the original motion in May 2010, which was subject to

---

[6] In December 2012, the Court denied Raymond's motion for leave to amend his answer.  Docket No. 91.  In January 2013, Jeffrey voluntarily dismissed his defamation claim with prejudice. Docket No. 94.

the Court's order suspending the case, and the renewed motion in February 2013.  The renewed motion to dismiss focuses primarily on dismissing the counterclaims on res judicata and collateral estoppel grounds, and the Court will examine these arguments first, but it will also incorporate the arguments made in the original motion to dismiss and the responses thereto.


   A.  Counterclaims Asserted Against Jeffrey

     The Court first considers Raymond's asserted counterclaims against Jeffrey.[7]  Jeffrey has argued that these counterclaims should be barred on res judicata grounds, and the Court agrees.

     A court may dismiss a claim under Fed. R. Civ. P. 12(b)(6) if it finds that, as a matter of law, it fails under the doctrines of res judicata or collateral estoppel.  Rycoline Prod. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997).  The doctrine of res judicata, or claim preclusion, bars future suits between the same parties or their privies on the same cause of action.  It is at play when a court of competent jurisdiction has made a final valid judgment as to the merits of the case.

─────────────

[7] Although Raymond's counterclaims are pled jointly against Katz and Jeffrey or Marsha and Jeffrey, the Court will analyze Katz and Marsha separately because they were not parties, or parties in privity, to the First Philadelphia County Action.  See infra Section II.B.

Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d
1416, 1429 (3d Cir. 1994).  Res judicata bars subsequent
litigation not only of claims actually litigated in the first
proceeding, but also of claims that could and should have been
litigated because they arose from the same transaction or series
of transactions.  Malone v. West Marlborough Twp. Bd. of
Supervisors, 603 A.2d 708, 711 (Pa. Commw. Ct. 1992).

     As a threshold matter, Raymond and Jeffrey are named
parties in both the First Philadelphia County Action and this
instant action.  In addition, both cases arose from the same
cause of action.  Raymond's pleadings in the First Philadelphia
County Action and his counterclaims here rely upon the same
central theory:  that he and Jeffrey made an Oral Agreement
which was not reflected in the separate written agreements, and
that this Oral Agreement should be enforced.  In fact, a number
of counterclaims pled by Raymond are identical, or practically
identical, to his claims in the First Philadelphia County
Action.  Compare, e.g., Counts I and V of Federal Action with
Count IV and I of First Philadelphia County Action.

     The Court also holds that there has been a final valid
judgment on the merits in the first litigation.  Although there
may originally have been some merit to Raymond's arguments that
the First Philadelphia County Action trial court order was not

sufficiently final so as to trigger res judicata, any doubts
have since been resolved by decisions at the appellate levels.[8]
The Superior Court decision is quite clear that Jeffrey's
preliminary objections were granted by the trial court "based
upon the application of the parol evidence rule."  Pl. Mot. exh.
15, at 1; see also id. at 12 (holding that each agreement was
"unambiguous and imports a complete obligation upon the
parties;" thus, Raymond's "claim that the parol evidence rule
does not apply . . . fails.").  Raymond's appeal of the Superior
Court decision was later denied certiorari by the Supreme Court
of Pennsylvania.  Id. at exh. 24.

---

[8]  The Court pauses to note its concern with the brief filed by
Raymond in opposition to the renewed motion to dismiss (Docket
No. 98).  This second round of briefing was requested by
Raymond, who argued that the briefing was needed to establish
that the four state court judgments did not necessarily resolve
the Federal Action.  However, instead of drafting a new brief,
or at the very least updating the old one to reflect recent
developments, Raymond submitted a near-identical brief to the
one submitted back in 2010.  As a result, the brief is
inaccurate and out-of-date.  For example, in arguing against the
application of res judicata, Raymond made multiple references to
the fact that the state court order consisted of two lines and
was not a final judgment on the merits.  Def. Opp. at 12, 14.
The order to which Raymond's brief refers was issued in March
2010.  Since its issuance, the decision has been expanded upon
by the same judge in October 2010, then affirmed in a lengthy
Superior Court opinion in September 2011, for which certiorari
was denied by the Supreme Court in April 2012.  Raymond's brief
ignored this new and entirely relevant information.

   The Court's concerns notwithstanding, it will nonetheless
consider the alternative arguments made in both sets of
briefing.  It will not order reimbursement of counsel fees, as
was requested by Jeffrey, at this time.

