IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER TEMPLIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>INDEPENDENCE BLUE CROSS, et al.,<br><br>Defendants. | CIVIL ACTION<br>NO. 09-4092 |

**OPINION**

Slomsky, J.                                                                 November 14, 2013

## I.      INTRODUCTION

In September 2009, Plaintiffs Christopher Templin, Viola Hendricks, Feldman's Medical Center Pharmacy, Inc., and FCS Pharmacy LLC (collectively "Plaintiffs") initiated this action under the Employee Retirement Income Security Act ("ERISA") against Defendants Independence Blue Cross and QCC Insurance Company (collectively "IBC") and Defendant CareFirst, Inc. ("CareFirst") for failure to timely pay claims for the disbursement of hemophilia medication. Following an administrative review process ordered by this Court, Defendants ultimately paid the claims in full without the necessity of a judgment being entered in this case. In May 2011, the Court dismissed the action as a result of the payment.

Following dismissal, both Plaintiffs and IBC filed motions for attorneys' fees and costs, which the Court denied. The parties appealed. On June 27, 2012, the Third Circuit affirmed this Court's decision to deny the motions for attorneys' fees and costs, but remanded the case to resolve only one issue: whether Plaintiffs are entitled to interest on the delayed payment of benefits.

1

After remand, this Court ordered Plaintiffs to brief the issue of whether they are entitled to interest on the withheld benefits and directed them to set forth the specific amount of interest requested. In their brief, Plaintiffs sought interest ranging from $1,586,657.55 to $1,829,608.62. On March 27, 2013, after numerous conferences, hearings, and briefings filed by the parties with the Court, Plaintiffs and Defendants settled the matter of interest, again without the necessity of the Court entering judgment. Defendants agreed to pay Plaintiffs $68,000 in interest, in accordance with the federal Treasury bill rate for interest. As a result of the settlement, the Court entered an Order dismissing the case.

Following dismissal, Plaintiffs filed a Motion for an Award of Attorneys' Fees and Costs. In the Motion, Plaintiffs contend that they are entitled to attorneys' fees and costs for their pursuit of the interest. They seek $349,385.15 for work performed from November 1, 2010 through August 4, 2013. The Motion is now before the Court (Doc. No. 141), and for reasons that follow, the Court will deny the Motion.[1]

## II. BACKGROUND

Much of the factual and procedural history of this case was set forth in this Court's prior Opinion from August 19, 2011 and the June 27, 2012 Third Circuit Opinion, in which the Court of Appeals remanded the case to this Court for further proceedings on the issue of interest. See Templin v. Independence Blue Cross, No. 09-4092, 2011 WL 3664427 (E.D. Pa. Aug. 19, 2011); Templin v. Independence Blue Cross, 487 F. App'x 6 (3d Cir. 2012). Consequently, only a brief history of this case prior to remand is necessary to provide a context for Plaintiffs' Motion for

---

[1] In deciding this Motion, the Court has considered the following: Plaintiffs' Motion for an Award of Attorneys' Fees and Costs with a Supporting Memorandum of Law (Doc. Nos. 141, 145), IBC's Response in Opposition (Doc. No. 151), CareFirst's Response in Opposition (Doc. No. 152), Plaintiffs' Replies (Doc. Nos. 153, 156), all related filings (Doc. Nos. 142-47, 161, 165-66; 168-70, 173, 175), and arguments of counsel during a telephone conference held on the record on July 23, 2013.

2

Attorneys' Fees and Costs now before the Court. The Third Circuit recounted the following facts in its June 27, 2012 Opinion:

> Since December 2007, [Plaintiffs] [Christopher] Templin and [Viola] Hendricks have obtained hemophilia medication from plaintiffs FCS and Feldman's Medical Center Pharmacy, Inc. ("Feldman's"), both specialty pharmacies. They set up a relationship whereby they agreed to assign to the pharmacies the right to file claims for reimbursement directly with the IBC defendants and CareFirst. This dispute arose after the pharmacies dispensed medication to Templin and Hendricks and submitted claims to the defendants, some of which were not paid in a timely manner.
>
> Alleging wrongful denial of benefits, the plaintiffs filed an initial complaint in September 2009 and a first amended complaint in December 2009. The defendants moved to dismiss on the basis that the plaintiffs had not exhausted administrative remedies. Rather than dismiss the case, the District Court ordered the parties to engage in the dispute resolution process detailed in the plan. As a result of that process, the defendants approved payment for all the plaintiffs' claims. Before the defendants were able to pay the claims in full, however, the plaintiffs filed a four-count Second Amended Complaint. They asserted two claims under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (Counts 1 and 2), a claim against the IBC defendants under the Pennsylvania Quality Health Care Accountability and Protection Act (hereinafter Health Care Act), 40 Pa. Stat. § 991.2166 (Count 3), and a claim against CareFirst under Md. Code Ann., Ins. § 15–1005 (Count 4). The prayer for relief requested payment of claims, declaratory relief, interest, costs, and attorneys' fees.
>
> The IBC defendants filed a renewed motion to dismiss. The District Court granted the motion with respect to Count 3, reasoning that § 991.2166 of the Health Care Act did not create a private right of action. On the remaining claims, the court reserved judgment and directed the parties to participate in mediation on the issues of interest, attorneys' fees, and costs. When that process proved unsuccessful, the District Court ordered dismissal on the merits of the remaining claims against the defendants. The plaintiffs' claims for recovery of benefits, reasoned the [C]ourt, became moot when the defendants approved and paid the claims in full. Recognizing that the issues of attorneys' fees and costs remained unresolved, the District Court indicated that it would entertain any motions requesting such relief after the entry of final judgment. <u>It did not address whether the plaintiffs' demand for interest would be resolved in postjudgment motion practice</u>. The plaintiffs timely appealed the order of dismissal.
>
> The IBC defendants filed a motion for attorneys' fees and costs on May 27, 2011, fourteen days after the entry of final judgment. The plaintiffs filed a motion for attorneys' fees and costs on June 13, [2011,] thirty-one days after the entry of final judgment. This prompted the IBC defendants to move to strike the plaintiffs'

