# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER TEMPLIN, VIOLA
HENDRICKS, FMCP MEDICAL CENTER
PHARMACY, INC., and FCS PHARMACY,
LLC,

                    Plaintiffs,

     vs.

INDEPENDENCE BLUE CROSS, QCC
INSURANCE COMPANY, and
CAREFIRST, INC.

                 Defendants.

Case No.: 09-4092 (JHS)
**Electronically Filed**

---

## BRIEF OF DEFENDANT CAREFIRST OF MARYLAND, INC. IN OPPOSITION TO PLAINTIFFS' AUGUST 10, 2015 APPLICATION FOR ATTORNEY'S FEES

---

On the Brief:

MARK J. OBERSTAEDT, ESQUIRE
Attorney I.D. No. 67026
ARCHER & GREINER
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968
(856) 795-2121

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ...................................................................................... 1

STATEMENT OF FACTS .......................................................................... 2

    A.    The Relevant Parties ................................................................. 2

        1.    Defendants Independence Blue Cross ("IBC") and QCC Insurance Company ("QCC") (collectively the "IBC Defendants") ........................ 2

        2.    Defendant CareFirst ......................................................... 2

        3.    Plaintiffs FMCP Medical Center Pharmacy, Inc. and FCS Pharmacy, LLC ("FMCP") ........................................... 2

    B.    Submission of Claims for Payment and the Licensing Dispute ............................ 3

    C.    FMCP Files Two Lawsuits Against CareFirst and CareFirst Voluntarily Resolves the Issue ................................................................. 4

    D.    The Mediation and Offer to Pay Prejudgment Interest ......................................... 5

    E.    The *Sua Sponte* Dismissal ......................................................... 5

    F.    The Maryland Decision Rejecting FMCP's Claim for Punitive Penalty Interest ................................................................................. 5

    G.    The Third Circuit Decision in *Templin I* ................................................. 6

    H.    The Post Remand Settlement Discussions and the Attorney's Fees Decision in the Maryland Litigation .............................................. 6

    I.    The Prejudgment Interest Briefing Before This Court .......................................... 7

    J.    This Court's January 30, 2013 Observations .................................................. 8

    K.    The Settlement ........................................................................ 9

    L.    The Second Attorney's Fees Application ........................................................ 9

ARGUMENT ............................................................................................. 10

    A.    THE *URSIC* FACTORS DO NOT WEIGH IN FAVOR OF A FEE AWARD ............................ 10

        1.    The offending parties' culpability or bad faith ....................................... 10

        2.    The relative merits of the parties' positions ............................................ 13

        3.    The deterrent effect of an award of attorneys' fees against the offending parties .............................................................. 15

        4.    The benefit conferred on members of the plan as a whole ....................... 16

        5.    Summary of the *Ursic* factors ............................................. 17

i

# TABLE OF CONTENTS
(continued)

**Page**

B.    THE FEES SOUGHT ARE NOT REASONABLE..................................................... 17

    1.    Fees this Court Previously Denied Cannot be Recovered ...................... 19

    2.    Fees that Precede the Filing of the Third Amended Complaint.............. 19

    3.    Fees Incurred Chasing Punitive Penalty Interest are not Reasonable...... 20

    4.    Fees that Far Exceed the Level of Success are Not Reasonable.............. 21

    5.    Fees Incurred for Administrative and Clerical Tasks are Not Reasonable ............................................................................................ 21

    6.    Fees Incurred for Duplicative Work Are Not Reasonable....................... 22

    7.    Travel Time Cannot Be Billed at Full Rates........................................... 23

    8.    Vague Time Entries are Not Recoverable ............................................... 23

    9.    Excessive "Fees on Fees" are Not Reasonable ...................................... 23

    10.    Miscellaneous Pre-June 2011 Issues...................................................... 24

    11.    Quarter Hour Billing .............................................................................. 25

    12.    Unreasonable Expenses are not Recoverable ......................................... 25

    13.    Summary ................................................................................................. 26

CONCLUSION........................................................................................................... 27

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abrams v. Lightolier Inc.*,
   50 F.3d 1204 (3d Cir. 1995)..........................................................................25

*American Med. Sec., Inc. v. Larsen*,
   31 F.Supp.2d 502 (D. Md. 1998) ...................................................................16

*Apple Corps. Ltd. v. Int'l Collectors Soc.*,
   25 F. Supp. 2d 480 (D.N.J. 1998) ............................................................18, 22

*Bench Billboard Co. v. City of Toledo*,
   759 F. Supp. 2d 905 (N.D. Ohio 2010)..........................................................25

*Brown v. Stackler*,
   612 F.2d 1057 (7th Cir. 1980) .......................................................................26

*D'Orazio v. Washington, Twp.*,
   No. 07-5097, 2011 U.S. Dist. LEXIS 146635 *6 (D. N.J. 2011) .....................23

*Evans v. Port Auth. of N.Y. & N.J.*,
   273 F.3d 346 (3d Cir. 2001)..............................................................17, 18, 20

*Fair Housing Council of Greater Washington v. Landow*,
   999 F.2d 92 (4th Cir. 1993) ...........................................................................26

*Feldman's Medical Center v. CareFirst, Inc.*,
   823 F. Supp. 2d (D. Md. 2011)....................................................................3, 5

*Feldman's Medical Center v. CareFirst, Inc.*,
   898 F. Supp. 2d 803 (D. Md. 2012)....................................................3, 6, 16, 17

*Glunt v. Life Ins. Co. of N.A.*,
   No. 11-3105, 2012 WL 895512 (E.D. Pa. 2012) .............................................13

*H.J. Inc. v. Flygt Corp.*,
   925 F. 2d 257 (8th Cir. 1991) ........................................................................21

*Hahnemann University Hosp. v. All Shore, Inc.*,
   514 F.3d 300 (3d Cir. 2008)...........................................................................24

*Halderman v. Pennhurst State Sch. & Hospital*,
   49 F.3d 939 (3d Cir. 1995).............................................................................21

iii

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...............................................................................................17, 18, 26

*Hilburn v. State Dept. of Corr.*,
    No. 7-6064, 2012 U.S. Dist. LEXIS 125201 (D.N.J. Sept. 4, 2012).......................................22

*In re Jefsaba*,
    172 B.R. 786 (E.D. Pa. 1994) ...............................................................................................25

*Jurinko v. Medical Protective Co.*,
    No. 03-4053, 2009 U.S. Dist. LEXIS 66324 (E.D. Pa. 2009) .................................................24

*Lewis v. Kendrick*,
    944 F.2d 949 (1st Cir. 1991) .................................................................................................26

*Maldonado v. Houstoun*,
    256 F.3d 181 (3d Cir. 2001)..................................................................................................24

*Northeast Women's Center v. McMonagle*,
    889 F.2d 466 (3d Cir. 1989)..................................................................................................20

*Perelman v. Perelman*,
    2015 U.S. App. LEXIS 12022 (3d Cir. July 13, 2015).........................................................10

*Rode v. Dellarciprete*,
    892 F.2d 1177 (3d Cir. 1990)..................................................................................17, 22, 23

*Scott v. PNC Bank Corp.*,
    2011 U.S.. Dist. LEXIS 88092 (D. Md. Aug. 9, 2011) .........................................................16

*T.B. v. Mount Laurel Bd. of Educ.*,
    2011 U.S. Dist. LEXIS 66682 (D.N.J. June 20, 2011) .........................................................18

*U.S. v. NCH Corp.*,
    No. 05-881, 2010 U.S. Dist. LEXIS 94486 (D.N.J. Sept. 10, 2010) ......................................25

*Ursic v. Bethlehem Mines*,
    719 F.2d 670 (3d Cir. 1983)....................................................................................... *passim*