Res judicata also bars those counterclaims against Jeffrey that were not asserted by Raymond in the First Philadelphia County Action.  Those counterclaims – including reforming and accounting of the Trust, promissory estoppel, and unjust enrichment – arose from the same transaction or series of transactions as the claims resolved in the First Philadelphia County Action.  The Court is particularly persuaded by the counterclaim defendants' attached appendix comparing, paragraph by paragraph, the factual pleadings in the First Philadelphia County Action complaint with the facts contained in the counterclaim pleading in the Federal Action.  Pl. Mot. exh. A.  As the chart demonstrates, both actions involve a nearly identical nucleus of facts.  Moreover, all of the claims seek either 1) changes to the Trust, or 2) some sort of enforcement of the Oral Agreement.  Raymond could and should have litigated all of his claims against Jeffrey in state court, and, even if he failed to do so, he cannot litigate them in the instant action.[9]  The Court holds that all of Raymond's counterclaims

_____

[9] At least one other court has dismissed a related case on res judicata grounds.  Raymond had filed the First Orphans' Court Action in August 2011, based again on the same Transaction Agreements and Oral Agreement.  The Orphans' Court dismissed Raymond's action with prejudice, in part because it found that his claims were "barred by the final orders issued in connection with litigation undertaken in Philadelphia County."  Pl. Mot. exh. 27.

against Jeffrey, in his individual capacity and in his capacity
as Trustee, are barred on res judicata grounds.


   B.   Counterclaims Asserted Against Marsha and Katz

        Next, the Court examines Raymond's counterclaims against
Katz and Marsha.  Against Katz, Raymond has sued for the
creation of an express trust, reformation and accounting of the
actual Trust, and an injunction to remove Katz as trustee.
Against Marsha, Raymond has sued for breach of contract,
promissory estoppel, fraud, fraud in the inducement, and unjust
enrichment.

        Because the plaintiffs have not argued that Katz and
Marsha were parties or parties in privity to the First
Philadelphia County Action, Raymond's counterclaims against them
are not barred by res judicata.[10]  Allegheny Int'l, 40 F.3d at

---

[10] The Court is also not persuaded by the counterclaim
defendants' argument that res judicata is triggered by the First
Orphans' Court Action.  Although it is factually accurate that
Marsha and Katz were named as respondents in that action, the
Court cannot hold that a proceeding taking place in the Orphans'
Court Division of a county court is sufficient to satisfy the
"court of competent jurisdiction" requirement of res judicata.
The jurisdiction of the Orphans' Court Division is governed by
state statute, and it exercises mandatory jurisdiction over some
types of claims and discretionary jurisdiction over
substantially-related claims.  20 Pa.C.S. § 711-12.  In fact,
this Orphans' Court previously held that it could not hear
claims similar to those at issue here.  See Pl. Mot. exh. 22
(holding that Raymond's claims related to setting aside purchase

1429.  Instead, the counterclaim defendants argue that the Court should examine these claims under the doctrine of collateral estoppel.  They assert that Raymond is estopped from litigating certain crucial issues that were previously decided in the Second Philadelphia County Action, and that a result, his counterclaims should be dismissed.

Under Pennsylvania law, collateral estoppel bars litigation of an issue if 1) the identical issue has been decided in a prior action; 2) there has been a final judgment on the merits; 3) the party against whom estoppel is asserted was a party, or in privity with a party, to the prior litigation; and 4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in question.  Aetna Life & Cas. Corp. v. Maravich, 824 F.2d 266, 268 (3d Cir. 1987).

The Court first analyzes whether, as Jeffrey has contended, Raymond is collaterally estopped from litigating the issue of whether "any statute of limitations on claims arising from the 1990 transaction [has] expired."  Pl. Mot. at 21.  It

---

and stock agreements and claims based on legal malpractice are "not within the jurisdiction of the Orphans' Court"); cf. id. exh. 10 (holding that the claims asserted in the First Philadelphia County Action are not within the Orphans' Court's mandatory exercise of jurisdiction).  Because these types of claims could not have been litigated in Orphans' Court, res judicata does not apply.  Malone, 603 A.2d at 711.

finds that Jeffrey's description is far more generalized than the trial court's actual holding.