> motion as untimely. The District Court agreed that the plaintiffs' motion was filed after the filing period set by Federal Rule of Civil Procedure 54(d)(2) and found no good cause for extending the filing window. See Fed. R. Civ. P. 6(b)(1)(B). Moreover, the District Court explained, it would not award the plaintiffs attorneys' fees even if their motion was timely because they did not achieve "some degree of success on the merits," Hardt v. Reliance Standard Life Insurance Co., —— U.S. ——, 130 S.Ct. 2149, 2158, 176 L.Ed.2d 998 (2010), and did not convince the court to exercise its discretion to award fees.
>
> The District Court also denied the IBC defendants' request for attorneys' fees. Most rulings made in IBC defendants' favor throughout the litigation, the [C]ourt explained, were procedural and did not constitute "some degree of success on the merits," id. at 2158, but dismissal of Count 3 was some measure of success on the merits. After considering relevant discretionary factors, however, the District Court declined to award the IBC defendants counsel fees and costs. The plaintiffs appealed the grant of the motion to strike and the denial of their motion for attorneys' fees, while the IBC defendants cross appealed.

Id. at 8-9 (emphasis not in original). The Third Circuit affirmed the judgment of this Court ordering dismissal of the Pennsylvania Health Care Act claim and the denial of the motions filed by both parties for an award of attorneys' fees and costs. Id. at 15. The case was remanded, however, for consideration of a single issue: "plaintiffs' unresolved demand for interest on the withheld benefits." Id. at 11, 15. Specifically, the resolution of this issue turned on whether Plaintiffs were entitled to interest under ERISA § 502(a) (codified at 29 U.S.C. § 1132(a)) and/or the Maryland Prompt Pay Statute. Id. at 12-13. The parties settled this matter among themselves. The instant Motion arises from the resolution of this issue by settlement.

On September 4, 2012, after remand from the Third Circuit, the Court held a telephone conference with counsel for all parties to discuss the status of Plaintiffs' claim for interest. (Doc. No. 114.) After the conference, the Court gave counsel an opportunity to resolve the issue without Court intervention. On October 16, 2012, counsel for the parties submitted a joint letter informing the Court that they had been unable to resolve the matter on their own. (Doc. No. 116.) Shortly thereafter, the Court directed Plaintiffs to "submit a brief setting forth the legal and

4

factual basis for their entitlement to interest on the withheld benefits, and the specific amount being demanded." (Doc. No. 117.) Defendants were given adequate time to file a response, and Plaintiffs were then provided additional time to file a reply. (Id.)

On December 3, 2012, Plaintiffs filed their brief.[2] (Doc. No. 119.) They argued that: (1) Plaintiffs were entitled to interest in this case (id. at 21-24); (2) Interest awards were presumptively appropriate in ERISA actions (id. at 15-16); (3) An award of interest was proper under ERISA § 502(a)(1)(B) (id. at 17-21); and (4) Defendants were required to pay interest in an amount ranging from $1,586,657.55 to $1,829,608.62 because of the delayed benefit payments (id. at 27). The range in amount was due to different statutory interest rates available to calculate the total interest. Specifically, Plaintiffs sought $1,517,820 from CareFirst under the Maryland Code. (Id.) They also sought interest from IBC under one of two alternatives: either $68,837.55 from IBC using the federal Treasury bill rate of interest or $311,788.62 from IBC using the Pennsylvania statutory interest rate. (Id.) Therefore, in seeking interest from both Defendants, Plaintiffs sought a total amount ranging from $1,586,657.55 to $1,829,608.62.

---

[2] At this time, Plaintiffs also sought permission to file a Third Amended Complaint based on statements of the Third Circuit. Plaintiffs explained: "the Third Circuit recognized that it had not yet determined whether interest was available pursuant to ERISA Section 502(a)(1)(B) upon which Counts I and II of the Second Amended Complaint were based. The Third Circuit did, however, indicate that that issue could be mooted if the District Court allowed Plaintiffs to file an amended complaint seeking interest pursuant to ERISA Section 502(a)(3)." (Doc. No. 129 at 4.) Section 502(a)(3) provides in pertinent part:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3).