*Veneziano v. Long Island Pipe Fabrication & Supply Corp.*,
    238 F. Supp. 2d 683 (D.N.J. 2002) .......................................................................................26

*Washington v. Phila. Cty. Ct. of Common Pleas*,
    89 F.3d 1031 (3d Cir. 1996)...........................................................................................18, 23

*Welch v. Metropolitan Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ................................................................................................25

**Federal Statutes**

29 U.S.C. § 1132...................................................................................................... *passim*

ERISA § 502(a)(2)............................................................................................................9

ERISA § 502(a)(3)..........................................................................................................13

Defendant CareFirst of Maryland, Inc. ("CareFirst")[1] submits the following brief in opposition to the fee application submitted on behalf of Plaintiffs (hereinafter "FMCP").[2]

## INTRODUCTION

There are two issues for the Court to decide.  Initially, the Court must analyze the five *Ursic*[3] factors and, in the exercise of its discretion, determine whether FMCP is entitled to an award of attorney's fees under ERISA.  As detailed below, when examined in light of the Third Circuit's opinion, four of the five *Ursic* factors weigh in favor of CareFirst and against a fee shifting award.  Therefore, no fees should be awarded against CareFirst.

But if the Court concludes otherwise, the Court must exercise its discretion to determine a reasonable amount.  As detailed below, there are many reasons why FMCP's application seeks fees and expenses that are not reasonable.  For example, this Court has already held that FMCP cannot recover fees incurred before June 30, 2011 because FMCP already sought those fees on its first unsuccessful fee petition, but FMCP continues to pursue those fees here without any explanation.  For all of the reasons explained below, the Court should either reject the entire amount sought or, alternatively, substantially reduce the amount of any award.

---

[1]  The defendant named in the pleadings, CareFirst, Inc., is a holding company with no direct interest in the litigation.  The real party in interest is CareFirst of Maryland, Inc.

[2]  Although the fee application is submitted on behalf of all Plaintiffs, the prejudgment interest issue on which the application is based concerned only the corporate plaintiffs, Feldman's Medical Center Pharmacy, Inc. and FCS Pharmacy, Inc.  The individual plaintiffs, Christopher Templin and Viola Hendricks, had no stake in the outcome of the prejudgment interest issue.

[3]  *Ursic v. Bethlehem Mines,* 719 F.2d 670 (3d Cir. 1983).

## STATEMENT OF FACTS[4]

A.   **The Relevant Parties[5]**

1.   *Defendants Independence Blue Cross ("IBC") and QCC Insurance Company ("QCC") (collectively the "IBC Defendants").*

Defendant IBC is a Pennsylvania corporation and an independent licensee of the BlueCross BlueShield Association ("BCBSA").  (Second Amended Complaint ("SAC") at ¶ 2). [ECF Docket No. 48].  Defendant QCC is a Pennsylvania corporation affiliated with IBC that provides insurance for medical benefit plans.  QCC issued the policies of insurance that at all times relevant funded the Factor Health ERISA Plan.  (SAC at ¶¶ 3, 7-8).

2.   *Defendant CareFirst*

CareFirst is a not-for-profit corporation of the State of Maryland and an independent licensee of the BCBSA.  It is undisputed that CareFirst did not provide any insurance to the Individual Plaintiffs or the Factor Health ERISA Plan.  (*See* SAC at ¶¶ 3-13).  According to the Second Amended Complaint, CareFirst's role with respect to the claims at issue was to "coordinate payment" as a licensee of the BCBSA.  (SAC at ¶ 12).

3.   *Plaintiffs FMCP Medical Center Pharmacy, Inc. and FCS Pharmacy, LLC ("FMCP")*

FMCP Medical Center Pharmacy, Inc. is a retail pharmacy, incorporated in the State of Maryland that provided blood clotting factor products for various participants in the Factor Health ERISA Plan.  FCS is a limited liability company of the State of Florida that provided

---

[4] All documents referenced herein were previously filed.  For the Court's convenience, we are re-submitting herewith the May 6, 2013 Declaration of Mark Oberstaedt, which was originally filed at ECF Docket No. 152-2.

[5] The Individual Plaintiffs, Christopher Templin and Viola Hendricks, participated in the Factor Health ERISA Plan.  Neither of the Individual Plaintiffs was denied medical treatment and they both received all of the blood clotting factor that their medical conditions required.  [ECF Docket No. 47-3 at 52].  The Individual Plaintiffs had no stake in the outcome in the prejudgment interest issue that provides the underlying basis for this fee application.

blood clotting factor for various participants in the Factor Health ERISA Plan.  (SAC at ¶¶ 2-6).  These plaintiffs purport to have standing under ERISA as assignees of participants in the Factor Health ERISA Plan, including the Individual Plaintiffs.  (SAC at ¶¶ 4-5).  FMCP and FCS are related entities owned by Factor Health Management, LLC.  [ECF Docket  No. 2].

**B.**     **Submission of Claims for Payment and the Licensing Dispute**

FMCP provided factor products to hemophiliacs who participated in the Factor Health ERISA Plan.  (SAC at ¶¶ 4-6).  FMCP submitted its claims for payment either to the IBC Defendants[6] or CareFirst depending on the geographic location of the health care provider.  (SAC at ¶ 5).  FMCP contends it submitted certain of its claims for payment to CareFirst because FMCP is located in CareFirst's geographic area.  (SAC at ¶ 5).  As FMCP readily admits, CareFirst's role was to administer the claims and coordinate payment with the insurance carrier, QCC.  (SAC at ¶ 5).  CareFirst was not, and is not alleged to be, the insurer of the ERISA Plan.  (*See* SAC at ¶¶ 3-13).

Some of the claims that FMCP submitted to CareFirst were not initially paid as a result of a dispute regarding FMCP's license to distribute factor products in the State of Maryland, which is described more fully in two written opinions issued by the United States District Court in a related case simultaneously litigated between CareFirst and FMCP in Maryland ("the Maryland Litigation").  *Feldman's Medical Center v. CareFirst, Inc.,* 823 F. Supp. 2d 307 (D. Md. 2011) ("*Feldman's I*"), and *Feldman's II*, 898 F. Supp. 2d 883 (D. Md. 2012).[7]  Those opinions were affirmed by the Fourth Circuit.  541 Fed. Appx. 322 (4th Cir. 2013).

---

[6]  This brief does not address claims that were submitted to the IBC Defendants.

[7]  The Maryland Court examined all of the evidence and determined that the license dispute was a matter of "legitimate confusion" on "both sides."  *Feldman's I*, 823 F.Supp. 2d at 327.  The Maryland Court further held that FMCP was more responsible than CareFirst for causing that confusion.  *Feldman's II*, 898 F.Supp. 2d at 909.