The Second Philadelphia County Action, which was initiated by Raymond against the law firm that negotiated the 1990 business transactions, primarily involved claims of legal malpractice.  In granting Schnader's motion for judgment on the pleadings, the trial court held that "the statute of limitations for the breach of contract claim and legal malpractice claim began to run on January 24, 1990, when the documents were executed."  In addition, it held that Raymond was not entitled to a tolling of the statute of limitations under either the discovery rule or the doctrine of fraudulent concealment.  Id. exh. 11, at 8-10.  This decision was affirmed by the Superior Court.  Id. exh. 16, at 13.

Those decisions, however, were specific to Raymond's claims against defendant Schnader.  They referred to the statute of limitations at issue in those claims, namely negligence, breach of fiduciary duty, and legal malpractice, and their analysis focused on whether the lawyers' actions triggered the statute of limitations.  The decisions did not make, nor could they have made, any blanket statement as to whether all claims arising from the 1990 transaction would be time-barred.

18

The Court next turns to a narrower finding made in the Second Philadelphia County Action:  that the discovery rule does not prevent Raymond's claims from becoming time-barred.  The Court finds that Raymond is estopped from asserting this narrowed issue in the instant litigation.

Under the state law discovery rule, if a plaintiff is unable, despite the exercise of reasonable diligence, to know of an injury or its cause, then his statute of limitations begins to run not at the date of the injury, but when discovery of the injury was reasonably possible.  Colonna v. Rice, 664 A.2d 979, 980 (Pa. Super. 1995).  If the plaintiff can objectively prove that he exercised reasonable diligence in investigating the situation, but still did not uncover the injury until years later, his claims would not necessarily be barred on statute of limitations grounds.

The discovery rule issue was argued and decided in the Second Philadelphia County Action.  Raymond had asserted that under the discovery rule, the statute of limitations for his claims did not begin to run until he discovered the lawyers' malpractice.  The trial judge ruled against Raymond, holding that he did not exercise reasonable diligence in reading over the documents to make sure that his interests were protected. In making this decision, the trial judge focused exclusively on

19

Raymond's actions, not the actions or facts related to the defendants.  The court noted that Raymond had access to the twelve written agreements that "clearly on the face on the documents" stated the extent of the Trust's creation and Marsha's renunciation.  Pl Mot. exh. 11, at 8; see also id. exh. 16, at 13 ("No reasonable person intending to create a trust for the benefit of his granddaughter involving a significant amount of assets would neglect to at least obtain a copy of the pertinent agreements.").

Moreover, there has been a final judgment on the merits with regard to this issue.  The Superior Court affirmed the trial court's ruling, reasoning that Raymond "did not exercise reasonable diligence in this matter" and that he acted "in a manner thoroughly lacking in diligence."  Id.  Raymond's application for reargument en banc was denied well over a year ago.  Id. exh. 20.

It is also clear that Raymond was a party to the prior litigation, and that he has had a full and fair opportunity to litigate the issue in question.  Raymond (the party against whom estoppel is being asserted) was the named plaintiff in the Second Philadelphia County Action.  He has presented his argument regarding the discovery rule in a number of state court proceedings, including in opposition to the defendants' motion

for judgment on the pleadings, on appeal to the Superior Court, and in his application for reargument en banc in the Superior Court.  Pl Mot. exh. 11; 16; 18.  Every stage of the state court proceedings provided him a full opportunity to litigate the discovery rule issue, and, as such, he is not permitted to re-litigate this issue in front of the instant Court.

Having ruled that Raymond is estopped from re-litigating the issue of the discovery rule, the Court now proceeds to analyze whether his claims against Marsha and Katz are time-barred.[11]  It finds that Raymond's claims fail as a matter of law because the statute of limitations has expired.

Under Pennsylvania law, Raymond's nine counterclaims are subject to a variety of statute of limitations.  Counts I-VI and Count IX, the counterclaims sounding in breach of contract, quasi-contract, or promissory estoppel, are subject to a four-year statute of limitations.  42 Pa.C.S. § 5525(a).  Counts VII and VIII, the counterclaims sounding in fraud, are subject to a two-year statute of limitations.  42 Pa.C.S. § 5524.  Otherwise,

---

[11] In conducting this analysis, the Court primarily relies on the arguments made by parties in the set of briefing accompanying the original motion to dismiss.  Docket Nos. 45, 57, 64.