5

A series of responses and replies were then filed by both parties. (See Doc. Nos. 121-123, 126.) Defendants opposed both Plaintiffs' right to interest and the methodology used to calculate the interest, including the use of interest rates under Maryland and Pennsylvania law. (See, e.g., Doc. No. 121 at 3-18.) The Court held oral argument on the issue of interest on January 30, 2013. (Doc. No. 128.) At the hearing, the Court did not decide whether Plaintiffs were entitled to interest or, if interest was awarded, what interest rate would be appropriate and how that rate would be applied to the delayed benefits. In fact, the Court explained more than once that a final decision had not yet been reached on the issue of interest. (See, e.g., Doc. No. 128 at 15:10 ("I'm not making a final decision now.")). In relevant part, the Court stated as follows:

> I have looked at the statute, the ERISA statute, which is 29 U.S.C. Section 1132, and although I haven't made up [sic] mind finally let me just give you some idea of at least what I see in the case. All right?
>
> It seems to me under [Section 502] (a)(1)(B), which provides that "A civil action may be brought to recover benefits due to him under the terms of the plan or to enforce his rights under the terms of the plan, to clarify his rights to future benefits[,"] that unless the plan provides payment of interest I just don't think that the statute would apply. But certainly under [Section 502] (a)(3)(B), which provides for a participant beneficiary "to obtain other appropriate equitable relief[,"] I believe interest would be allowable under that section.
>
> And, again, I've read these briefs and the foot -- footnoted a Third Circuit very carefully, and, again, some of these matters would be a matter of first impression if I wrote an opinion about it. But that's where my head's at. I've also looked at the Maryland statute, and some of the arguments of CareFirst I don't necessarily agree with, but certainly the argument about claim preclusion has weight, given the opinion written by the magistrate judge.
>
> I'm also very concerned about applying the Maryland statute in an ERISA case, because it's just totally inconsistent with the whole reason for ERISA in the first place as set forth in many Supreme Court opinions, some of which I've read, not necessarily today, but in the past, that ERISA is not meant to be used to impose a penalty. Punitive damages are not available under ERISA, and, as noted in Judge Gauvey's opinion, the magistrate judge, certainly the Maryland statute is intended as a penalty to incentivize prompt payment of claims.

> I guess the last thought I have is that I agree that the -- from what I'm reading that <u>perhaps</u> the federal interest statute should apply.
>
> So, those are just <u>some observations</u> I make. <u>I haven't come to any firm conclusion,</u> but this is just what I see from all of my reading, and I'll be heard.

(Doc. No. 128 at 3:25-5:11) (emphasis added).

Following oral argument, Plaintiffs were given the opportunity to file a Third Amended Complaint to add a claim pursuant to ERISA Section 502(a)(3), which they filed on February 15, 2013. (Doc. No. 129.) The parties were also given additional time to attempt to settle the interest issue. (See Doc. No. 128 at 16:10-12, 21:2-4.)

On February 27, 2013, the Court ordered that a telephone conference would be held the following month to set a schedule for discovery, and another hearing would be held regarding Plaintiffs' request for interest. (Doc. No. 130.) The telephone conference was held on March 7, 2013, at which time counsel for the parties indicated that settlement discussions were ongoing. The Court then scheduled a follow-up telephone conference for March 21, 2013. (Doc. No. 135.)

During the March 21, 2013 telephone conference, "the parties revealed that although Defendants had agreed to pay the full amount of interest owed under the federal post-judgment interest statute ($68,000.00), the parties could not agree on the documentation memorializing their agreement." (Doc. No. 145 at 8.) The parties were advised to continue settlement discussions, and another status conference was scheduled for April 4, 2013. (Doc. No. 137.)

On March 27, 2013, six days after the telephone conference, Plaintiffs and Defendants IBC and CareFirst signed a document referred to as a "Covenant Not to Sue," which provided:

> In exchange for payment in the amount of Sixty-Eight Thousand Dollars ($68,000.00), Plaintiffs . . . promise not to sue or proceed in any manner against the Defendants . . . on the claims in the Third Amended Complaint.

7

(Doc. No. 138, Exhibit 8 at 1.) On April 1, 2013, based on this agreement, Defendants jointly moved to dismiss the Third Amended Complaint. (Doc. No. 138.) On April 5, 2013, the Court held a telephone conference on the joint Motion to Dismiss and thereafter entered an Order granting the Motion and dismissing the case with prejudice. (Doc. No. 140.)

Plaintiffs then timely filed the instant Motion for an Award of Attorneys' Fees and Costs presently before the Court. (Doc. No. 141.) They currently seek $349,385.15 in fees and costs for work performed from November 1, 2010 through August 4, 2013 while they pursued an award of interest.³ (Doc. No. 170 at ¶ 2.) The Motion has been fully briefed and is ripe for disposition.