C.      **FMCP Files Two Lawsuits Against CareFirst and CareFirst Voluntarily Resolves the Issue**

Without requesting an administrative review of its denied claims, FMCP filed two lawsuits against CareFirst.  After initially filing the Maryland Litigation, FMCP filed its complaint in this matter on September 9, 2009.  [ECF Docket No. 1].  The same counsel represented FMCP in both cases and the complaints in both cases are similar in that FMCP demanded payment for claims on dates of service prior to the December 11, 2008 date that it obtained a "Residential Services Agency" ("RSA") license from the State of Maryland, along with interest and attorneys' fees.[8]

For reasons unrelated to either litigation, the licensing issue was resolved solely because of CareFirst's own efforts and without any involvement by FMCP.  Counsel for CareFirst directly advised counsel for FMCP in writing that there was no need for FMCP to file a Second Amended Complaint because the claims submitted through CareFirst were going to be paid in full.  (Oberstaedt Dec. at ¶ 3 and Exhibit "A" thereto).  Despite this written commitment, FMCP filed a Second Amended Complaint.  [ECF Docket No. 48].  On December 2, 2010, CareFirst filed an Answer.  [ECF Docket No. 52].  The following day, the IBC Defendants filed a motion to dismiss the Second Amended Complaint.  [ECF Docket No. 54].  This Court ruled on the IBC Defendants' motion and issued an Order (1) dismissing Plaintiffs' cause of action under the

---

[8]  There is no dispute that the cases arise out of the same set of operative facts.  Counsel for FMCP stated on the record that the claims in both cases are the "Same claims.  They're all – they all intersect at some point."  (March 19, 2010 Tr. at 54:12–13, 55:20-23), (Exhibit "E" to Oberstaedt Dec.).  The facts of the two cases are different only in the following material respect. CareFirst was the insurer for the claims in the Maryland Litigation, whereas here CareFirst is not the insurer and instead merely "coordinated payment" for the IBC Defendants under the BlueCard system as a BCBSA licensee.  (*See* SAC at ¶ 12).  Under the BlueCard system, any funds that one licensee (in this case, CareFirst) advances on behalf of the insuring licensee (in this case, the IBC Defendants) is reconciled weekly.  (Declaration of Jaime Hanson at ¶¶ 55-61), (Exhibit "G" to Oberstaedt Dec.).

Pennsylvania Prompt Pay Statute ("Act 68"), and (2) directing the parties to mediation on the issues of attorney's fees and prejudgment interest.  [ECF Docket No. 66].

**D.**     <u>**The Mediation and Offer to Pay Prejudgment Interest**</u>

At the mediation on March 17, 2011, CareFirst offered to pay prejudgment interest using the federal Treasury bill rate, but FMCP refused to accept it.  (Oberstaedt Dec. at ¶ 4). Magistrate Judge Wells informed CareFirst that FMCP was seeking payment in excess of one million dollars to settle the prejudgment interest and attorney's fees issue.  (*Id.*). [9]  The case did not settle at the mediation.  (*Id.*).

**E.**     <u>**The *Sua Sponte* Dismissal**</u>

Following the unsuccessful mediation, this Court issued a Memorandum and Order dated May 13, 2011, that *sua sponte* dismissed all remaining claims against CareFirst on the grounds that the claims were moot.  [ECF Docket Nos. 74, 75].  Plaintiffs appealed that Order and they also appealed the Court's denial of their first application for attorney's fees against the IBC Defendants.

**F.**     <u>**The Maryland Decision Rejecting FMCP's Claim for Punitive Penalty Interest**</u>

While that appeal was pending, the District Court in the Maryland Litigation issued a published opinion dated October 24, 2011, rejecting FMCP's claim for punitive penalty interest under the Maryland statute.  *Feldman's I,* 823 F.Supp. 307 (D. Md. 2011).  In painstaking detail, Magistrate Judge Gauvey examined the fully developed record and made findings of fact regarding the very same interest issues that were then at issue in this case.  Judge Gauvey ruled that Feldman's' "claim for prejudgment interest under the Maryland Prompt Pay Statute is rejected," *Feldman's I*, 823 F. Supp. 2d at 317, reasoning that the Maryland punitive interest

---

[9]  FMCP contends that Magistrate Judge Wells did not convey the offer made by CareFirst. Importantly, however, FMCP concedes that it demanded one million dollars at the mediation for interest and attorney's fees.  (Aff. of Jared Bostwick at ¶ 2) [ECF Docket No. 156-3].

statute was preempted by ERISA. *Id.* at 323-24.

**G.**     **The Third Circuit Decision in *Templin I***

The Third Circuit issued its opinion in *Templin I* on June 27, 2012, affirming substantial parts of this Court's prior decisions (most notably the Court's denial of FMCP's initial motion for attorney's fees against the IBC Defendants) and remanding the matter on the limited question of prejudgment interest.  In so doing, the Third Circuit made clear that it was taking no position on the interest issue and explained that "we will permit the District Court to consider [CareFirst's defenses to the Maryland Punitive Interest Statute] in the first instance."  (*Templin I* at 13).

**H.**     **The Post Remand Settlement Discussions and the Attorney's Fees Decision in the Maryland Litigation**

On remand, this Court again encouraged the parties to discuss settlement of the prejudgment interest issues.  By letter dated September 25, 2012, FMCP argued that it was entitled to punitive interest from CareFirst of more than $1.1 million under the Maryland punitive interest statute (even though it had just lost that same issue in the Maryland Litigation) and that it was entitled to more than a half million dollars in attorneys' fees.  (Oberstaedt Dec. at ¶5 and Exhibit "B" thereto).  Two days later, Plaintiffs made an official demand of $567,788.62 from CareFirst (broken down as $317,788.62 in interest and $250,000 in legal fees). (Oberstaedt Dec. at ¶ 6 and Exhibit "C" thereto).

The day after FMCP made this demand, the Maryland Court issued a written opinion denying FMCP's motion for attorney's fees against CareFirst.  Among other things, Judge Gauvey found that the factors for exercising discretion to shift fees under ERISA (the equivalent of the Third Circuit's *Ursic* factors) had not been satisfied.  *Feldman's II*, 898 F. Supp. 2d at 907-11.  In light of Judge Gauvey's detailed decision, CareFirst responded to FMCP's settlement demand by offering to discuss settlement of the prejudgment interest claims in this

case by applying the same interest rate that Judge Gauvey used in the Maryland Litigation and

inviting a discussion of settlement at that rate:

> I will assume you knew that your settlement demand would be a
> non-starter and it is rejected.
>
> CareFirst will not voluntarily pay any legal fees.  Indeed, you
> never moved for fees against CareFirst at either the District Court
> or the Third Circuit and there is no legal basis to seek them now.
> This is particularly true given Friday's opinion of Judge Gauvey in
> the Maryland case, which has now fully resolved that issue in favor
> of CareFirst.
>
> As for interest, since the parties have already litigated this issue in
> the Maryland case, there is no reason to conclude that you will do
> any better here.  In fact, there is every reason to believe that you
> will do worse.  Unlike the Maryland case, CareFirst was not the
> insurer here and never held any money.  Therefore, a critical
> argument for interest -- to disgorge any benefit that CareFirst
> would have received -- is not present here.
>
> If your client would be willing to accept a settlement with an
> interest rate similar to that you received in the Maryland case, I
> will consult further with CareFirst about making a counter
> proposal of that nature.  But if your clients will not accept a
> settlement in that range, I will write to the Court and advise that we
> were unable to settle the remaining issues.

(Oberstaedt Dec. at ¶8 and Exhibit "D" thereto).

Counsel for FMCP never responded to CareFirst's offer and instead wrote to this Court

and advised that the parties had not settled the prejudgment interest issue.  (Oberstaedt Dec. at ¶

9).

I.      **The Prejudgment Interest Briefing Before This Court**

The parties then briefed the issues related to prejudgment interest.  As against CareFirst,

FMCP sought only punitive penalty interest.  [ECF Docket No. 119 at 26-27].  Notably, FMCP's

brief did not advise this Court of the *Feldman's I* decision rejecting its identical punitive penalty

interest claim, even though FMCP had previously acknowledged to this Court that the cases were

related.  [ECF Docket No. 119].

7

CareFirst opposed the motion on multiple grounds.  [ECF Docket No. 122].  Among other things, CareFirst argued that interest should not be awarded against it because (1) CareFirst was not the insurer and did not benefit from any alleged delay in payment, and (2) because the Maryland Court had already held that FMCP was more responsible for the alleged delay than CareFirst. (*Id*. at 18-20).  CareFirst also argued that, if interest was to be awarded, it should not be at the punitive penalty interest rate sought by FMCP, which was preempted by ERISA and which had already been decided against FMCP in the Maryland Litigation, (*id*. at 8-16), but instead should be calculated at the federal Treasury bill rate.  (*Id*. at 20-23).