Pennsylvania's catch-all provision puts forth a statute of limitations of six years.[12]   42 Pa.C.S. § 5527.

Typically, the statute of limitations begins to run "as soon as the right to institute and maintain a suit arises" – that is, the date on which the tort, breach of contract, or otherwise improper action occurred.   Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005).   Here, it is undisputed that most of the events in question occurred over twenty years ago.   Am. Compl. ¶

---

[12]   There is some dispute over whether Counterclaim I, which seeks to impose an "express trust," is governed by 42 Pa.C.S. § 5525, § 5527, or any statute of limitations at all.   Jeffrey contends that Counterclaim I fits within the description of an "action upon an express contract not founded upon an instrument in writing," as referred to in § 5525.   Alternatively, Pennsylvania's catch-all statute encompasses "any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531."   42 Pa.C.S. § 5527(b).   Because Raymond's claims would have expired under either § 5525 or § 5527, the Court need not decide which statute governs.

Raymond points to two state cases for the proposition that a claim based upon an express trust is not subject to any statute of limitations at all.   Def. Opp. at 19.   Both of these cases are from over seventy years ago.   In more recent years, the Third Circuit has clarified that in express trust cases, the general principle under Pennsylvania law is that "[t]he statute of limitations begins to run against the trust beneficiary with respect to a suit against the express trustee, if at all, when he knows the trust has been repudiated or reasonably should have known it."   United States v. Rose, 346 F.2d 985, 989-90 (3d Cir 1965); see also Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 422 (3d Cir. 2005).   The Court finds that this scrutiny is similar to the discovery rule discussed above.   Thus, it rejects Raymond's position that there is no statute of limitations at all in express trust cases.

15-19; see also Def. Opp. at 19.  Specifically, the negotiation of the Transaction Agreements, the Oral Agreement, the subsequent formation of the Trust, and Marsha's renunciation all took place in or around January 1990.  It is also undisputed that the instant complaint was filed in 2009.  Thus, unless some exception should apply, all of Raymond's counterclaims are barred by even the most liberal statute of limitations.

In opposing the instant motions to dismiss, Raymond has acknowledged that the only mechanism through which to avoid the statute of limitations problem is the discovery rule.  Cf. Def. Opp. at 19-24; see also Fine, 870 A.2d at 858 (holding that invocation of the discovery rule can toll the statute of limitations at the motion to dismiss stage).  Nevertheless, that exception is not applicable here.  As previously discussed, Raymond is collaterally estopped from making any argument regarding the discovery rule.  Thus, because the statute of limitations for any of Raymond's counterclaims would have expired by 1996 at the latest, and because no exceptions apply, the Court finds that Raymond's claims against Marsha and Katz are time-barred and dismisses them with prejudice.

III.  Motion for Summary Judgment

In addition to renewing the motion to dismiss Raymond's counterclaims, the plaintiffs have also moved for summary judgment on the sole remaining claim in their complaint. Specifically, the plaintiffs seek a declaratory judgment stating that Raymond cannot, as a matter of law, pursue any relief against them, relating to the formation and administration of the Trust or the Transaction Agreements.  Pl. Mot. at 26.  In the alternative, they acknowledge that, given the state court proceedings, the declaratory judgment claim may no longer be a live controversy.  Id. at n.13.

In light of the numerous state court opinions on this matter, and in light of this Court's res judicata and collateral estoppel holdings as discussed supra, the Court holds that the plaintiffs' declaratory judgment claim fails on mootness grounds.  See, e.g., U.S. v. Huff, 703 F.3d 609, 611 (3d Cir. 2013) ("[T]he case becomes moot and must be dismissed, even if it once was a live controversy at an earlier stage of the proceedings.") (internal citations omitted).  Courts have spilled much proverbial ink in analyzing the transaction between Raymond and Jeffrey, and the declaratory judgment sought here covers no new ground.  To grant the plaintiffs' summary judgment motion would require the Court to rule on issues that are no

longer live controversies.  The Court lacks jurisdiction to issue such a declaratory judgment.  E.g., Los Angeles v. Lyons, 461 U.S. 95, 101 (1983).

Therefore, the Court grants Jeffrey Perelman's motion to dismiss the counterclaims of Raymond Perelman in its entirety. The Court dismisses Count I of Jeffrey's amended complaint as moot, and it denies Jeffrey's motion for summary judgment as moot.

A separate order shall follow.