## III. ANALYSIS

Plaintiffs have moved for attorneys' fees and costs under 29 U.S.C. § 1132(g)(1).⁴

Usually, "'[o]ur basic point of reference' when considering the award of attorney's fees is the

---

³ When Plaintiffs filed their first motion for attorneys' fees after Defendants agreed to pay the insurance claims, they sought fees and costs incurred from February 26, 2008 to June 30, 2011. (Doc. No. 97 at ¶ 2.) As noted above, the Court denied Plaintiffs' cross-motion for attorneys' fees, and the Third Circuit affirmed. Templin, 487 F. App'x 6. Plaintiffs' current Motion seeks attorneys' fees that fall within that same period, namely, the fees and costs incurred from November 1, 2010 to June 30, 2011. Because the Court has already denied Plaintiffs an award of fees and costs within this time frame, the Court need not consider a claim for fees and costs incurred prior to June 30, 2011. In any event, even if the request for fees and costs was considered, it would be denied for the reasons stated infra.

⁴ In remanding the case, the Third Circuit directed the Court only to consider the issue of interest. As noted, the Court of Appeals affirmed this Court's denial of fees and costs to all parties. Ordinarily, the mandate of the Third Circuit would limit a district court to only consider the issue to be resolved in the Court of Appeals' Opinion. "It is axiomatic that on remand for further proceedings after [a] decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." E.E.O.C. v. Kronos Inc., 694 F.3d 351, 361 (3d Cir. 2012), as amended (Nov. 15, 2012) (quoting Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3d Cir. 1985)). From this proposition, however, "there follows the long-settled corollary that upon remand, [the Court] may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision." Bankers Trust, 761 F.2d at 950 (citing cases). Thus, "[a] trial court is thereby free to

8

bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Hardt v. Reliance Standard Life Ins. Co., 130 S. Ct. 2149, 2156-57 (2010) (citation omitted). However, under the relevant ERISA provision, fees may be allowed. The pertinent provision provides:

> In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court <u>in its discretion</u> <u>may allow</u> a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1) (emphasis added). Deciding whether to award attorneys' fees under this provision requires a district court to engage in a two-step process.[5] First, the Court must determine whether the moving party is eligible for attorneys' fees. Second, if the moving party is eligible for fees and costs, then the Court is directed to evaluate five factors in considering whether to exercise its discretion in granting an award.

### A. Plaintiffs Have Not Achieved "Some Degree of Success on the Merits" Under The <u>Hardt</u> Decision and are Therefore Ineligible for an Award of Attorneys' Fees and Costs

The moving party must first show "'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." Hardt, 130 S. Ct. at 2158 (citation omitted). In Hardt, the Supreme Court explained:

> A [party] does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a

---

make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not settled by the decision." Id.

Plaintiffs now seek fees and costs, which does not appear inconsistent with the decision of the Third Circuit. They are seeking fees and costs for their work only with respect to securing interest. The Court does not believe that this question was settled by the Third Circuit, and the Court may review Plaintiffs' request for attorneys' fees and costs.

[5] The following analysis applies equally to both attorneys' fees and costs. See Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc., 898 F. Supp. 2d 883, 895 n.17 (D. Md. 2012) ("ERISA dictates that costs be analyzed under the same standard as attorney's fees . . . ..").

"lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'"

Id. (citation omitted). While the Court made clear that trivial success or procedural victories are not sufficient to establish eligibility for attorneys' fees under § 1132(g)(1), it did not resolve what a party must achieve or obtain to demonstrate "some success on the merits." See Scarangella v. Grp. Health, Inc., No. 12-2750, 2013 WL 4792466, at *4 (2d Cir. Sept. 10, 2013). Thus, district courts have been left to determine what constitutes success on the merits in each individual case.

For example, in Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc., 898 F. Supp. 2d 883 (D. Md. 2012), the court denied a motion for attorneys' fees and costs because, among other reasons, the plaintiff had failed to show "some degree of success on the merits" despite obtaining "some interest" from a court ruling on summary judgment. Id. at 905. There, Feldman's Medical Center Pharmacy ("FMCP") filed suit in state court against insurer CareFirst[6] for failure to correctly and timely pay $1.5 million in claims that had been submitted for reimbursement. Id. at 891. CareFirst removed the case to federal court, and, after a number of procedural steps had taken place, CareFirst agreed to pay the claims independent of the court's judgment. Specifically, "CareFirst submitted a letter to the [c]ourt reporting that it had received an 'opinion' from the Maryland Board of Pharmacy regarding the . . . licensing issue[,] . . . [and] on the basis of the Pharmacy Board's opinion, it was 'now ready to pay the claims at issue.'" Id. at 894. CareFirst also paid FMCP $23,017 in interest on the claims. Id. Approximately a year and a half had elapsed between the initiation of the case in state court and the payment of the claims by CareFirst. See id. at 891, 894.