**J.**   **This Court's January 30, 2013 Observations**

This Court held oral argument on January 30, 2013 and provided the parties with its preliminary observations about the merits of the arguments raised in the briefs.  Among other things, the Court observed:

> I have looked at the statute, the ERISA statute, which is 29 U.S.C. Section 1132, and although I haven't made up mind finally let me just give you some idea of at least what I see in the case.  All right?
>
> It seems to me under (a) (1) (B), which provides that "A civil action may be brought to recover benefits due to him under the terms of the plan, to clarify his rights to future benefits", that unless the plan provides payment of interest I just don't think that the statute would apply.  But certainly under (a) (3) (B), which provides for a participant beneficiary "to obtain other appropriate equitable relief", I believe interest would be allowable under that section.
>
> * * * *
>
> I've also looked at the Maryland statute, and some of the arguments of CareFirst I don't necessarily agree with, but certainly the argument about claim preclusion has weight, given the opinion written by the magistrate judge.
>
> I'm also very concerned about applying the Maryland statute in an ERISA case, because it's just totally inconsistent with the whole reason for ERISA in the first place as set forth in many Supreme Court opinions, some of which I've read, not necessarily today, but

> in the past, that ERISA is not meant to be used to impose a penalty. Punitive damages are not available under ERISA, and, as noted in Judge Gauvey's opinion, the magistrate judge, certainly the Maryland statute is intended as a penalty to incentivize prompt payment of claims.
>
> I guess the last thought I have is that I agree that the - - from what I'm reading that perhaps the federal interest statute should apply.
>
> So, those are just some observations I make.  I haven't come to any firm conclusion, but this is just what I see from all of my reading, and I'll be heard. [10]

(1/30/13 Tr. at 3:25-5:11) (Exhibit "J" to Oberstaedt Dec.).  The Court also observed that there was an open issue as to whether any interest would be recoverable from CareFirst because CareFirst was not the insurer.  (*Id.* at 8:6-9:1).  And the Court again encouraged the parties to consider settlement, this time in light of the Court's observations on the prejudgment interest issues.

## K.    **The Settlement**

After the Court made its January 30 observations, the parties settled the prejudgment interest issue for $68,000, which was calculated using the federal Treasury bill rate.

## L.    **The Second Attorney's Fees Application**

FMCP subsequently moved for attorney's fees before this Court and the motion was denied.  [ECF Docket Nos. 176, 177].  FMCP appealed and the panel reversed and remanded the issue back to this Court for further consideration. (*Templin II*).

---

[10]  CareFirst also argued that prejudgment interest was not available under ERISA § 502(a)(2). [ECF Docket No. 122 at 17-18].  This Court observed that it agreed with CareFirst's position on that issue.  (1/30/13 Tr. at 3:25-5:11) (Exhibit "J" to Oberstaedt Dec.).

## ARGUMENT

As the Third Circuit recently held in *Perelman v. Perelman*, 2015 U.S. App. LEXIS 12022 (3d Cir. July 13, 2015), achieving "some success on the merits" is not enough for an ERISA plaintiff to be entitled to an award of attorney's fees.  Rather, the plaintiff must separately demonstrate that the *Ursic* factors weigh in favor of an award.

**A.    THE *URSIC* FACTORS DO NOT WEIGH IN FAVOR OF A FEE AWARD**

While FMCP argues that "the Third Circuit has already held that [FMCP] satisfied four of the *Ursic* factors," (FMCP Br. at 6) the Third Circuit very clearly stated the exact opposite:

> However, being eligible for an award and receiving that award are not the same thing.  <u>We express no opinion as to whether attorney's fees should be awarded to the Appellants on remand. That will be for the District Court to decide based upon the exercise of its discretion and a correct analysis of the *Ursic* factors.</u> We will reverse the District Court's order denying attorney's fees and costs and will remand for further proceedings consistent with this opinion.

*Templin II* at 15 (emphasis added).

As detailed below, FMCP has not established that the *Ursic* factors provide a basis for shifting attorney's fees to CareFirst in this case.  We examine the four disputed factors below.[11]

*1.    The offending parties' culpability or bad faith*

In *Templin II*, the Third Circuit explained that a party is "culpable" if it is "blamable; censurable or at fault."  (*Templin II* at 13) (citations omitted).  The Third Circuit added that culpable conduct is "reprehensible or wrong."  (*Id.*).  The Third Circuit further instructed that if both sides are culpable, the Court should "weigh the parties' culpability against each other."  (*Id.*).  Finally, the Third Circuit instructed this Court to consider the issue of culpability with

---

[11]  CareFirst concedes that it has the ability to pay and, therefore, that factor is not addressed.

respect to both the underlying claims dispute and the payment of prejudgment interest, with the greater emphasis placed on the prejudgment interest issue. (*Id.*).[12]

As for the "merits" phase, the Third Circuit took no issue with this Court's conclusion that CareFirst did not act culpably during this phase of the litigation. (*Id.* at 13).[13]  Therefore, no culpability can be assigned to CareFirst with respect to the merits phase.

Turning to the prejudgment interest phase, FMCP argues that CareFirst was culpable because "Defendants, during the course of litigation, changed their minds and paid that which they previously disputed." (FMCP Br. at 8).  FMCP further argues that "Defendants refused to pay interest for more than two years even after finally paying all of the [underlying] claims at issue." (*Id.* at 9).

---

[12]  FMCP incorrectly argues that "the only relevant inquiry concerning the culpability factor is whether Defendants were wrong in failing to pay prejudgment interest to Plaintiffs for more than two years after they paid 100% of the claims at issue." (FMCP Br. at 8).  That statement is wrong in two principal ways.  First, the Third Circuit held that this Court must "weigh the parties' culpability against each other. . . ." (*Templin II* at 13).  Therefore, the Court must examine the culpability of all parties and, if parties on both sides are culpable, it must then weigh the degree of culpability.  It is not enough (as FMCP contends) to simply find that one or more of the Defendants acted culpably.  Second, the Third Circuit did not instruct this Court to limit its culpability analysis solely to the prejudgment interest phase.  Rather, it only held that this Court's previous determination that Defendants did not act culpably in the merits phase of the litigation was "not dispositive." (*Templin II* at 13).  The only reasoned reading of the Third Circuit's opinion is that this Court should consider culpability of all parties in both the merits phase and the prejudgment interest phase, but place greater emphasis on the "more important" prejudgment interest phase.

[13]  FMCP incorrectly argues that "The Third Circuit rejected this Court's conclusion that Defendants did not act culpably in the merits phase of the litigation." (FMCP Br. at 7n. 4).  That statement is untrue generally as to all Defendants, and it is particularly untrue as to CareFirst.  In *Templin II*, the Third Circuit stated that this Court had "noted that [Defendants] did not act culpably in the merits phase of the litigation" and the Third Circuit took no exception with that finding. (*Templin II* at 13).  In an attempt to justify its incorrect statement, FMCP cites a line in *Templin I*, which had nothing to do with CareFirst.  There has never been any finding by this Court or the Third Circuit indicating that CareFirst acted culpably in the "merits phase;" in fact, the exact opposite is true.

The first problem with this argument is that the facts clearly show CareFirst did not "change its mind" and did not "refuse to pay" prejudgment interest.  To the contrary, CareFirst attempted to resolve the prejudgment interest issue on multiple occasions by offering to pay interest at the federal Treasury bill rate.  CareFirst made the offer at the March 17, 2011 mediation that preceded the first appeal and again thereafter.  Each time the offer was made, FMCP demanded penalty punitive interest and an additional payment of attorney's fees. CareFirst cannot possibly have engaged in conduct that could be characterized as "culpable" because it refused to surrender to FMCP's unjustified demands.