After FMCP received payment from CareFirst, all that remained in the federal suit was a claim for $886,483 in interest. Id. at 894-95. Accordingly, FMCP moved for summary judgment

---

[6] The Plaintiff and Defendant in Feldman's are also parties in this case.

10

on the interest claim. Id. at 894. Specifically, "FMCP asserted entitlement to prejudgment interest under . . . the 'Maryland Prompt Pay Statute' . . . or, alternatively, under ERISA § 502." Id. at 895.

The court granted summary judgment on FMCP's claim of interest under ERISA, but denied the claim for interest calculated using the Maryland Prompt Pay Statute. Id. FMCP was awarded $11,983 in interest, though it had sought $886,483. Id. at 906. Based on the summary judgment ruling, FMCP moved for $1.1 million in attorneys' fees and costs. Id. Despite the summary judgment ruling, the court found that, among other reasons, FMCP had failed to achieve some degree of success on the merits as required under Hardt. Specifically, the court explained:

> [I]t is difficult to characterize FMCP's win on interest as anything more than 'trivial.'. . . [N]ot only was the interest award — $11,983 trivial absolutely, it was trivial in comparison to what was sought — over $800,000. While FMCP won some interest defeating CareFirst's argument that no further interest was due, it lost on the substantive issue . . . which would have triggered an additional award of fees approaching a million dollars. Accordingly, the Court finds that Hardt has not been met.

Id. at 906-07 (emphasis in original).[7] The court refused to award FMCP any fees or costs.

This Court reached a similar conclusion regarding Plaintiffs' prior cross-motion for attorneys' fees. (Doc. No. 82.) As mentioned earlier, Plaintiffs originally brought this case against Defendants for failure to timely pay claims related to the disbursement of hemophilia medication. Following a Court-ordered administrative review process, Defendants ultimately paid the claims in full, without the entry of a judgment from this Court. As a result of this

---

[7] Because the court denied the motion, it was unnecessary to evaluate the reasonableness of the fees incurred. The court did note, however, that "in review of the chronology of the dispute, it [was] apparent that a considerable amount of the cost was self-inflicted, such as [FMCP's] opposition to remand and extensive discovery." Id. at 895 n.16.

11

payment, the Court dismissed the action on May 13, 2011. (Doc. No. 75.) On May 27, 2011, IBC timely filed a Motion for Attorneys' Fees and Costs (Doc. No. 77), and Plaintiffs filed a Cross-Motion for Attorneys' Fees and Costs on June 13, 2011 (Doc. No. 82). In their cross-motion, Plaintiffs argued that they achieved success on the merits because Defendants paid the claims in full, and Plaintiffs were therefore eligible for attorneys' fees under § 1132(g)(1). (See Doc. No. 84.)

The Court denied Plaintiffs' cross-motion for being untimely and found that good cause did not exist for extending the filing window. Templin, 2011 WL 3664427, at *3.[8] Furthermore, even if Plaintiffs' Cross-Motion had been timely filed, the Court explained that it still would not have awarded Plaintiffs attorneys' fees because they did not achieve some degree of success on the merits as required by Hardt. Id. at *5-6. This Court concluded that "although Plaintiffs received that which they sought as relief in this case, albeit in an untimely manner, this relief was provided by Defendants, not the Court, and was not achieved by any substantive determination by the Court." (Doc. No. 105 at 13); see also Boyle v. Int'l Bhd. of Teamsters Local 863 Welfare Fund, No. 11-3202, 2012 WL 6005657, at *10 (D.N.J. Nov. 30, 2012) ("The Supreme Court's requirement that plaintiffs show some success 'on the merits' seems to presume, at a minimum, that this success be before the court. . . . [Therefore,] where the only success counsel can point to is outside the courtroom, there has not been even partial success 'on the merits' . . . .") (emphasis in original).

In the instant Motion for Attorneys' Fees, Plaintiffs have again failed to demonstrate that they achieved some success on the merits. Plaintiffs argue that they achieved success on the merits because Defendants ultimately paid them $68,000 in interest. (Doc. No. 145 at 12.) The

---

[8] This decision was affirmed on appeal, and the Third Circuit only remanded the issue of interest for review. Templin, 487 F. App'x 6.

12

Court does not agree. First, just as the Court never made a substantive determination that Plaintiffs were entitled to payment of the previously unpaid insurance claims, the Court also never made a substantive determination that Plaintiffs were qualified to receive interest under 29 U.S.C. § 1132(a)(3)(B) or any other provision. The issue of interest, like the issue of the unpaid insurance claims, was settled among the parties outside the courtroom and without a judgment from the Court.