Second, even if CareFirst's conduct could somehow be characterized as "culpable," the *Templin II* opinion instructs that where there is culpability on both sides, the Court is to engage in a balancing test.  Here, that balance weighs heavily in favor of CareFirst.  Aware that its own overreaching demands for a punitive penalty payday – at one point in excess of one million dollars and at another time in excess of $500,000 – were the sole reason the prejudgment interest issue was not resolved years earlier, FMCP's brief makes no mention of its own positions on settlement.  It was not until after this Court observed that FMCP would be unlikely to obtain punitive penalty interest that FMCP finally "changed its mind" and agreed to accept interest calculated at the federal Treasury bill rate.  Knowing that its settlement position does not balance well against CareFirst, FMCP urges this Court to turn a blind eye to the exorbitant amount of FMCP's settlement demands (FMCP Br. at 9), a position which has no basis in law or common sense.  When balancing the positions taken by both sides, CareFirst clearly was less culpable that FMCP.[14]

---

[14]  FMCP's argument that prejudgment interest is presumptively available in ERISA cases does not make CareFirst culpable and does not even begin to address the issues that were at play in this case.  For example, the interest rate that FMCP repeatedly demanded is not presumptively (or otherwise) available under ERISA.  Moreover, FMCP did not even plead a cause of action

Therefore, the culpability factor weighs in favor of CareFirst.

    2.    *The relative merits of the parties' positions*

The Third Circuit instructed this Court to weigh the relative merits of the parties'

respective legal positions on the prejudgment interest issue. (*Templin II*).[15] Despite

acknowledging that the Court must weigh the parties' positions, FMCP's current brief never

mentions the merits of its own prejudgment interest arguments. When the arguments that FMCP

advanced on the prejudgment interest issue are examined, however, it is clear that its arguments

lacked merit.

FMCP demanded only punitive penalty interest from CareFirst [ECF Docket No. 119 at

26-27], a position this Court observed was "just totally inconsistent with the whole reason for

ERISA in the first place." (1/30/13 Tr. at 3:25-5:11) (Exhibit "J" to Oberstaedt Dec.).

On the other hand, CareFirst argued that prejudgment interest has two purposes under

ERISA: (1) to make the plaintiff whole for the lost time value of money, and (2) to prevent

unjust enrichment of the entity that held the money. CareFirst explained that, because it was not

the insurer and therefore did not hold any money, it had not been unjustly enriched. CareFirst

further explained that the Maryland Court had already held that any delay in payment on the

underlying claims was primarily the fault of FMCP, not CareFirst. CareFirst explained, for these

---

under which prejudgment interest is available as a remedy until it filed its Third Amended
Complaint on February 15, 2013 and finally added a claim under ERISA § 502(a)(3). [ECF
Docket No. 129]. And, as CareFirst explained in its original briefing on this issue, the purpose of
prejudgment interest under ERISA is based on two reasons that do not apply to CareFirst, and
interest is not available when the purposes for an award are not satisfied. [ECF Docket No. 122
at 18-20].

[15]  Relying on *Glunt v. Life Ins. Co. of N.A.*, No. 11-3105, 2012 WL 895512, at *3 (E.D. Pa.
2012), FMCP attempts to align itself with a "prevailing party" and argues that this factor
automatically balances in its favor and that the only issue is the matter of degree. (FMCP Br. at
11). The obvious problem with this argument is that FMCP is not a "prevailing party." Unlike
*Glunt* where the court had already ruled on the issue at hand, FMCP does not start from a
position of having already "prevailed" on the merits of the prejudgment interest issue.

reasons, no interest was appropriate in this case.  [ECF Docket No. 122 at 18-20].  When this

Court explained its initial observations to the parties, it commented that there was a legitimate

issue as to whether CareFirst would be liable for interest at all.  (1/30/13 Tr. at 8:6-9:1) (Exhibit

"J" to Oberstaedt Dec.).  CareFirst's positions, therefore, were well taken.

      CareFirst also set forth a strong multi-part argument explaining why the Maryland

punitive interest statute did not apply, including that (1) "punitive" remedies are not available

under ERISA, (2) other punitive penalty interest statutes had been held to be preempted by

ERISA, and (3) that the Maryland Court's earlier ruling in *Feldman's I* was preclusive. [ECF

Docket No. 122 at 8-16].

      After reviewing the parties' submissions, this Court observed that FMCP was unlikely to

recover punitive penalty interest under the Maryland statute:

> I've also looked at the Maryland statute, and some of the
> arguments of CareFirst I don't necessarily agree with, but certainly
> the argument about claim preclusion has weight, given the opinion
> written by the magistrate judge.
>
> I'm also very concerned about applying the Maryland statute in an
> ERISA case, because it's just totally inconsistent with the whole
> reason for ERISA in the first place as set forth in many Supreme
> Court opinions, some of which I've read, not necessarily today, but
> in the past, that ERISA is not meant to be used to impose a penalty.
> Punitive damages are not available under ERISA, and, as noted in
> Judge Gauvey's opinion, the magistrate judge, certainly the
> Maryland statute is intended as a penalty to incentivize prompt
> payment of claims.

(1/30/13 Tr. at 3:25-5:11) (Exhibit "J" to Oberstaedt Dec.).

      Finally, CareFirst argued that if any prejudgment interest was to be awarded against

CareFirst, it should be calculated using the federal Treasury bill rate.  [ECF Docket No. 122 at

20-23].  The Court observed that, if it was going to award any interest, it would be inclined to

use the federal Treasury bill rate.  (1/30/13 Tr. at 3:25-5:11) (Exhibit "J" to Oberstaedt Dec.).

In sum, the Court observed that it agreed with most of the arguments advanced by CareFirst, including the most significant issues, and disagreed with the interest argument asserted by FMCP.  Thus, the relative merits factor weighs in favor of CareFirst.

    *3.*    <u>The deterrent effect of an award of attorneys' fees against the offending parties</u>

FMCP argues that the Third Circuit instructed that this Court can only consider the prejudgment interest phase when analyzing the "deterrent" factor.  FMCP bases this argument on the Court's statements with respect to the "culpability" factor.  (FMCP Br. at 13).  For the reasons explained *supra* at 10-12, the Third Circuit did not instruct this Court to ignore the merits phase, but merely instructed this Court to put a greater emphasis on the prejudgment interest phase.  Accordingly, it is appropriate for this Court to analyze the "deterrent" factor both with respect to merits phase and the prejudgment interest phase, with the greater emphasis on the latter.

As to the merits phase, this Court has already ruled that an award of fees would not be a deterrent.  [ECF Docket No. 176 at 19].  Nothing in the Third Circuit's opinion should change this Court's earlier conclusion that an award of fees would be a deterrent to CareFirst, and instead would unjustifiably reward plaintiffs (like FMCP) that elect not to exhaust their mandatory administrative remedies before filing suit.  [ECF Docket No. 176 at 19].  Therefore, as to the merits phase, this factor continues to weigh in favor of CareFirst. [16]

---

[16]  Judge Gauvey likewise held in the Maryland Litigation that an award of fees in favor of FMCP would not act as a deterrent:

> The effectiveness of a fee award as a deterrent is closely related to the degree of bad faith by the non-moving party.  In cases where the degree of bad faith and culpability is minimal, this factor will not likely weigh heavily on the side of the fees claimant.  As discussed in some detail above, Feldman's has not demonstrated any bad faith or culpability.  As an award of fees is likely to have the "greatest deterrent effect where deliberate misconduct is in the

Turning to the prejudgment interest phase, FMCP again pins its entire argument on the false premise that Defendants "steadfastly refused to pay any interest. . . ." (FMCP Br. at 14). As detailed above, this argument is factually inaccurate. *See Supra* at 5-7, 11-12.