Plaintiffs contend that the Court's statement, "I believe interest would be allowable under [29 U.S.C. § 1132(a)(3)(B),]" indicated that the Court would find in their favor and ultimately caused Defendants to enter into a settlement agreement to pay interest to Plaintiffs. (Id.) Defendants characterize this argument as a "catalyst theory." (See Doc. No. 161.) The so-called catalyst theory "allows for attorney's fees when a party obtains relief, through settlement or otherwise, without an adjudication on the merits . . . ." Feldman's, 898 F. Supp. 2d at 897. While Plaintiffs never explicitly argued the catalyst theory in any of their briefs,[9] they do rely on

---

[9] In their Response to the Sur-Reply of IBC, Plaintiffs contend that the Third Circuit's decision in Drazin v. Horizon Blue Cross Blue Shield of New Jersey, Inc., No. 12-2642, 2013 WL 2563727 (3d Cir. June 11, 2013) renders any discussion of the catalyst theory irrelevant. (Doc. No. 168 at 1, 5-6.) Plaintiffs assert that the Third Circuit made it clear that an ERISA plaintiff achieves success on the merits under Hardt where counsel has negotiated a settlement on the plaintiff's claims after litigation has commenced. (Id. at 1.) The Court has reviewed Drazin and disagrees with Plaintiff's characterization of the holding.

Drazin involved a motion for attorneys' fees filed by Mazie Slater, a law firm that represented clients in an ERISA class action referred to as the Beye Action. Drazin, 2013 WL 2563727, at *1. At the same time, two separate, duplicative class actions, the DeVito Action and the Drazin Action, were being litigated by different counsel from rival law firms. Id. The DeVito Action settled first. Shortly thereafter, the Drazin Action also settled, prompting Mazie Slater to seek attorneys' fees under § 1132(g)(1), although Mazie Slater had only represented clients in the Beye Action and played no part in the Drazin Action's settlement. Id. at *1-2. The district court assessed whether Mazie Slater had achieved success on the merits on behalf of the Drazin class by litigating the separate Beye Action. Id. at *2. In considering this question, the court determined that Mazie Slater was not entitled to anything because it did not contribute, and had actually opposed, the class settlement in the Drazin Action. Id.

Scarangella, in which the Second Circuit explained that "in evaluating ERISA fee applications, the catalyst theory remains a viable means of showing that judicial action in some way spurred one party to provide another party with relief, potentially amounting to success on the merits." 2013 WL 4792466, at *6 (emphasis added). In that case, the Second Circuit vacated the district court's finding that the defendant employer did not achieve some success on the merits and was therefore ineligible for attorneys' fees under ERISA. Further, the Court of Appeals held that a favorable court judgment is not required to demonstrate success on the merits. 2013 WL 4792466, at *7. Applying the catalyst theory, the Second Circuit explained that the parties had "already . . . received a tentative analysis of their legal claims within the context of summary judgment"[10] and remanded the case to determine whether the district court's discussion of those

---

On appeal, the Third Circuit explained that "it is undisputed that Mazie Slater neither won its case nor negotiated a settlement for its clients. It had no involvement in the settlement discussions with [the defendant] and filed a stipulation of dismissal in the Beye [A]ction after those discussions were successfully concluded by [the rival law firm]." Id. at *3. Based on Mazie Slater's complete lack of involvement in the settlement of an entirely separate class action, the Third Circuit affirmed the district court's denial of attorneys' fees, as Mazie Slater could not demonstrate success on the merits. Id.

While Drazin implies that successfully negotiating the settlement of an ERISA claim may constitute success on the merits in certain situations, by no means did the Court of Appeals hold that an out of court settlement is always considered success on the merits. Rather than define the contours of what constitutes some success on the merits, the Court simply explained that there could be no finding of some success on the merits where a law firm played no role in the settlement of a case in which it was not involved. Thus, Drazin does not change the analysis here.

[10] In Scarangella, the plaintiff alleged that his wife was wrongfully denied benefits under the terms of an employee benefits plan. Scarangella v. Grp. Health Inc., No. 05-5298, 2009 WL 764454, at *1 (S.D.N.Y. Mar. 24, 2009). Both the insurer, GHI, and the employer, Village Fuel, were named as defendants in the case. GHI brought three counterclaims against the plaintiff for restitution, rescission, and reformation. It also brought three cross-claims against Village Fuel, seeking the same relief. Id. Village Fuel brought a cross-claim against GHI for breach of fiduciary duty under ERISA. Id. Both defendants filed motions for summary judgment. The district court dismissed Village Fuel's cross-claim, denied GHI's motion for summary judgment, and granted Village Fuel's motion with respect to GHI's restitution claim. Id. at *22.

claims acted as a catalyst and ultimately led the defendant insurer to voluntarily dismiss its two remaining cross-claims against the defendant employer. Id. at *6-7.

While Scarangella confirmed that the catalyst theory applies in the Second Circuit, the Third Circuit has yet to determine whether the theory applies in the ERISA context after Hardt.[11] Even if such a theory is available, it would not assist Plaintiffs here, as they cannot demonstrate that the out of court agreement resolving the issue of interest was caused by Court action. See Scarangella, 2013 WL 4792466, at *6.

As an initial matter, this Court's statement, "I believe interest would be allowable under [29 U.S.C. § 1132(a)(3)(B),]" is easily distinguishable from the district court's analysis of the parties' claims in the summary judgment context in Scarangella. In this case, there was no summary judgment decision which provided a "tentative analysis" of Plaintiffs' claim for

---

Furthermore, the court entered summary judgment, sua sponte, in favor of the plaintiff on GHI's counterclaim for restitution. Id.