Thus, the record clearly shows that no award of fees is necessary to "deter" CareFirst's behavior. It is not "bad faith" or "avoidable behavior" to refuse to capitulate to unwarranted demands and CareFirst cannot be punished for refusing to do so. If any deterrence is needed here, it would be to discourage FMCP and others from pursuing punitive paydays that extend litigation unnecessarily, especially after its positions have already been rejected by another federal court.[17]

Therefore, the deterrence factor weighs in favor of CareFirst.

4.     *The benefit conferred on members of the plan as a whole*

The Third Circuit's opinion provides little guidance on this factor, other than instructing that this Court's original decision might have been influenced by its decision on the deterrence factor. (*Templin II* at 15).[18] But the material facts have not changed -- the full amount of the prejudgment interest settlement was paid entirely to FMCP and no benefits were conferred on the Plan as a whole or any other participants. And as this Court previously observed, the governing

_____

offing," the deterrent effect here would be negligible. This factor therefore weighs on the side of CareFirst.

*Feldman's II*, 898 F.Supp. 2d at 910 (citing *Scott v. PNC Bank Corp.,* 2011 U.S. Dist. LEXIS 88092 (D. Md. Aug. 9, 2011); *American Med. Sec., Inc. v. Larsen,* 31 F.Supp.2d 502, 506 (D. Md. 1998)).

[17] In footnote 10, FMCP contends that an article written by the undersigned contains a "concession" that is somehow related to the deterrent factor. FMCP never explains what the supposed concession is, but nothing in the article addresses any issue related to deterrence.

[18] FMCP argues that the Court should be guided on this element by its analysis of the culpability and relative merits factors. For the reasons explained above, however, any such analysis does not help FMCP's cause in this case.

Factor Health ERISA Plan has no provision for interest. Therefore, no aspect of the prejudgment interest settlement benefitted other plan participants or the Plan itself.[19]

Attempting to manufacture a "benefit" conferred on other plan participants, FMCP argues that it aided other participants because it "identified alternate means through which interest could be awarded." (FMCP Br. at 15). Apparently, FMCP wants credit for pursuing a claim for prejudgment interest under the ERISA statute itself. Obviously, there is nothing novel about FMCP's assertion of a prejudgment interest claim under the ERISA statute and, therefore, FMCP's mere assertion of a claim that only benefitted FMCP did not magically benefit other plan participants.

As a result, the benefit conferred factor weighs in favor of CareFirst.

> 5. _Summary of the Ursic factors._

For the reasons set forth above, four of the five _Ursic_ factors weigh in favor of CareFirst. Accordingly, the motion for fees against CareFirst should be denied in its entirety.

## B. **THE FEES SOUGHT ARE NOT REASONABLE**

In the event the Court determines that attorney's fees should be awarded against CareFirst, the Court must then exercise its discretion and award only a reasonable fee. The burden of proving the reasonableness of the attorneys' fees application rests with the party seeking fees, _Rode v. Dellarciprete_, 892 F.2d 1177, 1183 (3d Cir. 1990), and includes the obligation to exclude all unrecoverable hours. _Hensley v. Eckerhart_, 461 U.S. 424, 434 (1983).

The Third Circuit requires district courts to go "line by line" through the billing records supporting the fee request, _Evans v. Port Auth. of N.Y. & N.J.,_ 273 F.3d 346, 361 (3d Cir. 2001),

---

[19] The same result was reached in the Maryland Litigation where Judge Gauvey held that the payment of prejudgment interest did not confer a benefit on the ERISA Plan as a whole. _Feldman's II_, 2012 U.S. Dist. LEXIS 141667 at *73. Judge Gauvey's ruling is preclusive on this issue and, even if it is not, there is no reason for a different result here.

and the court "must consider a party's objections to particular time charges and exclude from compensation those hours which are not reasonably expended." *Hensley*, 461 U.S. at 433. The "reviewing court has "wide discretion to adjust the attorneys' fee for a variety of reasons such as inadequate documentation of hours spent, reasonableness of hours expended or duplication of efforts." *Hensley*, 461 U.S. at 433; *see also Ursic*, 719 F.2d at 677.

"A fee petition is required to be specific enough to allow the district court to determine if the hours claimed are reasonable for the work performed.'" *Washington v. Phila. Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996)). The party seeking attorneys' fees must submit sufficient evidence supporting the hours worked. *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp. 2d 480, 485 (D.N.J. 1998); *Hensley*, 461 U.S. at 433. "[A]ttorneys seeking fees must document the hours for which payment is sought 'with sufficient specificity to allow the District Court to determine whether the hours claimed are unreasonable for the work performed.'" *Evans*, 273 F.3d at 361 (quoting *Washington*, 89 F.3d at 1037)).

A fee applicant has an "obligation to not treat [the] fee application as an opening offer rather than a carefully calculated and honest fee request." *T.B. v. Mount Laurel Bd. of Educ.*, 2011 U.S. Dist. LEXIS 66682, *26 (D.N.J. June 20, 2011). Here, for the reasons explained below, FMCP's fee application represents a substantial overreach.

FMCP's current brief does not identify the amount being sought and instead directs the Court and the parties to its previous filings. (FMCP Br. at 2). Those filings indicate that FMCP is seeking fees and expenses going as far back as November 2010 in the amount of $318,084.50 in fees plus $31,300.65 in expenses, for a total of $349,385.15. [ECF Docket No. 169 at 8]. FMCP's current brief indicates that it intends to seek an additional $9,000 for the current round of briefing (FMCP Br. at 2 n.2) plus FMCP has filed a separate motion with the Third Circuit seeking fees related to the second appeal. (FMCP Br. at 5 n.3).

18

The following are examples of unreasonable fees and expenses included in FMCP's fee application.

1.    _Fees this Court Previously Denied Cannot be Recovered_

When the Court initially ruled on this motion, it held that FMCP could not recover the same fees it sought and lost on its first fee application that was denied by this Court and affirmed by the Third Circuit in _Templin I_.  Specifically, the Court held that:

> When Plaintiffs filed their first motion for attorneys' fees after Defendants agreed to pay the insurance claims, they sought fees and costs incurred from February 26, 2008 to June 30, 2011.  (Doc. No. 97 at ¶ 2).  As noted above, the Court denied Plaintiffs' cross-motion for attorneys' fees, and the Third Circuit affirmed. _Templin_, 487 F. App'x 6.  Plaintiffs' current Motion seeks attorneys' fees that fall within that same period, namely, the fees and costs incurred from November 1, 2010 to June 30, 2011. Because the Court has already denied Plaintiffs an award of fees and costs within this time frame, the Court need not consider a claim for fees and costs incurred prior to June 30, 2011.  In any event, even if the request for fees and costs was considered, it would be denied for the reasons stated _infra_.

[ECF Docket No. 176 at 8 n.3].  The _Templin II_ opinion did not reverse this Court's decision on that issue and, therefore, FMCP does not get a third bite at recovering fees that both this Court and the Third Circuit already ruled FMCP could not recover.  The pre-June 2011 fees represent more than half of the total FMCP seeks.  [_See_ ECF Docket No. 169 at 8].

2.    _Fees that Precede the Filing of the Third Amended Complaint_

FMCP did not plead a cause of action that entitled it to recover any prejudgment interest until it filed its Amended Complaint on February 15, 2013.  [ECF Docket No. 129].  It is not reasonable to award fees for prejudgment interest work performed on the case before FMCP even had a cause of action that could arguably provide a basis for prejudgment interest.  The only fees related to the substance of the case that were incurred after FMCP filed its Third Amended Complaint appear on the March 20, 2013 invoice (2/28/13 entry only) and the April 17, 2013

19

invoice.  Together, these fees total $5,070.  The remaining post-February 15 fees all relate to the creation of the fee petition itself.  (*See infra* at 23-24).