In its opinion on the defendants' motions for summary judgment, the district court denied GHI's motion because there were disputed issues of material fact. Id. at *9, *16, *19. Notwithstanding denial on this ground, the court provided what the Second Circuit alluded to as a "tentative analysis" of GHI's counterclaims and cross-claims. Regarding GHI's cross-claim against Village Fuel for rescission, the court explained that in addition to the factual disputes, "there [were] also remaining questions as to the nature of GHI's rescission claims, the relief sought, and whether [those] claims [were] appropriately brought under section 502(a)(3) of ERISA." Id. at *19. Because there were genuine issues of material fact in dispute, the court did not consider those substantive issues at the summary judgment stage. Likewise, regarding GHI's cross-claim against Village Fuel for reformation, the court denied summary judgment because factual disputes remained. However, the court also commented that it was unaware of any instance in which a court in the district had granted the relief sought by GHI. Id. at *20.

Given this "tentative analysis" of GHI's two remaining cross-claims against Village Fuel for rescission and reformation, the Second Circuit remanded the case to determine whether the district court's observations ultimately prompted GHI to voluntarily dismiss the two remaining claims against Village Fuel. If so, that "tentative analysis" could be considered a catalyst for purposes of determining whether Village Fuel had achieved some success on the merits.

[11] Because a catalyst theory would not aid Plaintiffs here, the Court does not consider whether it is applicable in the Third Circuit.

15

interest. Rather than "[make] clear that there would be an award of interest if the parties could not resolve the issues amongst themselves" (Doc. No. 145 at 15), the Court explained, more than once, that it had not reached a final decision on the merits regarding Plaintiffs' entitlement to interest. (See, e.g., Doc. No. 128 at 4:1-3, 5:9-11, 15:10 (stating "I haven't made up [sic] mind finally[;]" "I haven't come to any firm conclusion[;]" and "I'm not making a final decision now.")).

Despite Plaintiffs' contentions to the contrary, this Court made no substantive determination regarding the merits of Plaintiffs' claim that they were entitled to the interest that they ultimately received. Again, like Plaintiffs' claim for the unpaid insurance claims, the issue of interest was resolved outside of the courtroom during settlement negotiations. Furthermore, Plaintiffs' assertion that the Court's statement regarding a possible award of interest under 29 U.S.C. § 1132(a)(3)(B) caused Defendants to settle the case eight weeks later is speculative. Over that eight week period, the parties continued to engage in settlement negotiations amongst themselves, and the Court will not speculate as to why Defendants ultimately decided to settle the issue of interest. (See Doc. No. 145 at 19.) More importantly, the Court's comment about interest was flanked by multiple statements that a final decision had not been reached on the merits of the issue, so it is unlikely that Defendants relied on it.

Plaintiffs also have failed to demonstrate some success on the merits for a second reason. Namely, a settlement for $68,000 in interest is trivial in comparison to what was sought. Plaintiffs contend that Defendants' "full" payment of their claim for interest constitutes success on the merits, but this is misleading. (Doc. No. 156 at 3.) While Defendants paid Plaintiffs 100% of the interest to which they may have been entitled under the federal post-judgment interest rate statute (Doc. No. 145 at 12), Defendants did not come close to paying the total

16

amount sought. Instead, Defendants paid $68,000, a fraction of the total $1,586,657.55 to $1,829,608.62 sought by Plaintiffs. (Doc. No. 119 at 27.) Just as the district court in Feldman's considered $11,983 trivial in comparison to the $800,000 sought, the payment of $68,000 of interest here is trivial in comparison to the $1,586,657.55 to $1,829,608.62 total interest that Plaintiffs sought from all Defendants. Plaintiffs' trivial recovery cannot be considered some success on the merits. Hardt, 130 S. Ct. at 2158. Because Plaintiffs have not achieved some success on the merits on the issue of interest, Plaintiffs are ineligible for attorneys' fees and costs under 29 U.S.C. § 1132(g)(1).

### B.     An Award of Fees Would Not be Warranted Applying Ursic Factors

Even if Plaintiffs were eligible for attorneys' fees and costs under Hardt, the Court would still deny Plaintiffs' Motion based on consideration of the Ursic factors. If a plaintiff is eligible for attorneys' fees and costs under Hardt, the Third Circuit directs a district court to consider the following factors in deciding whether to exercise its discretion and award fees and costs:

> "(1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deter[r]ent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position[s]" . . . .

Templin, 487 F. App'x at 14 (quoting Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983). "The factors 'are not requirements in the sense that a party must demonstrate all of them in order to warrant an award of attorney's fees, but rather they are elements a court must consider in exercising its discretion.'" Id. (quoting Fields v. Thompson Printing Co., 363 F.3d 259, 275 (3d Cir. 2004)). For the following reasons, the Court finds that an application of the Ursic factors to the facts of this case would not weigh in favor of granting Plaintiffs' Motion.