     3.    <u>*Fees Incurred Chasing Punitive Penalty Interest are Not Reasonable*</u>

An award for attorneys' fees "must exclude compensation for hours spent on unsuccessful claims."  *Northeast Women's Center v. McMonagle,* 889 F.2d 466, 476 (3d Cir. 1989).  Here, although the vague nature of many of the time entries prevents the Court and CareFirst from knowing exactly how much time was spent on unsuccessful claims, such as the punitive penalty interest claim, many entries unequivocally include time that FMCP's lawyers spent chasing punitive penalty interest.

For example, in the post-June 2011 time period, time entries on the December 10, 2012 invoice include time spent drafting the "interest" brief (*see* entries for 11/28/12 (LV); 11/29/12 (LV); 11/30/12 (LV)).  Similarly, all of the entries on the January 30, 2013 and February 28, 2013 invoices involve time spent on the prejudgment interest briefing and argument, but the time entries are not descript enough to know how much of that time was expended on the punitive penalty interest issue as opposed to other issues.  Knowing they would eventually seek attorney's fees, it was incumbent on FMCP's counsel to keep time entries that were descript enough for the Court to decipher how much time was spent on issues that might not be recoverable.  Their failure to provide the necessary detail cannot be rewarded.[20]  *See Evans*, 273 F.3d at 361.

---

[20]  If the Court considers fees that pre-date June 30, 2011, there are a substantial number of time entries that include time expended on the punitive penalty interest issue.  *See*, *e.g.*, December 10, 2010 invoice entries at 11/2/10 (JAL), 11/3/10 (JAL), 11/4/10 (JAL), 11/5/10 (DA), 11/8/10 (DA), 11/9/10 (LV);  April 30, 2011 invoice entries at 3/10/11 (DA), 3/10/11 (LV), 3/11/11 (DA), 3/18/11 (AP), 3/18/11 (LV), 3/18/11 (DA), 3/21/11 (LV); and May 31, 2011 invoice entry at 4/8/11 (AP).  In addition, at least some, and perhaps many, of the time entries related to the drafting of the Second Amended Complaint would necessarily involve the punitive penalty interest issue, but the vague time descriptions do not contain enough detail to identify which entries included such time.

4.     *Fees that Far Exceed the Level of Success are Not Reasonable*

A fee applicant's degree of success "is important to a determination of the reasonableness of a fee application." *H.J. Inc. v. Flygt Corp.*, 925 F. 2d 257, 260 (8th Cir. 1991). Here, the settlement of the prejudgment interest application resulted in a payment of $68,000 to FMCP, yet FMCP claims to have expended more than $350,000 (more than five times the amount received) to obtain that interest. FMCP offers no explanation for why it is reasonable to shift $350,000 in fees and expenses for 18 timekeepers from two law firms -- as well as four timekeepers working for an "expert" -- to obtain a $68,000 interest payment. Given that the record shows a settlement at the federal Treasury bill rate was available to FMCP at the March 2011 mediation, and FMCP rejected it, it was not reasonable to incur fees at all, and certainly not fees that eclipse the amount actually recovered by five fold.

5.     *Fees Incurred for Administrative and Clerical Tasks are Not Reasonable*

It is unreasonable to shift attorney's fees that were incurred for the performance of administrative or clerical tasks that should have been performed by a person without a billing rate. *See, e.g., Halderman v. Pennhurst State Sch. & Hospital*, 49 F.3d 939, 942 (3d Cir. 1995) ("The fact that private lawyers may perform tasks other than legal services for their clients, with their consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees."). The Third Circuit has refused to award fees for the "wasteful use of highly skilled and highly priced talent for matters easily delegable to nonprofessionals." *Ursic*, 719 F.2d at 677.

The bills submitted by FMCP after June 30, 2011 include many entries for clerical and administrative tasks, including the following examples:  December 10, 2012 invoice entry on 11/30/12 (TS); January 30, 2013 invoice entries on 12/4/12 (TS), 12/5/12 (TS), 12/24/12 (DA); February 28, 2013 invoice entry at 1/29/13 (TS); March 20, 2013 invoice entries at 2/15/13 (TS),

2/12/13 (EB), 2/15/13 (BES);  May 8, 2013 invoice entries at 4/16/13 (EB), 4/17/13 (TS),

4/19/13 (BES), 4/19/13 (EB);  and May 15, 2013 invoice entries at 5/1/13 (EB), 5/10/13 (TS),

5/15/13 (TS).[21]

### 6.   *Fees Incurred for Duplicative Work are Not Reasonable*

Courts do not award fees where multiple attorneys duplicate each other's work, such as

multiple lawyers appearing at the same oral argument or court conference.   *See Rode v.*

*Dellarciprete*, 892 F.2d 1177, 1187 (3d Cir. 1990));   *Apple Corps,* 25 F. Supp. 2d at 489 (citing

numerous cases).   Here, FMCP seeks fees for having multiple attorneys attend the same oral

arguments and court conferences.   For example, after June 30, 2011, FMCP's application

includes fees for both Anthony Paduano and Lori Vinciguerra to attend court events on January

30, 2013 and March 7, 2013.[22]   Before June 30, 2011, they both appeared together on January

21, 2011, January 28, 2011, and March 17, 2011.

Because these fees often include travel time, the inclusion of multiple attorneys is even

more unreasonable.

---

[21]   If the Court is going to consider pre-June 2011 fees, there are many more examples of charges
for clerical or administrative tasks, such as the December 7, 2010 invoice entries at 11/12/10
(SIC), 11/15/10 (DA), 11/29/10 (DA), 11/30/10 (LV), 11/30/10 (DA), 11/30/10 (WV);  February
4, 2011 invoice entry at 12/27/10 (DA);  March 4, 2011 invoice entries at 1/7/11 (DA), 1/12/11
(DA), 1/13/11 (DA), 1/19/11 (DA), 1/20/11 (LV), 1/20/11 (DA), 1/28/11 (LV);  and April 30,
2011 invoice entries at 3/16/11 (DA), 3/17/11 (DA), 3/18/11 (DA).

[22]   Notably, Mr. Paduano's time entry for this conference call with the Court is double the
amount of time entered by Ms. Vinciguerra. Courts have held that reductions are appropriate
where billing entries are inconsistent, *e.g*., where one timekeeper billed a certain amount of time
for a discussion with another timekeeper who either did not record the same event or recorded a
different amount of time for that event. *See, e.g., Hilburn v. State Dept. of Corr.,* No. 7-6064,
2012 U.S. Dist. LEXIS 125201, *18-19 (D.N.J. Sept. 4, 2012) (reducing counsel fees to account
for multiple situations where one attorney billed for a phone call to co-counsel, but the other did
not).

7.      *Travel Time Cannot Be Billed at Full Rates*

Pure travel time is not compensable at full hourly rates.  *D'Orazio v. Washington, Twp.*, No. 07-5097, 2011 U.S. Dist. LEXIS 146635 *6 (D. N.J. 2011).  "In this community, travel time is compensable at full rate if legal work was performed during the commute, however, the rate is reduced by fifty percent if the attorney did not perform legal tasks."  *Id.*  Here, FMCP's bills include what appears to be pure travel time at full hourly rates.  To the extent those fees are recoverable at all, they must be reduced by 50%.