### 1. The First <u>Ursic</u> Factor Does Not Weigh in Favor of an Award of Attorneys' Fees

Under the first <u>Ursic</u> factor, attorneys' fees may be awarded where either culpability or bad faith is shown. <u>McPherson v. Emps.' Pension Plan of Am. Re-Ins. Co., Inc.</u>, 33 F.3d 253, 256 (3d Cir. 1994). Here, Plaintiffs argue that Defendants are culpable for withholding Plaintiffs' ERISA benefits and for failing to provide interest on those claims. (Doc. No. 145 at 14.) In the Third Circuit, "[a] losing party may be culpable . . . without having acted with an ulterior motive." <u>Id.</u> at 256. Specifically, in the civil context:

> [C]ulpable conduct is commonly understood to mean conduct that is "blameable; censurable; . . . at fault; involving the breach of a legal duty or the commission of a fault . . . . Such conduct normally involves something more than simple negligence . . . . [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose."

<u>Id.</u> at 256-57 (alterations in original) (quoting Black's Law Dictionary (6th ed. 1990)). This Court has characterized culpability as something "less than bad faith and more than mere negligence." <u>Heim v. Life Ins. Co. of N. Am.</u>, No. 10-1567, 2012 WL 1466509, at *1 (E.D. Pa. Apr. 27, 2012) (quoting <u>Addis v. Ltd. Long-Term Disability Program</u>, No. 05-357, 2006 WL 2387087, at *1 (E.D. Pa. Aug. 3, 2006)).

When IBC's motion for attorneys' fees and Plaintiffs' cross-motion were on appeal, the Third Circuit noted that this Court "correctly determined that [Plaintiffs] and [Defendants] shared responsibility for litigation: the IBC defendants delayed approval of [P]laintiffs' claims for years without explanation, while [Plaintiffs] did not comply with administrative procedures before filing suit." <u>Templin</u>, 487 F. App'x at *15. Thus, because both parties share responsibility for the underlying litigation, the Court does not find that Defendants acted in bad faith or were solely culpable for delays in the litigation. Moreover, the evidence in the record does not support any finding that Defendants acted in bad faith or culpably in not originally

paying the claims. Accordingly, the first factor does not weigh in favor of an award of attorneys' fees.

   2.  **The Second Ursic Factor Weighs in Favor of an Award of Attorneys' Fees**

With respect to the second factor, Defendants' ability to satisfy an award of attorneys' fees, "it is undisputed that IBC Defendants possess the financial ability to satisfy a fee award." Templin, 2011 WL 3664427, at *6. Furthermore, "CareFirst acknowledges that it has the resources to satisfy an attorney's fee award." (Doc. No. 152 at 25.) Thus, this factor weighs in favor of Plaintiffs.

   3.  **The Third Ursic Factor Does Not Weigh in Favor of an Award of Attorneys' Fees**

In considering the deterrent effect of an award of attorneys' fees against Defendants, the Court must evaluate whether such an award would serve to deter insurance companies from withholding payment on claims for an extended period of time. Templin, 2011 WL 3664427, at *9. Based on the record here, the Court is unable to make such a finding in this case. Moreover, there is a contrary proposition that would be fostered by an award of attorneys' fees. Such an award would thwart ERISA policy which favors the exhaustion of administrative remedies prior to seeking judicial review, which Plaintiffs did not do in the underlying case. Id. Given these considerations, the third factor does not weigh in favor of an award of attorneys' fees.

   4.  **The Fourth Ursic Factor Does Not Weigh in Favor of an Award of Attorneys' Fees**

With respect to the fourth factor, an award of attorneys' fees will not benefit members of the Plan as a whole because the governing Plan does not contain a provision that provides for interest. (See Doc. No. 152 at 26.) Plaintiffs' contend that, in general, an award of costs and fees would dissuade insurers from attempting to deny valid claims for interest and would thus benefit

19

other insureds like Plaintiff who are forced to engage in litigation to recoup their claims. (Doc. No. 156 at 8.) Based on the record in this case, the Court is not convinced by this speculative argument that an award of fees would serve the purpose noted. Therefore, this factor does not weigh in favor of an award of attorneys' fees.

### 5. The Fifth Ursic Factor Weighs in Favor of Neither Party

Finally, the Court will consider the relative merits of the parties' positions. Because Defendants paid the interest through a settlement process, the Court never adjudicated the merits of the parties' positions. Therefore, this factor is neutral and favors neither party.

Since three of the five Ursic factors do not weigh in favor of awarding fees and costs to Plaintiffs and one factor is neutral, Plaintiffs would not be entitled to an award of fees and costs, even if Plaintiffs were eligible for an award of attorneys' fees and costs by demonstrating some success on the merits.

## IV. CONCLUSION

Based on the foregoing reasons, the Court will deny Plaintiffs' Motion for an Award of Attorneys' Fees and Costs. An appropriate Order follows.