8.      *Vague Time Entries are Not Recoverable*

"With regard to vague entries, a fee petition must be sufficiently specific 'to determine if the hours claimed are unreasonable for the work performed.'"  *Id*. at *6 (quoting *Washington*, 89 F.3d at 1037)).  Where the applicant provides "only a brief description of how the time was allocated," that entry should be excluded from the award.  *Id.*

Here, many of the time entries are vague and do not provide a sufficient description of the task at issue.  For example, numerous entries after June 30, 2011 are too vague to identify the tasks performed, such as December 12, 2012 invoice entries at 11/7/12 (AP), 11/28/12 (LV), 11/29/12 (LV);  February 28, 2013 invoice entry at 1/28/13 (TS);  and the May 15, 2013 invoice entries at 5/13/13 (AP), 5/14/13 (AP).[23]

9.      *Excessive "Fees on Fees" are Not Reasonable*

Fee applicants are entitled to recover fees incurred to prepare and file the fee application only to the extent those fees are reasonable.  *Rode,* 892 F.2d at 1192.  Where the litigant does not achieve full success on the fee petition, a reduction in the "fees on fees" award is appropriate.

---

[23]  If the Court considers pre-June 30, 2011 fees, many of those are impermissibly vague as well, including the December 12, 2010 invoice entry at 11/18/10 (AP);  February 4, 2011 invoice entries at 12/1/10 (AP), 12/10/10 (DA);  March 4, 2011 invoice entry at 1/11/11 (AP);  and the April 30, 2011 invoice entries at 3/17/11 (JJS), 3/18/11 (JJS), 3/22/11 (JJS).

*Maldonado v. Houstoun*, 256 F.3d 181, 187-88 (3d Cir. 2001) (reducing fees for preparing fee application by 50% "because of the limited success on the fee petition").

Here, FMCP's application seeks $74,166.25 in fees plus $1,723.02 in expenses incurred in drafting the original fee petition (May 16, 2013 Paduano Aff. at ¶2), plus FMCP's current brief indicates that FMCP plans to seek at least an additional $9,000 for the current "fees on fees" briefing.  (FMCP Br. at 2 n. 2).  In other words, FMCP seeks fees on fees that alone exceed the amount of the prejudgment interest settlement.  This Court must examine whether those fees are reasonable, which will depend in part on how the Court decides the merits of the application and the amount it awards, if any.

10.   *Miscellaneous Pre-June 2011 Issues*

To the extent the Court considers any pre-June 2011 invoices, there are additional issues with respect to several of those invoices.  For example, some time entries were incurred for work on the Maryland Litigation, and those fees are not recoverable in this case.  *See*, *e.g.*, February 4, 2011 invoice at 12/6/10 (LV), 12/6/10 (DA);  and the March 4, 2011 invoice entry at 1/3/11 (LV).

The pre-June 2011 invoices also include fees incurred on the first appeal to the Third Circuit.  *See* June 30, 2011 invoice entries at 5/23/11 (WV), 5/24/11 (DA), 5/26/11 (LV), 5/27/11 (TM).  These fees are not recoverable from the District Court.  *Jurinko v. Medical Protective Co.*, No. 03-4053, 2009 U.S. Dist. LEXIS 66324, *17 (E.D. Pa. 2009).

The pre-June 2011 invoices also include a significant amount of fees related to the administrative appeal, which are not recoverable.  *Hahnemann University Hosp. v. All Shore, Inc.*, 514 F.3d 300, 312-14 (3d Cir. 2008).  Because of the vague nature of many of the time entries, it is impossible to know exactly which daily entries were for work on the administrative appeal.  For example, at least some of the vague references to "conferences and emails regarding

24

facts and strategy" likely refer to the administrative appeal.  *See, e.g.,* December 7, 2010 invoice

entry at 11/01/11 (AP) and 11/5/10 (AP).   But many entries unquestionably refer to the

administrative appeal.  *See, e.g.,* December 7, 2010 invoice entry at 11/01/10 (LV), 11/1/10

(DA), 11/2/11 (LV), 11/2/10 (DA), 11/3/10 (DA),  11/12/10 (WV).

> 11.    <u>Quarter Hour Billing</u>

Billing in quarter hour increments instead of the standard one-tenth of an hour

"inherently inflates and distorts the time actually expended" and "suggests padding on short

tasks."  *In re Jefsaba*, 172 B.R. 786, 801 (E.D. Pa. 1994).  Such billing is improper and warrants

a reduction in any attorney's fees award to which plaintiffs are entitled.  *See Welch v.*

*Metropolitan Life Ins. Co.,* 480 F.3d 942, 948-49 (9th Cir. 2007) (affirming district court's 20%

across-the-board reduction in fee award based on quarter-hour billing in ERISA case); *Bench*

*Billboard Co. v. City of Toledo,* 759 F. Supp. 2d 905, 913-15 (N.D. Ohio 2010) (reducing fee

award by 7.5% based on quarter hour billing); *U.S. v. NCH Corp.,* No. 05-881, 2010 U.S. Dist.

LEXIS 94486, at *37-39 (D.N.J. Sept. 10, 2010) (reducing fee award by 12.5% based on quarter-

hour billing).  Here, any award should similarly be reduced by a meaningful percentage to

account for the inflation inherent in quarter-hour billing.

> 12.    <u>Unreasonable Expenses are Not Recoverable</u>

The expenses sought by FMCP also contain unreasonable entries.  For example, every

invoice includes photocopying expenses that are simply listed as a total charge, with no

description of the number of copies made, what was copied, or how much was charged per copy.

Absent any description, such charges are not recoverable.

Every invoice also includes firm overhead charges, particularly a $300 monthly charge

for "IT Expense" and a charge for regular "postage."  Lawyers' overhead costs are not

recoverable.  *See Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995).

To the extent the Court considers pre-June 30, 2011 expenses, FMCP seeks expert fees for calculating interest.  (Paduano 4/16/13 Aff. at ¶¶ 7-8 and Exhibit C thereto).  While the expert's invoice does not contain a description of the work performed, Mr. Paduano's Affidavit describes it as work for calculating interest.  *Id.*  Presumably, this is penalty punitive interest, because an expert would not be needed to calculate simple interest under the Federal Treasury bill rate.  For the reasons stated above, any fee or expense related to punitive penalty interest is not reasonable.

13.   Summary

In short, the fees sought by FMCP are not reasonable.[24]  Given the substantial deficiencies in FMCP's application, the Court should exercise its broad discretion and deny the application in its entirety.  *See, e.g, Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980); *Lewis v. Kendrick*, 944 F.2d 949, 956 (1st Cir. 1991); *Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92, 96-98 (4th Cir. 1993).  To the extent the evidence presented "leaves any doubt as to the amount of fees to be awarded, these doubts shall be resolved against an award of fees."  *Veneziano v. Long Island Pipe Fabrication & Supply Corp.*, 238 F. Supp. 2d 683, 695 (D.N.J. 2002) *aff'd sub nom., Veneziano v. Long Island Pipe Fabrication & Supply*, 79 F. App'x 506 (3d Cir. 2003).

In the alternative, this Court should exercise its broad discretion and reduce the amount of the award substantially.  The "reviewing court has "wide discretion to adjust the attorneys' fee for a variety of reasons such as inadequate documentation of hours spent, reasonableness of hours expended or duplication of efforts."  *Hensley*, 461 U.S. at 433; *see also Ursic*, 719 F.2d at 677.

---

[24] CareFirst joins in the additional arguments made by the IBC Defendants as to the reasonableness of the fees sought.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant CareFirst of Maryland, Inc. respectfully requests that this Court deny Plaintiffs' motion for attorney's fees.

Respectfully submitted,

*/s/ Mark J. Oberstaedt*
MARK J. OBERSTAEDT, ESQUIRE
ARCHER & GREINER
One Centennial Square
Haddonfield, NJ  08033-0968
Phone:  856-795-2121
Counsel for Defendant
CareFirst of Maryland, Inc.

Dated:  August 31, 2015.

112905717v1